## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) BRADLEY COX, )
)
    Plaintiff, )
)
v. )
) Case No.
(1) STATE FARM FIRE AND CASUALTY )
   COMPANY and )
(2) JEREL WRIGHT, )
)
    Defendants. )

### NOTICE OF REMOVAL

1.    State Farm Fire and Casualty Company ("State Farm") is Defendant in a civil action brought against it in the District Court of Oklahoma County, State of Oklahoma, on January 29, 2026, and titled *Bradley Cox v. State Farm Fire and Casualty Company and Jerel Wright*, Case No. CJ-2026-790.

2.    Upon information and belief, at the time of the filing of this action and at the present time, Plaintiff Bradley Cox is and was a resident and citizen of the State of Oklahoma.

3.    At the time of the filing of this action and at the present time, State Farm was and is a foreign corporation, duly organized and existing under the laws of the State of Illinois and no other state, with its principal place of business in Illinois; it is not a citizen of Oklahoma.

4.    Defendant Jerel Wright ("Mr. Wright") is a State Farm agent in Oklahoma City, Oklahoma.

5.     Even though Mr. Wright is a resident of the State of Oklahoma, his citizenship is immaterial because he is a fraudulently joined party against whom Plaintiff does not have "any possibility of recovery." *Smith v. Allstate Vehicle & Prop. Ins. Co.*, No. CIV-14-0018-HE, 2014 WL 1382488, at *1 (W.D. Okla. Apr. 8, 2014) (internal quotation marks omitted). Only ***properly joined*** defendants are material for diversity analysis. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest ***properly joined*** and served as defendants is a citizen of the State in which such action is brought." (emphasis added)); 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been ***properly joined*** and served must join in or consent to the removal of the action." (emphasis added)). Therefore, as set forth below and apparent from the Petition ("Petition"), this Court should disregard the alleged citizenship of Mr. Wright for purposes of diversity. *Smith*, 2014 WL 1382488 at *4.

6.     As the United States Supreme Court has recognized for well over a century, the right of removal "cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). A defendant can prove fraudulent joinder by showing that either: (1) plaintiff's jurisdictional allegations are fraudulent and made in bad faith; or (2) plaintiff has no possibility of recovery against the non-diverse defendant. *Gellner v. Progressive N. Ins. Co.*, No. 21-CV-0401-CVE-JFJ, 2021 WL 5789146, at *2 (N.D. Okla. Dec. 7, 2021)

(citing *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006)). Both grounds exist here.

7.      Mr. Wright is not properly joined because there is no "reasonable basis to believe the plaintiff might succeed in at least one claim against [him]." *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006). Plaintiff purports to sue Mr. Wright for negligent procurement of insurance and constructive fraud/negligent misrepresentation based on representations allegedly implied by Mr. Wright from the simple act of procuring coverage, as well as alleged actionable omissions for failure to predict and disclose State Farm's alleged claim handling practices. None of these claims has a "basis in the alleged facts." *Nerad*, 203 F. App'x at 913.

8.      Plaintiff has also shown fraudulent joinder in the pleading of jurisdictional facts by, among other things, using the same petition relied upon by his counsel in many other cases against State Farm that contains allegations that are implausibly the same in every case and have no application to the actual facts; thus, they were "manufactured simply in an effort to avoid removal to federal court." *Goebel v. State Farm Fire & Cas. Co.*, No. CIV-22-0882-HE, 2023 WL 11883985, at *2 (W.D. Okla. Jan. 26, 2023) (granting jurisdictional discovery prior to resolution of motion to remand noting that allegations in petitions filed by Plaintiff's counsel were "identical, cookie-cutter allegations of fact in circumstances where no such identical conduct could plausibly be expected"). In the majority of cases brought by Plaintiff's counsel, however, counsel allege that State Farm has a scheme to deny and underpay claims of ***wind/hail damage to roofs*** as part of a "Wind/Hail Focus Initiative" and that the defendant agent failed to inspect and notify the

insured of the condition of the roof. They cannot assert that invented theory here because Plaintiff's claim did not involve his roof or wind/hail damage but rather a busted pipe in the wall of his home office. Thus, Plaintiff's counsel has now conveniently fabricated a scheme to deny and under pay water damage claims as part of a "Water Loss Initiative." The allegations underlying both theories are factually implausible and legally wrong. Here, as in other cases, the claims against the agent are premised on an alleged duty to inspect the insured property and advise of any issues. But there is no way an inspection at policy issuance in 2009 (or even the equally absurd requirement of an annual inspection) would have revealed issues with the pipe unless Mr. Wright knocked out the wall, and no way the failure to know about it impacted State Farm's issuance or renewal of the policy. The theory was made up to avoid having to litigate in this Court. *See Goebel*, No. CIV-22-0882-HE, 2023 WL 11883977, at **1-3 (W.D. Okla. Aug. 7, 2023) (denying motion to remand finding actual fraud in the pleading of jurisdictional facts); *Marino v. State Farm Fire & Cas. Co.*, No. CIV-22-0885-HE, 2023 WL 11915691, at **1-3 (W.D. Okla. Aug. 7, 2023) (same); *Baltasar v. State Farm Fire & Cas. Co.*, No. CIV-22-0928-HE, 2023 WL 11883978, at **1-2 (W.D. Okla. Aug. 8, 2023) (same).

> **Plaintiff Cannot Possibly State a Claim Against Mr. Wright for Negligent Procurement Because Plaintiff Admittedly Received the Policy He Requested, Mr. Wright Cannot Be the Cause of the Injury Alleged Because It Arises Only From State Farm's Claim Decision, and the Claim Is Clearly Time-Barred**

9.      Plaintiff's claim for negligent procurement cannot possibly succeed because he received the policy he pled that he requested and no act by Mr. Wright caused the damages for which he complains. Oklahoma law recognizes a claim for negligent

procurement under limited circumstances. *Swickey v. Silvey Cos.*, 979 P.2d 266, 268 (Okla. Civ. App. 1999). "An agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance." *Id.* at 269. Only if "**by the agent's fault**, insurance is not procured as promised **and the insured suffers a loss**" as a result can an agent be liable in tort for breaching this duty of care. *Id.* (emphasis added).

10.     Plaintiff alleges when seeking insurance for his house in 2009, he "asked Wright for 100% replacement cost coverage." Pet., ¶ 6. He contends Wright did not deliver the requested policy and instead procured "illegitimate full replacement cost coverage (in that all fortuitous losses are not covered under the Policy)" that "did not ... fully restore the Insured Property back to its pre-loss condition." *Id.*, ¶ 38. Plaintiff does not set forth facts to demonstrate that any requested terms are missing from his Policy. That is because the Petition makes clear it is not the Policy or any of its terms about which Plaintiff complains; rather, Plaintiff complains of State Farm's claim decision. His failure to plead facts to show Mr. Wright did not procure "insurance … as promised" is fatal to his claim. *Swickey*, 979 P.2d at 268.

11.     Indeed, there is no doubt that Plaintiff received the Policy he says he wanted—a replacement cost value ("RCV") policy that covers water damage. "Replacement cost insurance provides greater coverage than an actual cash value policy and 'is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property.'" *Graves v. Am. Fam. Mut. Ins. Co.*, 686 F. App'x 536, 538 (10th Cir. 2017) (citation omitted). "Under a replacement cost policy, the insured must actually repair or replace the damaged property in order to recover the full

replacement cost; otherwise, the insured may recover only the actual cash value…. The reason for this requirement is to prevent an insured from directly profiting through the receipt of cash funds beyond the actual cash value of the loss." *Id.* (citation and internal quotations omitted). *See also Frontline Fellowship, Inc. v. Bhd. Mut. Ins. Co.*, No. CIV-21-357-PRW, 2022 WL 16856111, at *3-4 (W.D. Okla. Nov. 10, 2022) (explaining RCV policy in same manner).

12.    The Declarations to Plaintiff's Policy show that his dwelling coverage was "A1 Replacement Cost - Similar Construction." Renewal Declarations, Ex. 12. This section of the Policy provides that "until actual repair or replacement is completed, [State Farm] will pay only the ***actual cash value*** of the damaged part of the property, up to the applicable limit of liability shown in the ***Declarations***, not to exceed the cost to repair or replace the damaged part of the property." Policy, § 1.a.(1), p. 18, Ex. 13. "[W]hen the repair or replacement is actually completed, [State Farm] will pay the covered additional amount [Plaintiff] actually and necessarily spend[s] to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the ***Declarations***, whichever is less." Policy, § 1.a.(2), p. 18, Ex. 13.

13.    Plaintiff vaguely suggests that Mr. Wright procured a Policy that did not cover "all fortuitous losses" (Pet., ¶ 38) but nowhere states which losses were allegedly omitted. The only loss alleged is a water loss, and there is no dispute that Plaintiff's Policy provided coverage for such loss. Plaintiff admits State Farm estimated to repair water damage to the walls and floors of Plaintiff's house. Pet., ¶ 14; State Farm Est., Ex. 14. He just alleges State Farm did not pay enough. Pet., ¶ 14. When faced with the same

6

allegations, this Court recently found agents were fraudulently joined to defeat federal jurisdiction, concluding the insureds (who were represented by Plaintiff's counsel) could not possibly state a claim for negligent procurement because "[a]ccording to Plaintiffs' own allegations," they received the exact policy requested: "an all-risk replacement cost policy that provides coverage for any accidental direct physical loss, including wind and hail damage." *Porter v. State Farm Fire & Cas. Co.*, No. CIV-25-187-R, 2025 WL 1151682, at *3 (W.D. Okla. Apr. 18, 2025); *Cisneros v. State Farm Fire & Cas. Co.*, No. CIV-25-42-R, 2025 WL 1151685, at *3 (W.D. Okla. Apr. 18, 2025); *Barlow v. State Farm Fire & Cas. Co.*, No. CIV-25-44-R, 2025 WL 1139489, at *3 (W.D. Okla. Apr. 17, 2025); *Gamble v. State Farm Fire & Cas. Co.*, No. CIV-25-396-R, 2025 WL 1848818, at *2 (W.D. Okla. July 2, 2025); *Weichbrodt v. State Farm Fire & Cas. Co.*, No. CIV-25-360-R, 2025 WL 1848819, at *2 (W.D. Okla. July 2, 2025); *Newell v. State Farm Fire & Cas. Co.*, No. CIV-25-562-R, 2025 WL 2649661, at *2 (W.D. Okla. Sept. 15, 2025); Order at 4, *Stafford v. State Farm Fire & Cas. Co.*, 5:25-cv-00008-HE (W.D. Okla. May 27, 2025), ECF No. 25 ("*Stafford* Order") ("[I]t is completely certain, from the record, that [plaintiff] received the policy she requested—a replacement cost value policy. There are no factual allegations to show the issued policy excluded a 'weather-related loss.' Indeed, the policy covered wind and hail damage."); Order at 4, *Cline v. State Farm Fire & Cas. Co.*, No. CIV-25-367-HE (W.D. Okla. Aug. 21, 2025), ECF No. 18 ("*Cline* Order"); Order at 4, *White v. State Farm Fire & Cas. Co.*, No. CIV-25-561-HE (W.D. Okla. Aug. 21, 2025), ECF No. 19 ("*White* Order"); *Wilder v. State Farm Fire & Cas. Co.*, No. CIV-25-00092-JD, 2025 WL 2918045, at *4 (W.D. Okla. Oct. 14, 2025) (denying remand in part because

"[b]y Plaintiff's own admission, [the agent] procured Plaintiff a replacement cost policy" and therefore "any arguments Plaintiff did not receive a replacement cost policy [were] unavailing"); *Hall v. State Farm Fire & Cas. Co.*, No. CIV-25-12-JD, 2025 WL 2905205, at *4 (W.D. Okla. Oct. 13, 2025); *Wiesman v. State Farm Fire & Cas. Co.*, No. CIV-25-00050-JD, 2025 WL 2918043, at *4 (W.D. Okla. Oct. 14, 2025); *Weakley v. State Farm Fire & Cas. Co.*, No. CIV-25-00091-JD, 2025 WL 2971468, at *4 (W.D. Okla. Oct. 21, 2025); Order, *Dressel v. State Farm*, 5:25-cv-860-HE (W.D. Okla. Oct. 29, 2025), ECF No. 22; Order at 5-6, *Moore v. State Farm Fire & Cas. Co.*, CIV-25-181-G (W.D. Okla. March 30, 2026), ECF No. 26 ("*Moore* Order") ("Plaintiff's allegations and the record reflect that a full replacement cost policy, providing coverage for weather-related losses, was renewed and in effect at the time of loss.").

14. Apparently cognizant of the fatal flaw in his theory (and used by his attorneys to bolster their repeated claims about wind/hail damage and roof inspections instead), Plaintiff alleges the replacement coverage procured was "illegitimate" (Pet., ¶ 37(a)(i)), without any explanation of how any conduct by Mr. Wright made it so. It seems plain that "illegitimate" is another way of saying State Farm did not pay as much as Plaintiff's public adjuster demanded. That had nothing to do with the Agent or the Policy. The decision was made by State Farm in the handling of Plaintiff's claim. Put simply, *if* there was any injury, it was caused by State Farm, not Mr. Wright.

15. Furthermore, the Policy played no role in State Farm's claim decision not to pay to replace all damage alleged by Plaintiff and thus is not what caused the alleged injury to Plaintiff. According to his Petition, "[o]n or about January 17, 2023, Plaintiff's home

sustained ... damage ... due to a pipe burst, including ... the floor buckling and damage to the walls and/or sheetrock." Pet., ¶ 8. He submitted a claim to State Farm, which investigated the loss and estimated $19,952.85 RCV to repair the damage, including replacement of wood flooring, paneling, and dry wall. *Id.*, ¶ 14; State Farm Est., Ex. 14. After application of Plaintiff's $6,366 deductible and recoverable depreciation, $13,049.21 was paid to Plaintiff for damage to the dwelling.[1] State Farm Est., Ex. 14. Plaintiff alleges State Farm "woefully underpaid the claim" but does not set forth facts to establish any items of damage State Farm refused to pay or in what amounts.

16.    As with all negligence claims, a required element of negligent procurement is **causation**. Plaintiff must show he "suffered damages flowing from the breach of the agent's duty of care." *Castens v. Conseco Life Ins. Co.*, 11-CV-628-TCK-FHM, 2012 WL 610001, at *2 (N.D. Okla. Feb. 24, 2012). That is, "there must be 'some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.'" *West v. Chaparral Energy, LLC*, CIV-16-264-F, 2018 WL 8264627, at *4 (W.D. Okla. Aug. 13, 2018) (quoting *Steed v. Bain-Holloway*, 2015 OK CIV APP 68, ¶ 21, 356 P.3d 62, 68). The injury alleged by Plaintiff from the conduct of the agent and State Farm is the same—failure to pay to replace all damage alleged by Plaintiff. The cause of that alleged injury is State Farm's findings as to the scope of the loss. Pet., ¶ 14; State Farm Est., Ex. 14. That is, "Plaintiff's damages flow from State Farm's allegedly improper

---

[1] State Farm also paid to replace personal property and to cover additional living expenses while repairs were made, which does not appear to be at issue in this lawsuit, as Plaintiff does not make any allegations related to this coverage.

9

interpretation of his policy and adjustment of his claim, not the agent's failure to procure the correct type of policy, type of coverage, or coverage limit." *Weichbrodt*, 2025 WL 1848819 at *2. As Judge DeGiusti observed when denying a motion to remand finding that the defendant agent was fraudulently joined: "[P]urchasing a replacement cost policy 'does not mean that an insured is guaranteed that its claims will always be paid in full.' Similarly, a replacement cost policy does not guarantee that a plaintiff's claims will be paid in the exact manner that the plaintiff desires. Representing that 'comprehensive replacement cost coverage [ ] would protect the property (including the roof) without exclusion, limitation or conditions' does not affect this principal. To argue otherwise is to suggest that having a replacement cost policy entitles Plaintiff to a full replacement of the roof upon submission of virtually any claim." *Rain Drop Found., Inc. v. State Farm*, CIV-24-1101-D, 2025 WL 582562, at *5 (W.D. Okla. Feb. 21, 2025) (citations omitted). *See also Steinkamp v. State Farm*, CIV-22-00047-PRW, 2023 WL 11920886, at *2 (W.D. Okla. Sept. 29, 2023) ("State Farm denied the claim [for a total roof replacement] not because of the type of policy [] procured, but because it determined that [Plaintiffs'] roof did not sustain a covered loss…. In short, Plaintiff[s'] claim against State Farm depends upon what damage [their] roof sustained, not the terms of [their] policy."); *Wiesman*, 2025 WL 2918043 at *4 ("Plaintiff's damages flow from the adjuster's assessment of his property damage and State Farm's related denials, not from the type of coverage provided by the Policy."); *Wilder*, 2025 WL 2918045 at *4; *Hall*, 2025 WL 2905205 at *4; *Moore* Order at 8-9 (denying remand where, as here, "Plaintiff [] alleges injury arising from the adjusters' assessments and State Farm's related denials—not from the renewal of coverage by [the agent]").

17.    Plaintiff's Petition contains confusing and irrelevant allegations regarding calculation of RCV. He alleges he "asked [] Wright for 100% replacement cost coverage" (Pet., ¶ 6) and contends the "Policy ... did not accurately reflect the replacement cost of the Insured Property (*id.*, ¶ 38(a)(iii)). He suggests he is underinsured because the Policy "did not provide full replacement cost coverage to fully restore the Insured Property back to its pre-loss condition." *Id.*, ¶ 38(a)(iv). Oklahoma law is clear: an agent cannot be liable for negligence for failing to procure a specific limit of coverage ***if no such limit was requested***. *Cosper v. Farmers Ins. Co.*, 309 P.3d 147, 149 (Okla. Civ. App. 2013) ("[W]e decline to extend *Swickey* and impose a duty ... to provide an 'adequate amount' of coverage. Plaintiffs did not allege that they requested a specific coverage limit and Defendants disregarded the request and issued a policy in some other amount."). Plaintiff does not plead that he told Mr. Wright a specific amount of insurance to procure. Moreover, the Policy makes plain it ***was up to Plaintiff*** to choose his coverages and limits. Policy at 1, Ex. 13 ("[State Farm] agree[s] to provide the insurance described in this policy … for the coverages *you* chose."); Declarations at 4, Ex. 12 ("It is up to you to choose the coverages and limits that meet your needs."). Further, the coverage provided by State Farm is "based on the information [Plaintiff gave it]." Policy at 1, Ex. 13. At least 30 days before his Policy renewed each year, State Farm reminded Plaintiff to review his coverages and limits and advise of changes needed and encouraged him to contact State Farm with updates to his house for use in premium determination (also negating any notion that this was the job of the agent). Coverage Notice and Declarations at 1-3, Ex. 12. Regardless of who selected the amount of insurance, there can be no dispute Plaintiff had sufficient coverage to repair

11

the damage identified by his public adjuster. The Declarations show he had $636,600 RCV in coverage at the time of loss. *Id.* at 2. His public adjuster provided an estimate in the amount of $72,576.50 for damage to the dwelling. Ian's Enterprises Ltr., March 7, 2023, Ex. 6. "So, any issue as to coverage amounts did not lead to any of the damages that Plaintiff[] assert[s] via [his] claim for damage." *Goebel*, 2023 WL 11883977 at *4. *See also Porter*, 2025 WL 1151682 at *4; *Cisneros*, 2025 WL 1151685 at *4; *Barlow*, 2025 WL 1139489 at *4; *Newell*, 2025 WL 2649661 at *2; *Stone*, 2025 WL 3090772 at *3 (insured could not state a claim where "it [wa]s undisputed that Plaintiff's policy provided" enough coverage to replace his roof).

18.    Plaintiff's Petition further attempts to impose upon an insurance agent a duty to inform insureds of the condition of their property for which there is no legal or industry support at all and which is mooted entirely by the fact that State Farm in fact issued a Policy. He alleges State Farm agents should "perform a reasonable inspection of the Insured Property prior to procuring the full replacement cost coverage and thereafter upon renewal to ensure no changes to the Policy were necessary or required," (Pet., ¶ 37(b)), but "Agent Wright never inspected Plaintiff's Home to determine if it met State Farm's underwriting guidelines" (*id.*, ¶ 7). He tries to tie this duty to inspect to his negligent procurement claim by alleging that because Mr. Wright did not inspect the property, he could not "confirm the accuracy of the pre-filled information provided by State Farm's replacement cost estimating tool," "disclose pre-existing damage to the Insured Property," or "verify whether its inherent representation to State Farm and Plaintiff that the Insured Property was in good condition was accurate." *Id.* at ¶ 37(b). ***This argument is impossible***

***because an insurance policy issued and renewed, under which State Farm estimated to replace damaged property, and under which Plaintiff sues State Farm for benefits. Therefore, the house did satisfy State Farm's underwriting requirements.***

19.    Regardless, this theory presupposes a duty to the insured with regard to underwriting which does not exist. Courts to address the issue are in agreement that an agent owes no underwriting duty or duty to inspect to the insured. *Hall*, 2025 WL 2905205 at *5 ("Plaintiff [did] not provide a legal basis that [the agent] ... had a duty to Plaintiff to" "follow and abide by State Farm's underwriting policies/guidelines; perform all necessary inspections of the Insured Property; ... disclose pre-existing damage to the Insured Property; [and] verify whether ... the Insured Property (including the roof) was in good condition" among other alleged duties); *Wilder*, 2025 WL 2918045 at *4 (same); *Wiesman*, 2025 WL 2918043 at *4 (same); *Marino*, 2023 WL 11915691 at *3 ("[P]laintiff has not identified any Oklahoma case suggesting that whatever role an agent plays in the underwriting process results in a duty owed to the insured."); *Moore* Order at 7-8 (observing that insured identified no legal authority establishing agent owed her a duty to abide by underwriting guidelines, perform inspections, and disclose pre-existing damage, among other alleged duties); *Goebel*, 2023 WL 11883977 at *4; *Stafford* Order at 7; *White* Order at 7-8; *Cline* Order at 7; *Newell*, 2025 WL 2649661 at *3; *Gray v. Derderian*, 464 F. Supp. 2d 105, 110 (D. R.I. 2006) (insurer had no duty to inspect insured property); *Hartford Steam Boiler Inspection & Ins. Co. v. Cooper*, 341 So. 2d 665, 668 (Miss. 1977) (same); *Manzella v. Gilbert-Magill Co.*, 965 S.W.2d 221, 229 (Mo. Ct. App. 1998) (refusing to find agent had legal duty to customers to abide by underwriting guidelines in

13

placing coverage); *Salopek, Tr. for Salopek Fam. Heritage Tr. v. Zurich Am. Life Ins. Co.*, 428 F. Supp. 3d 609, 622 (D. N.M. 2019) (same). This makes sense; insurance companies conduct underwriting for their own benefit—to recognize and reduce risk—and not as a service to inform insureds of the condition of their house. *Gray*, 464 F. Supp. 2d at 109. A business model that required the Agent or State Farm to attest to the condition of every property insured—which is where Plaintiff's theory leads—would be impossible to sustain. But to make sure there is no confusion on that point the Policy tells the insureds that State Farm has no obligation to inspect or report on the condition of their property. Policy at 32, Ex. 13. *If* State Farm decides to have an inspection, it is performed by a third-party inspector, not the agent, for its own use in determining whether to insure or continue to insure the risk. Berthelot Decl., ¶¶ 4-9, Ex. 15; Sample Underwriting Letter, Ex. 16 (advising insureds that "a routine survey … [wa]s being scheduled for [their] home," "[a] representative from a survey company contracted by State Farm [would] be visiting [their] home to complete a survey and take exterior photos," and "State Farm periodically surveys the homes [it] insureds," but the "survey is not a health or safety inspection and is not intended to ensure compliance with laws, codes, or standards that may apply to [their] premises. The decision made by State Farm regarding [their] insurance eligibility does not constitute any warranty regarding such compliance or the condition of [their] premises.").

20.    That is what occurred here. In March 2009, Plaintiff applied for a policy to insure his ***brand new*** house (which thus certainly had new plumbing). After State Farm's Underwriting Department reviewed his application and determined to insure the risk, a policy issued, No. 36-Bd-E747-9, effective April 3. Pet., ¶ 1. Each year thereafter, at least

14

30 days before it renewed for a 12-month period, State Farm (not the agent) sent Plaintiff a renewal notice, notifying him his Policy automatically renewed, effective April 3. Coverage Notice, Ex. 12. The Notice negates Plaintiff's theories as to agent underwriting obligations. The Notice advised Plaintiff that if he needed to change coverage or increase his limits, he should contact his agent. *Id.* at 2. The Declarations also asked Plaintiff to help State Farm "update the data used to determine [his] premium," including by "[c]ontact[ing] [his] agent with the year each of [his] home's utilities ... and roof were last updated." *Id.* at 1.

21.    In the years that followed, Plaintiff submitted at least five claims under his Policy, including three wind/hail claims (one in 2009, 2010, and 2013) for which State Farm made significant claim payments, including total roof replacement, and two claims for water and freezing damage (2020 and 2023), pursuant to which State Farm also made payments for benefits. In 2015, ***State Farm's Underwriting Department*** (not the agent) ordered an exterior survey of Plaintiff's house by third-party Myriad Risk Manager, which identified no issues. Myriad Rep., Ex. 17. The inspection report expressly stated that it was conducted "for the limited purpose of underwriting the risk and determining eligibility for insurance" and was "not intended as a health or safety inspection or to ensure compliance with laws that may apply to [Plaintiff's] premises." *Id.*

22.    Instead of addressing the absence of law or factual obligations to support his agent theory, Plaintiff cites inapplicable underwriting guidelines and a job aid to suggest that State Farm agents act as underwriters. Pet., ¶ 7. At most, these documents suggest that agents owe a duty to State Farm, not insureds, to collect information to assist State Farm

15

in determining whether to insure the risk. *Marino*, 2023 WL 11915691 at *3 ("Plaintiff[] point[s] to various documents obtained in discovery addressing an inspection/underwriting function for State Farm agents, but none of those suggest some duty to the insured. [] State Farm may well have multiple requirements as to what it expects its agents to do as part of its underwriting process, but that is not the same thing as concluding there is some underwriting duty owed to the insured.").

23.     Moreover, Plaintiff has not set forth facts to suggest any failure to inspect his house caused him any damages. He complains a busted pipe was the source of the water damage but does not confront how Mr. Wright was supposed to detect a faulty pipe during any inspection. Pet., ¶ 8. It would have been impossible without destroying the walls of Plaintiff's house, and as pled, Plaintiff suggests it was an emergent issue that could not have been detected during any inspection. *See id.* Clearly, this theory against Mr. Wright is a complete fabrication to destroy federal jurisdiction.

24.     Plaintiff's negligent procurement claim is also barred by the two-year statute of limitations. Okla. Stat. tit. 12, § 95(A)(3). A negligence claim accrues when the alleged injury to the plaintiff becomes certain, *Consol. Grain & Barge Co. v. Structural Sys., Inc.*, 212 P.3d 1168, 1171 n.8 (Okla. 2009)—here, when the Policy issued. "It is well established under Oklahoma law that insureds have a duty 'to examine, read, and know the contents of the policy before accepting and paying the premium therefor, and, having failed or neglected to do so[, they are] estopped from denying knowledge of its terms or conditions.'" *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1283 (N.D. Okla. 2006) (quoting *Liverpool & L. & G. Ins. Co. v. T.M. Richardson Lumber Co.*, 1902

OK 7, 69 P. 936, 937). Plaintiff pleads that State Farm issued Plaintiff the Policy under which he sues in 2009. Pet., ¶ 5. He did not sue Mr. Wright until March 4, 2026—17 years later. To the extent he argues the statute was tolled because he did not know of the alleged injury (which is not sufficient under the law), his public adjuster advised of the damage in March 2023 and complained of State Farm's investigation and evaluation in May 2023, more than two years before the lawsuit was filed. March 7, 2023 Ian Enterprises Ltr., Ex. 18; Feb. 5, 2024 Ian Enterprises Ltr., Ex. 19 (stating "[o]n or about 05/02/2023, we submitted the Claim Settlement Duties package ("CSD"), which demanded State Farm cease and desist from unlawful and/or unfair claims settlement practices...."). His negligent procurement claim, therefore, is time barred. *See Slover*, F. Supp. 2d at 1283 (finding agents fraudulently joined (and therefore subject to dismissal) in part because plaintiffs received their policy and were on notice of the policy's terms for years before filing the lawsuit and thus claims had long expired).

**Plaintiff's Constructive Fraud/Concealment Claim Cannot Possibly State a Claim Against Mr. Wright for the Same Reasons and More**

25.    Plaintiff's claims for "constructive fraud and negligent misrepresentation" and fraudulent concealment, premised on the same erroneous facts, are implausible for the same and other reasons. To establish a claim of fraudulent concealment, Plaintiff must plead and prove by clear and convincing evidence that Wright (1) concealed or failed to disclose a past or present fact that he had a duty to disclose; (2) that the fact was material; (3) that Wright concealed or failed to disclose it with the intent of creating a false impression of the actual facts in the mind of Plaintiff; (4) that Wright concealed or failed

17

to disclose it with the intention that it should be acted upon by Plaintiff; (5) that Plaintiff acted in reliance upon it; and (6) that Plaintiff thereby suffered injury. Okla. Unif. Jury Instr. No. 18.2; *Hubbard v. Bryson*, 474 P.2d 407, 410 (Okla. 1970). To state a claim for constructive fraud, Plaintiff must allege facts to show (1) Wright owed plaintiff a duty of full disclosure; (2) he misstated a fact or failed to disclose a fact to Plaintiff; (3) the misstatement or omission was material; (4) Plaintiff relied on it; and (5) suffered damages as a result. *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1113 (N.D. Okla. 2003). None of these elements exist.

26.    Plaintiff alleges Mr. Wright made multiple misrepresentations and/or omissions that fall into four categories: (1) representations regarding Plaintiff's eligibility for RCV coverage, including those relating to inspections, compliance with underwriting guidelines, and good condition of Plaintiff's house (Pet., ¶ 48(a)-(c)); (2) representations regarding the RCV calculation of Plaintiff's house (*id.* at ¶ 48(a)); (3) representations regarding the coverage provided by the Policy (*id.* at ¶ 48(d), (f)); and (4) representations regarding State Farm's claim handling (*id.* at ¶ 48(e), (g)). He attributes these representations to Mr. Wright, but does not say when or where they were allegedly made, the context in which they were made, or what (if anything) was said. Many, if not all, of these alleged representations included in an effort to plead a scheme, were not actually made, as evidenced by Plaintiff's inability to plead them with particularity as required by Fed. R. Civ. P. 9(b).

27.    Plaintiff does not allege facts to establish a duty of disclosure. He does not allege Mr. Wright made ***affirmative*** representations about inspections, house condition, or

RCV calculations. He alleges these representations were "inherent" to Wright's procurement of the Policy. Pet., ¶ 38(b)(v). Nor is there an allegation Mr. Wright made affirmative representations about State Farm's claim handling, other than a vague allegation that he told Plaintiff in 2009 that "all he needed to do was file a claim to be taken care of." *Id.*, ¶ 6. To the contrary, Plaintiff alleges Wright did not "disclose ... State Farm's bad faith claims handling tactics arising from the Water Loss Initiative [and] its reliance on undisclosed definitions and standards outside of the Policy." *Id.*, ¶ 48(g). Negligent misrepresentation cannot be based on silence or an implied representation alone. Plaintiff must show Mr. Wright owed him "a duty of full disclosure." *Lillard*, 267 F. Supp. 2d at 1113. "This duty could be part of a [] fiduciary duty[2] owed by the defendant to the plaintiff. [It] could also arise, even though it might not exist in the first instance, once a defendant voluntarily chooses to speak to plaintiff about a particular subject matter." *Id.*

28.     The Petition does not establish Mr. Wright owed Plaintiff a duty to speak. In *Pratt v. Safeco*, the court observed "[t]he duty to speak 'may arise if a party selectively discloses facts that create a false impression.' If a false impression is conveyed by disclosing some facts and concealing others, the concealment is in effect a false representation." 2020 WL 4735350 at *2 (citations omitted). As in *Pratt*, Plaintiff here "do[es] not allege that [the agent] conveyed a false impression by disclosing certain material facts and concealing others." *Id.* His allegation is Wright said nothing at all about

---

[2] Plaintiff does not allege Mr. Wright owed him a fiduciary duty, and the law is clear that an insurance agent owes no fiduciary duty to an insured. *See e.g., Pratt v. Safeco Ins. Co. of Am.*, No. CIV-20-93-D, 2020 WL 4735350, at *2 (W.D. Okla. Aug. 14, 2020).

his house condition, RCV calculations, satisfaction of underwriting requirements, how State Farm handles claims using "undisclosed definition[s]" and the "Water Loss Initiative." Pet., ¶¶ 38, 48. "[S]ilence conveyed no false impression to Plaintiff[]." *Pratt*, 2020 WL 4735350 at *2. Mr. Wright was "under no duty to speak," and Plaintiff has no viable claim against him for constructive fraud. *See Hall*, 2025 WL 2905205 at *6 ("The Court declines to conclude that a reasonable basis for a constructive fraud/negligent misrepresentation claim is an inherent or implied representation attendant to the issuance of an insurance policy. If that were the case, almost no circumstances would exist in which an agent could not be joined as a party to a lawsuit relating to coverage. Accordingly, the Court concludes Plaintiff has not pled facts demonstrating [the agent] made a partial disclosure that gave rise to a duty of full disclosure to Plaintiff."); *Wiesman*, 2025 WL 2918043 at *6; *Wilder*, 2025 WL 2918045 at *6; *Porter*, 2025 WL 1151682 at *4 (plaintiffs could not possibly state a claim for negligent misrepresentation where, as here, "Plaintiffs [did] not identify any affirmative statements by [agent] concerning State Farm's claim handling or policy interpretation"); *Cisneros*, 2025 WL 1151685 at *4; *Barlow*, 2025 WL 1139489 at *4; *Stafford* Order at 6 ("[Plaintiff] has not alleged ... any factual allegations of a partial disclosure by [agent] .... [Plaintiff] cannot show any duty to speak on the part of [the agent]."); *Cline* Order at 6 (same); *White* Order at 6 (same); *Moore* Order at 11 ("Whether Plaintiff has stated a viable claim against [the agent] [] turns upon whether [the agent] actually communicated with Plaintiff about the policy at issue. Neither Plaintiff's allegations nor any other material of record reflects that any such communication ever occurred.").

20

29.    In addition, Plaintiff's theory the agent has a duty to inspect for the insured's benefit is squarely negated by the Policy, which expressly states that State Farm has no obligation to "make inspections and surveys of the insured location at any time," provide insureds with "reports on conditions," or "recommend changes." Policy at 32, Ex. 13. While State Farm sometimes elects to have an inspection conducted, it does so for its own use in evaluating whether to insure a new property or continue to insure an existing property, and through a third-party vendor, not agents, which is what occurred here. Berthelot Decl., ¶¶ 3-5, Ex. 15; Sample Underwriting Letter, Ex. 16; Myriad Report, Ex. 17.

30.    Plus, Plaintiff could not have reasonably relied upon any alleged misrepresentations about his Policy because he received a copy. *Liverpool*, 69 P. at 937; *Country Gold, Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. CIV–14–1398–D, 2015 WL 431638, at *4 (W.D. Okla. Feb. 2, 2015) (dismissing constructive fraud claim in part because there was no dispute plaintiff received policy and thus could not have reasonably relied upon any misrepresentations about it); *Siddique v. Western Heritage Ins. Co.*, No. CIV–14–456–SPS, 2015 WL 2451734, at *4-5 (E.D. Okla. May 21, 2015) (same).

31.    Plaintiff's constructive fraud/negligent misrepresentation and fraudulent concealment claims further fail because, according to the Petition, none of the alleged misrepresentations or omissions caused the alleged damages. The only injury alleged for any claim is that "[a]s a result of ***Defendants'*** conduct"—not Mr. Wright alone—"Plaintiff sustained damages, including deprivation of monies rightfully belonging to Plaintiff, and ordinary or garden variety harm of anger, stress, worry, [and] physical and emotional

21

suffering." Pet., ¶ 53. *See also id.* at ¶ 34 (bad faith claim); *id.* at ¶ 40 (negligent procurement claim). Plaintiff suffered no damage from the alleged misrepresentations because none are the reason for the claim decision. The only "deprivation of monies" identified (or even plausible) was State Farm's failure to pay for all damage identified by Plaintiff's public adjuster. That decision had nothing to do with inspections being completed, whether the house met all "underwriting guidelines," or whether Plaintiff had sufficient coverage to repair the damage. *See Rain Drop*, 2025 WL 582562 at *5 (finding plaintiff, who also sued State Farm for not replacing its roof, was "unable to make out a causal nexus between [the agent's] actions at the procurement stage and Plaintiff's alleged prejudice at the coverage determination stage," reasoning "[a]ny disagreement about the extent of the hail damage suffered, the decision to repair rather than replace the roof, or the adequacy of the replacement shingles, [wa]s with State Farm alone."); *Wiesman*, 2025 WL 2918043 at *5 ("Plaintiff's damages stem from State Farm's calculation of the repairs to his property, not from Plaintiff's lack of coverage related to the [] alleged misrepresentations."); *Hall*, 2025 WL 2905205 at *6 (same); *Wilder*, 2025 WL 2918045 at *6 (same). *See also Steinkamp*, 2023 WL 11920886 at *3; *Marino*, 2023 WL 11915691 at *3; *Goebel*, 2023 WL 11883977 at *3; *Porter*, 2025 WL 1151682 at *4; *Cisneros*, 2025 WL 1151685 at *4; *Barlow*, 2025 WL 1139489 at *4; *Gamble*, 2025 WL 1848818 at *3; *Weichbrodt*, 2025 WL 1848819 at *3; *Stafford* Order at 7; *Cline* Order at 7; *White* Order at 8; *Stone*, 2025 WL 3090772 at *4 (insured could not possibly state a claim against agent because alleged loss was not caused by agent); *Moore* Order at 11 ("Plaintiff further fails to allege facts establishing a causal connection between the alleged misrepresentations or

omissions and the damages sought by Plaintiff."). This case is the same; Mr. Wright caused no injury to Plaintiff.

32.    In all events, the facts pled by Plaintiff make plain that the alleged representations were true. Plaintiff's house **did** satisfy underwriting and qualified for RCV coverage. *Newell*, 2025 WL 2649661 at *3. The Policy State Farm issued, under which it estimated to replace damaged property, and under which Plaintiff sues and seeks benefits, **is** an RCV policy. *Smith v. Allstate Vehicle & Prop. Ins. Co.*, No. CIV-14-0018-HE, 2014 WL 1382488, at *2 (W.D. Okla. Apr. 8, 2014) (rejecting claim agent misrepresented property would be replaced without any deduction for depreciation where policy provided for replacement without depreciation if the insured repaired or replaced the property). It covers water damage, as well. Pet., ¶ 14; State Farm Estimate, Ex. 14. Plaintiff admits State Farm estimated to repair parts of his house damaged by the busted pipe; he just alleges State Farm should have paid to replace more of it. Pet., ¶ 14. Claims submitted by Plaintiff were "taken care of"; he submitted five claims during the life of the Policy but only sued on one. And, as established above, Plaintiff had more than sufficient coverage to replace the damage alleged. *Stafford* Order at 7 ("[E]ven if [the agent's] acts constituted the representations asserted, the court concludes [plaintiff] cannot show that the representations were untrue.").

33.    The fraud-based claims against Mr. Wright are further non-cognizable because they are premised upon opinions and alleged promises by Mr. Wright of future performance, and by another entity—State Farm. As to allegations Mr. Wright told Plaintiff all "he needed to do was file a claim to be taken care of" (Pet., ¶ 6) and failed to disclose

23

State Farm's claim handling "tactics"—Mr. Wright is not a claims adjuster and has no obligation to guess at future claims by Plaintiff and inform him of what State Farm might do with that future claim. *See Goebel*, 2023 WL 11883977 at *4 ("Plaintiffs' arguments essentially contend that an agent has a duty to anticipate, and advise the insured as to, anything that might conceivably limit the payment of a future claim. Such a contention goes beyond any duty contemplated by Oklahoma law."). Thus, Mr. Wright cannot be liable for not having spoken about a claim that had not occurred, might never occur and might be decided in Plaintiff's favor if it did. Plaintiff's theory is squarely negated by the law that "for a false representation to be the basis of fraud, such representation must be relative to existing facts or those which previously existed, and not as to promises as to future acts." *Citation Co. Realtors v. Lyon*, 610 P.2d 788, 790 (Okla. 1980); *Briggs v. State Farm*, No. 3:14CV16-DPJ-FKB, 2014 WL 1355627, at *3-4 (S.D. Miss. Apr. 7, 2014) (no basis for claim against agent where complaint accused him of promising insurer "would fairly and accurately assess any damage and adjust any claim the Plaintiffs might have … and pay to [] Plaintiffs the cost to repair or replace the Plaintiffs' home"). Further, any representations about past claim handling decisions would be conveying an adjuster's **opinion**. *Cupit v. Dancu Chemical Co.*, 316 P.2d 593, 596 (Okla. 1957) (insurer claim decision is an opinion and not "misrepresentation or concealment of facts"). "Fraud may not be predicated on a mere expression of opinion." *Eckert v. Flair Agency, Inc.*, 909 P.2d 1201, 1204 (Okla. Civ. App. 1995).

34.    To establish a claim for fraudulent concealment, Plaintiff must also set forth facts to show Wright concealed or failed to disclose a past or present fact **with the intent**

24

*of creating a false impression* of the actual facts in the mind of Plaintiff and that Wright concealed or failed to disclose a past or present *fact with the intention that it should be acted upon* by Plaintiff. *Hubbard*, 474 P.2d at 410. The Petition pleads nothing of the sort.

35.    The fraud claims are also barred by the two-year statute of limitations. 12 O.S. § 95(A)(3); *Last Chance Mins., Inc. v. BP Am. Prod. Co.*, 2023 OK CIV APP 44, ¶ 36, 539 P.3d 712, 720. "A fraud-based claim accrues when a person discovers the fraud," and "[f]raud is deemed to have been discovered when, in the exercise of reasonable diligence, it could have or should have been discovered." *Last Chance*, 2023 OK CIV APP 44, ¶ 36, 539 P.3d at 720. At the very latest, Plaintiff would have learned of the alleged misrepresentations about which he complains when his public adjuster advised of the damage and "demanded State Farm cease and desist from unlawful and/or unfair claims settlement practices" in 2023. March 7, 2023 Ian Enterprises Ltr., Ex. 18; Feb. 5, 2024 Ian Enterprises Ltr., Ex. 19. Yet, Plaintiff did not file the lawsuit until more than two years later on January 29, 2026.

**The Petition Reflects Fraud in the Pleading of Jurisdictional Facts**

36.    As the chart attached as Exhibit 20 reflects, this is one of numerous cases filed by Plaintiff's attorneys, alleging insurance agents (Oklahoma residents) from several insurers (not Oklahoma residents) made the same omissions and implied misrepresentations and committed substantially similar underwriting failures, each of whom are then sued when the insurer denies or partially denies an insurance claim. The allegations are factually implausible and legally wrong. Judge Joe Heaton expressly recognized that fraud in substantively identical pleadings and dismissed fraudulently joined

25

agents. His opinions have been cited with approval by Judge DeGiusti. *Rain Drop,* 2025 WL 582562 at *3. The same outcome is warranted here.

37.    If the lack of good-faith basis for the 100+ lawsuits counsel for Plaintiff herein have filed against insurance agents on alleged roof underwriting and inspection obligations that do not exist were not apparent from those facts alone, the current lawsuit drives home the point. This is a case about a burst water pipe—behind walls and so not visible. And yet, Plaintiff's counsel again sue the agent and allege he is liable because he did not inspect the house before the policy was issued, discover whatever was wrong with the pipe, and tell State Farm not to issue the policy. The bad faith in this allegation is palpable. There is no way an inspection at policy issuance in 2009 (or even the equally absurd requirement of an annual inspection) would have revealed issues with the pipe unless the agent knocked out the wall, and no way the failure to know about it impacted State Farm's issuance or renewal of the Policy. Nor did the alleged failure to inspect have anything to do with the subsequent claim decision which was not based on the condition of the pipe but instead simply disagreement about the scope of the resulting damage. At some point, Plaintiff's counsel need to be held accountable to these agents who have nothing to do with any of what is alleged.

38.    The mistakes in this new form petition, showing an absence of good faith in the filings, are now also piling up. For example, in *Methvin v. State Farm*, *Moore v. State Farm*, *Stone v. State Farm*, and *Dressel v. State Farm*, Plaintiff's counsel have pled fraudulent conduct by agents that cannot have occurred because the agent was not involved when the policy issued (Nickey Lee in *Methvin v. State Farm*, Jim Moore in *Moore v. State*

26

*Farm*, and Steve Swann in *Dressel v. State Farm*) or when it issued or renewed (the Rebecca LaFevers State Farm Agency, Inc. in *Stone v. State Farm*). *See* Notice of Removal, ¶ 9, *Methvin v. State Farm*, No. CIV-25-345-PRW (W.D. Okla. March 24, 2025), ECF No. 1; Notice of Removal, ¶ 9, *Moore v. State Farm*, No. CIV-25-181-G (W.D. Okla. Feb. 11, 2025), ECF No. 1; Notice of Removal, ¶¶ 10-11, *Stone v. State Farm*, No. CIV-25-07-D (W.D. Okla. Jan. 3, 2025), ECF No. 1; Notice of Removal, ¶ 9, *Dressel v. State Farm*, No. CIV-25-860-HE (W.D. Okla. Aug. 4, 2025), ECF No. 1. And they have now twice sued the wrong agent entirely, accusing that agent of fraud with no good-faith basis to do so. *See* Pls.' Mot. for Leave to File First Am. Compl., *Warren v. State Farm*, No. CIV-25-85-JD (W.D. Okla. April 4, 2025), ECF No. 26 (admitting the agent sued was "not the subject of Plaintiffs' claims" and seeking to amend complaint to remove agent as a defendant and name a different agent as a defendant);[3] Pl.'s Mot. for Leave to File First Am. Compl., *Hope v. State Farm*, No. CIV-25-323-D (W.D. Okla. Apr. 3, 2025), ECF No. 17 (admitting "Plaintiff mistakenly named and served State Farm's agent Ryan Williams" and seeking leave to file amended complaint to remove Mr. Williams as a defendant and name a different agent in place of Williams as a defendant).

39.     The fraudulent nature of the current Petition is clear from the limited record, which disproves:

- Plaintiff's allegation that no inspection occurred (State Farm's Underwriting Department ordered an inspection in 2015, which was performed by a professional house inspector, not Mr. Wright)

---

[3] Judge Dishman granted the Warrens leave to amend their complaint to substitute the correct agent and then denied their motion to remand, dismissing the claims against the agent. *See* Order, *Warren*, No. CIV-25-85-JD (W.D. Okla. Apr. 7, 2026), ECF No. 40.

- Plaintiff's allegation Mr. Wright failed to procure a replacement cost value policy that covered water damage (the Policy itself proves otherwise and State Farm estimated to repair water damage to the house)

- Plaintiff's allegation that State Farm denied his claim due to "pre-existing issues" Mr. Wright should have identified during an inspection (State Farm did not deny the claim, it paid for water damage, and the Agent has no duty to inspect)

40.    Consent to removal is only required from "defendants who have been properly joined and served." 28 U.S.C. § 1446(b)(2)(a). Thus, consent by Mr. Wright is not required.[4] However, to the extent consent is required, Mr. Wright consents to removal.

41.    Plaintiff claims "[t]he amount sought as damages is greater than $250,000." Pet. at 16. Therefore, the amount in controversy requirement imposed by 28 U.S.C. § 1332 is met.

42.    Because the properly joined parties are diverse and the amount in controversy exceeds $75,000, this is the kind of action of which the United States District Courts have original jurisdiction because of diversity of citizenship and sufficiency of amount in controversy.

43.    The Oklahoma Insurance Commissioner sent State Farm a copy of the Summons and Petition on March 10, 2026. *See* Torres Letter, Ex. 21. This Notice of Removal is, therefore, timely under the provisions of 28 U.S.C. § 1446(b).

---

[4] Indeed, as an improperly joined party, Mr. Wright is not subject to this Court's jurisdiction and Plaintiff's claims against him must be dismissed. *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004); *Hicks v. FG Mins. LLC*, No. CIV-19-203-TDD, 2020 WL 2104928, at *6 (E.D. Okla. May 1, 2020); *Jonnada v. Liberty Ins. Corp.*, No. CIV-19-456-D, 2019 WL 6119233, at *5 (W.D. Okla. Nov. 18, 2019).

44.    A copy of the docket sheet and copies of all process, pleadings and orders served upon State Farm in the aforementioned state action are attached hereto, marked as Exhibits 1-11, and made a part hereof.

Respectfully submitted,

*/s/Timila S. Rother*

TIMILA S. ROTHER, OBA #14310
PAIGE A. MASTERS, OBA #31142
AMANDA M. FINCH, OBA #34650
CROWE DUNLEVY
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
timila.rother@crowedunlevy.com
paige.masters@crowedunlevy.com
amanda.finch@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY**

29

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2026, I electronically transmitted the foregoing document to the Court Clerk using the ECF system of filing, which will transmit a Notice of Electronic Filing to the following ECF registrants:

**Reggie N. Whitten**          rwhitten@whittenburragelaw.com

**Michael Burrage**          mburrage@whittenburragelaw.com

**Blake Sonne**          bsonne@whittenburragelaw.com

**Hannah Whitten**          hwhitten@whittenburragelaw.com

**John S. Sanders**          jsanders@whittenburragelaw.com

**Jake Denne**          jdenne@whittenburragelaw.com

/s/*Timila S. Rother*

Timila S. Rother

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

6226764