# Exhibit 2

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

| | |
|---|---|
| **BRADLEY COX**, | **FILED** |
| | DISTRICT COURT |
| *Plaintiff,* | OKLAHOMA COUNTY, OKLAHOMA |
| | January 29, 2026 11:12 AM |
| **v.** | RICK WARREN, COURT CLERK |
| | Case Number CJ-2026-790 |
| **STATE FARM FIRE AND** | **CASE NO. _____** |
| **CASUALTY COMPANY, AND JEREL** | |
| **WRIGHT.** | |
| | |
| *Defendants.* | |

## PETITION

**COMES NOW** Plaintiff, Bradley Cox, and for his cause of action against Defendant, State Farm Fire and Casualty Company ("State Farm") and Defendant Jerel Wright ("Agent" or "Wright"), alleges and states:

### PARTIES

1. At all times material hereto, Plaintiff insured his home under a policy of insurance with State Farm, policy number 36-BD-E747-9 (the "Policy"). Plaintiff is a citizen and resident of Oklahoma County, Oklahoma.

2. Defendant State Farm is a foreign insurer that is licensed and does business in the state of Oklahoma as a property and casualty insurer. State Farm may be found and served via its statutory service agent the Oklahoma Insurance Department in Oklahoma County, Oklahoma.

3. Defendant Jerel Wright ("Agent") owns and operates a captive State Farm agency in Oklahoma County, Oklahoma. Agent was at all relevant times an agent and/or ostensible

1

EXHIBIT
2

agent of Defendant State Farm. Agent may be served at Agent's place of business at 5761 NW 132nd St, Oklahoma City, OK 73142.

4. Venue is proper pursuant to 12 O.S. § 134 and 137.

## FACTUAL BACKGROUND

5. Plaintiff moved into the home, located at 4636 NW 160th Terrace, Edmond 73013 (the "Home") in 2009.

6. In seeking insurance for his home in 2009, Plaintiff asked Agent Wright for 100% replacement cost coverage to protect the Home. In response, Agent Wright promised Plaintiff that he was procuring replacement cost coverage, the coverage was full and complete coverage for the Home, and that all Plaintiff needed to do was file a claim to be taken care of.

7. Furthermore, Agent Wright never inspected Plaintiff's Home to determine if it met State Farm's underwriting guidelines, which State Farm requires:

> ***The agent is our front line underwriter.*** In addition to assisting the agent with gathering information for use of the Xactware tool, the personal inspection is also the agent's opportunity to obtain photographs required elsewhere in this guide to ensure the property is properly maintained and meets all property and liability insurance underwriting requirements. ….[1]

---

[1] Excerpts from Underwriting Guidance – Homeowners – Underwriting Basics at 1-2 (located in the public record as Exhibit 10 to the Plaintiffs' Motion to Remand in *Vance v. State Farm*, 24-CIV-449-SLP, ECF No. 7-10 (W.D. Okla. May 29, 2024) (emphasis added)); *see also* Inspection Process at 1-2 ("Before binding new Fire business, an inspection of the property is necessary. The inspection serves two purposes. **Since our agents are the front line underwriters**, an inspection provides an opportunity for the agent to see the property before we provide coverage. **During the inspection, the agent should verify that the property meets our underwriting eligibility guidelines**. The inspection also provides an opportunity to obtain or verify building characteristics used for estimating the replacement cost of the property." During the "Inspection Process," it is "critical" for agents to identify risks of insuring the property. (located in the public record as Exhibit 13 to the Plaintiffs' Motion to Remand in *Vance*, 24-CIV-449-SLP, ECF No. 7-13 (W.D. Okla. May 29, 2024) (emphasis added)).

> Before binding new Fire business, an inspection of the property is necessary. The inspection serves two purposes. Since our agents are the front line underwriters, an inspection provides an opportunity for the agent to see the property before we provide coverage.
>
> …
>
> Reinspections occur sometime after the Fire business has been on the books. Over time, some risks may become ineligible or there may be a change to the property due to remodeling and/or additions.[2]

8. On or about January 17, 2023, Plaintiff's home sustained severe and extensive damage in a covered loss due to a pipe burst, including but not limited to the floor buckling and damage to the walls and/or sheetrock.

9. State Farm intentionally engaged in a half-hearted investigation of Plaintiff's claim and engaged in bad faith tactics, leaving Plaintiff's home in a horrific state while Plaintiff's wife, Farah Cox, was dying of terminal kidney cancer.

10. Due to State Farm's egregious bad faith and breach of contract, Plaintiff and his wife lived in a home torn up for over a year. On the ground, there were holes in the floor everywhere and the water stayed off. To make do, Plaintiff and his wife ran a garden hose from the hot water heater.

11. At times, Plaintiff and his wife were forced to use the hose to clean his wife's blood from her and their bathroom.

12. Plaintiff's last year with his wife was spent fighting State Farm on the damages State Farm owed them. Defendants' wrongful conduct caused both Plaintiff and his wife immense emotional suffering. Plaintiff's wife was dying before seeing their home fixed.

13. Instead of restoring the Insured Property to its pre-loss condition in accordance with the Policy and Defendants' representations and/or omissions, State Farm knowingly and

---

[2] Excerpts from Inspection Process – Use this job aid to inspect property before binding coverage at 1-3 (located in the public record as Document 7-13 in 5:24-cv-00449-SLP).

3

intentionally withheld Plaintiff's full replacement cost benefits owed under the Policy and purposefully low-balled and denied the claim.

14. State Farm woefully underpaid the claim and left Plaintiff and his dying wife in an unlivable home for many months. To date, State Farm's low-ball payments come nowhere near the actual cost of repairs needed to restore the Home in accordance with the full replacement cost coverage purportedly sold by Agent Wright.

15. At all times, State Farm was unwilling to consider the full extent of damage to the Home from a covered loss.

16. Defendants intentionally abandoned their "good neighbor" promises to Plaintiff as a first party insured and instead carried out the pre-determined objective of underpaying and denying the claim in accordance with State Farm's Water Loss Initiative.

17. Defendants' egregious conduct left Plaintiff feeling hopeless in a time of extreme need and severe anxiety and emotional distress. Plaintiff thought he had purchased peace of mind with the Policy, but Defendants' conduct herein proved otherwise.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT
*Against Defendant State Farm*

18. All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

19. State Farm breached the subject insurance policy by wrongfully denying coverage and failing and refusing to pay the proper amounts due under the policy for the covered damage to the Plaintiff's home.

4

20. State Farm owed Plaintiff a legal and/or equitable duty to disclose all material facts that may arise out of their relationship as insurer and insured. *Croslin v. Enerlex, Inc.*, 2013 OK 34, ¶17, 308 P.3d 1041.

21. Plaintiff timely filed a claim after Plaintiff's home sustained damage in a covered loss due to a pipe burst on or about January 17, 2023.

22. Unbeknownst to Plaintiff, State Farm implements arbitrary claim handling standards missing from the Policy on water losses via its Water Initiative as outlined herein.

23. Despite Plaintiff faithfully paying premiums, State Farm breached its contract of insurance with Plaintiff by:

    a.  failing to properly and thoroughly investigate Plaintiff's covered loss;

    b.  implementing arbitrary claim handling practices in bad faith to prevent contractual benefits owed being paid to Plaintiff; and

    c.  failing to pay the contractual benefits owed to Plaintiff under the contract of insurance Plaintiff purchased.

24. As a result of State Farm's breach of contract and other wrongful conduct, Plaintiff incurred damages.

## COUNT II: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### *Against Defendant State Farm*

25. All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

26. In its handling of Plaintiff's claim, State Farm breached the insurance contract and the implied covenant of good faith and fair dealing, as a matter of standard business practice, in the following respects:

5

a. failing and refusing payment and other policy benefits for the covered damage to Plaintiff's home at a time when Defendant knew that Plaintiff was entitled to those benefits;

b. failing to properly investigate Plaintiff's claim in a full, fair, thorough, and timely manner;

c. failing to obtain additional information both in connection with the original refusal and following the receipt of additional information after reinspection of the home at request of Plaintiff's representatives;

d. refusing to honor Plaintiff's claim in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e. refusing to honor Plaintiff's claim in some instances by applying restrictions not contained in the policy;

f. refusing to honor Plaintiff's claim in some instances by knowingly misconstruing and misapplying provisions of the policy;

g. failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claim;

h. refusing in bad faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim once liability had become reasonably clear;

i. forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits State Farm knew were payable;

j. failing to properly evaluate any investigation that was performed;

6

k.  failing and refusing to properly investigate and consider the insurance coverage Defendant agent promised to Plaintiff;

l.  forcing Plaintiff to hire an attorney to obtain proper payment of property claims;

m.  implementing arbitrary claim handling practices in bad faith to prevent contractual benefits owed being paid to Plaintiff;

n.  delaying payment of certain benefits; and

o.  refusing to consider the reasonable expectations of Plaintiff and beneficiaries;

all in violation of the covenant of good faith and fair dealing and resulting in significant financial benefit to Defendant.

27. State Farm acted unreasonably and in bad faith in delaying, denying and underpaying Plaintiff's claims.

28. State Farm instituted a Water Initiative or Water Forum which employed various tactics to reduce its claims expenses and indemnity on water losses, including but not limited to the following:

   i.  State Farm dramatically reduced the authority of adjusters handling water losses to ensure additional scrutiny of larger losses by senior adjusters and managers;

   ii.  State Farm held Water Initiative seminars to reinforce its coverage positions and to encourage aggressive application of policy exclusions relating to water losses;

   iii.  State Farm trains its adjuster and managers to aggressively apply policy exclusions that apply to water losses;

7

iv. State Farm discourages its adjusters and managers from hiring competent licensed building professionals to investigate water losses to determine the true cause of loss;

v. When it hires experts, State Farm repeatedly relies on the same small group of experts and vendors who can be relied upon to provide State Farm cover for its improper and unjustified claim denials;

vi. State Farm knowingly, deliberately, and routinely denies covered water losses without justification based on improper and inapplicable interpretation of exclusions in its property policies; and

vii. State Farm is engaged in an intentional, institutional, and unlawful pattern and practice of failing to competently investigate water losses, and unreasonably and maliciously denying water loss claims it knows to be covered.

29. Other courts have ordered discovery produced from State Farm on its bad faith water claims practices, which State Farm refers to as its "Water Loss Initiative." *See* **Exhibit 1** attached hereto, *Wise v. State Farm*, CIV-2023-163-HSG, ECF No. 45 Plaintiffs' Amended Discovery Letter at 1-5, 60-61 (N.D. Cal. Dec. 27, 2023). The documents which State Farm identified includes State Farm's "Water Forum PowerPoint," "Water Forum Coverage Mini Session" and "'Water Initiative' PowerPoint(s) or other presentation materials."

30. State Farm's Water Scheme demonstrates an enterprise-wide "pattern" theory of bad-faith conduct, liability for which is cognizable under Oklahoma law. *See* 12 Okla. Stat. § 2406; *Vining v. Enter. Fin. Group*, 148 F.3d 1206, 1218 (10th Cir. 1998) (where Plaintiffs sought to prove insured's pattern and practice of bad faith conduct, evidence regarding other

insureds was relevant to show defendant "acted in this case under Federal Rule of Evidence 406 (habit)"); *see also Metzger v. Am. Fid. Assur. Co.*, 2007 WL 4342082, at *1 (W.D. Okla. Dec. 7, 2007); *Markham v. National States Ins. Co.*, 122 Fed. Appx. 392 (10th Cir. 2004) (evidence of nation-wide rescission practice supported bad faith); *Barnes v. Okla. Farm Bur. Mut. Ins. Co.*, 2000 OK 55, 11 P.3d 162, 170 (*"insurer's unreasonable treatment of Barnes was not an isolated incident, but the same or similar tactic was used by insurer repeatedly with other insureds"*; awarding actual and punitive damages); *Copeland v. Tela Corp.*, 2003 OK CIV APP 98, ¶ 3, 79 P.3d 1128 (confirming no abuse of discretion in allowing evidence of habit evidence under 12 O.S. § 2406 to show pattern and practice conduct.); *Jones v. Farmers Ins. Co., Inc.*, 2012 WL 12863976 (W.D. Okla) (court holds that similar claims are relevant to Plaintiffs' contract claim and the claim of bad faith in that they may show a pattern and practice).

31. State Farm acted in bad faith by implementing the Water Loss Initiative and denying Plaintiff's claim in accordance with such Initiative. As such, Plaintiff's resultant claim denial that State Farm's Water Loss Initiative successfully achieved was entirely pre-determined in bad faith.

32. State Farm recklessly disregarded and/or intentionally and with malice breached its duty to deal fairly and act in good faith entitling Plaintiff to recover punitive damages.

33. State Farm enjoyed increased financial benefits and ill-gotten gains as a direct result of the wrongful conduct described above herein, which resulted in the injury to Plaintiff.

34. As a result of State Farm's conduct, Plaintiff sustained damages, including deprivation of monies rightfully belonging to Plaintiff, and ordinary or garden variety harm of anger, stress, worry, physical and emotional suffering.

## COUNT III: NEGLIGENT PROCUREMENT OF INSURANCE
### *Against Agent*

35. All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

36. At all material times hereto, Agent acted as State Farm's agent and/or employee. State Farm is thereby vicariously liable for the Agent's conduct.

37. In procuring the Policy, Agent had a duty to:

    a. use reasonable care, skill, and diligence to procure full replacement cost coverage as Plaintiff requested that meets Plaintiff's stated needs;

    a. use reasonable care, skill, and diligence in undertaking the calculation of replacement cost value for Plaintiff;

    b. speak accurately and truthfully by informing Plaintiff of all full replacement cost coverages, advising Plaintiff of the benefits, risks, limitations and exclusions thereof, and perform a reasonable inspection of the Insured Property prior to procuring the full replacement cost coverage and thereafter upon renewal to ensure no changes to the Policy were necessary or required; and

    c. Disclose all material facts with respect to the Water Loss Initiative as outlined within this Petition.

38. Agent breached Agent's duty owed to Plaintiff by:

    a. Knowingly and purposefully procuring and renewing

        i. illegitimate full replacement cost coverage (in that all fortuitous losses are not covered under the Policy);

        ii. a policy which deviated substantially and materially from the full replacement cost coverage Plaintiff requested;

10

    iii.    a Policy that did not accurately reflect the replacement cost of the Insured Property (*i.e.*, an amount that was 100% insurance to value as represented);

    iv.    a Policy that, as written, did not provide full replacement cost coverage to fully restore the Insured Property back to its pre-loss condition;

b.  Failing to

    i.    follow and abide by State Farm's underwriting policies/guidelines;

    ii.    perform all necessary inspections of the Insured Property;

    iii.    confirm the accuracy of the pre-filled information provided by State Farm's replacement cost estimating tool;

    iv.    disclose pre-existing damage to the Insured Property;

    v.    verify whether its inherent representation to State Farm and Plaintiff that the Insured Property was in good condition was accurate;

    vi.    procure and renew a policy that provided the requested full replacement cost coverage for all fortuitous losses; and

    vii.    disclose all material facts of the Water Loss Initiative and arbitrary claim handling tactics as outlined within this Petition.

39. Plaintiff relied on Agent's representations and omissions to his substantial detriment.

40. As a result of Agent's conduct, Plaintiff sustained damages, including deprivation of monies rightfully belonging to Plaintiff, and ordinary or garden variety harm of anger, stress, worry, physical and emotional suffering.

41. Agent's conduct was intentional, willful, malicious and in reckless disregard of the rights of others and is sufficiently egregious in nature so as to warrant the imposition of punitive

damages. Agent acted intentionally, and with malice and, breached duties owed to Plaintiff. Agent's actions were consistent with Defendants' overall collective corporate goal of increasing profits through the systematic underpayment and denial of claims.

## COUNT IV: CONSTRUCTIVE FRAUD AND NEGLIGENT MISREPRESENTATION
### *Against All Defendants*

42. All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

43. Defendants owed Plaintiff a legal and/or equitable duty to disclose all material facts that may arise out of their relationship as insurer and insured. *Croslin v. Enerlex, Inc.*, 2013 OK 34, ¶17, 308 P.3d 1041.

44. The concealment of a material fact which substantially affects another person constitutes fraud. *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, ¶ 34; *Sutton v. David Stanley Chevrolet*, 2020 OK 87, 475 P.3d 847. Fraudulent representations may consist of half-truths calculated to deceive, and a representation literally true is actionable if used to create an impression substantially false. *Sutton*, 475 P.3d at 15. Where the peculiar circumstances give rise to a duty on the part of one of the parties to a contract **to disclose material facts and the party remains silent to his or her benefit and to the other party's detriment**, the failure to speak constitutes fraud. *Id.* (citing *Croslin*, ¶17) (emphasis added).

45. "[A] variety of facts and circumstances [] will give rise to a duty to disclose material facts." The *Sutton* Court reiterated that it has "consistently found the existence of the requisite circumstances, *i.e.*, that which is necessary to create a duty to disclose, when the offending party created a false impression concerning material facts that was relied upon by the other party to his detriment and to the benefit of the offending party." *Id.* at 15.

46. A negligent or innocent misrepresentation or concealment for constructive fraud occurs when one who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. Negligent misrepresentation can also be based on a material omission. *See Lopez v. Rollins*, 2013 OK CIV APP 43, 303 P.3d 911; *Sutton v. David Stanley Chevrolet*, 2020 OK 87; *Stroud v. Arthur Andersen & Co.*, 2001 OK 76, 37 P.3d 783; *Ragland v. Shattuck Nat'l Bank*, 36 F.3d 983, 992 (10th Cir. 1994) (applying Oklahoma law).

47. Defendants owed specific duties to Plaintiff. These duties are encompassed in State Farm's duty of good faith and fair dealing owed to its insureds, as well as specific duties Agent owed Plaintiff—a duty to exercise reasonable diligence and skill in obtaining and accurately notifying of the nature and character of the insurance procured, the duty in undertaking the calculation of replacement cost for the insured to use reasonable care, skill, and diligence to do so, the duty to speak accurately and truthfully, and the duty to disclose all material facts relating to the Water Loss Initiative and arbitrary claim handling tactics as outlined within this Petition.

48. Defendants breached this duty by misrepresenting, concealing, or omitting pertinent material facts from Plaintiff, including (but not limited to) the following:

   a. Defendants misrepresented the Insured Property met all underwriting requirements, that all property inspections had occurred, and that the replacement cost values it calculated were accurate and commensurate with

reconstruction costs such that the full replacement cost coverage would fully restore, replace and/or repair the Insured Property in the event of a loss by a covered event.

b.  Defendants misrepresented that the Insured Property was eligible for the comprehensive full replacement cost coverage (rather than ACV).

c.  Defendants failed to disclose that pre-existing issues with the Insured Property would either prevent issuance of or limit the full replacement cost coverage for any damage during the Policy period.

d.  Agent misrepresented the procurement of the comprehensive full replacement cost coverage Plaintiff requested.

e.  Agent misrepresented that all Plaintiff needed to do was file a claim and he would be taken care of.

f.  Defendants misrepresented that the Policy covered all fortuitous losses, big or small, and that Plaintiff was fully covered at full replacement cost coverage under the Policy.

g.  Defendants failed to disclose all material information to Plaintiff about State Farm's bad faith claims handling tactics arising from the Water Loss Initiative, its reliance on undisclosed definitions and standards outside of the Policy, and other material information any insured, including Plaintiff, would deem reasonable in making a purchasing decision.

49. Nevertheless, Agent procured, bound, sold, and, together with State Farm, renewed, illusory full replacement cost coverage to Plaintiff knowing such representations were untrue.

14

50. As a result of both State Farm and Agent's breach of duty, each gained an advantage by misleading Plaintiff to substantial detriment and prejudice. These breaches of duty induced Plaintiff to accept, purchase, and renew the State Farm replacement cost policy which did not actually afford full replacement cost coverage.

51. State Farm and Agent's misrepresentations constitute constructive fraud.

52. At all relevant times, Agent was State Farm's employee and/or agent.

53. As a result of the Defendants' constructive fraud and negligent misrepresentations, Plaintiff sustained damages, including deprivation of monies rightfully belonging to Plaintiff, and ordinary or garden variety harm of anger, stress, worry, physical and emotional suffering.

54. Defendants' conduct was intentional, willful, malicious, and in reckless disregard of the rights of others, and/or was grossly negligent, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

## COUNT V: FRAUDULENT CONCEALMENT

55. All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

56. At all relevant times, Defendants concealed material facts about State Farm's Water Loss Initiative from Plaintiff. This concealment protected and perpetuated the Water Loss Initiative, such that Plaintiff had no way of ascertaining these tactics or the accrual of any cause of action against Defendants.

57. The Water Loss Initiative is an artifice, which State Farm designed to be hidden from its insureds' discovery. To wit, the inherent nature of State Farm's "good neighbor" promises—the duty of good faith and fair dealing State Farm owes its insureds—makes the artifice appear reliable. Insureds of ordinary prudence have no means of discovering the Water Loss Initiative or their right to pursue recovery under the law.

58. Defendants' fraudulent concealment tolls the running of any applicable statute of limitations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants State Farm Fire and Casualty Company and Jerel Wright both for compensatory damages and punitive damages, with interest and costs of this action, for a reasonable attorney fee and for such other relief as may be appropriate. The amount sought as damages is greater than $250,000.

Respectfully submitted,

*Reggie Whitten*

Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
Blake Sonne, OBA No. 20341
Hannah Whitten, OBA No. 35261
John S. Sanders, OBA No. 34990
Jake Denne, OBA No. 35097

**WHITTEN BURRAGE**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Office:          405.516.7800
Facsimile:     405.516.7859
rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
bsonne@whittenburragelaw.com
hwhitten@whittenburragelaw.com
jsanders@whittenburragelaw.com
jdenne@whittenburragelaw.com

*ATTORNEYS FOR PLAINTIFF*

*ATTORNEYS' LIEN CLAIMED*
*JURY TRIAL DEMANDED*

16



1939 Harrison Street, Suite 900
Oakland, California 94612
t 510.379.5801 | f 510.228.0350

December 27, 2023

Honorable Alex G. Tse
United States Magistrate Judge
Oakland Courthouse, Courtroom A – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

> **Re:** ***Wise et al. v. State Farm General Ins. Co.***
> United States District Court Case No. 23-cv-00163-HSG-AGT

Dear Judge Tse:

The Parties submit the following joint letter regarding a discovery dispute.

### Plaintiffs' Position

In January 2022, the Wise family suffered damage to the first floor of their home when a plumbing fixture below their kitchen sink failed, flooding the home. State Farm never inspected the house, or hired a plumber, contractor, engineer, or construction forensic expert to investigate. Instead, State Farm assigned a fraud investigator who had never investigated a water loss to conduct its coverage inquiry. After its brief investigation State Farm denied the loss, asserting it was excluded under the policy.

The Wise loss was denied based on two exclusions in the policy relating to (a) seepage and leakage of water over a period of time and (b) wear and tear of the plumbing fixture. That in mind, in September 2023, Plaintiff served requests for production which sought guidelines and training materials relating to the investigate and adjusting of water losses specifically aimed at understanding how State Farm investigates and decides coverage.[1]

Such documents are indisputably relevant and discoverable in an insurance bad faith case, without regard for whether the personnel at issue in any given claim reviewed or relied on the materials during the Wise claim.[2] Plaintiffs also sought training transcripts for the relevant claims handlers and supervisors.[3] On October 30, 2023, State Farm responded with boilerplate objections, but promised to produce "the relevant

---

[1] **Exhibit A** (requests 20-24); State Farm's responses are **Exhibit B.**

[2] *Miranda v. First Reliance Standard Life Ins. Co.*, 2011 WL 2441762, at *4 (N.D.Cal.,2011); *Zewdu v. Citigroup Long Term Disability Plan*, 264 F.R.D. 622, 628 (N.D. Cal., 2010); *McCurdy v. Metropolitan Life Ins. Co.,* 2007 WL 915177, *4 (E.D. Cal. March 23, 2007); *Glenfed Development Corp. v. Superior Court*, 53 Cal.App.4th 1113, 1118 (1997).

[3] Exhibit A, Requests 28-35.

1

**EXHIBIT**

**1**

sections of the Operation Guides along with the Standard Claim Processes applicable and in effect on the date of loss."[4] State Farm gave Plaintiffs no reason to conclude that the documents described in the State Farm responses were not the sum of documents responsive to the requests.

State Farm waited until November 27, 2023, twenty-eight days, to produce portions of its Operation Guides, along with the training transcripts. The transcript for Mackey Campbell, the claim manager responsible for the denial, included a reference to a course called "Water Skill Review." State Farm did not produce any documents relating to the course itself.

We immediately sought production of documents relating to the "Skill Review" course. Over the next several weeks, through November and December, in multiple emails, we reminded State Farm of the request. State Farm's counsel never objected or argued that the "Skill Review" documents are not discoverable; rather, it sat on its hands.

Finally, with the key Rule 30(b)(6) depositions set for the last two days of the discovery period (December 28 and 29), **on December 21, 2023**, State Farm produced a 10-page *Water Loss Skills Review*, a test given to participants in the Water Skill Review course. The next day, **Friday December 22, 2023**, in the late afternoon before the Christmas break, State Farm produced the study guide upon which the test relies, with the heading "Water Loss Skill Review Answer Key and Resources" (Answer Key).

The Answer Key contains myriad references to **other "resources"** available to claims staff to assist them to investigate and estimate water losses, analyze coverage, and apply the exclusions at issue, *i.e.,* precisely the training/guidelines Plaintiffs had sought months earlier. A list of the withheld materials is attached as **Exhibit C, Documents 1-30.**

Relatedly, but entirely distinct from the categories of documents described in the prior paragraph, in December we discovered that in very recent depositions in other suits, State Farm employees described the existence of what is known at State Farm as the "Water Loss Initiative." In one case, the carrier described the initiative as an "effort[] in California beginning in or around 2017 to help ensure consistency in the handling of water claims in California. Claims handling personnel were provided *training that focused on reinforcing existing principles relating to proper investigation and documentation of water loss claims.* Topics included the quality first contact, gathering the facts of loss, plumbing issues, additional investigation, determining coverage, estimates, and damage evaluation. In 2020, the settlement authority of claims handlers on water loss claims was temporarily reduced. During that period, team managers reviewed claims specialists' water loss claims for conformance with quality claim handling expectations."[5] In that case, State Farm also described a large number of

---

[4] Exhibit B, Responses to Requests 20-24.
[5] *Jacobs v. State Farm General Insurance Company,* Case No. 22STCV23445, Los Angeles Superior Court (responses to interrogatories).

documents relating to the Water Initiative and related training. A list of those documents, also withheld in this lawsuit, is attached as **Exhibit C, Documents 31-40.**

Although Plaintiffs' document requests nos. 20-24 plainly encompass the training materials related to the "Water Initiative," State Farm has produced nothing. Its counsel and witnesses have remained silent, never mentioning the Water Loss Initiative. Plaintiffs only became aware of the names and/or categories of documents relating to State Farm's "Water Initiative" in the last week through State Farm's own description of the documents in its responses to interrogatories in the *Jacobs* matter. Those are also listed in **Exhibit C.**

As appears, State Farm has been for months engaged in discovery abuse. In response to the requests for discoverable training and guidelines, State Farm agreed to a production which left Plaintiffs to conclude the carrier had searched for and would produce responsive documents. State Farm dragged its feet for weeks and finally made its initial production, which revealed the existence of the "Water Skills" course. Plaintiffs immediately sought production of the Skills course, and followed up multiple times over many weeks, but it was not until December 21 and 22, respectively, that State Farm produced the test and Answer Key.

But far more troubling, State Farm's delay in producing those documents now seem to have been intended to conceal the existence of myriad guidelines and training materials referenced in the Answer key. To be clear, none of these seem to be related to the Water Initiative. Of course, State Farm has also withheld all of the Water Initiative-related documents it identified in the Jacobs case (Exhibit C, Documents 31-40).

As a result of this concealment, Plaintiffs have been deprived of the opportunity to review and consider the documents, question multiple witnesses about the substance of the documents that bear on the primary issue in the case or to provide the documents to their experts. Plaintiffs have been deprived of the opportunity to examine company witnesses meaningfully and fully on topics in the concealed training, guidelines and the Water Loss Initiative documents.

Given State Farm's expansive and well-known obligations as relates to discovery requests, responses, and the production of documents, Plaintiffs request that the Court impose the following orders, or in the alternative set this matter for an evidentiary hearing after providing Plaintiffs an opportunity to question company witnesses about the search for and production of documents:

- Order production within ten days of documents on Exhibit C;
- Extend the discovery deadline for 60 days to permit Plaintiffs an opportunity to:
  - reopen three relevant depositions of claims personnel: Thiago Desouza, Mackey Campbell, and Tyria Veras;
  - after Plaintiffs have reviewed the documents, allow two additional depositions, including Rule 30(b)(6) witnesses on (a) the preservation,

search for, and production of documents responsive to the requests at issue here and (b) the substance of the documents themselves; and

o litigate further disputes relating to the foregoing issues considering State Farm's delay and concealment of the Exhibit C materials.

## State Farm's Position

At a few minutes before 5 p.m. on the Friday before the Christmas Holiday, plaintiffs' counsel sent State Farm's counsel an email advising that they would be moving to reopen discovery and demanding production of an additional 42 groups of documents identified without dates or references. Counsel followed up this email with a joint discovery letter sent on Christmas Eve demanding State Farm's counsel respond by noon on Tuesday, December 26th. As requested, State Farm's counsel (who has been out of the office since Friday) has done so.

This appears to have been prompted by another State Farm litigation matter—not one this firm is handling. Nor were any specifics about the other suit provided—including when the loss occurred and what the time frame was for the handling of that claim. That is important because State Farm's homeowners policy for California was revised in 2020. Moreover, State Farm claim handling training is regularly updated.

Notably, the only time reference provided in Plaintiffs' discussion of the "water initiative" is to 2017—five years before the claim at issue here which occurred in January 2022. Moreover, the list attached as Exhibit C is not part of a discovery response. The list of 40 new categories of "documents" was compiled by Plaintiffs' counsel. The list contains no time references or explanations of why the purported documents are relevant. The scope of these documents is also extremely overbroad, including topics not connected to this claim in any way. (See #11, 17-19, 25 etc.). Many of the descriptions are also extremely vague and encompass a wide range of potentially responsive documents. (See #7, #17, 28). Most importantly, this last-minute request for additional documents deprives State Farm of the opportunity to object or even meet and confer regarding these newly requested documents.

In this matter, State Farm produced 2,736 pages of institutional documents on November 27, 2023. Those included various reference materials available to claims personnel as well as the training transcripts of the State Farm personnel involved in this claim.

From those transcripts, plaintiffs' counsel identified just three training courses for which they wanted documents. Those are the subject of Plaintiffs' Request for Production, Set Three—whose response is due on December 29th. (Attached as Exhibit D). Despite the still pending due date, State Farm has already provided the documents it located for those three courses.

Moreover, plaintiffs have had the opportunity to depose the individuals who handled this claim—including Mr. Jerrell Campbell Mackey; Mr. Thiago Glora Desouza, and Ms. Tyria Veras. Those depositions were not restricted in any way, and questions regarding handling of water claims—including training, claims approaches or other subjects were all topics that counsel did or could have covered.

Waiting until this late date to make a demand to retake depositions and for a large number of vaguely described documents without serving a request for documents is not consistent with the discovery rules. State Farm opposes plaintiffs' attempt to end-run the discovery requirements and asks that the Court decline plaintiffs' various proposed orders.[6]

Date: December 26, 2023

Kerley Schaffer LLP

_____/S/_____

Dylan Schaffer
Counsel for Plaintiffs

Date: December 27, 2023

Pacific Law Partners, LLP

_____/S/_____

Sandra E. Stone
Counsel for Defendant

---

[6] State Farm notes that Judge Tse has already made clear that he cannot extend the discovery cut-off.

EXHIBIT   C

EXHIBIT   C

**<u>EXHIBIT C</u>**

Each of the courses, videos, guidelines, and other related documents listed below are named by State Farm as resources for its claims staff in the "Answer Key" recently produced by State Farm (1-30), or were identified by State Farm in the Jacobs case, in response to interrogatories, as documents pertaining to the carrier's "Water Initiative" (30-40).

1. Water Damage Coverage Analysis (HW-2100 Series) Workday
2. Water Damage Coverage Analysis (HW-2100 Series) course in Workday
3. Water Coverage Introduction and QFC VOD
4. Water Coverage Investigation VOD
5. Introduction to Water Losses VOD
6. Water Coverage – Plumbing
7. TIPP
8. Water Loss Scenarios course in Workday
9. Fill-Up Water Loss VOD
10. Water Classes and Categories Job Aid
11. Quality First Contact Guide – Fire [Note: At State Farm, "Fire" is a reference to non-auto policies, including those like the policy at issue here which cover some water losses]
12. Water Mitigation- Xactimate Codes and Pricing VOD
13. Water Mitigation- Drying Equipment Calculations VOD
14. FAQs on Water Mitigation Summary Report Workflow
15. Fire Property Water Mitigation Training Support Guide – JA
16. Water Mitigation Estimate Review Job Aid
17. Estimating Topics - All
18. Xactimate- Changing a Component Price Job Aid
19. Reparability of Solid Wood Floor Coverings- Video on Demand
20. Water mitigation claim Handling Refresher
21. Water mitigation Job Aid
22. Water Category and Class
23. Wood Floor Damage Job Aid
24. Flooring Course in Workday
25. Masking Job Aid
26. Drywall/Paint/Insulation/Trim/Cabinets/Countertops in Workday
27. Water Claim Handling Estimatics Considerations
28. Xactimate – All Topics
29. Fire Property Water Mitigation Training Support Guide – JA
30. Residential Interior Floor Coverings course in Workday
31. "Water Initiative" Power Point(s) or other presentation materials.
32. California Fire Claims Discussion Resources
33. Claim Folder Claim Level – Claim Details – all topics
34. Quality Claim Handling Expectations – all topics
35. Plumbing System Fill-ups and Sewer Backups – Defined;
36. Homeowners Policy, Section I Property, Coverage Model;
37. California Fire Claims Discussion Agenda;
38. Q4 2021 Water Estimate Writing and Reconciliation;
39. Water Forum Coverage Mini Session;
40. Water Forum PowerPoint.