# Exhibit 10

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

BRADLEY COX,                              )
                                          )
          Plaintiff,                      )
                                          )    Case No. CJ-2026-790
v.                                        )
                                          )    JUDGE PALUMBO
STATE FARM FIRE AND CASUALTY              )
COMPANY, AND JEREL WRIGHT,                )
                                          )
          Defendants.                     )

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

MAR 3 0 2026

RICK WARREN
COURT CLERK
128

---

### DEFENDANT JEREL WRIGHT'S MOTION TO DISMISS PETITION AND BRIEF IN SUPPORT

---

TIMILA S. ROTHER, OBA #14310
PAIGE A. MASTERS, OBA #31142
**CROWE & DUNLEVY**
A Professional Corporation
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-7700
Facsimile:  (405) 239-6651
timila.rother@crowedunlevy.com
paige.masters@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT
JEREL WRIGHT**

**EXHIBIT
10**

If the lack of good-faith basis for the 100+ lawsuits counsel for Plaintiff herein have filed against insurance agents on alleged roof underwriting and inspection obligations that do not exist were not apparent from those facts alone, the current lawsuit drives home the point. This is a case about a burst water pipe—behind walls and so not visible. And yet, Plaintiff's counsel again sue the agent and allege he is liable because he did not inspect the house before the policy was issued, discover whatever was wrong with the pipe and tell State Farm not to issue the policy. The bad faith in this allegation is palpable. There is no way an inspection at policy issuance in 2009 (or even the equally absurd requirement of an annual inspection) would have revealed issues with the pipe unless the agent knocked out the wall, and no way the failure to know about it impacted State Farm's issuance or renewal of the policy. Nor did the alleged failure to inspect have anything to do with the subsequent claim decision which was not based on the condition of the pipe but instead simply disagreement about the scope of the resulting damage. At some point, Plaintiff's counsel need to be held accountable to these agents who have nothing to do with any of what is alleged.

This is a case between Plaintiff, Bradley Cox ("Plaintiff"), and Defendant, State Farm Fire and Casualty Company ("State Farm"), about whether State Farm paid all amounts owed under Plaintiff's Policy after a pipe burst in his house, causing water damage. State Farm estimated $19,952.85 replacement cost value ("RCV") to repair damage to the house, and paid Plaintiff more than $13,000 for such damage after application of Plaintiff's $6,366 deductible and recoverable depreciation. Plaintiff believes he is entitled to more under the Policy, but does not say how much, suing for damages in an amount "greater than $250,000." None of that has anything to do with Agent Jerel Wright ("Mr. Wright"); this is a claim decision over which an agent has no control.

As the attached chart shows (Ex. 1), this is one of many cases filed by this counsel, alleging Oklahoma agents from several insurers (not Oklahomans) made similar misrepresentations and

underwriting failures, each of whom are then sued when the insurer denies or partially denies an insurance claim. In the majority of cases listed on the chart, Plaintiff's counsel alleged State Farm had a scheme to deny and underpay claims of *wind/hail damage to roofs* as part of a "Wind/Hail Focus Initiative" and that the agent failed to inspect and notify the insured of the condition of the roof. They cannot assert that invented theory here because Plaintiff's claim did not involve his roof or wind/hail damage. Thus, Plaintiff's counsel has now conveniently fabricated a scheme to deny and under pay water damage claims as part of a "Water Loss Initiative." The allegations underlying both theories are factually implausible and legally wrong. U.S. District Judge Joe Heaton recognized that fraud in substantively identical pleadings relating to wind/hail claims and dismissed fraudulently joined agents.[1] The same outcome is warranted here.

However, the Court need not know this charade to decide this Motion. Mr. Wright cannot be liable for fraud or negligent procurement based upon the asserted theory that Plaintiff requested a policy to restore his property to its pre-loss condition but did not receive the requested coverage because State Farm refused to pay to repair all damages he alleges he sustained from the *busted pipe.* The dispute, apparent even from the vague and ambiguous facts pled by Plaintiff, has everything to do with State Farm's claim determination and nothing to do with the coverage procured. Plaintiff has the very policy he claims he was promised—a Policy with replacement cost value coverage ("RCV") for water damage—and nothing Wright did or did not do resulted in State

---

[1] *Goebel v. State Farm*, CIV-22-0882-HE, 2023 WL 11883985, at *2 (W.D. Okla. Jan. 26, 2023) (granting discovery prior to resolution of motion to remand noting allegations in petitions filed by Plaintiff's counsel were "identical, cookie-cutter allegations of fact in circumstances where no such identical conduct could plausibly be expected"); *Goebel*, 2023 WL 11883977, at **1-3 (W.D. Okla. Aug. 7, 2023) (denying remand finding actual fraud in the pleading of jurisdictional facts); *Marino v. State Farm*, CIV-22-0885-HE, 2023 WL 11915691, at **1-3 (W.D. Okla. Aug. 7, 2023) (same); *Baltasar v. State Farm*, CIV-22-0928-HE, 2023 WL 11883978, at **1-2 (W.D. Okla. Aug. 8, 2023) ("caution[ing] ... the filing of a pleading ... containing false and/or inaccurate statements like those discussed above is likely to result in significant sanctions." 2023 WL 11883978 at *2.

Farm's determination of the scope of damage to Plaintiff's house. In short, the policy procured is not what caused the injury alleged. Nor do the duties presumed by Plaintiff and on which his claims are premised exist. Under similar allegations *and more exacting standard*, the U.S. District Court for the Western District of Oklahoma recently found insureds, who were also represented by Plaintiff's counsel, could not possibly state a claim against their agents and the agents were fraudulently joined to defeat federal jurisdiction.[2] This case is no different. Plaintiff's Petition against Mr. Wright should be dismissed, pursuant to 12 O.S. § 2012(B)(6).

## BACKGROUND

In March 2009, Plaintiff applied for a policy to insure his *brand new* house (which thus certainly had new plumbing). After State Farm's Underwriting Department reviewed his application and determined to insure the risk, a policy issued, No. 36-Bd-E747-9, effective April 3. Pet., ¶ 1. Each year thereafter, at least 30 days before it renewed for a 12-month period, State Farm (not the agent) sent Plaintiff a renewal notice, notifying him his Policy automatically renewed, effective April 3. Coverage Notice, Ex. 2. The Notice negates Plaintiff's theories as to agent underwriting obligations. The Notice advised Plaintiff that if he needed to change coverage or increase his limits, he should contact his agent. *Id.* at 2. The Declarations also asked Plaintiff to

---

[2] *Porter v. State Farm*, CIV-25-187-R, 2025 WL 1151682 (W.D. Okla. Apr. 18, 2025); *Cisneros v. State Farm*, CIV-25-42-R, 2025 WL 1151685 (W.D. Okla. Apr. 18, 2025); *Barlow v. State Farm*, CIV-25-44-R, 2025 WL 1139489 (W.D. Okla. Apr. 17, 2025); *Gamble v. State Farm*, CIV-25-396-R, 2025 WL 1848818 (W.D. Okla. July 2, 2025); *Weichbrodt v. State Farm*, CIV-25-360-R, 2025 WL 1848819 (W.D. Okla. July 2, 2025); *Stafford v. State Farm*, 5:25-cv-00008-HE (W.D. Okla. May 27, 2025) ("*Stafford* Order"); Order, *Cline v. State Farm*, CIV-25-367-HE (W.D. Okla. Aug. 21, 2025) ("*Cline* Order"); Order, *White v. State Farm*, CIV-25-561-HE (W.D. Okla. Aug. 21, 2025) ("*White* Order"); *Stone v. State Farm*, CIV-25-7-D, 2025 WL 3090772 (W.D. Okla. Aug. 20, 2025); *Newell v. State Farm*, CIV-25-562-R, 2025 WL 2649661 (W.D. Okla. Sept. 15, 2025); *Hall v. State Farm*, CIV-25-12-JD, 2025 WL 2905205 (W.D. Okla. Oct. 13, 2025); *Wilder v. State Farm*, CIV-25-00092-JD, 2025 WL 2918045 (W.D. Okla. Oct. 14, 2025); *Wiesman v. State Farm*, CIV-25-00050-JD, 2025 WL 2918043 (W.D. Okla. Oct. 14, 2025); *Weakley v. State Farm*, CIV-25-00091-JD, 2025 WL 2971468, at *1 (W.D. Okla. Oct. 21, 2025); Order, *Dressel v. State Farm*, 5:25-cv-860-HE (W.D. Okla. Oct. 29, 2025).

help State Farm "update the data used to determine [his] premium," including by "[c]ontact[ing] [his] agent with the year each of [his] home's utilities ... and roof were last updated." *Id.* at 1.

In the years that followed, Plaintiff submitted at least five claims under his Policy, including three wind/hail claims (one in 2009, 2010, and 2013) for which State Farm made significant claim payments, including total roof replacement, and two claims for water and freezing damage (2020 and 2023), pursuant to which State Farm also made payments for benefits. In 2015, ***State Farm's Underwriting Department*** (not the agent) ordered an exterior survey of Plaintiff's house by third-party Myriad Risk Manager, which identified no issues. Myriad Rep., Ex. 3. The inspection report expressly stated that it was conducted "for the limited purpose of underwriting the risk and determining eligibility for insurance" and was "not intended as a health or safety inspection or to ensure compliance with laws that may apply to [Plaintiff's] premises." *Id.*

According to the Petition, "[o]n or about January 17, 2023, Plaintiff's home sustained ... damage ... due to a pipe burst, including ... the floor buckling and damage to the walls and/or sheetrock." Pet., ¶ 8. He submitted a claim to State Farm, which investigated the loss and estimated $19,952.85 RCV to repair the damage, including replacement of wood flooring, paneling, and dry wall. *Id.*, ¶ 14; State Farm Est., Ex. 4. After application of Plaintiff's $6,366 deductible and recoverable depreciation, $13,049.21 was paid to Plaintiff for damage to the dwelling.[3] State Farm Est., Ex. 4. Plaintiff alleges State Farm "woefully underpaid the claim" but does not set forth facts to establish any items of damage State Farm refused to pay or in what amounts. *See generally id.*

Plaintiff sues State Farm for breach of contract and bad faith and sues Mr. Wright for negligent procurement, constructive fraud/negligent misrepresentation, and concealment. His

---

[3] State Farm also paid to replace personal property and to cover additional living expenses while repairs were made, which does not appear to be at issue in this lawsuit, as Plaintiff does not make any allegations related to this coverage.

4

negligent procurement claim asserts Wright breached a duty owed to him by "procuring and renewing [] illegitimate full replacement cost coverage" that "did not provide full replacement cost coverage to fully restore the Insured Property back to is pre-loss condition" and procuring a policy that did not reflect the property's RCV. *Id.*, ¶ 38. He does not say whether the Policy's RCV was too high or low. He further suggests Wright was negligent for failing to inspect the house to verify its condition and otherwise allegedly failed to abide by unidentified underwriting guidelines. *Id.*

Plaintiff's fraud-based claims are based on the same and similar allegations. Plaintiff contends Wright represented the property was in good condition, met all underwriting guidelines, and was eligible for RCV coverage. *Id.*, ¶ 48. He also alleges Wright misrepresented that "all Plaintiff needed to do was file a claim and he would be taken care of" and failed to disclose "State Farm's bad faith claims handling tactics arising from the Water Loss Initiative." *Id.* As with the negligent procurement claim, Plaintiff alleges Wright further engaged in fraud by representing the RCV calculated would fully restore Plaintiff's property in the event of a loss and the Policy procured covered all fortuitous losses. *Id.*

It is clear from the Petition and documents referenced therein that Plaintiff's claims against the Wright Agency are barred by the two-year statute of limitations. Even if they were not, the strained allegations make plain that Plaintiff fails to state a claim against Wright. The terms of the Policy incorporated in the Petition prove Plaintiff received the coverage requested, and the only damages alleged stem from the difference in opinion between Plaintiff's public adjuster and State Farm as to the scope of damage to the house. Plaintiff had the very policy he claims he was promised and nothing Mr. Wright did or did not do resulted in State Farm's claim decision.

## ARGUMENT AND AUTHORITIES

### I.    PLAINTIFF CANNOT STATE A CLAIM FOR NEGLIGENT PROCUREMENT

Oklahoma law recognizes a claim for negligent procurement under limited circumstances. *Swickey v. Silvey Cos.*, 1999 OK CIV APP 48, ¶ 8, 979 P.2d 266, 268. "An agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance." 1999 OK CIV APP 48, ¶ 13, 979 P.2d at 269. Only if "*by the agent's fault*, insurance is not procured as promised *and the insured suffers a loss*" as a result can an agent be liable in tort for breaching this duty of care. *Id.* (emphasis added). Plaintiff fails to state a claim for negligent procurement here because (a) the policy requested was procured, (b) Wright had no duty to procure a specific amount of coverage and Plaintiff had sufficient coverage to repair the damage his public adjuster identified in any event, (c) the policy type/coverage did not cause Plaintiff's alleged injury, (d) the agent owes no underwriting duty to the insured, and (e) the claim is time-barred.

#### A. Plaintiff was issued a replacement cost policy that covered the water damage.

Plaintiff alleges when seeking insurance for his house in 2009, he "asked Wright for 100% replacement cost coverage." Pet., ¶ 6. He contends Wright did not deliver the requested policy and instead procured "illegitimate full replacement cost coverage (in that all fortuitous losses are not covered under the Policy)" that "did not ... fully restore the Insured Property back to its pre-loss condition." *Id.*, ¶ 38. Plaintiff does not set forth facts to demonstrate that any requested terms are missing from his Policy. That is because the Petition makes clear it is not the Policy or any of its terms about which Plaintiff complains; rather, Plaintiff complains of State Farm's claim decision. His failure to plead facts to show Mr. Wright did not procure "insurance ... as promised" is fatal to his claim. *Swickey*, 1999 OK CIV APP 48, ¶ 13, 979 P.2d at 269.

Indeed, there is no doubt that Plaintiff received the Policy he says he wanted—an RCV policy that covers water damage. "Replacement cost insurance provides greater coverage than an

6

actual cash value policy and 'is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property.'" *Graves v. Am. Fam. Mut. Ins. Co.*, 686 F. App'x 536, 538 (10th Cir. 2017) (citation omitted). "Under a replacement cost policy, the insured must actually repair or replace the damaged property in order to recover the full replacement cost; otherwise, the insured may recover only the actual cash value…. The reason for this requirement 'is to prevent an insured from directly profiting through the receipt of cash funds beyond the actual cash value of the loss.'" *Id.* (citation and internal quotations omitted). *See Frontline Fellowship, Inc. v. Bhd. Mut. Ins. Co.*, No. CIV-21-357-PRW, 2022 WL 16856111, at *3-4 (W.D. Okla. Nov. 10, 2022).

The Declarations to Plaintiff's Policy show that his dwelling coverage was "A1 Replacement Cost – Similar Construction." Renewal Declarations at 2, Ex. 2.[4] This section of the Policy provides that "until actual repair or replacement is completed, [State Farm] will pay only the ***actual cash value*** of the damaged part of the property, up to the applicable limit of liability shown in the ***Declarations***, not to exceed the cost to repair or replace the damaged part of the property." Policy, § 1.a.(1), p. 18, Ex. 5. "[W]hen the repair or replacement is actually completed, [State Farm] will pay the covered additional amount [Plaintiff] actually and necessarily spend[s] to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the ***Declarations***, whichever is less." Policy, § 1.a.(2), p. 18, Ex. 5.

Plaintiff vaguely suggests that Wright procured a Policy that did not cover "all fortuitous losses" (Pet., ¶ 38) but nowhere states which losses were allegedly omitted. The only loss alleged

---

[4] Citation to the Policy, Declarations, State Farm estimate, and Plaintiff's public adjuster's estimate/complaint in support of Mr. Wright's Motion to Dismiss does not convert the Motion to one for summary judgment. The Policy and claim are referenced in the Petition and are integral to Plaintiff's claims. *Tucker v. Cochran Firm-Criminal Def. Birmingham L.L.C.*, 2014 OK 112, ¶ 30, 341 P.3d 673, 685.

is a water loss, and there is no dispute that Plaintiff's Policy provided coverage for such loss. Plaintiff admits State Farm estimated to repair water damage to the walls and floors of Plaintiff's house. Pet., ¶ 14; State Farm Est., Ex. 4. He just alleges State Farm did not pay enough. Pet., ¶ 14. When faced with similar allegations, the U.S. District Court for the Western District of Oklahoma found agents were fraudulently joined to defeat federal jurisdiction, concluding the insureds could not possibly state a claim for negligent procurement because "[a]ccording to Plaintiffs' own allegations," they received the exact policy requested: "an all-risk replacement cost policy that provides coverage for any accidental direct physical loss, including wind and hail damage." *Porter*, 2025 WL 1151682 at *3; *Cisneros*, 2025 WL 1151685 at *3; *Barlow*, 2025 WL 1139489 at *3; *Gamble*, 2025 WL 1848818 at *2; *Weichbrodt*, 2025 WL 1848819 at *2; *Newell*, 2025 WL 2649661 at *2. *See also Stafford* Order at 4; *White* Order at 5; *Cline* Order at 4; *Wilder*, 2025 WL 2918045 at *4; *Hall*, 2025 WL 2905205 at *4; *Wiesman*, 2025 WL 2918043 at *4; *Weakley*, 2025 WL 2971468 at *4. The standard for fraudulent joinder "'is more exacting than that for dismissing a claim under Fed.R.Civ.P. 12(b)(6),'" the federal counterpart to § 2012(B)(6). *Barlow*, 2025 WL 1139489 at *1 (citations omitted). Under the same alleged facts, State Farm met the "high hurdle" of establishing fraudulent joinder in *Porter, Cisneros, Barlow, Gamble, Newell, Weichbrodt, Stafford, Cline, White, Dressel, Wiesman, Weakley, Wilder,* and *Hall,* and Mr. Wright no doubt meets the lower threshold under § 2012(B)(6). *Id.*

### B. Mr. Wright's alleged conduct did not injure Plaintiff.

Apparently cognizant of the fatal flaw in his theory (and used by his attorneys to bolster to their repeated claims about wind/hail damage and roof inspections instead), Plaintiff alleges the replacement coverage procured was "illegitimate" (Pet., ¶ 37(a)(i)), without any explanation of how any conduct by Mr. Wright made it so. It seems plain that "illegitimate" is another way of saying State Farm did not pay as much as Plaintiff's public adjuster demanded. That had nothing

8

to do with the Agent or the Policy. The decision was made by State Farm in the handling of Plaintiff's claim. Put simply, *if* there was any injury, it was caused by State Farm, not Wright.

As with all negligence claims, a required element of negligent procurement is ***causation***. Plaintiff must show he "suffered damages flowing from the breach of the agent's duty of care." *Castens v. Conseco Life Ins. Co.*, 11-CV-628-TCK-FHM, 2012 WL 610001, at *2 (N.D. Okla. Feb. 24, 2012). That is, "there must be 'some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.'" *West v. Chaparral Energy, LLC*, CIV-16-264-F, 2018 WL 8264627, at *4 (W.D. Okla. Aug. 13, 2018) (quoting *Steed v. Bain-Holloway*, 2015 OK CIV APP 68, ¶ 21, 356 P.3d 62, 68). It is entirely absent here.

The injury alleged by Plaintiff from the conduct of the agent and State Farm is the same— State Farm's failure to pay to replace all damage identified by Plaintiff. The cause of that alleged injury is State Farm's findings as to the scope of the loss. Pet., ¶ 14; State Farm Est., Ex. 4. That is, "Plaintiff's damages flow from State Farm's allegedly improper interpretation of his policy and adjustment of his claim, not the agent's failure to procure the correct type of policy, type of coverage, or coverage limit." *Weichbrodt*, 2025 WL 1848819 at *2. As Judge DeGiusti observed when denying a motion to remand finding that the defendant agent was fraudulently joined: "[P]urchasing a replacement cost policy 'does not mean that an insured is guaranteed that its claims will always be paid in full.' Similarly, a replacement cost policy does not guarantee that a plaintiff's claims will be paid in the exact manner that the plaintiff desires. Representing that 'comprehensive replacement cost coverage [ ] would protect the property (including the roof) without exclusion, limitation or conditions' does not affect this principal. To argue otherwise is to suggest that having a replacement cost policy entitles Plaintiff to a full replacement of the roof upon submission of virtually any claim." *Rain Drop Found., Inc. v. State Farm*, CIV-24-1101-D,

9

2025 WL 582562, at *5 (W.D. Okla. Feb. 21, 2025) (citations omitted). For this reason, too, Plaintiff's negligent procurement claim should be dismissed. *See Steinkamp v. State Farm*, CIV-22-00047-PRW, 2023 WL 11920886, at *2 (W.D. Okla. Sept. 29, 2023) ("State Farm denied the claim [for a total roof replacement] not because of the type of policy [] procured, but because it determined that [Plaintiffs'] roof did not sustain a covered loss…. In short, Plaintiff[s'] claim against State Farm depends upon what damage [their] roof sustained, not the terms of [their] policy."); *Wiesman*, 2025 WL 2918043 at *4 ("Plaintiff's damages flow from the adjuster's assessment of his property damage and State Farm's related denials, not from the type of coverage provided by the Policy."); *Wilder*, 2025 WL 2918045 at *4; *Hall*, 2025 WL 2905205 at *4.

### C. Plaintiff was responsible for choosing coverage limits.

Plaintiff's Petition contains confusing and irrelevant allegations regarding calculation of RCV. He alleges he "asked [] Wright for 100% replacement cost coverage" (Pet., ¶ 6) and contends the "Policy … did not accurately reflect the replacement cost of the Insured Property (*id.*, ¶ 38(a)(iii)). He suggests he is underinsured because the Policy "did not provide full replacement cost coverage to fully restore the Insured Property back to its pre-loss condition." *Id.*, ¶ 38(a)(iv).

Oklahoma law is clear: an agent cannot be liable for negligence for failing to procure a specific limit of coverage ***if no such limit was requested***. *Cosper v. Farmers Ins. Co.*, 2013 OK CIV APP 78, ¶ 9, 309 P.3d 147, 149 ("[W]e decline to extend *Swickey* and impose a duty … to provide an 'adequate amount' of coverage. Plaintiffs did not allege that they requested a specific coverage limit and Defendants disregarded the request and issued a policy in some other amount."). Plaintiff does not plead that he told Wright a specific amount of insurance to procure. Moreover, the Policy makes plain it ***was up to Plaintiff*** to choose his coverages and limits. Policy at 1, Ex. 5 ("[State Farm] agree[s] to provide the insurance described in this policy … for the coverages *you* chose."); Declarations at 4, Ex. 2 ("It is up to you to choose the coverages and limits

10

that meet your needs."). Further, the coverage provided is "based on the information [Plaintiff gave it]." Policy at 1, Ex. 5. At least 30 days before his Policy renewed each year, State Farm reminded Plaintiff to review his coverages and limits and advise of changes needed and encouraged him to contact State Farm with updates to his house for use in premium determination (also negating any notion that this was the job of the agent). Coverage Notice and Declarations at 1-3, Ex. 2.

Regardless of who selected the amount of insurance, there can be no dispute Plaintiff had sufficient coverage to repair the damage identified by his public adjuster. The Declarations show he had $636,600 RCV in coverage at the time of loss. *Id.* at 2. His public adjuster provided an estimate in the amount of $72,576.50 for damage to the dwelling. Ian's Enterprises Ltr., March 7, 2023, Ex. 6. "So, any issue as to coverage amounts did not lead to any of the damages that Plaintiff asserts via his claim for damage." *Goebel*, 2023 WL 11883977 at *4. *See also Porter*, 2025 WL 1151682 at *4; *Cisneros*, 2025 WL 1151685 at *4; *Barlow*, 2025 WL 1139489 at *4; *Newell*, 2025 WL 2649661 at *2; *Stone*, 2025 WL 3090772 at *3 (insured could not state a claim where "it [wa]s undisputed that Plaintiff's policy provided" enough coverage to replace his roof).

### D. Mr. Wright owed no underwriting duty to Plaintiff.

Plaintiff's Petition impermissibly expands the agent's role by making him not only an underwriter, but one with duties to inform insureds of the condition of their property before their policy issues and renews. He alleges State Farm agents should "perform a reasonable inspection of the Insured Property prior to procuring the full replacement cost coverage and thereafter upon renewal to ensure no changes to the Policy were necessary or required" (Pet., ¶ 37(b)), but "Agent Wright never inspected Plaintiff's Home to determine if it met State Farm's underwriting guidelines" (*id.*, ¶ 7). He tries to tie this duty to inspect to his negligent procurement claim by alleging that because Mr. Wright did not inspect the property, it could not "confirm the accuracy of the pre-filled information provided by State Farm's replacement cost estimating tool," "disclose

11

pre-existing damage to the Insured Property," or "verify whether its inherent representation to State Farm and Plaintiff that the Insured Property was in good condition was accurate." *Id.* at ¶ 37(b). This argument is impossible because an insurance policy issued and renewed, under which State Farm estimated to replace damaged property, and under which Plaintiff sues State Farm for benefits. Therefore, the house *did* satisfy State Farm's underwriting requirements.

Regardless, this theory presupposes a duty to the insured with regard to underwriting which does not exist. The Policy states that State Farm has no obligation to "make inspections and surveys of the insured location at any time," provide insureds with "reports on conditions," or "recommend changes." Policy at 32, Ex. 5. *If* State Farm decides to have an inspection, it is performed by a third-party inspector, not the agent, for its own use in determining whether to insure or continue to insure the risk, *which is what occurred here*.[5] Courts to address the issue are in agreement that an agent owes no underwriting duty to the insured. *Hall*, 2025 WL 2905205 at *5 ("Plaintiff [did] not provide a legal basis that [the agent] ... had a duty to Plaintiff to" "follow and abide by State Farm's underwriting policies/guidelines; perform all necessary inspections of the Insured Property; ... disclose pre-existing damage to the Insured Property; [and] verify whether ... the Insured Property (including the roof) was in good condition" among other alleged duties); *Wilder*, 2025 WL 2918045 at *4 (same); *Marino*, 2023 WL 11915691 at *3 ("[P]laintiff has not identified any Oklahoma case suggesting that whatever role an agent plays in the underwriting process results

---

[5] Instead of addressing the absence of law or factual obligations to support his agent theory, Plaintiff cites inapplicable underwriting guidelines and job aid to suggest that State Farm agents act as underwriters. Pet., ¶ 7. At most, these documents suggest that agents owe a duty to State Farm, not insureds, to collect information to assist State Farm in determining whether to insure the risk. *Marino*, 2023 WL 11915691 at *3 ("Plaintiff[] point[s] to various documents obtained in discovery addressing an inspection/underwriting function for State Farm agents, but none of those suggest some duty to the insured. [] State Farm may well have multiple requirements as to what it expects its agents to do as part of its underwriting process, but that is not the same thing as concluding there is some underwriting duty owed to the insured.").

in a duty owed to the insured."); *Goebel*, 2023 WL 11883977 at \*4; *Stafford* Order at 7; *Newell*, 2025 WL 2649661 at \*3. This makes sense, for as the Policy reflects, insurance companies conduct underwriting for their own benefit—to recognize and reduce risk—and not as a service to inform insureds of the condition of their house. *Gray v. Derderian*, 464 F. Supp. 2d 105, 109 (D. R.I. 2006). And, as explained above, at least 30 days before Plaintiff's Policy renewed every year, State Farm encouraged Plaintiff to contact State Farm with information as to house updates for use in premium determination, including whether his roof or utilities had been updated—making clear it was not the agent's job to inspect each year to assess the property and advise of conditions that may change the premium or coverage. Declarations at 1, Ex. 2.

Moreover, Plaintiff has not set forth facts to suggest any failure to inspect his house caused him any damages. He complains a busted pipe was the source of the water damage but does not confront how Mr. Wright was supposed to detect a faulty pipe during any inspection. *Id.*, ¶ 8. It would have been impossible without destroying the walls of Plaintiff's house, and as pled, Plaintiff suggests it was an emergent issue that could not have been detected during any inspection. *See id.* Clearly, this theory against Mr. Wright is a complete fabrication to destroy federal jurisdiction.

### E. The claim is barred by the statute of limitations.

Plaintiff's negligent procurement claim is subject to a two-year statute of limitations. 12 O.S. § 95(A)(3). A negligence claim accrues when the alleged injury to the plaintiff becomes certain, *Consol. Grain & Barge Co. v. Structural Sys., Inc.*, 2009 OK 14, ¶ 9 n.8, 212 P.3d 1168, 1171 n.8—here, when the Policy issued. "It is well established under Oklahoma law that insureds have a duty 'to examine, read, and know the contents of the policy before accepting and paying the premium therefor, and, having failed or neglected to do so[, they are] estopped from denying knowledge of its terms or conditions.'" *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d

1272, 1283 (N.D. Okla. 2006) (quoting *Liverpool & L. & G. Ins. Co. v. T.M. Richardson Lumber Co.*, 1902 OK 7, 69 P. 936, 937). Plaintiff pleads that State Farm issued Plaintiff the Policy under which he sues in 2009. Pet., ¶ 5. He did not sue Mr. Wright until March 4, 2026—17 years later. To the extent he argues the statute was tolled because he did not know of the alleged injury (which is not sufficient under the law), his public adjuster advised of the damage in 2023 and complained of State Farm's investigation and evaluation in February 2024, more than two years before the lawsuit was filed. Ian Enterprises Ltr., Ex. 6; Complaint, Ex. 7. His negligent procurement claim, therefore, is time barred. *See Slover*, 443 F. Supp. 2d at 1283 (finding agents fraudulently joined (and therefore subject to dismissal) in part because plaintiffs received their policy and were on notice of the policy's terms for years before filing the lawsuit and thus claims had long expired).

## II.    PLAINTIFF CANNOT STATE A CLAIM FOR CONSTRUCTIVE FRAUD, NEGLIGENT MISREPRESENTATION, OR FRAUDULENT CONCEALMENT

Plaintiff's claims for "constructive fraud and negligent misrepresentation"[6] and fraudulent concealment are simply efforts to establish a different legal theory on the same erroneous facts, and they fail for the same reasons and more. To establish a claim of fraudulent concealment, Plaintiff must plead and prove by clear and convincing evidence that Wright (1) concealed or failed to disclose a past or present fact that he had a duty to disclose; (2) that the fact was material; (3) that Wright concealed or failed to disclose it with the intent of creating a false impression of the actual facts in the mind of Plaintiff; (4) that Wright concealed or failed to disclose it with the intention that it should be acted upon by Plaintiff; (5) that Plaintiff acted in reliance upon it; and (6) that Plaintiff thereby suffered injury. Okla. Unif. Jury Instr. No. 18.2; *Hubbard v. Bryson*, 1970 OK 140, ¶ 26, 474 P.2d 407, 410. To state a claim for constructive fraud, Plaintiff must allege facts

---

[6] Negligent misrepresentation is one type of constructive fraud and requires the same elements to be met. *See, e.g., CashCall, Inc. v. BancFirst*, No. CIV-16-927-W, 2016 WL 9559037, at *5 n.10 (W.D. Okla. Dec. 15, 2016).

14

to show (1) Wright owed plaintiff a duty of full disclosure; (2) he misstated a fact or failed to disclose a fact to plaintiff; (3) the misstatement or omission was material; (4) plaintiff relied on it; and (5) suffered damages as a result. *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1113 (N.D. Okla. 2003). "[T]he circumstances constituting fraud or mistake shall [also] be stated with particularity." 12 O.S. § 2009(B). To do so, the Petition must set forth "'the *time, place, and content* of an alleged false representation.'" *Gianfillippo v. Northland Cas. Co.*, 1993 OK 125, ¶ 11, 861 P.2d 308, 311. Plaintiff's Petition does not set forth facts to establish each element of his claims, let alone with the particularity required by § 2009. The claims, therefore, should be dismissed. 1993 OK 125, ¶ 13, 861 P.2d at 311 (affirming dismissal of fraud claim for failure to allege requisite elements).

## A. Plaintiff's Petition does not satisfy 12 O.S. § 2009(B).

Plaintiff alleges Mr. Wright made multiple misrepresentations and/or omissions that fall into four categories: (1) representations regarding Plaintiff's eligibility for RCV coverage, including those relating to inspections, compliance with underwriting guidelines, and condition of Plaintiff's house (Pet., ¶ 48(a)-(c)); (2) representations regarding the RCV calculation of Plaintiff's house (*id.*, ¶ 48(a)); (3) representations regarding Policy coverage (*id.*, ¶ 48(d), (f)); and (4) representations regarding State Farm's claim handling (*id.*, ¶ 48(e), (g)). He attributes these representations to Mr. Wright, but does not say when or where they were allegedly made, the context in which they were made, or what (if anything) was said. Plainly then, the Petition falls short of satisfying § 2009(B).

## B. Plaintiff does not allege facts to establish a duty of disclosure.

Plaintiff does not allege Mr. Wright made *affirmative* representations about inspections, house condition, or RCV calculations. He alleges these representations were "inherent" to Wright's procurement of the Policy. *See* Pet., ¶ 38(b)(v). Nor is there an allegation Mr. Wright made affirmative representations about State Farm's claim handling, other than a vague allegation

15

that he told Plaintiff in 2009 that "all he needed to do was file a claim to be taken care of." *Id.*, ¶ 6. To the contrary, Plaintiff alleges Wright did not "disclose ... State Farm's bad faith claims handling tactics arising from the Water Loss Initiative [and] its reliance on undisclosed definitions and standards outside of the Policy." *Id.*, ¶ 48(g). Negligent misrepresentation and concealment cannot be based on silence or an implied representation alone. Plaintiff must show Mr. Wright owed him "a duty of full disclosure," *Lillard*, 267 F. Supp. 2d at 1113, or a "duty to speak," *Hubbard*, 1970 OK 140, ¶ 26, 474 P.2d at 410. "This duty could be part of a [] fiduciary duty[7] owed by the defendant to the plaintiff. [It] could also arise, even though it might not exist in the first instance, once a defendant voluntarily chooses to speak to plaintiff about a particular subject matter." *Id.*

The Petition does not establish Mr. Wright owed Plaintiff a duty to speak. In *Pratt v. Safeco*, the court observed "[t]he duty to speak 'may arise if a party selectively discloses facts that create a false impression.' If a false impression is conveyed by disclosing some facts and concealing others, the concealment is in effect a false representation." 2020 WL 4735350 at *2 (citations omitted). As in *Pratt*, Plaintiff here "do[es] not allege that [the agent] conveyed a false impression by disclosing certain material facts and concealing others." *Id.* His allegation is Wright said nothing at all about his house condition, RCV calculations, satisfaction of underwriting requirements, how State Farm handles claims using "undisclosed definition[s]" and the "Water Loss Initiative." Pet., ¶¶ 38, 48. "[S]ilence conveyed no false impression to Plaintiff." *Pratt*, 2020 WL 4735350 at *2. Wright was "under no duty to speak," and Plaintiff cannot state a claim against him for constructive fraud or concealment. *See Hall*, 2025 WL 2905205 at *6 ("The Court declines to conclude that a reasonable basis for a constructive fraud/negligent misrepresentation claim is an

---

[7] Plaintiff does not allege Mr. Wright owed them a fiduciary duty, and the law is clear that an insurance agent owes no fiduciary duty to an insured. *See e.g., Pratt v. Safeco Ins. Co. of Am.*, No. CIV-20-93-D, 2020 WL 4735350, at *2 (W.D. Okla. Aug. 14, 2020).

16

inherent or implied representation attendant to the issuance of an insurance policy. If that were the case, almost no circumstances would exist in which an agent could not be joined as a party to a lawsuit relating to coverage. Accordingly, the Court concludes Plaintiff has not pled facts demonstrating [the agent] made a partial disclosure that gave rise to a duty of full disclosure to Plaintiff."); *Wiesman*, 2025 WL 2918043 at *6; *Wilder*, 2025 WL 2918045 at *6; *Porter*, 2025 WL 1151682 at *4 ("Plaintiffs [did] not identify any affirmative statements by [agent] concerning State Farm's claim handling or policy interpretation"); *Stafford* Order at 6 ("[Plaintiff] has not alleged ... any factual allegations of a partial disclosure by [agent] .... [Plaintiff] cannot show any duty to speak.").

### C. Plaintiff does not allege facts to show the alleged omissions or misrepresentations were material or he suffered damages as a result.

The only injury alleged for any claim is that "[a]s a result of the ***Defendants'*** [conduct]"—not Mr. Wright alone—"Plaintiff sustained damages, including deprivation of monies rightfully belonging to Plaintiff, and ordinary or garden variety harm of anger, stress, worry, [and] physical and emotional suffering." Pet., ¶ 53. *See also id.* at ¶ 34 (bad faith claim); *id.* at ¶ 40 (negligent procurement claim). ***Plaintiff suffered no damage from the alleged misrepresentations because none are the reason for the claim decision.*** The only "deprivation of monies" identified (or even plausible) was State Farm's failure to pay for all damage identified by Plaintiff's public adjuster. That decision had nothing to do with inspections being completed, whether the house met all "underwriting guidelines," or whether Plaintiff had sufficient coverage to repair the damage.

Five federal judges have come to similar conclusions. In *Rain Drop v. State Farm*, Judge DeGiusti found the plaintiff, who sued State Farm for not replacing its roof, was "unable to make out a causal nexus between [the agent's] actions at the procurement stage and Plaintiff's alleged prejudice at the coverage determination stage," reasoning "[a]ny disagreement about the extent of

the hail damage suffered, the decision to repair rather than replace the roof, or the adequacy of the replacement shingles, [wa]s with State Farm alone." 2025 WL 582562 at *5. *See also Wiesman*, 2025 WL 2918043 at *5 ("Plaintiff's damages stem from State Farm's calculation of the repairs to his property, not from Plaintiff's lack of coverage related to the [] alleged misrepresentations."); *Hall*, 2025 WL 2905205 at *6; *Steinkamp*, 2023 WL 11920886 at *3; *Marino*, 2023 WL 11915691 at *3; *Porter*, 2025 WL 1151682 at *4; *Stone*, 2025 WL 3090772 at *4 (insured could not possibly state a claim against agent because alleged loss was not caused by agent). This case is the same; the Agent caused no injury to Plaintiff.

### D. The alleged representations were true.

Plaintiff's house *did* satisfy underwriting and qualified for RCV coverage. *Newell*, 2025 WL 2649661 at *3. The Policy State Farm issued, under which it estimated to replace storm-damaged property, and under which Plaintiff sues and seek benefits, *is* an RCV policy. *See* § I(A), *supra*; *Smith v. Allstate*, CIV-14-0018-HE, 2014 WL 1382488, at *2 (W.D. Okla. Apr. 8, 2014). It covers water damage, as well. Pet., ¶ 14; State Farm Estimate, Ex. 4. Plaintiff admits State Farm estimated to repair parts of his house damaged by the busted pipe; he just alleges State Farm should have paid to replace more of it. Pet., ¶ 14. Claims submitted by Plaintiff were "taken care of"; he submitted five claims during the life of the Policy but only sued on one. And, as established above, Plaintiff had more than sufficient coverage to replace the damage alleged. *Stafford* Order at 7 ("[E]ven if [the agent's] acts constituted the representations asserted, the court concludes [plaintiff] cannot show that the representations were untrue.").

### E. Any alleged misrepresentations regarding claim handling and application of the policy were promises of future performance or opinion and not fraud.

As to allegations Wright told Plaintiff all "he needed to do was file a claim to be taken care of" (Pet., ¶ 6) and failed to disclose State Farm's claim handling "tactics," Wright is not a claims

18

adjuster and has no obligation to guess at future claims by Plaintiff and inform him of what State Farm might do with that future claim. *See Goebel*, 2023 WL 11883977 at *4 ("Plaintiff's arguments essentially contend that an agent has a duty to anticipate, and advise the insured as to, anything that might conceivably limit the payment of a future claim. Such a contention goes beyond any duty contemplated by Oklahoma law."). Thus, Wright cannot be liable for not having spoken about a claim that had not occurred, might never occur and might be decided in Plaintiff's favor if it did. Plaintiff's theory is squarely negated by the law that "for a false representation to be the basis of fraud, such representation must be relative to existing facts or those which previously existed, and not as to promises as to future acts." *Citation Co. Realtors v. Lyon*, 1980 OK 68, ¶ 8, 610 P.2d 788, 790. Further, any representations about past claim handling decisions would be conveying an adjuster's opinion. *Cupit v. Dancu Chemical Co.*, 1957 OK 193, ¶ 7, 316 P.2d 593, 596 (insurer claim decision is an opinion and not "misrepresentation or concealment of facts"). "Fraud may not be predicated on a mere expression of opinion." *Eckert v. Flair Agency, Inc.*, 1995 OK CIV APP 151, ¶ 7, 909 P.2d 1201, 1204.

### F. Plaintiff does not plead facts to establish Wright intended Plaintiff to act upon a false impression of the actual facts to support concealment claim.

To establish a claim for fraudulent concealment, Plaintiff must also set forth facts to show Wright concealed or failed to disclose a past or present fact *with the intent of creating a false impression* of the actual facts in the mind of Plaintiff and that Wright concealed or failed to disclose a past or present *fact with the intention that it should be acted upon* by Plaintiff. *Hubbard*, 1970 OK 140, ¶ 26, 474 P.2d at 410. The Petition pleads nothing of the sort. This, too, is fatal to the fraudulent concealment claim. *Gianfillippo*, 1993 OK 125, ¶ 13, 861 P.2d at 311.

19

**G. The Claim is barred by the statute of limitations.**

Plaintiff's fraud claims are subject to a two-year statute of limitations. 12 O.S. § 95(A)(3); *Last Chance Mins., Inc. v. BP Am. Prod. Co.*, 2023 OK CIV APP 44, ¶ 36, 539 P.3d 712, 720. "A fraud-based claim accrues when a person discovers the fraud," and "[f]raud is deemed to have been discovered when, in the exercise of reasonable diligence, it could have or should have been discovered." *Last Chance*, 2023 OK CIV APP 44, ¶ 36, 539 P.3d at 720. At the very latest, Plaintiff would have learned of the alleged misrepresentations about which he complains when his public adjuster advised of the damage in 2023 and submitted a complaint for State Farm's alleged claim handling failures in February 2024. Ian Enterprises Ltr., Ex. 6; Complaint, Ex. 7. Yet, Plaintiff did not file the lawsuit until more than two years later, on March 4, 2026. Accordingly, it is clear from the face of the Petition that the fraud claims are time-barred and should be dismissed.

## III.    PLAINTIFF'S PETITION FAILS TO SATISFY THE APPLICABLE STANDARD.

"The purpose of a motion to dismiss is to test the legal sufficiency of the pleadings." *Patel v. OHM Med. Ctr., Inc.*, 1999 OK 33, ¶ 43, 987 P.2d 1185, 1202. Dismissal is proper under 12 O.S. § 2012(B)(6) where, as here, the petition fails to set forth (1) a cognizable legal theory of liability or (2) facts to support any cognizable legal theory. *Lockhart v. Loosen*, 1997 OK 103, ¶ 4, 943 P.2d 1074, 1078. There is no avenue through which Plaintiff can establish a claim against Mr. Wright, and Wright should be dismissed pursuant to § 2012(B)(6). Leave to amend should not be granted because the defects identified are fatal and cannot be remedied. 12 O.S. § 2012(G).

Respectfully submitted,

*[signature]*

TIMILA S. KOTHER, OBA # 14310
PAIGE A. MASTERS, OBA # 31142
**CROWE & DUNLEVY**
A Professional Corporation
Braniff Building

20

324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-7700
Facsimile: (405) 239-6651
timila.rother@crowedunlevy.com
paige.masters@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT
JEREL WRIGHT**

**CERTIFICATE OF SERVICE**

This is to certify that on the 30th day of March, 2026, the undersigned caused a true and correct copy of the above and foregoing to be mailed to:

Reggie N. Whitten
Michael Burrage
Blake Sonne
Hannah Whitten
John S. Sanders
Jake Denne
**WHITTEN BURRAGE**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102

**ATTORNEYS FOR PLAINTIFF**

*Paige A. Masters*

21

6221052

## CASES AGAINST INSURERS WITH FORM PETITION
## SUING NON-DIVERSE AGENTS

### Cases Against Allstate

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 1. | *Montejo v. Allstate Vehicle and Prop. Ins. Co., Weston Depriest, and Rick Depriest Agency, Inc.*, Case No. CJ-2023-116 (Grady Cty.) | 5/1/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 2. | *Martin v. Allstate Vehicle and Prop. Ins. Co., Jud Owens, and Jud Owens Agency, Inc.*, Case No. CJ-2023-117 (Grady Cty.) | 5/2/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 3. | *Wedin v. Allstate Vehicle and Property Ins. Co. and Shoemake Agency, LLC*, Case No. CJ-2023-181 (Rogers Cty.) | 5/19/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 4. | *Austin v. Allstate Vehicle and Property Ins. Co. and Stansel Ins. Agency, Inc.*, Case No. CJ-2024-524 (Cleveland Cty.) | 4/16/2024 | Whitten Burrage |
| 5. | *Casillas v. Allstate Vehicle and Property Ins. Co., Mason Cummings; and Cummings Family Agency, Inc.*, Case No. CJ-2025-756 (Cleveland Cty.) | 5/7/2025 | Whitten Burrage |
| 6. | *Cifuentes v. Allstate Vehicle and Property Ins. Co. and Alex Martinez*, Case No. CJ-2025-3151 (Okla. Cty.) | 5/08/2025 | Whitten Burrage |
| 7. | *Sands v. Allstate Vehicle and Property Ins. Co. and Scott Shoemake*, Case No. CJ 202503588 (Okla. Cty.) | 5/21/2025 | Whitten Burrage |



## Cases Against CSAA Insurance Exchange

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|-----|--------------|------------------|----------------|
| 8. | *Stille v. CSAA Ins. Exch., CSAA Fire & Cas. Ins. Co. d/b/a AAA Fire & Cas. Ins. Co., AAA Club Alliance Inc. d/b/a AAA Okla., and ACA Club Ins. Agency, Inc.*, Case No. CJ-2022-522 (Cleveland Cty.) | 5/4/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 9. | *Delk v. CSAA Ins. Exch., CSAA Fire & Cas. Ins. Co. d/b/a AAA Fire & Cas. Ins. Co., AAA Club Alliance Inc. d/b/a AAA Okla., and ACA Club Ins. Agency, Inc.*, Case No. CJ-2022-3940 (Okla. Cty.) | 8/16/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 10. | *McClintock v. CSAA Ins. Exch., CSAA Fire and Cas. Ins. Co. d/b/a AAA Fire and Cas. Ins. Co., and ACA Club Ins. Agency, Inc.*, Case No. CJ-2023-1546 (Okla. Cty.) | 3/22/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |

## Cases Against Farmers Insurance Co.

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|-----|--------------|------------------|----------------|
| 11. | *Summerville v. Farmers Ins. Co., Farmers Ins. Exch., Farmers Grp., Inc. and Scott Streller d/b/a Scott Streller Ins. Agency, Inc.*, Case No. CJ-2019-2435 (Okla. Cty.) | 5/1/2019 | Marr Law Firm and Whitten Burrage |
| 12. | *Kennedy v. Farmers Ins. Co., Farmers Ins. Exch., Farmers Grp., Inc. and Carl Novara*, Case No. CJ-2021-00804 (Tulsa Cty.) | 3/19/2021 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 13. | *Moody v. Farmers Ins. Co., Farmers Ins. Exch., Farmers Grp.,* | 3/29/2021 | Marr Law Firm, |

2

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| | *Inc., and Trevor Randall d/b/a Trevor Randall Ins. Agency, Inc.*, Case No. CJ-2021-1359 (Okla. Ctv.) | | Whitten Burrage, and Nix Patterson, LLP |

## Cases Against State Farm

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 14. | *Johnson v. Ron Lockney and State Farm Fire & Cas. Co.*, Case No. CJ-2019-4360 (Tulsa Cty.) | 11/05/2019 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 15. | *Nida v. State Farm Fire & Cas. Co. and Sheryl Mandeville*, Case No. CJ-2020-4453 (Okla. Cty.) | 9/18/2020 | Marr Law Firm, Jo Slama, Nix Patterson, LLP, and Whitten Burrage |
| 16. | *Singer v. Blackie Gibson and State Farm Fire & Cas. Co.*, Case No. CJ-2020-3205 (Tulsa Cty.) | 10/20/2020 | Marr Law Firm, Gibbs Armstrong, Whitten Burrage, and Nix Patterson, LLP |
| 17. | *Frazier v. State Farm Fire & Cas. Co. and Neil Jarvis*, Case No. CJ-20-193 (Delaware Cty.) | 12/8/2020 | Marr Law Firm, Gibbs Armstrong, and Whitten Burrage |
| 18. | *Hosier v. State Farm Fire & Cas. Co. and David Hoffhines*, No. CJ-2021-1741 (Okla. Cty.) | 4/21/2021 | Marr Law Firm, Slama Legal Group, Whitten Burrage, and Nix Patterson, LLP |

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 19. | *Raley v. State Farm Fire & Cas. Co. and Julia D. Chew Ins. Agency, Inc.*, Case No. CJ-2021-870 (Cleveland Cty.) | 9/24/2021 | Ward & Glass, LLP, Whitten Burrage, and Marr Law Firm |
| 20. | *Effective Learning Teaching Institute Inc. v. Justin Carlton and State Farm Fire & Cas. Co.*, Case No. CJ-2022-791 (Tulsa Cty.) | 3/15/2022 | Marr Law Firm and Whitten Burrage |
| 21. | *Nelson v. State Farm Fire & Cas. Co. and Rick Johnston Ins. Agency, Inc.*, Case No. CJ-2022-65 (Grady Cty.) | 4/6/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 22. | *Moazami v. Justin Carlton and State Farm Ins. Co.*, Case No. CJ-2022-1118 (Tulsa Cty.) | 4/14/2022 | Whitten Burrage, Gibbs Armstrong, P.C., Marr Law Firm, Nix Patterson LLP |
| 23. | *Bartholomew v. State Farm Fire & Cas. Co. and Greg Ellis Agency, Inc.*, Case No. CJ-2022-454 (Cleveland Cty.) | 4/22/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 24. | *McDow v. State Farm Fire & Cas. Co. and Michell Dallal*, Case No. CJ-2022-1857 (Okla. Cty.) | 4/22/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 25. | *Goebel v. State Farm Fire & Cas. Co. and Paul J. Garetson Ins. Agency, LLC*, Case No. CJ-2022-456 (Cleveland Cty.), No. CIV-22-882 (W.D. Okla.) | 4/22/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 26. | *Stacy v. State Farm Fire & Cas. Co. and Lora Lunn*, Case No. CJ-2022-457 (Cleveland Cty.), No. CIV-22-883 (W.D. Okla.) | 4/22/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |

4

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 27. | *Phillips v. State Farm Fire & Cas. Co. and Cindy K. Nashert Ins. Agency, Inc.*, Case No. CJ-2022-499 (Cleveland Cty.) | 4/28/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 28. | *Sexton v. State Farm Fire & Cas. Co. and Kevin Cansler Ins. Agency, Inc.*, Case No. CJ-2022-3069 (Okla. Cty.) | 6/29/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 29. | *Towe v. State Farm Fire & Cas. Co. and Yearout Ins. Agency, Inc.*, Case No. CJ-2022-783 (Cleveland Cty.), No. CIV-22-884 (W.D. Okla.) | 7/15/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 30. | *Shira v. State Farm Fire & Cas. Co. and Rebecca Lafevers State Farm Agency, LLC*, Case No. CJ-2022-3459 (Okla. Cty.) | 7/20/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 31. | *Champion v. State Farm Fire & Cas. Co. and Jim Evans Ins. Agency, Inc.*, Case No. CJ-2022-928 (Cleveland Cty.), No. CIV-22-922 (W.D. Okla.) | 8/16/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 32. | *Kyger v. State Farm Fire & Cas. Co. and Chuck Davis*, Case No. CJ-2022-3990 (Okla. Cty.) | 8/18/2022 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, and Gibbs Armstrong, PC |
| 33. | *Castaneda v. State Farm Fire & Cas. Co. and J. Mark Burton Ins. Agency, Inc.*, No. CJ-2022-167 (Grady Cty.) | 8/26/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |

5

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 34. | *Christy v. State Farm Fire & Cas. Co. and The Carla Holzrichter Ins. Agency, Inc.*, Case No. CJ-2022-4183 (Okla. Cty.) | 8/26/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 35. | *Marino v. State Farm Fire & Cas. Co. and Yearout Ins. Agency, Inc.*, Case No. CJ-2022-979 (Cleveland Cty.), No. CIV-22-885 (W.D. Okla.) | 8/26/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 36. | *Baltasar v. State Farm Fire & Cas. Co. and Carl Kiburz Ins. Agency, Inc.*, Case No. CJ-2022-4829 (Okla. Cty.), No. CIV-22-928-HE (W.D. Okla.) | 9/28/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 37. | *Irvin v. State Farm Fire & Cas. Co. and Michael Day Ins. Agency, Inc.*, Case No. CJ-2022-188 (Grady Cty.) | 10/6/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 38. | *Kelly v. State Farm Fire & Cas. Co., Tom Stidham, and Bruce Shook Agency, Inc.*, Case No. CJ-2022-5075 (Okla. Cty.) | 10/14/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 39. | *Zweifel v. State Farm Fire & Cas. Co. and Greg Phillips Ins. Agency, Inc.*, Case No. CJ-2022-5074 (Okla. Cty.), CIV-23-367-G (W.D. Okla.) | 10/14/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 40. | *Snyder v. Grant Gingrich and State Farm Fire & Cas. Co.*, Case No. CJ-2022-426 (Rogers Cty.) | 11/18/2022 | Gibbs Armstrong Borochoff, P.C., Marr Law Firm, and Whitten Burrage |

6

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 41. | *Fletcher v. State Farm Fire and Cas. Co. and Jim Virtue*, Case No. 2022-302 (Wagoner Cty.) | 12/5/2022 | Gibbs Armstrong Borochoff, P.C., Marr Law Firm, and Whitten Burrage |
| 42. | *Rowe v. State Farm Fire & Cas. Co. and Kent Gering*, Case No. CJ-2022-6188 (Okla. Cty.) | 12/20/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 43. | *Stayton v. State Farm Fire & Cas. Co. and James Moore*, Case No. CJ-2023-8 (Washington Cty.) | 1/6/2023 | Marr Law Firm, Whitten Burrage, Gibbs Armstrong Borochoff, PC, and Nix Patterson, LLP |
| 44. | *Bean v. State Farm Fire & Cas. Co. and Zac Henderson*, Case No. CJ-2023-9 (Washington Cty.) | 1/6/2023 | Marr Law Firm, Whitten Burrage, and Gibbs Armstrong Borochoff, PC |
| 45. | *Vance v. State Farm Fire & Cas. Co. and Blake Nightingale*, Case No. CJ-2023-148 (Okla. Cty.), No. 5:23-cv-00260-SLP (W.D. Okla.) | 1/9/2023 | Marr Law Firm, Gibbs Armstrong Borochoff, PC, and Whitten Burrage |
| 46. | *Whitby v. State Farm Fire & Cas. Co. and Mike Thompson*, Case No. CJ-2023-00339 (Tulsa Cty.) | 1/27/2023 | Marr Law Firm, Gibbs Armstrong Borochoff, PC, and Whitten Burrage |

7

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 47. | *Killingsworth v. State Farm Fire & Cas. Co., Cathy Warren State Farm Agency, and Cathy Warren*, Case No. CJ-2023-00340 (Tulsa Cty.) | 1/27/2023 | Marr Law Firm, Gibbs Armstrong Borochoff, PC, and Whitten Burrage |
| 48. | *Newton v. State Farm Fire & Cas. Co. and Mary Lee Jones*, Case No. CJ-2023-589, No. 5:23-cv-00744-HE (W.D. Okla.) | 2/1/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 49. | *Leonard v. State Farm Fire and Casualty Co. and Michell Dallal*, Case No. CJ-2023-136 (Cleveland Cty.) | 6/28/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 50. | *Woolverton v. State Farm Fire & Cas. Co. and Mike Muecke Ins. Agency, Inc.*, Case No. CJ-2023-1240 (Okla. Cty.) | 3/7/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 51. | *Fletcher v. State Farm Fire & Cas. Co. and Todd David Brown*, Case No. CJ-2023-1474 (Okla. Cty.) | 3/17/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 52. | *Rhoades v. State Farm Fire & Cas. Co. and Kyle G. Kennedy Ins. Agency, Inc.*, Case No. CJ-2023-1529 (Okla. Cty.) | 3/21/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 53. | *Majestic Salon & Events, LLC v. State Farm Fire & Cas. Co. and Matt Pryor Ins. Agency, Inc.*, Case No. CJ-2023-1898 (Okla. Cty.) | 4/6/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 54. | *Williams v. State Farm Fire & Cas. Co. and Cherie Logan*, Case No. CJ-2023-1952 (Okla. Cty.) | 4/7/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 55. | *Ferringer v. State Farm Fire & Cas. Co., Terry Amacher, and Bruce Shook Agency, Inc.*, Case No. CJ-2023-2304 (Okla. Cty.) | 4/24/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 56. | *Ehlinger v. State Farm Fire & Cas. Co. and Dennis Morris Ins. Agency, Inc.*, Case No. CJ-2023-2305 (Okla. Cty.) | 4/24/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 57. | *Wilcox v. State Farm Fire & Cas. Co. and Sam Boyd Ins. Agency, Inc.*, Case No. CJ-2023-2306 (Okla. Cty.) | 4/24/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 58. | *Bryars v. State Farm Fire & Cas. Co. and Yearout Ins. Agency, Inc.*, Case No. CJ-2023-2556 (Okla. Cty.) | 5/3/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 59. | *Carter v. State Farm Fire and Cas. Co. and Larry Gosney*, Case No. CJ-2023-31 (Noble Cty.) | 6/8/2023 | Martin Jean Jackson, Marr Law Firm, Whitten Burrage, Nix Patterson, LLP |
| 60. | *Powers v. State Farm Fire & Cas. Co., Gwen Decassios Ins. Agency, Inc., Gwen Decassios, and Blake Nightingale Ins. Agency, Inc.*, Case No. CJ-2023-3368 (Okla. Cty.) | 6/16/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |

9

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 61. | *Byrd v. State Farm Fire & Cas. Co. and Rita Wallenberg Ins. Agency, Inc.*, Case. No. CJ-2023-139 (Cleveland Cty.), No. 5:23-cv-00745-HE (W.D. Okla.) | 7/24/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 62. | *Forrest v. State Farm Fire & Cas. Co. and Todd Brown*, Case No. CJ-2023-2556 (Tulsa Cty.) | 7/25/2023 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, Gibbs Legal Solutions, LLC, and Gibbs Armstrong, PC |
| 63. | *Vontress v. State Farm Fire & Cas. Co. and J. Mark Burton Ins. Agency, Inc.*, Case No. CJ-2023-4205 (Okla. Cty.) | 7/27/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 64. | *Budden v. State Farm Fire & Cas. Co. and Williamson Ins. and Fin. Services, LLC*, Case No. CJ-2023-3148 (Tulsa Cty.) | 9/1/2023 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, Gibbs Legal Solutions, LLC, and Gibbs Armstrong, PC |
| 65. | *Creech v. State Farm Fire & Cas. Co. and Thomas A. Cohoon*, Case No. CJ-2023-1133 (Cleveland Cty.) | 9/20/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 66. | *Venator v. State Farm Fire & Cas. Co. and Erstenuk Ins. Agency, Inc.*, Case No. CJ-2023-5923 (Okla. Cty.) | 10/16/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 67. | *Vance v. State Farm Fire & Cas. Co., Ken Shelton Ins. Agency, Inc., and Blake Nightingale Ins. Agency, Inc.,* Case No. CJ-2023-5925 (Okla. Cty.) | 10/16/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 68. | *Jackson v. State Farm Fire & Cas. Co. and Dustin Bass Ins., LLC,* Case No. CJ-2023-4079 (Tulsa Cty.) | 11/21/2023 | Marr Law Firm, Whitten Burrage, Gibbs Legal Solutions, LLC, and Gibbs Armstrong, PC |
| 69. | *Stacy v. State Farm Fire & Cas. Co. and Marvin Manns Ins. and Fin. Services, Inc.,* Case No. CJ-2024-273 (Tulsa Cty.) | 1/25/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, Gibbs Legal Solutions, LLC, and Gibbs Armstrong, PC |
| 70. | *Townsend v. State Farm Fire & Cas. Co. and Lile Ins. and Fin. Services, LLC,* Case No. CJ-2024-274 (Tulsa Cty.) | 1/25/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, Gibbs Legal Solutions, LLC, and Gibbs Armstrong, PC |
| 71. | *Stevens v. State Farm Fire & Cas. Co. and Steve Lane Ins. Agency, Inc.,* Case No. CJ-2024-275 (Tulsa Cty.) | 1/25/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, Gibbs Legal Solutions, LLC, and Gibbs Armstrong, PC |

11

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 72. | *Dwight v. State Farm Fire and Cas. Co and Lile Ins. and Financial Services, Inc.*, Case No. CJ-2024-16 (Osage Cty.) | 1/29/2024 | Gibbs Armstrong, P.C., Marr Law Firm, Whitten Burrage, and Gibbs Legal Solutions, LLC |
| 73. | *Payne v. State Farm Fire and Casualty Co. and Rhett Minson Agency, Inc.*, Case No. CJ-24-27 (Mayes Cty.) | 1/29/2024 | Gibbs Armstrong, P.C., Marr Law Firm, Whitten Burrage, Gibbs Legal Solutions, LLC and Nix Patterson, LLP |
| 74. | *Schneder v. State Farm Fire and Cas. Co. and Yearout Ins. Agency*, Case No. CJ-2024-137 (Cleveland Cty.) | 2/1/2024 | Gibbs Armstrong Borochoff, P.C., Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 75. | *Cox v. State Farm Fire & Cas. Co. and Mike Muecke Ins. Agency, Inc.*, Case No. CJ-2024-979 (Okla. Cty.) | 2/14/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 76. | *Meek v. State Farm Fire & Cas. Co. and Ross Eaton*, Case No. CJ-2024-1469 (Okla. Cty.) | 3/07/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 77. | *Destasio v. State Farm Fire & Cas. Co.*, Case No. CJ-2024-1784 (Okla. Cty.) | 3/15/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 78. | *Williams v. State Farm Fire & Cas. Co.*, Case No. CJ-2024-2328 (Okla. Cty.) | 4/9/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 79. | *Waggoner v. State Farm Fire & Cas. Co.*, Case No. CJ-2024-2666 (Okla. Cty.) | 4/19/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 80. | *Clow v. State Farm Fire & Cas. Co.*, Case No. CJ-2024-2667 (Okla. Cty.) | 4/19/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 81. | *Ferringer v. State Farm Fire & Cas. Co.*, Case No. CJ-2024-2722 (Okla. Cty.) | 4/23/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 82. | *Ehlinger v. State Farm Fire & Cas. Co., Dennis Morris Ins. Agency and Tracey Devereaux*, Case No. CJ-2024-2723 (Okla. Cty.) | 4/23/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 83. | *Bryars v. State Farm Fire & Cas. Co. and Janis Yearout Ins. Agency, Inc.*, Case No. CJ-2024-2953 (Okla. Cty.) | 5/3/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 84. | *Valois v. State Farm Fire & Cas. Co. and Matt Pryor Ins. Agency, Inc.*, Case No. CJ-2024-2954 (Okla. Cty.) | 5/3/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 85. | *Shaw v. State Farm Fire & Cas. Co. and Larry Gosney,* Case No. CJ-2024-255 (Payne Cty.) | 5/3/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 86. | *McAreavey v. State Farm Fire & Cas. Co. and Mark Estep,* Case No. CJ-2024-3145 (Okla. Cty.) | 5/13/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 87. | *Marple v. State Farm Fire & Cas. Co. and Josh Fields Ins. Agency, Inc.,* Case. No. CJ-2024-3146 (Okla. Cty.) | 5/13/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 88. | *Pool v. State Farm Fire & Cas. Co. and Oanh Stanger Ins. Agency, Inc.,* Case No. CJ-2024-3176 (Okla. Cty.) | 5/14/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 89. | *McFarlin v. State Farm Fire & Cas. Co. and Greg Ellis Ins. Agency Inc.,* Case No. CJ-2024-3276 (Okla. Cty.) | 5/17/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 90. | *Farley v. State Farm Fire & Cas. Co. and Mike Thompson Ins. and Fin. Services, LLC,* Case No. CJ-2024-3701 (Okla. Cty.) | 6/6/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 91. | *Fuls v. State Farm Fire & Cas. Co. and Bryan Smith,* Case No. CJ-2024-2133 (Tulsa Cty.) | 6/7/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, Gibbs Legal Solutions, LLC, and Gibbs Armstrong, PC |

14

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 92. | *Bercher v. State Farm Fire & Cas. Co. and Chris Mathurin Agency, LLC*, Case No. CJ-2024-2135 (Tulsa Cty.) | 6/7/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, Gibbs Legal Solutions, LLC, and Gibbs Armstrong, PC |
| 93. | *Heil v. State Farm Fire & Cas. Co. and Bobby Williamson*, Case No. CJ-2024-262 (Rogers Cty.) | 6/10/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, Gibbs Legal Solutions, LLC, and Gibbs Armstrong, PC |
| 94. | *Woolslayer v. State Farm Fire & Cas. Co. and Joe McAdams Ins. Agency, Inc.*, Case No. CJ-2024-3816 (Okla. Cty.) | 6/12/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 95. | *Ludwig v. State Farm Fire & Cas. Co. and James R. Virtue*, Case No. CJ-2024-3856 (Okla. Cty.) | 6/13/2024 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 96. | *Bundy v. State Farm Fire & Cas. Co. and Robert A. Long Ins. Agency, Inc.*, Case No. CJ-2024-262 (Rogers Cty.) | 6/17/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, and Gibbs Armstrong, PC |
| 97. | *McDaniel v. State Farm Fire & Cas. Co. and James R. Virtue a/k/a Jim Virtue*, Case No. CJ-2024-2293 (Tulsa Cty.) | 6/17/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, and Gibbs Armstrong, PC |

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 98. | *Johnson v. State Farm Fire & Cas. Co. and Cathy Warren Ins. Agency, Inc.*, Case No. CJ-2024-2294 (Tulsa Cty.) | 6/17/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, and Gibbs Armstrong, PC |
| 99. | *Daniels v. State Farm Fire & Cas. Co. and Tim Custer Ins. Agency, Inc.*, Case No. CJ-2024-2295 (Tulsa Cty.) | 6/17/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, and Gibbs Armstrong, PC |
| 100. | *Gregorovic v. State Farm Fire & Cas. Co. and Cathy Warren Ins. Agency, Inc.*, Case No. CJ-2024-2296 (Tulsa Cty.) | 6/17/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, and Gibbs Armstrong, PC |
| 101. | *Brister v. State Farm Fire & Cas. Co. and Clint Marcum Ins. Agency, Inc.*, Case No. CJ-2024-3923 (Okla. Cty.) | 6/17/2024 | Marr Law Firm, Whitten Burrage and Nix Patterson, LLP |
| 102. | *Valdez & Garcia v. State Farm Fire & Cas. Co. and Marvin Manns Ins. and Fin. Services, Inc.*, Case No. CJ-2024-3924 (Okla. Cty.) | 6/17/2024 | Marr Law Firm, Whitten Burrage and Nix Patterson, LLP |
| 103. | *Earley v. State Farm Fire & Cas. Co., Janine Billings Ins. Agency, Inc., and Tyler McCall Ins. Agency, Inc.*, Case No. CJ-2024-2320 (Tulsa Cty.) | 6/18/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, and Gibbs Armstrong, PC |

16

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 104. | *David Kennedy v. State Farm Fire & Cas. Co. and Tyler McCall Ins. Agency, Inc.*, Case No. CJ-2024-2321 | 6/18/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, and Gibbs Armstrong, PC |
| 105. | *Patty Corsini v. State Farm Fire & Cas. Co. and Ronald J. Lockney*, Case No. CJ-2024-2322 (Tulsa Cty.) | 6/18/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, and Gibbs Armstrong, PC |
| 106. | *Sullenger v. State Farm Fire & Cas. Co. and James Gates Ins. Agency, Inc.*, Case No. CJ-2024-3941 (Okla. Cty.) | 6/18/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP |
| 107. | *Richey v. State Farm Fire and Cas. Co. and Velta Augusta Ins. Agency, Inc.*, Case No. CJ-2024-273 (Rogers Cty.) | 6/20/2024 | Marr Law Firm, Whitten Burrage, Nix Patterson, LLP, and Gibbs Armstrong, PC |

## Cases Against Other Insurers

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 108. | *Weber v. Encompass Ins. Co. and Okla. Ins. Ctr., Inc.*, Case No. CJ-2022-4241 (Okla. Cty.) | 8/30/2022 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 109. | *Carter v. American Mod. Prop. and Cas. Co. and Cobble Ins. Agency, Inc.*, Case No. CJ-2023-33 (Cleveland Cty.) | 1/11/1023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |

17

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 110. | *Farmer v. Progressive Cas. Ins. Co., American Strategic Ins. Corp., and Premier Ins. LLC*, Case No. CJ-2023-2302 (Okla. Cty.) | 4/24/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 111. | *Parkison v. The Hanover Ins. Co., LBV Ins., LCC, and Ascent Ins. Grp., LLC*, Case No. CJ-2023-3791 (Okla. Cty.) | 7/7/2023 | Marr Law Firm, Whitten Burrage, and Nix Patterson, LLP |
| 112. | *Russ Didlake and Shawnee Management, LLC v. Shelter Mutual Ins. Co.*, Case No. CJ-2025-157 (Pottawatomie Cty.) | 4/10/2025 | Whitten Burrage |

**Recent Cases Against State Farm Filed by Whitten Burrage**

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 113. | *Jacob Cox v. State Farm Fire & Cas. Co. and Elizabeth Gallery*, Case No. CJ-2024-7630 (Okla. Cty.) | 11/27/2024 | Whitten Burrage |
| 114. | *Wiesman v. State Farm Fire & Cas. Co. and Heather Cottrill Ins. & Financial Services, LLC*, Case No. CJ-2024-7628 (Okla. Cty.) | 11/27/2024 | Whitten Burrage |
| 115. | *Stone v. State Farm Fire & Cas. Co., Alfred Tom Cilio and Rebecca LaFevers State Farm Agency, Inc.*, Case No. CJ-2024-7626 (Okla. Cty.) | 11/27/2024 | Whitten Burrage |
| 116. | *Stafford v. State Farm Fire & Cas. Co. and Mike Muecke Ins. Agency, Inc.*, Case No. CJ-2024-7627 (Okla. Cty.) | 11/27/2024 | Whitten Burrage |

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 117. | *Hall v. State Farm Fire & Cas. Co. and Matt McCoy Ins. Agency, Inc.*, Case No. CJ-2024-7629 (Okla. Cty.) | 11/27/2024 | Whitten Burrage |
| 118. | *Lenhart v. State Farm Fire & Cas. Co., Brent Hagar and Hagar State Farm Agency, LLC*, Case No. CJ-2024-7829 (Okla. Cty.) | 12/6/2024 | Whitten Burrage and George Gibbs |
| 119. | *Cisneros v. State Farm Fire & Cas. Co. and Jim Moore*, Case No. CJ-2024-7831 (Okla. Cty) | 12/6/2024 | Whitten Burrage |
| 120. | *Pruitt v. State Farm Fire & Cas. Co. and Jim Campos Agency, Inc.*, Case No. CJ-2024-7828 (Okla. Cty) | 12/6/2024 | Whitten Burrage |
| 121. | *Willard v. State Farm Fire & Cas. Co. and Rod C. Chew Ins. Agency, Inc.*, Case No. CJ-2024-7830 (Okla. Cty) | 12/6/2024 | Whitten Burrage |
| 122. | *Wilder v. State Farm Fire & Cas. Co. and Zac Henderson Ins. Agency, Inc.*, Case No. CJ-2024-8004 (Okla. Cty.) | 12/13/2024 | Whitten Burrage |
| 123. | *Weakley v. State Farm Fire & Cas. Co. and Jason A. Strickland*, Case No. CJ-2024-8005 (Okla. Cty.) | 12/13/2024 | Whitten Burrage and Biby Law Firm |
| 124. | *Warren v. State Farm Fire & Cas. Co. and Andrew S. Vincent Ins. Agency, Inc.*, Case No. CJ-2024-8003 (Okla. Cty.) | 12/13/2024 | Whitten Burrage |
| 125. | *Harris v. State Farm Fire & Cas. Co., Curtis L. Davidson a/k/a Eric Davidson, an individual, and Eric Davidson Agency LLC*, Case No. CJ-2024-8002 (Okla. Cty.) | 12/13/2024 | Whitten Burrage |
| 126. | *Moore v. State Farm Fire & Cas. Co. and James E. ("Jim") Moore*, Case No. CJ-2024-8244 (Okla. Cty.) | 12/20/2024 | Whitten Burrage |
| 127. | *Porter v. State Farm Fire & Cas. Co., Jeffrey "Jeff" G. Millerd and Millerd Ins. and Fin. Services, LLC*, Case No. CJ-2024-8243 (Okla. Cty.) | 12/20/2024 | Whitten Burrage |

19

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 128. | *Maher v. State Farm Fire & Cas. Co. and Terry M. Amacher*, Case No. CJ-2024-8245 (Okla. Cty.) | 12/20/2024 | Whitten Burrage and George Gibbs |
| 129. | *Methvin v. State Farm Fire & Cas. Co. and Kristopher "Nickey" Lee*, Case No. CJ-2025-1031 (Okla. Cty.) | 2/11/2025 | Whitten Burrage |
| 130. | *Giertz v. State Farm Fire & Cas. Co. and Jennifer Lowder Ins. Agency, Inc.*, Case No. CJ-2025-1132 (Okla. Cty.) | 2/20/2025 | Whitten Burrage |
| 131. | *Robbins v. State Farm Fire & Cas. Co. and Kaci Miller*, Case No. CJ-2025-1131 (Okla. Cty.) | 2/20/2025 | Whitten Burrage |
| 132. | *Hope v. State Farm Fire & Cas. Co. and Ryan Williams*, Case No. CJ-2025-1130 (Okla. Cty.) | 2/20/2025 | Whitten Burrage |
| 133. | *Cline v. State Farm Fire & Cas. Co. and Mancil W. Baccus, Jr. a/k/a Gary Baccus*, Case No. CJ-2025-1269 (Okla. Cty.) | 2/24/2025 | Whitten Burrage and White & Weddle, PC |
| 134. | *Coover v. State Farm Fire & Cas. Co. and Bobby Lewis Ins. Agency, Inc.*, Case No. CJ-2025-1302 (Okla. Cty.) | 2/25/2025 | Whitten Burrage |
| 135. | *Weichbrodt v. State Farm Fire & Cas. Co. and Bill Holle*, Case No. CJ-2025-1301 (Okla. Cty.) | 2/25/2025 | Whitten Burrage |
| 136. | *Riley v. State Farm Fire & Cas. Co. and Oanh Stanger Ins. Agency, Inc.*, Case No. CJ-2025-1328 (Okla. Cty.) | 2/26/2025 | Whitten Burrage |
| 137. | *West v. State Farm Fire & Cas. Co. and Nancy Holcomb Ins. Agency, Inc.*, Case No. CJ-2025-135 (Comanche Cty.) | 2/28/2025 | Whitten Burrage and Burgess & Hightower |
| 138. | *Hines v. State Farm Fire & Cas. Co., Zach Russell and Zach Russell Ins. Agency, Inc.*, Case No. CJ-2025-1518 (Okla. Cty.) | 3/5/2025 | Whitten Burrage and Hamilton Murphy Law |

20

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 139. | *McBride v. State Farm Fire & Cas. Co., John Mark Burton and J. Mark Burton Ins. Agency, Inc.*, Case No. CJ-2025-1636 (Okla. Cty.) | 3/10/2025 | Whitten Burrage |
| 140. | *Hunt v. State Farm Fire & Cas. Co., Michael Muecke and Mike Muecke Ins. Agency, Inc.*, Case No. CJ-2025-1637 (Okla. Cty.) | 3/10/2025 | Whitten Burrage |
| 141. | *Osborn v. State Farm Fire & Cas. Co. and Steve Wright*, Case No. CJ-2025-1638 (Okla. Cty.) | 3/10/2025 | Whitten Burrage |
| 142. | *Moong Sian Wong-Faust v. State Farm Fire & Cas. Co. and Grant Gingerich; and Grant Gingerich Ins. Agency*, Case No. CJ-2025-1675 (Okla. Cty.) | 3/11/2025 | Whitten Burrage |
| 143. | *Stearns v. State Farm Fire & Cas. Co. and Dennis Chaumont*, Case No. CJ-2025-1704 (Okla. Cty.) | 3/12/2025 | Whitten Burrage |
| 144. | *Adamo v. State Farm Fire & Cas. Co., Brittanie Portillo McCoy and Brittanie Portillo Ins. Agency, Inc.*, Case No. CJ-2025-1844 (Okla. Cty.) | 3/18/2025 | Whitten Burrage |
| 145. | *Gamble v. State Farm Fire & Cas. Co., Tyler McCall Ins. Agency, Inc., and Tyler McCall, an individual*, Case No. CJ-2025-1743 (Okla. Cty.) | 3/18/2025 | Whitten Burrage |
| 146. | *Hammack v. State Farm Fire & Cas. Co.; Austin Brown and Austin Brown Ins. Agency, Inc.*, Case No. CJ-25-121 (Wagoner Cty.) | 3/24/2025 | Whitten Burrage |
| 147. | *Gabel v. State Farm Fire & Cas. Co. and Bill Kolb*, Case No. CJ-2025-1861 (Okla. Cty.) | 3/25/2025 | Whitten Burrage |
| 148. | *Weber v. State Farm Fire & Cas. Co. and Cherie R. Logan*; Case No. CJ-2025-2575 (Okla. Cty.) | 4/16/2025 | Whitten Burr |
| 149. | *Yost v. State Farm Fire & Cas. Co. and Mike Teague*; Case No. CJ-2025-2576 (Okla. Cty.) | 4/16/2025 | Whitten Burrage |

21

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 150. | *Newell v. State Farm Fire & Cas. Co., Bronson Schubert Agency, Inc. and Bronson Schubert*, Case No. CJ-2025-2577 (Okla. Cty.) | 4/16/2025 | Whitten Burrage |
| 151. | *White v. State Farm Fire & Cas. Co. and Kent Gering*, Case No. CJ-2025-2578 (Okla. Cty.) | 4/16/2025 | Whitten Burrage |
| 152. | *Hursh v. State Farm Fire & Cas. Company, Mark D. Welty, and Mark D. Welty Ins. Agency, Inc.*; Case No. CJ-2025-2626 (Okla. Cty.) | 4/17/2025 | Whitten Burrage |
| 153. | *Martin v. State Farm Fire & Cas. Co. and Bobby Lewis Ins. Agency, Inc.*; Case No. CJ-2025-2627 (Okla. Cty.) | 4/17/2025 | Whitten Burrage |
| 154. | *Merrick v. State Farm Fire & Cas. Co. and Jerel Wright*, Case No. CJ-2025-598 (Cleveland Cty.) | 4/17/2025 | Whitten Burrage |
| 155. | *Young v. State Farm Fire & Cas. Co. and Jason Bridwell Ins. Agency, Inc.*, Case No. CJ-2025-117 (Grady Cty.) | 4/17/2025 | Whitten Burrage |
| 156. | *Davis v. State Farm Fire & Cas. Co.; Grant Gingerich, and Grant Gingerich Ins. Agency, Inc.*; Case No. CJ-2025-2883 (Okla. Cty.) | 5/2/2025 | Whitten Burrage |
| 157. | *Whitson v. State Farm Fire & Cas. Co., Kevin Murphy Ins. Agency, Inc. and Kevin Murphy*, Case No. CJ-2025-3084 (Okla. Cty.) | 5/6/2025 | Whitten Burrage |
| 158. | *Hardy v. State Farm Fire & Cas. Co., Corbin Cooper, and Lilly June, Inc. d/b/a Corbin Ins. Agency*; Case No. CJ-2025-3535 (Okla. Cty.) | 5/20/2025 | Whitten Burrage |
| 159. | *Zapp v. State Farm Fire & Cas. Co. and Andy Swann*, Case No. CJ-2025-3609 (Okla. Cty.) | 5/22/2025 | Whitten Burrage |
| 160. | *Dressel v. State Farm Fire & Cas.; Steve N. Swann Ins. Agency, Inc. and Steve N. Swann*; Case No. CJ-2025-4293 (Okla. Cty.) | 6/17/2025 | Whitten Burrage |

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 161. | *DKD Properties, LLC and Driscoll v. State Farm Fire & Cas. Co. and Janine Billings Ins. Agency, Inc.*; Case No. CJ-2025-4294 (Okla. Cty.) | 6/17/2025 | Whitten Burrage |
| 162. | *Easterwood v. State Farm Fire & Cas. Co. and Travis Primeaux*, Case No. CJ-2025-4296 (Okla. Cty.) | 6/17/2025 | Whitten Burrage |
| 163. | *Merimon & Walker v. State Farm Fire & Cas. Co. and Brent Hagar d/b/a Hagar State Farm Agency, LLC*, Case No. CJ-2025-4297 (Okla. Cty.) | 6/17/2025 | Whitten Burrage |
| 164. | *Schettler v. State Farm Fire & Cas. Co. and Mark Welty d/b/a Mark D. Welty Ins. Agency, Inc.*; Case No. CJ-2025-4299 (Okla. Cty.) | 6/17/2025 | Whitten Burrage |
| 165. | *Classen v. State Farm Fire & Cas. Co. and Jeremy Henley d/b/a Jeremy Henley Ins. Agency, Inc.*; Case No. CJ-2025-4743 (Okla. Cty.) | 7/8/2025 | Whitten Burrage |
| 166. | *Jackson v. State Farm Fire & Cas. Co.; Rod C. Chew; and Rod C. Chew Ins. Agency, Inc.*; Case No. CJ-2025-5403 (Okla. Cty.) | 7/29/2025 | Whitten Burrage |
| 167. | *Johnson v. State Farm Fire & Cas. Co. and J. Mark Burton Ins. Agency, Inc.*; Case No. CJ-2025-252 (Grady Cty.) | 7/30/2025 | Whitten Burrage |
| 168. | *Cook v. State Farm Fire & Cas. Co. and Mainord Ins. Agency, Inc.*; Case No. CJ-2025-5624 (Okla. Cty.) | 8/7/2025 | Whitten Burrage |
| 169. | *Austin v. State Farm Fire & Cas. Co. and Rebecca LaFevers Ins. Agency, Inc.*; Case No. CJ-2025-6571 (Okla. Cty.) | 9/11/2025 | Whitten Burrage |
| 170. | *Gattenby v. State Farm Fire & Cas. Co. and Rebecca LaFevers Ins. Agency, Inc.*; Case No. CJ-2025-6572 (Okla. Cty.) | 9/11/2025 | Whitten Burrage |

| NO. | CASE CAPTION | DATE OF PETITION | PLAINTIFF FIRM |
|---|---|---|---|
| 171. | *Hamner v. Gary G. Baumwart Ins. Agency, Inc. and State Farm Fire & Cas. Co.*; Case No. CJ-2025-983 (Canadian Cty.) | 10/15/2025 | Whitten Burrage |
| 172. | *Shamblin v. State Farm Fire & Cas. Co. and Michael Garey Ins. Agency, Inc.*; Case No. CJ-2025-8698 (Okla. Cty.) | 11/21/2025 | Whitten Burrage |

**State Farm Fire and Casualty Company**
*A Stock Company With Home Offices in Bloomington, Illinois*

*PO Box 853907*
*Richardson, TX 75085-3907*

AT2           H-26-1770-FAD4  F  H W
      001294  3200
COX, BRADLEY MICHAEL & FARAH
BROOKE
4636 NW 160TH TER
EDMOND OK  73013-3244



| POLICY NUMBER | 36-BD-E747-9 |
|---|---|
| HOMEOWNERS AVAILABLE COVERAGE NOTICE | |
| | SEE RENEWAL DECLARATIONS |

IT IS IMPORTANT THAT YOU OCCASIONALLY REVIEW THE COVERAGE S AND LIMITS IN YOUR HOMEOWNERS POLICY TO BE CERTAIN YOUR NEEDS ARE BEING MET. THE FOLLOW ING INFORMATION WILL ASSIST YOU IN THE REVIEW PROCESS.

THE COVERAGE LIMITS FOR COVERAGE A - DWELLING, COVERAGE B - PERSONAL PROPERTY, COVERAGE L - PERSONAL LIABILITY, AND COVERAGE M - MEDICAL PAYMENTS TO OTHERS ARE LISTED ON THE ACCOMPANYING RENEWAL DECLARATIONS. PLEASE REVIEW THESE LIMITS TO DETER MINE IF THEY ARE ADEQUATE IN THE EVENT OF A LOSS.

THE FOLLOWING IS A **PARTIAL LIST** OF THE OPTIONAL COVERAGES YOU HAVE **NOT** ADDED TO YOUR POLICY. THEY MAY BE AVAILABLE TO YOU FOR AN ADDITIONAL PREMIUM.

Business Property (for higher limits)

Business Pursuits Liability (for teachers, school administrators, sales persons, and clerical employees)

Child Care Liability (for those providing child care in their home)

Firearms (for broadened coverage and higher limits)

Incidental Business Liability (for those with an incidental office, studio, or school in the home)

Jewelry and Furs (for broadened coverage and higher limits)

Loss Assessment (for neighborhoods with Homeowners Associations)

Nurses' Professional Liability (for those in the nursing profession)

Personal Injury (for your liability to others caused by certain acts of libel, slander, invasion of privacy, or false arrest)

Silverware/Goldware (for broadened coverage and higher limits)

Adult Day Care Liability (for those providing adult day care in their home)

Energy Efficiency Upgrade (for replacing damaged heating unit, air conditioning unit, or water heater with equipment that is more energy efficient)

Home Rental (for those who rent out their home for more than 30 nights yearly)

**\*\*Continued on Reverse Side\*\***

Prepared  FEB 11 2022

**Agent**
**Telephone**

JEREL WRIGHT
(405) 722-6696  or  (405) 722-9131

005648  420
N      GA,GB,R3,EH

**EXHIBIT**

**2**

Home Systems Protection (for covering the breakdown of permanently installed equipment)

Service Line (for the cost of repairing damaged underground utility lines)

Increased Personal Property (for higher limits above the standard policy limit, which is a percentage of your Coverage A-Dwelling amount)

**This notice contains only a general description of the coverages and is not a contract. All coverages are subject to the provisions in the policy itself.** Should you have a need for any of these coverages or high er limits, contact your State Farm Agent to discuss details, cost and eligibility.

### IMPORTANT INFORMATION ABOUT DAMAGE CAUSED BY FLOODING

This policy does not cover damage to your property caused   by flooding. You may be eligible for such coverage through the National Flood Insurance Program ("NFIP"), if you live in  a participating community. For more information, contact your State Farm® agent or visit floodsmart.gov.

**State Farm Fire and Casualty Company**
*A Stock Company With Home Offices in Bloomington, Illinois*

*PO Box 853907*
*Richardson, TX 75085-3907*

 **State Farm**

H-26-1770-FAD4  F  H W
3200
COX, BRADLEY MICHAEL & FARAH
BROOKE
4636 NW 160TH TER
EDMOND OK  73013-3244

ST-
0205-0000

## RENEWAL DECLARATIONS

| | |
|---|---|
| **AMOUNT DUE:** | **None** |

**Payment is due by  TO BE PAID BY MORTGAGEE**

**Policy Number:**    36-BD-E747-9

**Policy Period:**   12 Months
**Effective Dates:** APR 03 2022 to APR 03 2023
The policy period begins and ends at 12:01 am standard
time at the residence premises.

## Homeowners Policy

**Location of Residence Premises**
4636 NW 160TH TER
EDMOND OK  73013-3244

**Your State Farm Agent**
JEREL WRIGHT
5761 NW 132ND ST
OKLAHOMA CITY OK    73142-4437

**Phone:** (405) 722-6696  or  (405) 722-9131

**Construction:**        Masonry Veneer
**Year Built:**          2008

**Roof Material:**  Composition Shingle
**Roof Installation Year:**   2013

**Automatic Renewal**

If the **POLICY PERIOD** is shown as **12 MONTHS,** this policy will be renewed automatically subject to the premiums, rules,
and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lien-
holder written notice in compliance with the policy provisions or as required by law.

### IMPORTANT MESSAGES

NOTICE: Information concerning changes in your policy language is included.  Please call your agent with any questions.
Coverage A has increased $58,400.00 over last year.
Please help us update the data used to determine your premium. Contact your agent with the year each of
your home's utilities (heating/cooling, plumbing, or electrical) and roof were last updated.

### PREMIUM

| | |
|---|---|
| Annual Premium | $3,215.00 |

*Your premium has already been adjusted by the following:*

| | |
|---|---|
| Utility Rating Credit | Home Alert Discount |
| Hail Resistive Roof | Home/Auto Discount |
| Claim Record Discount | Loyal Customer |

| | |
|---|---|
| **Total Premium** | **$3,215.00** |

Prepared  FEB 11 2022
HO-2000
005649   420
N     GA,GB,R3,EH

*Thanks for letting us serve you...*

Page  1 of  4

(o1F1000B)  04-04-2016



| NAMED INSURED | MORTGAGEE AND ADDITIONAL INTERESTS | |
|---|---|---|

COX, BRADLEY MICHAEL & FARAH
BROOKE

**Mortgagee**
BOKF NA DBA BANK OF OKLAHOMA    Loan Number:
ISAOA ATIMA                      0004294894
PO BOX 1550
SPRINGFIELD OH  45501-1550

## SECTION I - PROPERTY COVERAGES AND LIMITS

| Coverage | Limit of Liability | |
|---|---|---|
| A Dwelling | $ | 636,600 |
| Other Structures | $ | 63,660 |
| B Personal Property | $ | 477,450 |
| C Loss of Use | $ | 190,980 |

**Additional Coverages**

| | |
|---|---|
| Arson Reward | $1,000 |
| Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money | $1,000 |
| Debris Removal | Additional 5% available/$1,000 tree debris |
| Fire Department Service Charge | $500 per occurrence |
| Fuel Oil Release | $10,000 |
| Locks and Remote Devices | $1,000 |
| Trees, Shrubs, and Landscaping | 5% of Coverage A amount/$750 per item |

## SECTION II - LIABILITY COVERAGES AND LIMITS

| Coverage | Limit of Liability | |
|---|---|---|
| L Personal Liability (Each Occurrence) | $ | 300,000 |
| Damage to the Property of Others | $ | 1,000 |
| M Medical Payments to Others (Each Person) | $ | 5,000 |

## INFLATION

Inflation Coverage Index: 304.9

## DEDUCTIBLES

| Section I Deductible | Deductible Amount | |
|---|---|---|
| Earthquake  5% | $ | 31,830 |
| Other Losses 1% | $ | 6,366 |

## LOSS SETTLEMENT PROVISIONS

A1  Replacement Cost - Similar Construction
B1  Limited Replacement Cost - Coverage B

o1F1081A

FEB 11 2022

HO-2000

Page 2 of  4

36-BD-E747-9                                               **StateFarm**

## FORMS, OPTIONS, AND ENDORSEMENTS

| HW-2136 | Homeowners Policy |
| Option ID | Increase Dwlg up to $127,320 |
| Option OL | Ordinance/Law   10%/  $63,660 |
| Option JF | Jewelry and Furs $1,500 Each Article/$2,500 Aggregate |
| HO-2609 | Cyber/ID Restoration/Fraud Cov |
| HO-2310 | Amendatory Endorsement |
| HO-2356 | Amendatory End - Liability |
| HO-2444.2 | *Back-Up Of Sewer Or Drain - 5% of Coverage A/$ 31,830 |
| HO-2414.1 | *Earthquake Endorsement *New Form Attached |

## ADDITIONAL MESSAGES

State Farm® works hard to offer you the best combination of price, service, and protection. The amount you pay for homeowners insurance is determined by many factors such as the coverages you have, the type of construction, the likelihood of future claims, and information from consumers reports.

**Other limits and exclusions may apply - refer to your policy**

Your policy consists of these Declarations, the Homeowners Policy shown above, and any other forms and endorsements that apply, including those shown above as well as those issued subsequent to the issuance of this policy.

This policy is issued by the State Farm Fire and Casualty Company.

**Participating Policy**

You are entitled to participate in a distribution of the earnings of the company as determined by our Board of Directors in accordance with the Company's Articles of Incorporation, as amended.

In Witness Whereof, the State Farm Fire and Casualty Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary

President



## Your coverage amount....

It is up to you to choose the coverages and limits that meet your needs. We recommend that you purchase a coverage limit at least equal to the estimated replacement cost of your home. Replacement cost estimates are available from building contractors and replacement cost appraisers, or, your agent can provide an Xactware estimate using information you provide about your home. We can accept the type of estimate you choose as long as it provides a reasonable level of detail about your home. State Farm® does not guarantee that any estimate will be the actual future cost to rebuild your home. Higher limits are available at higher premiums. Lower limits are also available, which if selected may make certain coverages unavailable to you. We encourage you to periodically review your coverages and limits with your agent and to notify us of any changes or additions to your home.

HO-2000

36-BD-E747-9    005651

HO-2444.2C
Page 1 of 2

# IMPORTANT NOTICE

## Regarding Changes to Your Policy



Effective with this policy term, **HO-2444.2 BACK-UP OF SEWER OR DRAIN ENDORSEMENT (Home-owners)** replaces **HO-2444 BACK-UP OF SEWER OR DRAIN ENDORSEMENT (Homeowners)**.

This notice summarizes the changes being made to your policy. Please read the new endorsement carefully and note the following changes:

- Language has been added to describe how **COVERAGE C – LOSS OF USE, Option OL – Building Ordinance or Law**, and other **SECTION I – ADDITIONAL COVERAGES** apply to this endorsement.

Endorsement **HO-2444.2** follows this notice. Please read it thoroughly and place it with your policy. If you have any questions about the information in this notice, please contact your State Farm® agent.

---

*DISCLAIMER: This notice only provides a general summary of changes to your State Farm policy. This notice is not a statement of contract. This notice does not change, modify, or invalidate the provisions, terms, or conditions as set forth in your State Farm policy booklet, the most recently issued declarations, and any applicable endorsements.*

---

## BACK-UP OF SEWER OR DRAIN ENDORSEMENT (Homeowners)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY

The following is added to **SECTION I – ADDITIONAL COVERAGES**:

**Back-up of Sewer or Drain.** *We* will pay for accidental direct physical loss to the *dwelling* and covered personal property located within the *dwelling*, caused by back-up of water or sewage, subject to the following:

a. The back-up must be directly and immediately caused solely by water or sewage:

   (1) from outside the *residence premises* plumbing system that enters through a sewer or drain located inside the interior of the *dwelling*; or

   (2) that enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the *dwelling* designed to remove subsurface water drained from the foundation area.

b. Coverage does not apply to:

   (1) losses resulting from *your* failure to:

      (a) keep a sump pump or its related equipment in proper working condition; or

      (b) perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions; or

   (2) losses that occur or are in progress within the first 5 days of the inception of this endorsement. This limitation does not apply when:

      (a) this endorsement is attached to a newly issued policy; or

      (b) this endorsement is attached to replace another Back-Up of Sewer or Drain Endorsement. However, if this endorsement's coverage limits are higher than those of the endorsement it replaces, then the limitation described in (2) above applies only to the increase in coverage limits.

c. If *you* request an increase to the coverage limit for this endorsement, the increased coverage limit does not apply to losses that occur or are in progress within the first 5 days of *your* request.

d. The total limit of insurance provided by this endorsement will not exceed the amount determined by applying the Back-Up Of Sewer Or Drain percentage (%) shown in the *Declarations* to the **COVERAGE A – DWELLING** limit shown in the *Declarations*, as adjusted by the inflation coverage provisions of this policy. This is an additional amount of insurance.

e. The deductible for each loss under this coverage is the amount shown in the *Declarations* under Section I Deductible for "Other Losses" or "All Losses", whichever applies.

f. When applicable, the following coverages apply to a loss covered by this endorsement:

   (1) COVERAGE C – LOSS OF USE;

   (2) SECTION I – ADDITIONAL COVERAGES; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2020

(3) Option OL – Building Ordinance or Law, only if this option is shown in the *Declarations*.

Any payments made for these coverages are included in, and not in addition to, the limit of insurance described in item d. above.

For purposes of this endorsement only:

a. SECTION I – LOSSES INSURED, item 12.b.(2) is deleted from the policy.

b. SECTION I – LOSSES NOT INSURED, Water is replaced by:

Water, meaning:

(1) flood;

(2) surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

(3) waves (including tidal wave, tsunami, and seiche);

(4) tides or tidal water;

(5) overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

(6) spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

(7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Back-Up of Sewer or Drain

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a *building structure*, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, *we* will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a *loss insured*.

c. SECTION I – CONDITIONS, Other Insurance is replaced by:

Other Insurance. This coverage is excess over other valid and collectible insurance.

All other policy provisions apply.

HO-2444.2

©, Copyright, State Farm Mutual Automobile Insurance Company, 2020

(CONTINUED)

36-BD-E747-9      005652

HO-2414.1C
Page 1 of 2

# IMPORTANT NOTICE

## Regarding Changes to Your Policy



Effective with this policy term, **HO-2414.1 EARTHQUAKE AND VOLCANIC EXPLOSION ENDORSE-MENT (Homeowners)** replaces HO-2414 EARTHQUAKE AND VOLCANIC EXPLOSION ENDORSE-MENT (Homeowners).

This notice summarizes the changes being made to your policy. Please read the new endorsement carefully and note the following changes:

- Language has been added to describe how **COVERAGE C – LOSS OF USE, Option OL – Building Ordinance or Law**, and other **SECTION I – ADDITIONAL COVERAGES** apply to this endorsement.

Endorsement **HO-2414.1** follows this notice. Please read it thoroughly and place it with your policy. If you have any questions about the information in this notice, please contact your State Farm® agent.

---

*DISCLAIMER: This notice only provides a general summary of changes to your State Farm policy. This notice is not a statement of contract. This notice does not change, modify, or invalidate the provisions, terms, or conditions as set forth in your State Farm policy booklet, the most recently issued declarations, and any applicable endorsements.*

---

## EARTHQUAKE AND VOLCANIC EXPLOSION ENDORSEMENT (Homeowners)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY

The following is added to SECTION I – ADDITIONAL COV-ERAGES:

**Earthquake and Volcanic Explosion.** *We* will pay for accidental direct physical loss to covered property resulting from an earthquake or volcanic explosion when the loss is directly and immediately caused by:

a.  ground shock waves;

b.  ground tremors;

c.  ground liquefaction; or

d.  damaging amplification of ground motion;

subject to the following:

(1)  *We* will not pay for, under this endorsement, loss arising from earthquake activity or volcanic explosion that begins before the inception of this endorsement.

But, if this endorsement replaces earthquake insurance that excludes loss that occurs after the expiration of the policy, *we* will pay for loss covered by this endorsement due to an earthquake or volcanic explosion that occurs on or after the inception of this endorsement, if the series of earthquake shocks or tremors or volcanic explosions began within 168 hours prior to the inception of this insurance.

(2)  All earthquake activity or volcanic explosions that occurs within any 168-hour period will constitute a single loss. The expiration of this policy will not reduce the 168-hour period.

(3)  Deductible: The deductible for loss caused by earthquake or volcanic explosion is the amount determined by applying the Earth-quake deductible percentage (%) shown in the *Declarations*, to the COVERAGE A – DWELLING limit shown in the *Declarations*.

This deductible applies to all losses covered under this endorsement. The deductible will be subtracted from the total amount of the loss and will apply in place of any other deductible stated in this policy.

(4)  This coverage does not increase the limit applying to the damaged property.

(5)  When applicable, the following coverages apply to a loss covered by this endorsement:

a.  COVERAGE C – LOSS OF USE;

b.  SECTION I – ADDITIONAL COVERAGES; and

c.  Option OL – Building Ordinance or Law, only if this option is shown in the *Declarations*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2020

HO-2414.1C
Page 2 of 2

For the purposes of this endorsement only **SECTION I – LOSSES NOT INSURED, 2.b. Earth Movement** is replaced with the following:

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

(1) earthquake, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Earthquake and Volcanic Explosion;**

(2) landslide, mudslide, or mudflow;

(3) sinkhole or subsidence;

(4) movement resulting from:

(a) improper compaction;

(b) site selection;

(c) natural resource extraction activities;

(d) excavation;

(5) erosion;

(6) pressure by surface or subsurface earth or fill; or

(7) any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action** or **SECTION I – ADDITIONAL COVERAGES, Earthquake and Volcanic Explosion.**

However, *we* will pay for any accidental direct physical loss by fire resulting from earth movement, provided the resulting fire loss is itself a *loss insured*.

All other policy provisions apply.

HO-2414.1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2020

36-BD-E747-9     005653

553-2634.1

## PREMIUM DISCOUNT AVAILABLE FOR USE OF IMPACT-RESISTIVE ROOFING PRODUCTS

State Farm® offers a premium discount for homes that have qualified impact-resistive roofing materials.

Underwriters Laboratories (UL) and Factory Mutual (FM) are nationally recognized testing laboratories that develop safety standards and test products to verify they meet specific performance standards. Both UL and FM have developed testing standards that measure the impact resistance of various roofing materials. The roofing products tested by UL and FM are rated from Class 1 to Class 4, with Class 4 providing the greatest roofing protection.

State Farm offers a premium discount when qualified UL certified or FM approved Class 3 or Class 4 roofing materials have been installed on your home. The discount applies to both new and replacement roofs installed since May 1996 with UL certified products, and since July 2005 with FM approved products.

Discounts are not available for wood roofs, or roofs (other than qualifying metal roofs) that have been overlaid on to existing roofing. Discounts are also subject to limitations and may not be available on all UL or FM Class 3 and 4 impact-resistant roofing products.

Manufacturers continue to bring UL certified and FM approved roofing products to the consumer marketplace. You can visit our web site at http://www.statefarm.com/insurance/other/roofinfo.asp for a list of qualifying products in your state.

If you have any questions about the discounts available for installing an impact-resistive roof or to see if your roof qualifies, please contact your State Farm agent.

**This discount program does not constitute an endorsement or any warranty of performance on the part of State Farm for any particular roofing product. Please research and determine what roofing material is best suited for your home, location and environmental conditions.**

553-2634.1 (C)                    (12/09)

553-4157

## NOTICE TO POLICYHOLDER

For a comprehensive description of coverages and forms, please refer to your policy.

Policy changes that you requested before the "Date Prepared" on your Renewal Declarations are effective on the renewal date of this policy unless indicated otherwise by a separate endorsement, binder or Amended Declarations Page. Any coverage forms or endorsements included with your Renewal Declarations are effective on the renewal date of this policy.

Policy changes that you requested after the "Date Prepared" on your Renewal Declarations will be sent to you as an Amended Declarations Page or as an endorsement to your policy. You will be billed for any resulting premium increase later.

If you have acquired any valuable property items, made any improvements to your home, or have questions about your insurance coverage, please contact your State Farm® agent.

553-4157 (C)

(CONTINUED)

553-4156

# PREMIUM ADJUSTMENT

Insurance premiums have been adjusted and continue to reflect the expected cost of claims. Some policyholders will see their premiums increase while other policyholders may see their premiums decrease or stay the same. The amount your premium changed, if at all, depends on several factors including the expected claim experience in your area, the coverage you have, and any applicable discounts or charges.

The enclosed Renewal Declarations reflects your new premium.

State Farm® works hard to offer you the best combination of cost, protection, and service. We will continue doing our best to make the most effective use of your premium dollars and give you superior service when you need it.

If you have any questions about your premium, or policy coverages, please contact your State Farm agent.

553-4156

553-2798.1

# IMPORTANT NOTICE ABOUT YOUR POLICY

With our Claim Record Rating Plan, your savings will typically increase the fewer claims you have and the longer you're insured with State Farm®. We adjust premiums based on the number of claims under the rating plan. Depending on your state, claims under the plan generally include those resulting in a paid loss and may include weather-related claims where permitted. In addition, any claims with your prior insurer resulting in property damage or injury may also influence your premium.

Our Loyal Customer Discount provides a premium discount based on the number of years that you have been with us.

For more information about whether the Claim Record Rating Plan applies in your state, the claims we consider for the plan, or whether the Loyal Customer Discount is in effect in your state, please contact your State Farm agent.

553-2798.1

**MYRIAD**
**RISK MANAGER**

# Summary Report

| | | | |
|---|---|---|---|
| **Property Owner** | BRADLEY MICHAEL & FARAH BROOKE COX | **Inspection Status** | Done |
| **Property Address** | 4636 NW 160TH TER, EDMOND, OK, 73013-3244 73013-3244 | **Inspection Company** | CIS |
| | | **Inspection Type** | Basic Inspection |
| **Owner Home Phone** | 405-330-8887 | **Unable To Work** | No |
| **Owner Work Phone** | | | |

| | | | |
|---|---|---|---|
| **Review Type** | RENEWAL | **Agent Name** | WRIGHT, JEREL |
| **Agency Number** | 1770 | **Agent Number** | 405-722-6696 |
| **Myriad Risk Manager Tracking Number** | 923254365 | **Underwriter Name** | Ruben Franco |
| | | **Desired Underwriter Name** | |

| | | | |
|---|---|---|---|
| **Policy Number** | 36BDE7479 | **Inspection Company Received Date** | April 29, 2015 |
| **Policy Inception/Renewal Date** | April 3, 2016 | **Inspection Appointment Date** | |
| **Inspection Type** | Basic Inspection | **Inspection Completion Date** | June 26, 2015 |
| **Carrier Order Date** | April 29, 2015 | **Inspection Verification Date** | June 26, 2015 |
| **Carrier Due Date** | June 28, 2015 | **Inspector Due Date** | |
| | | **Inspection Co. Due Date** | |
| | | **Inspector Name** | |

**Replacement Cost**
**Coverage A**

**Comments**

| **Forms Submitted** | **Surveyor Info** |
|---|---|
| | Basic Information |
| | Dwelling Characteristics |
| | Basic Property and Liability |

| **Referral Date** | **Referral Description** |
|---|---|
| June 26, 2015 | Hazard Value greater than 3 |

**Photos**

Address Verification   GPS Location   Front of Dwelling

Right Front of Dwelling   Left Front of Dwelling   Roof

Roof   Other   Rear of Dwelling

Rear of Dwelling

Notes: References to inspection are intended to mean an insurance survey which is for the limited purpose of underwriting the risk and determining eligibility for insurance. This insurance survey is not intended as a health or safety inspection or to ensure compliance with laws that may apply to your premises.

**EXHIBIT**
**3**

## Dwelling Characteristics

| | |
|---|---|
| Total Finished Square Feet | |
| Number of Stories- Unable to Determine | NO |

| Number of Stories | | | | |
|---|---|---|---|---|
| | 1 Story | 80 % | 1 1/2 Stories (Attic) | 20 % |
| | 2 Stories | % | 2 1/2 Stories (Attic) | % |
| | 3 Stories | % | 3 1/2 Stories (Attic) | % |
| | 4 Stories | % | Bi-Level (Raised Ranch) | % |
| | Split Level | % | | |

| Foundation Shape | |
|---|---|
| | ☒ 4-5 Corners - Square/Rectangle    ☐ 6-7 Corners - L Shape    ☐ 8-10 Corners - T,U,Z Shape |
| | ☐ 11-12 Corners - H or Custom Shape    ☐ 13+ Corners - Irregular/Complex |

| Exterior Wall Finish - Unable to Determine | NO |
|---|---|

| Exterior Wall Finish | | | | |
|---|---|---|---|---|
| | Siding - Alum. or Metal | % | Siding - Vinyl | % |
| | Siding - Vinyl Shingles | % | Siding - Hardboard/Masonite | % |
| | Siding - Plywood (Vertical Groove) | % | Siding - Board and Batten | % |
| | Siding - Cedar (Clapboard) | % | Siding - Cedar (Tongue & Groove) | % |
| | Siding - Redwood (Clapboard) | % | Siding - Redwood (Tongue & Groove) | % |
| | Siding - Pine (Clapboard) | % | Siding - Pine (Tongue & Groove) | % |
| | Siding - Cement Fiber (Clapboard) | % | Cement Fiber (Shingle) | % |
| | Wood Shingle/Shake | % | Wood Shingle/Shake (Scalloped) | % |
| | Cypress - Reclaimed | % | Siding - Log | % |
| | Solid Logs - Small (6"-8") | % | Solid Logs - Medium (9"-12") | % |
| | Solid Logs - Large (13" or more) | % | Synthetic Stucco | % |
| | Masonry Stucco | % | Brick Veneer | 80 % |
| | Brick Veneer - Custom | % | Brick - Solid | % |
| | Brick - Solid - Custom | % | Stone Veneer (Natural) | % |
| | Stone Veneer (Manufactured) | 20 % | Cut Limestone Veneer | % |
| | Metal - Copper Shingle | % | Concrete Block - Decorative | % |
| | None - Included In Ext. Wall Construction | % | Metal - Painted Ribbed | % |
| | Metal - Corrugated Galvanized | % | Solid Stone | % |

| Foundation Type - Unable to Determine | NO |
|---|---|

| Foundation Type | | | | |
|---|---|---|---|---|
| | Basement | % | Pier and Grade Beam | % |
| | Shallow Basement | % | Elevated Post/Pier and Beam (Stilts) | % |
| | Concrete Slab | 100 % | Stilts with Sweep Away Walls | % |
| | Crawlspace | % | Deep Pilings | % |

| Garage | | | |
|---|---|---|---|
| | ☐ 1 Car (280 SF) | ☐ 1.5 Car (396 SF) | ☐ 2 Car (576 SF) |
| | ☐ 2.5 Car (672 SF) | ☒ 3 Car (780 SF) | ☐ 3.5 Car (884 SF) |
| | ☐ 4 Car (1040 SF) | ☐ 4.5 Car (1144 SF) | ☐ 5 Car (1248 SF) |
| | ☐ 5.5 Car (1404 SF) | ☐ 6 Car (1512 SF) | ☐ 6.5 Car (1674 SF) |
| | ☐ 7 Car (1782 SF) | ☐ 7.5 Car (1890 SF) | ☐ 8 Car (1998 SF) |
| | ☐ 8.5 Car (2160 SF) | ☐ None | |

| Garage Style | | | |
|---|---|---|---|
| | ☐ Attached / Built-in | ☐ Basement | ☐ Carport |

| Property Slope | | | |
|---|---|---|---|
| | ☒ None (0-15 degrees) | ☐ Moderate (16-30 degrees) | ☐ Steep (greater than 30 degrees) |

Notes: References to inspection are intended to mean an insurance survey which is for the limited purpose of underwriting the risk and determining eligibility for insurance. This insurance survey is not intended as a health or safety inspection or to ensure compliance with laws that may apply to

.

.

# Basic Information

| | |
|---|---|
| Policy Number | 36BDE7479 |
| Inspection Request ID | |
| Due Date | 2015-06-28 |
| Effective Date | 2016-04-03 |
| Project Name | |
| Review Type | Renewal |
| Coverage A Amount | |
| Underwriter | |
| First Name | BRADLEY MICHAEL & FARAH BROOKE |
| Last Name | COX |
| Middle Name | |
| Suffix | |
| Mailing Street Address or PO Box | 4636 NW 160TH TER |
| Policy Holder Address 2 | |
| Mailing Address City | EDMOND |
| Mailing Address State/Province | OK |
| Mailing Address Zip/Postal Code | 73013-3244 |
| Policy Holder Home Phone | 405-330-8887 |
| Policy Holder Work Phone | |
| State Code | 36 |
| Office Code | 26 |
| Agent Code | 1770 |
| Agent Name | WRIGHT, JEREL |
| Agent Phone Number | 405-722-6696 |
| Property and Liability Order Inspection Indicator | Yes |
| Dwelling Characteristics Order Inspection Indicator | Yes |
| Solid Fuel Order Inspection Indicator | No |
| Fuel Oil Tank Order Inspection Indicator | No |
| Wildfire Order Inspection Indicator | No |
| Landslide Order Inspection Indicator | No |
| Earthquake Order Inspection Indicator | No |
| High Value Order Inspection Indicator | No |
| Total Finished Square Feet | |
| Number of Stories | |
| Foundation Shape | |
| Foundation Type | |
| Exterior Wall Finish | |
| Garage | |
| Garage Style | |
| Property Slope | |
| Roof Shape | |
| Roof Cover/Material | Composition Architectural Dimensional |

| Construction Type | Masonry Veneer |
|---|---|
| Non-Conventional Construction | |
| Policy Type | HOW |
| 360Value Estimate Number | H3W3-M9AA-2 |
| Tank Type | |
| Experienced Prior Leak | |
| Leak Remediation Details | |
| Mold Damage | . |
| Mold Damage Remediated | |
| Unrepaired Damage | |
| Unrepaired Damage Explain | |
| Water Damage | |
| Water Damage Repaired | |
| Market Area | South Central |
| Operations Structure | South Central |
| High Priority Inspection Indicator | |
| Order Reason | |
| Order Reason Other - Describe | |
| Property Address Latitude | |
| Property Address Longitude | |
| Urban/Rural Determination | Unknown - Not Applicable |
| Comments | |

# Basic Property and Liability

## Home Type

| | |
|---|---|
| Manufactured Home | ☐ Yes ☒ No |
| Non-Conventional Construction | ☐ Yes ☒ No |
| Explain Yes | |

## Construction

| | |
|---|---|
| Construction | ☐ Fire Resistive ☐ Frame ☐ Log ☐ Masonry ☒ Masonry Veneer ☐ Asbestos/Stucco (Texas Only) |

## Foundation

| | |
|---|---|
| Foundation needs repair | ☐ Yes ☒ No |
| Large Cracks | ☐ Yes ☒ No |
| Leaning | ☐ Yes ☒ No |
| Evidence of settling | ☐ Yes - Major Settling ☐ Yes - Minor Settling ☒ No |

## Electrical

| | |
|---|---|
| 60 Amp Electrical Service Entrance | ☐ Yes ☒ No |

## Roof Condition

| | |
|---|---|
| Roof Shape | ☐ Complex/Custom ☐ Flat ☐ Gable ☐ Gambrel ☐ Mansard ☐ Partial Hip ☒ Total Hip ☐ Unable to Determine |
| Roof Cover - Unable to Determine | NO |

| Roof Cover | | % | | % |
|---|---|---|---|---|
| | Composition - 3 Tab | % | Metal - Tile/Shake | % |
| | Composition - Architectural Dimensional | 100 % | Metal - Painted Rib | % |
| | Composition - Impact Resist. Shingle | % | Tile - Clay | % |
| | Composition - Roll Roofing | % | Tile - Concrete | % |
| | Composition over Wood Shingle or Shake | % | Tile - Glazed | % |
| | Built-up Hot Mopped w/Gravel | % | Tile - Cement Fiber | % |
| | Built-up Hot Mopped w/o Gravel | % | Membrane - EPDM or PVC | % |
| | Metal - Standing Seam | % | Wood Shingles or Shakes | % |
| | Metal - Copper Shingle | % | Wood Shingles/Shakes-Deco Pattern. | % |
| | Metal - Standing Seam Copper | % | Slate | % |
| | Metal - Corrugated Galvanized | % | Sprayed Polyurethane Foam (SPF) | % |
| | Wood Shingles and Wood Shake | % | Composition Shake | % |
| | Discontinued/Obsolete Roofing Material (i.e. Asbestos, T-Lock, etc.) | % | Composition - Architectural Shingle | % |

| | |
|---|---|
| If Composition Roll Roofing or SPF | ☐ Not over living space ☐ Over living space |
| Number of Roof Layers* | ☒ 1 ☐ 2 ☐ 3 or more ☐ Unable to Determine |
| Shingles Curling and/or Splitting | ☐ Major ☐ Minor ☐ NA ☒ No |
| Impact Marks on Shingles | ☐ Major ☐ Minor ☐ NA ☒ No |
| Granule Loss | ☐ Major ☐ Minor ☐ NA ☒ No |
| Missing Shingles | ☐ Major ☐ Minor ☐ NA ☒ No |
| Lack of Ventilation | ☐ Major ☐ Minor ☐ NA ☒ No |
| Uneven Roof Surface | ☐ Major ☐ Minor ☐ NA ☒ No |
| Flat roof exhibiting tears, blisters, patches, ponding, or deterioration. | ☐ Major ☐ Minor ☐ NA ☒ No |
| Algae, moss, mildew, fungus/mold or other growths on any type of roof | ☐ Major ☐ Minor ☐ NA ☒ No |
| Has Roof Been Patched or Repaired | ☐ Can't Confirm ☒ No ☐ Yes |

| Patch Type | ☐ Major Tar Patch ☐ Minor Tar Patch ☐ Other ☐ Shingles Replaced Improperly |
|---|---|
| Describe (if Other) | |
| Damage to Metal Roof | ☐ Major ☐ Minor ☒ NA ☐ No |
| Notes: | |

## Chimney Condition

| Is there a masonry chimney | ☐ Yes ☒ No |
|---|---|
| Missing, damaged or deteriorating flashing | ☐ Yes ☒ No |
| Missing, damaged or deteriorated components | ☐ Yes ☒ No |
| Leaning or pulling away from house | ☐ Yes ☒ No |

## Gutters/Downspouts

| Deteriorated , damaged, or missing components | ☐ Yes ☒ No |
|---|---|
| Do downspouts direct water away from the foundation | ☒ Yes ☐ No |
| Clogged | ☐ Yes ☒ No |

## Soffits/Fascia/Eaves

| Missing | ☐ Yes ☒ No |
|---|---|
| Deteriorated and or Damaged *(Does not include cosmetic damage like peeling paint)* | ☐ Yes ☒ No |

## Exterior Wall Finish Condition (Siding, Brick, etc.)

| Damaged | ☐ Yes ☒ No |
|---|---|
| Missing | ☐ Yes ☒ No |
| Deteriorated | ☐ Yes ☒ No |

## Porches/Decks

| Porches/Decks need repair | ☐ Yes ☒ No |
|---|---|
| Decks missing rails | ☐ Yes ☒ No |
| Pulling away from house | ☐ Yes ☒ No |
| Missing Boards | ☐ Yes ☒ No |
| Inadequate support | ☐ Yes ☒ No |

## Railing/Steps

| Missing, deteriorated or damaged components *(Note: Handrails are required if there are 4 or more risers)* | ☐ Yes ☒ No |
|---|---|
| Pulling away from house | ☐ Yes ☒ No |

## Detached Structures

| Detached Structures Overall condition and picture | ☐ In need of repair ☒ NA ☐ OK |
|---|---|

## Glass

| Broken/Boarded Glass | ☐ Yes ☒ No |
|---|---|

## Sidewalks/Walkways

| Sidewalks/Walkways need repair | ☐ Yes ☒ No |
|---|---|
| Very Uneven | ☐ Yes ☒ No |
| Broken/Crumbling | ☐ Yes ☒ No |

## Animals on premises

| | |
|---|---|
| Any dogs on the premises | ☐ Yes ☒ No |
| Aggressive/Vicious | ☐ Yes ☐ No |

## Any of the following livestock on premises

| | |
|---|---|
| Horses | 0 |
| Cattle/Cows | 0 |
| Any other animals capable of causing injury or damaging property | ☐ Yes ☒ No |
| Other Animal Type | |

## Swimming Pool

| | |
|---|---|
| Is there a swimming pool | ☐ Yes ☒ No ☐ Unable to Determine |
| If Yes, what type | ☐ Above Ground ☐ In Ground |
| Is pool fenced | ☐ Yes ☐ No |
| Self Latching Gate or Fence Present and Operable | ☐ Yes ☐ No |

## Playground/Recreation Equipment

| | |
|---|---|
| Is there a trampoline | ☐ Yes ☒ No ☐ Unable to Determine |
| If yes, trampoline condition | ☐ Good ☐ Poor |
| Is there a skateboard ramp | ☐ Yes ☒ No ☐ Unable to Determine |
| If yes, ramp condition | ☐ Good ☐ Poor |
| Is there a zipline | ☐ Yes ☒ No ☐ Unable to Determine |
| Is there playground equipment | ☒ Yes ☐ No ☐ Unable to Determine |
| If yes, equipment condition | ☒ Good ☐ Poor |

## Brush/Debris

| | |
|---|---|
| Brush/Debris close (within 5 ft.) to or touching home | ☐ Yes ☒ No |
| Junked Cars | ☐ Yes ☒ No |
| Appliances | ☐ Yes ☒ No |
| Excessive garbage on premises | ☐ Yes ☒ No |
| Overgrown/Unkept Brush | ☐ Yes ☒ No |
| Other | ☐ Yes ☒ No |
| Describe (if Other) | |

## Other Items

| | |
|---|---|
| Evidence of business on premises | ☐ Yes ☒ No |
| Explain if yes | |
| Farming activities (Commercial Farm Equipment and/or large farm buildings and silos present) | ☐ Yes ☒ No |
| New home under construction | ☐ Yes ☒ No |
| Major renovation in progress | ☐ Yes ☒ No |
| Vacant Residence | ☐ Yes ☒ No |
| Rental Property | ☐ Yes ☒ No |
| If Rental Property Yes, this question required: If over 1 story or occupied basement, are there a minimum of 2 forms of egress from each floor or basement. | ☐ Yes ☐ No |
| Number of Family Units | ☒ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 or more |
| Property for Sale or Rent | ☐ Yes ☒ No |
| Retaining Wall in disrepair | ☐ Yes ☒ No |
| Metal Security Bars on Windows with no | ☐ Yes ☒ No |

| Other Exposures | |
|---|---|
| Solid Fuel | ☐ Yes ☒ No ☐ Unable to Determine |
| Fuel Oil Tank | ☐ Yes ☒ No ☐ Unable to Determine |
| Wildfire | ☐ Yes ☒ No ☐ Unable to Determine |
| Earthquake | ☐ Yes ☐ No ☒ Unable to Determine |
| Landslide | ☐ Yes ☐ No ☒ Unable to Determine |
| Additional Comments | |

Notes: References to inspection are intended to mean an insurance survey which is for the limited purpose of underwriting the risk and determining eligibility for insurance. This insurance survey is not intended as a health or safety inspection or to ensure compliance with laws that may apply to your premises.

# Photographs
**Address Verification**



GPS Location



**Front of Dwelling**



**Right Front of Dwelling**



**Left Front of Dwelling**



Roof



Roof



Other



**Rear of Dwelling**



**Rear of Dwelling**



COX, BRADLEY                                                                                                     36-44N9-59X



**State Farm**
**P.O. Box 106169**
**Atlanta, GA  30348-6169**
**Fax: 1-844-236-3646**
**statefarmfireclaims@statefarm.com**

## Structural Damage Claim Policy

This estimate is priced based on estimated market pricing for the cost of materials, labor, and other factors at the time of the loss.

Adjustments in market pricing and timing of the repairs may impact the final cost of covered repairs. Should you or the contractor you select have questions concerning our estimate, please contact us. If your contractor's estimate is higher than ours, you should contact us prior to beginning repairs. State Farm will work with you and your contractor to determine the actual and necessary cost of covered repairs at the time repairs will be completed, subject to policy terms, conditions and limits.

- We want you to receive quality repair work to restore the damages to your property.

- We will provide you with a detailed estimate of the scope of the damage and costs of repairs. Should the contractor you select have questions concerning our estimate, they should contact your claim representative directly.

- Depending upon the complexity of your repair, our estimate may or may not include an allowance for general contractor's overhead and profit. If you have questions regarding general contractor's overhead and profit and whether general contractor services are appropriate for your loss, please contact your claim representative before proceeding with repairs.

- There may be building codes, ordinances, laws, or regulations that affect the repairs of your property. These items may or may not be covered by your policy. Please contact your claim representative if you have any questions regarding coverage which may be available under your policy.

- State Farm® cannot authorize any contractor to proceed with work on your property. Repairs should proceed only with your authorization.

- State Farm does not guarantee the quality of the workmanship of any contractor or guarantee that the work will be accomplished within any specific time frame.

- It is understood that the contractor is hired by you, our insured, and that they work for you - not State Farm.

If you have any questions or need additional information regarding your claim, please contact your claim representative immediately.

EXHIBIT
4

Date:    3/5/2024 7:17 PM                                                          132214.1  06-18-2009          Page: 1

36-44N9-59X

# &StateFarm    Building Estimate Summary Guide

## This summary guide is based on a sample estimate and is provided for reference only.
## Please refer to the estimate for specifics of your claim.

### State Farm Insurance

| | | | |
|---|---|---|---|
| Insured: | Smith, Joe & Jane | Estimate: | 00-0000-000 |
| Property: | 1 Main Street | Claim number: | 00-0000-000 |
| | Anywhere, IL 00000-0000 | Policy Number: | 00-00-0000-0 |
| Type of Loss: | Other | Price List: | ILBL8F_MAR 13 |
| Deductible: | $1,000.00 | | Restoration/Service/ Remodel F = Factored In, D = Do Not Apply |

### Summary for Dwelling

| | | | |
|---|---|---|---|
| Line Item Total [1] | | | 5,953.10 |
| Material Sales Tax | @ | 10.000% x 1,520.00 | |
| Subtotal | | | 6,105.10 |
| General Contractor Overhead [2] | @ | 10.0% x 6,105.10 | 610.51 |
| General Contractor Profit | @ | 10.0% x 6,105.10 | |
| Replacement Cost Value (Including General Contractor Overhead and Profit [3] | | | 7,326.12 |
| Less Depreciation (Including Taxes) [4] | | | (832.50) |
| Less General Contractor Overhead & Profit on Recoverable & Non - recoverable Depreciation | | | (166.50) |
| Less Deductible [5] | | | |
| Net Actual Cash Value Payment [6] | | | |

### Maximum Additional Amounts Available If Incurred:

| | | |
|---|---|---|
| Total Line Item Depreciation (Including Taxes) [4] | 832.50 | |
| Less Non - recoverable Depreciation (Including Taxes) [7] | | |
| Subtotal | | 312.50 |
| General Contractor O&P on Depreciation | 166.50 | |
| Less General Contractor O&P on Non - recoverable Depreciation | | |
| Subtotal | | |
| Total Maximum Additional Amounts Available If Incurred [8] | | |
| Total Amount of Claim If Incurred [9] | | |

Claim Representative

**ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND LIMITS OF YOUR POLICY.**

1. **Line Item Total** – Total value of all line items in the estimate plus possible adjustments for *labor minimums*. *Labor Minimum* is to cover a certain minimum number of hours for drive-time, set up time and applicable administrative costs and repairs.

2. **General Contractor's Overhead and Profit** – General contractor's charge for coordinating your repairs.

3. **Replacement Cost Value (RCV)** – Estimated cost to repair or replace damaged property.

4. **Depreciation** – The decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence. A portion or all of this amount may be eligible for replacement cost benefits.

5. **Deductible** – The insurer will pay for losses, up to the policy limits, in excess of your applicable deductible.

6. **Net Actual Cash Value Payment (ACV)** – The repair or replacement cost of the damaged part of the property less *depreciation* and *deductible*.

7. **Non Recoverable Depreciation** – *Depreciation* applied to items that are not eligible for replacement cost benefits.

8. **Total Maximum Additional Amount if Incurred** – Total amount of recoverable depreciation after actual repair or replacement of the property.

9. **Total Amount of Claim if Incurred** – Total amount of the claim, including *net actual cash value payment and total maximum additional amount available if incurred*.

## State Farm

COX, BRADLEY                                                                                  36-44N9-59X

| | | | |
|---|---|---|---|
| Insured: | COX, BRADLEY | Estimate: | 36-44N9-59X |
| Property: | 4636 NW 160TH TER | Claim Number: | 3644N959X |
| | EDMOND, OK 73013-3244 | Policy Number: | 36BDE7479 |
| Home: | 405-330-8887 | Price List: | OKOC28_JAN23 |
| Cellular: | 405-226-4912 | | Restoration/Service/Remodel |
| Type of Loss: | Water Damage | | |
| Deductible: | $6,366.00 | | |
| Date of Loss: | 1/17/2023 | | |
| Date Inspected: | 2/2/2023 | | |

### Summary for Coverage A - Dwelling - 37 Water Damage and Freezing

| | |
|---|---|
| Line Item Total | 18,704.19 |
| Material Sales Tax | 109.42 |
| Subtotal | 18,813.61 |
| General Contractor Overhead | 569.62 |
| General Contractor Profit | 569.62 |
| Replacement Cost Value (Including General Contractor Overhead and Profit) | 19,952.85 |
| Less Depreciation (Including Taxes) | (448.04) |
| Less General Contractor Overhead & Profit on Recoverable & Non-recoverable Depreciation | (89.60) |
| Less Deductible | (6,366.00) |
| Less Prior Claim Payment | (6,569.66) |
| Net Actual Cash Value Payment | $6,479.55 |

### Maximum Additional Amounts Available If Incurred:

| | | |
|---|---|---|
| Total Line Item Depreciation (Including Taxes) | 448.04 | |
| General Contractor O&P on Depreciation | 89.60 | |
| Replacement Cost Benefits | 537.64 | |
| Total Remaining Maximum Additional Amount Available If Incurred | | 537.64 |
| Total Amount of Claim If Incurred | | $13,586.85 |

Abbage, Jerome
844-458-4300

## ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND LIMITS OF YOUR POLICY.

A residential or commercial roofing contractor providing repairs or improvement services to be paid by an insured from the proceeds of a property or casualty insurance policy shall not, as an inducement to the sale or provision of goods or services to an insured, advertise or promise to pay, directly or indirectly, all or part of any applicable insurance deductible or offer to compensate an insured for providing any service to the insured. If a roofing contractor violates the provisions of this section, the insurer to whom the insured tendered the claim shall not be obligated to consider the estimate prepared by the roofing contractor. Every roofing contractor shall provide a written notification of the requirements of this section with its initial estimate. The adjuster or insurer shall provide a written notification of the requirements of this section in the initial estimate relating to the claim.

## State Farm

COX, BRADLEY                                                        36-44N9-59X

| | | | |
|---|---|---|---|
| Insured: | COX, BRADLEY | Estimate: | 36-44N9-59X |
| Property: | 4636 NW 160TH TER | Claim Number: | 3644N959X |
| | EDMOND, OK 73013-3244 | Policy Number: | 36BDE7479 |
| Home: | 405-330-8887 | Price List: | OKOC28_JAN23 |
| Cellular: | 405-226-4912 | | Restoration/Service/Remodel |
| Type of Loss: | Water Damage | | |
| Deductible: | $0.00 | | |
| Date of Loss: | 1/17/2023 | | |
| Date Inspected: | 2/2/2023 | | |

### Summary for Coverage B - Personal Property - 38 Water Damage and Freezing - W

| | |
|---|---|
| Line Item Total | 3,249.03 |
| Replacement Cost Value | 3,249.03 |
| Less Deductible | (0.00) |
| Less Prior Claim Payment | (3,249.03) |
| Net Payment | $0.00 |

Abbage, Jerome

844-458-4300

**ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND LIMITS OF YOUR POLICY.**

A residential or commercial roofing contractor providing repairs or improvement services to be paid by an insured from the proceeds of a property or casualty insurance policy shall not, as an inducement to the sale or provision of goods or services to an insured, advertise or promise to pay, directly or indirectly, all or part of any applicable insurance deductible or offer to compensate an insured for providing any service to the insured. If a roofing contractor violates the provisions of this section, the insurer to whom the insured tendered the claim shall not be obligated to consider the estimate prepared by the roofing contractor. Every roofing contractor shall provide a written notification of the requirements of this section with its initial estimate. The adjuster or insurer shall provide a written notification of the requirements of this section in the initial estimate relating to the claim.

**StateFarm**

# Explanation of Building Replacement Cost Benefits
## Homeowner Policy
## Coverage A - Dwelling - 37 Water Damage and Freezing

To: Name:         COX, BRADLEY
    Address:      4636 NW 160TH TER
    City:         EDMOND
    State/Zip:    OK, 73013-3244

Insured:        COX, BRADLEY                Claim Number:   3644N959X
Date of Loss:   1/17/2023                   Cause of Loss:  WATER

Your insurance policy provides replacement cost benefits for some or all of the loss or damage to your dwelling or structures. Replacement cost benefits pays the actual and necessary cost of repair or replacement, without a deduction for depreciation, subject to your policy's limit of liability. To receive replacement cost benefits you must:

1. Complete the actual repair or replacement of the damaged part of the property within two years of the date of loss;
2. Promptly notify us within 30 days after the work has been completed; and
3. Confirm completion of repair or replacement, by submitting invoices, receipts or other documentation to your agent or claim office.

Until these requirements have been satisfied, our payment(s) to you will be for the actual cash value of the damaged part of the property, which may include a deduction for depreciation.

Without waiving the above requirements, we will consider paying replacement cost benefits prior to actual repair or replacement if we determine repair or replacement costs will be incurred because repairs are substantially under way or you present a signed contract acceptable to us.

The estimate to repair or replace your damaged property is $19,952.85 . The enclosed claim payment to you of $6,479.55 is for the actual cash value of the damaged property at the time of loss, less any deductible that may apply. We determined the actual cash value by deducting depreciation from the estimated repair or replacement cost. Our estimate details the depreciation applied to your loss. Based on our estimate, the additional amount available to you for replacement cost benefits (recoverable depreciation) is $ 537.64 .

If you cannot have the repairs completed for the repair/replacement cost estimated, please contact your claim specialist prior to beginning repairs.

All policy provisions apply to your claim.

**State Farm**

COX, BRADLEY

36-44N9-59X

**Main Level**

**Main Level**

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| Clean ductwork - Interior (PER REGISTER) | | | | | | | |
| 6.00 EA | 41.06 | 0.05 | 49.30 | 295.71 | | | 295.71 |
| Due to water getting into some of the floor ducts. | | | | | | | |
| * Sooner Hardwood Floors Repair Bid | | | | | | | |
| 1.00 EA | 13,118.12 EN | 0.00 | 0.00 | 13,118.12 | | | 13,118.12 |
| **Total: Main Level** | | **0.05** | **49.30** | **13,413.83** | | **0.00** | **13,413.83** |

**Office**                                                                    Height: 10'

| | |
|---|---|
| 423.86 SF Walls | 170.64 SF Ceiling |
| 594.50 SF Walls & Ceiling | 170.64 SF Floor |
| 51.64 LF Ceil. Perimeter | 40.72 LF Floor Perimeter |

| | | |
|---|---|---|
| Window | 1' 3" X 6' 3" | Opens into Exterior |
| Window | 2' 1" X 6' 3" | Opens into Exterior |
| Window | 1' 3" X 6' 3" | Opens into Exterior |
| Door | 5' X 6' 8" | Opens into LIVING_ROOM |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| Remove Bookcase - built in - 12" - (SF of face area) | | | | | | | |
| 10.35 SF | 0.78 | 0.00 | 1.62 | 9.69 | | | 9.69 |
| To remove the rest of the water damaged wood floor in this room. | | | | | | | |
| Install Bookcase - built in - 12" - (SF of face area) | | | | | | | |
| 10.35 SF | 6.13 | 0.00 | 12.70 | 76.15 | | | 76.15 |
| Finish bookcase - 1 coat urethane | | | | | | | |
| 10.35 SF | 1.76 | 0.41 | 3.72 | 22.35 | 3/15 yrs Avg. | (4.46) 20.00% | 17.89 |
| Detach & Reset Window blind - PVC - 2" - 7.1 to 14 SF | | | | | | | |
| 3.00 EA | 33.21 | 0.00 | 19.92 | 119.55 | | | 119.55 |
| Remove Tear out wood flooring and subfloor | | | | | | | |
| 10.35 SF | | | | | | | PER ESTIMATE |
| Floor underneath the bookcase. | | | | | | | |
| Sprayed polyurethane foam - open cell - 4" | | | | | | | |
| 144.17 SF | 2.22 | 6.59 | 65.34 | 391.99 | 3/100 yrs Avg. | (11.76) 3.00% | 380.23 |
| Vapor barrier - visqueen - 6mil | | | | | | | |
| 85.32 SF | | | | | | | PER ESTIMATE |

# State Farm

COX, BRADLEY

36-44N9-59X

### CONTINUED - Office

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| Underlayment - 1/2" BC plywood | | | | | | | |
| 85.32 SF | | | | | | | PER ESTIMATE |
| Vapor barrier - 15# felt | | | | | | | |
| 85.32 SF | | | | | | | PER ESTIMATE |
| Oak flooring - #1 common - no finish | | | | | | | |
| 85.32 SF | | | | | | | PER ESTIMATE |
| Half of the floor only was removed in this room. | | | | | | | |
| Sand, stain, and finish wood floor | | | | | | | |
| 170.64 SF | | | | | | | PER ESTIMATE |
| Add for dustless floor sanding | | | | | | | |
| 170.64 SF | | | | | | | PER ESTIMATE |
| Judges paneling - raised panel - hardwood | | | | | | | |
| 43.25 SF | 33.45 | 53.05 | 299.96 | 1,799.72 | 3/150 yrs Avg. | (35.99) 2.00% | 1,763.73 |
| Stain and finish wood judges paneling | | | | | | | |
| 122.16 SF | 4.74 | 3.48 | 116.50 | 699.02 | 3/15 yrs Avg. | (139.81) 20.00% | 559.21 |
| 1/2" drywall - hung, taped, floated, ready for paint | | | | | | | |
| 100.92 SF | 3.14 | 5.40 | 64.46 | 386.75 | 3/150 yrs Avg. | (7.73) 2.00% | 379.02 |
| Seal/prime then paint the surface area (2 coats) | | | | | | | |
| 100.92 SF | 0.95 | 1.65 | 19.52 | 117.04 | 3/15 yrs Avg. | (23.40) 20.00% | 93.64 |
| * Paint walls one coat less the walls being sealed/painted already | | | | | | | |
| 260.53 SF | 0.66 | 3.15 | 35.04 | 210.14 | 3/15 yrs Avg. | (42.02) 20.00% | 168.12 |
| Detach & Reset Baseboard - 5 1/4" stain grade | | | | | | | |
| 15.72 LF | 2.25 | 0.03 | 7.08 | 42.48 | | | 42.48 |
| Baseboard - 5 1/4" stain grade | | | | | | | |
| 25.00 LF | 6.07 | 9.16 | 32.20 | 193.11 | | | 193.11 |
| Stain & finish baseboard - oversized | | | | | | | |
| 25.00 LF | 1.78 | 0.63 | 9.02 | 54.15 | 3/15 yrs Avg. | (10.83) 20.00% | 43.32 |
| Finish baseboard - oversized - 1 coat urethane | | | | | | | |
| 15.72 LF | 1.13 | 0.30 | 3.62 | 21.68 | 3/15 yrs Avg. | (4.33) 20.00% | 17.35 |
| **Totals: Office** | | **83.85** | **690.70** | **4,143.82** | | **280.33** | **3,863.49** |

## State Farm

COX, BRADLEY

36-44N9-59X

| Living Room | | Height: 10' |
|---|---|---|
| 1,086.63 SF Walls | | 576.18 SF Ceiling |
| 1,662.81 SF Walls & Ceiling | | 571.91 SF Floor |
| 115.41 LF Ceil. Perimeter | | 107.00 LF Floor Perimeter |

| | | |
|---|---|---|
| Door | 2' 6" X 6' 8" | Opens into HALL_CLOSET |
| Window | 2' 11" X 6' 9" | Opens into Exterior |
| Window | 2' 11" X 6' 9" | Opens into Exterior |
| Missing Wall | 10' 6" X 10' | Opens into DINING_ROOM |
| Door | 2' 6" X 6' 8" | Opens into BATHROOM |
| Door | 5' X 6' 8" | Opens into OFFICE |
| Door | 3' X 6' 8" | Opens into Exterior |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| Detach & Reset Window blind - PVC - 2" - 14.1 to 20 SF | | | | | | | |
| 2.00 EA | 33.21 | 0.00 | 13.28 | 79.70 | | | 79.70 |
| Paint the walls - one coat | | | | | | | |
| 1,086.63 SF | 0.66 | 13.12 | 146.06 | 876.36 | 3/15 yrs Avg. | (175.28) 20.00% | 701.08 |
| Allowing due to visible wall damage during baseboard removal. | | | | | | | |
| Vapor barrier - visqueen - 6mil | | | | | | | |
| 75.00 SF | | | | | | | PER ESTIMATE |
| Underlayment - 1/2" BC plywood | | | | | | | |
| 75.00 SF | | | | | | | PER ESTIMATE |
| Vapor barrier - 15# felt | | | | | | | |
| 75.00 SF | | | | | | | PER ESTIMATE |
| Oak flooring - #1 common - no finish | | | | | | | |
| 75.00 SF | | | | | | | PER ESTIMATE |
| Small area of flooring removed in this room. | | | | | | | |
| Sand, stain, and finish wood floor | | | | | | | |
| 571.91 SF | | | | | | | PER ESTIMATE |
| Add for dustless floor sanding | | | | | | | |
| 571.91 SF | | | | | | | PER ESTIMATE |
| Detach & Reset Baseboard - 5 1/4" stain grade | | | | | | | |
| 89.00 LF | 2.25 | 0.15 | 40.10 | 240.50 | | | 240.50 |
| Baseboard - 5 1/4" stain grade | | | | | | | |
| 18.00 LF | 6.07 | 6.60 | 23.18 | 139.04 | 3/150 yrs Avg. | (2.78) 2.00% | 136.26 |
| Stain & finish baseboard - oversized | | | | | | | |
| 18.00 LF | 1.78 | 0.45 | 6.50 | 38.99 | 3/15 yrs Avg. | (7.80) 20.00% | 31.19 |
| Finish baseboard - oversized - 1 coat urethane | | | | | | | |
| 89.00 LF | 1.13 | 1.69 | 20.46 | 122.72 | 3/15 yrs Avg. | (24.55) 20.00% | 98.17 |

## State Farm

COX, BRADLEY                                                                                    36-44N9-59X

### CONTINUED - Living Room

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| **Totals: Living Room** | | 22.01 | 249.58 | 1,497.31 | | 210.41 | 1,286.90 |

**Hall Closet**                                                                                 Height: 8'

|  |  |
|---|---|
| 93.33 SF Walls | 7.81 SF Ceiling |
| 101.15 SF Walls & Ceiling | 7.81 SF Floor |
| 11.67 LF Ceil. Perimeter | 11.67 LF Floor Perimeter |

**Door**              2' 6" X 6' 8"                      Opens into LIVING_ROOM

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| Detach & Reset Baseboard - 5 1/4" stain grade | | | | | | | |
| 11.67 LF | 2.25 | 0.02 | 5.26 | 31.54 | | | 31.54 |
| Finish baseboard - oversized - 1 coat urethane | | | | | | | |
| 11.67 LF | 1.13 | 0.22 | 2.68 | 16.09 | 3/15 yrs Avg. | (3.22) 20.00% | 12.87 |
| Sand, stain, and finish wood floor | | | | | | | |
| 7.81 SF | | | | | | | PER ESTIMATE |
| Add for dustless floor sanding | | | | | | | |
| 7.81 SF | | | | | | | PER ESTIMATE |
| **Totals: Hall Closet** | | 0.24 | 7.94 | 47.63 | | 3.22 | 44.41 |

## State Farm

COX, BRADLEY

36-44N9-59X

**Dining Room**                                                                 **Height: 10'**

| | |
|---|---|
| 270.83 SF Walls | 174.13 SF Ceiling |
| 444.96 SF Walls & Ceiling | 174.13 SF Floor |
| 27.08 LF Ceil. Perimeter | 27.08 LF Floor Perimeter |

| | | |
|---|---|---|
| **Missing Wall** | 10' 6" X 10' | Opens into LIVING_ROOM |
| **Missing Wall** | 16' 5" X 10' | Opens into Exterior |
| **Door** | 2' 8" X 6' 8" | Opens into Exterior |
| **Window** | 2' 11" X 6' 9" | Opens into Exterior |
| **Window** | 2' 11" X 6' 9" | Opens into Exterior |
| **Window** | 2' 11" X 6' 9" | Opens into Exterior |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| Detach & Reset Window blind - PVC - 2" - 14.1 to 20 SF | | | | | | | |
| 3.00 EA | 33.21 | 0.00 | 19.92 | 119.55 | | | 119.55 |
| Paint the walls - one coat | | | | | | | |
| 270.83 SF | 0.66 | 3.27 | 36.42 | 218.44 | 3/15 yrs Avg. | (43.68) 20.00% | 174.76 |
| Open to the Living Room with no natural break on the walls. | | | | | | | |
| **Totals: Dining Room** | | **3.27** | **56.34** | **337.99** | | **43.68** | **294.31** |

**Bathroom**                                                                   **Height: 10'**

| | |
|---|---|
| 284.35 SF Walls | 46.85 SF Ceiling |
| 331.20 SF Walls & Ceiling | 46.85 SF Floor |
| 28.43 LF Ceil. Perimeter | 28.43 LF Floor Perimeter |

| | | |
|---|---|---|
| **Door** | 2' 6" X 6' 8" | Opens into LIVING_ROOM |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| No visible damages in this room and no materials removed by the mitigation contractor. | | | | | | | |
| **Totals: Bathroom** | | **0.00** | **0.00** | **0.00** | | **0.00** | **0.00** |

**Debris Removal**

| | | |
|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls & Ceiling |

## State Farm

COX, BRADLEY

36-44N9-59X

| | |
|---|---|
| 0.00 SF Floor | 0.00 SF Short Wall |
| 0.00 SF Long Wall | |

0.00 LF Floor Perimeter
0.00 LF Ceil. Perimeter

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| Haul debris - per pickup truck load - including dump fees | | | | | | | |
| 1.00 EA | 149.41 | 0.00 | 29.88 | 179.29 | | | 179.29 |
| **Totals: Debris Removal** | | **0.00** | **29.88** | **179.29** | | **0.00** | **179.29** |

Area Totals: Main Level

| | | |
|---|---|---|
| 2,159.00 SF Walls | 975.61 SF Ceiling | 3,134.61 SF Walls and Ceiling |
| 971.34 SF Floor | 1,040.91 Total Area | 214.90 LF Floor Perimeter |
| 971.34 Floor Area | 172.00 Exterior Perimeter of Walls | 234.23 LF Ceil. Perimeter |
| 1,708.67 Exterior Wall Area | | 2,159.00 Interior Wall Area |

| Total: Main Level | 109.42 | 1,083.74 | 19,619.87 | | 537.64 | 19,082.23 |
|---|---|---|---|---|---|---|

### Contents Packing/Storage

| | |
|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling |
| 0.00 SF Floor | 0.00 SF Short Wall |
| 0.00 SF Long Wall | |

0.00 SF Walls & Ceiling
0.00 LF Floor Perimeter
0.00 LF Ceil. Perimeter

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| * Contents Packing/Storage Per Public Adjuster Estimate | | | | | | | |
| 1.00 EA | 3,249.03 EN | 0.00 | 0.00 | 3,249.03 | | | 3,249.03 |
| **Totals: Contents Packing/Storage** | | **0.00** | **0.00** | **3,249.03** | | **0.00** | **3,249.03** |

### Labor Minimums Applied

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| Drywall labor minimum | | | | | | | |
| 1.00 EA | 275.73 | 0.00 | 55.14 | 330.87 | | | 330.87 |
| * Cleaning labor minimum | | | | | | | |
| 1.00 EA | 1.75 | 0.00 | 0.36 | 2.11 | | | 2.11 |
| **Totals: Labor Minimums Applied** | | **0.00** | **55.50** | **332.98** | | **0.00** | **332.98** |

| **Line Item Totals: 36-44N9-59X** | **109.42** | **1,139.24** | **23,201.88** | | **537.64** | **22,664.24** |
|---|---|---|---|---|---|---|

Date:    3/5/2024 7:17 PM

Page: 11

**State Farm**

COX, BRADLEY                                                                                                          36-44N9-59X

| COVERAGE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Coverage A - Dwelling - 37 Water Damage and Freezing | 109.42 | 1,139.24 | 19,952.85 | (537.64) | 19,415.21 |
| Coverage B - Personal Property - 38 Water Damage and Freezing - W | 0.00 | 0.00 | 3,249.03 | (0.00) | 3,249.03 |
| Total | 109.42 | 1,139.24 | 23,201.88 | (537.64) | 22,664.24 |

## Grand Total Areas:

| | | |
|---|---|---|
| 2,159.00  SF Walls | 975.61  SF Ceiling | 3,134.61  SF Walls and Ceiling |
| 971.34  SF Floor | | 214.90  LF Floor Perimeter |
| | | 234.23  LF Ceil. Perimeter |
| 971.34  Floor Area | 1,040.91  Total Area | 2,159.00  Interior Wall Area |
| 1,708.67  Exterior Wall Area | 172.00  Exterior Perimeter of Walls | |

## Trade Summary

Includes all applicable Tax, General Contractor O&P, and Labor Minimums

| DESCRIPTION | LINE ITEM QTY | REPL. COST TOTAL | GCO&P | ACV | NON-REC. DEPREC. | MAX ADDL. AMT AVAIL. |
|---|---|---|---|---|---|---|
| **CLN      CLEANING** | | | | | | |
| Clean ductwork - Interior (PER REGISTER) | 6.00 EA | $295.71 | $49.30 | $295.71 | $0.00 | $0.00 |
| Cleaning labor minimum | 1.00 EA | $2.11 | $0.36 | $2.11 | $0.00 | $0.00 |
| **TOTAL CLEANING** | | **$297.82** | **$49.66** | **$297.82** | **$0.00** | **$0.00** |
| **CON      CONTENT MANIPULATION** | | | | | | |
| Contents Packing/Storage Per Public Adjuster Estimate | 1.00 EA | $3,249.03 | $0.00 | $3,249.03 | $0.00 | $0.00 |
| **TOTAL CONTENT MANIPULATION** | | **$3,249.03** | **$0.00** | **$3,249.03** | **$0.00** | **$0.00** |
| **DMO      GENERAL DEMOLITION** | | | | | | |
| Haul debris - per pickup truck load - including dump fees | 1.00 EA | $179.29 | $29.88 | $179.29 | $0.00 | $0.00 |
| **TOTAL GENERAL DEMOLITION** | | **$179.29** | **$29.88** | **$179.29** | **$0.00** | **$0.00** |
| **DRY      DRYWALL** | | | | | | |
| 1/2" drywall - hung, taped, floated, ready for paint | 100.92 SF | $386.75 | $64.46 | $379.02 | $0.00 | $7.73 |
| Drywall labor minimum | 1.00 EA | $330.87 | $55.14 | $330.87 | $0.00 | $0.00 |
| **TOTAL DRYWALL** | | **$717.62** | **$119.60** | **$709.89** | **$0.00** | **$7.73** |
| **FCV      FLOOR COVERING - VINYL** | | | | | | |
| Underlayment - 1/2" BC plywood | 160.32 SF | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **TOTAL FLOOR COVERING - VINYL** | | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** |
| **FCW      FLOOR COVERING - WOOD** | | | | | | |
| Oak flooring - #1 common - no finish | 160.32 SF | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Vapor barrier - 15# felt | 160.32 SF | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Vapor barrier - visqueen - 6mil | 160.32 SF | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Sooner Hardwood Floors Repair Bid | 1.00 EA | $13,118.12 | $0.00 | $13,118.12 | $0.00 | $0.00 |
| Sand, stain, and finish wood floor | 750.36 SF | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Add for dustless floor sanding | 750.36 SF | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Remove Tear out wood flooring and subfloor | 10.35 SF | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **TOTAL FLOOR COVERING - WOOD** | | **$13,118.12** | **$0.00** | **$13,118.12** | **$0.00** | **$0.00** |
| **FNC      FINISH CARPENTRY / TRIMWORK** | | | | | | |
| Baseboard - 5 1/4" stain grade | 43.00 LF | $332.15 | $55.38 | $329.37 | $0.00 | $2.78 |
| Detach & Reset Baseboard - 5 1/4" stain grade | 116.39 LF | $314.52 | $52.44 | $314.52 | $0.00 | $0.00 |
| Remove Bookcase - built in - 12" - (SF of face area) | 10.35 SF | $9.69 | $1.62 | $9.69 | $0.00 | $0.00 |
| Install Bookcase - built in - 12" - (SF of face area) | 10.35 SF | $76.15 | $12.70 | $76.15 | $0.00 | $0.00 |

Note:  Slight variances may be found within report sections due to rounding

Date:    3/5/2024 7:17 PM

## Trade Summary

Includes all applicable Tax, General Contractor O&P, and Labor Minimums

| DESCRIPTION | LINE ITEM QTY | REPL. COST TOTAL | GCO&P | ACV | NON-REC. DEPREC. | MAX ADDL. AMT AVAIL. |
|---|---|---|---|---|---|---|
| **FNC    FINISH CARPENTRY / TRIMWORK** | | | | | | |
| Judges paneling - raised panel - hardwood | 43.25 SF | $1,799.72 | $299.96 | $1,763.73 | $0.00 | $35.99 |
| **TOTAL FINISH CARPENTRY / TRIMWORK** | | **$2,532.23** | **$422.10** | **$2,493.46** | **$0.00** | **$38.77** |
| **INS    INSULATION** | | | | | | |
| Sprayed polyurethane foam - open cell - 4" | 144.17 SF | $391.99 | $65.34 | $380.23 | $0.00 | $11.76 |
| **TOTAL INSULATION** | | **$391.99** | **$65.34** | **$380.23** | **$0.00** | **$11.76** |
| **PNT    PAINTING** | | | | | | |
| Finish bookcase - 1 coat urethane | 10.35 SF | $22.35 | $3.72 | $17.89 | $0.00 | $4.46 |
| Stain & finish baseboard - oversized | 43.00 LF | $93.14 | $15.52 | $74.51 | $0.00 | $18.63 |
| Finish baseboard - oversized - 1 coat urethane | 116.39 LF | $160.49 | $26.76 | $128.39 | $0.00 | $32.10 |
| Stain and finish wood judges paneling | 122.16 SF | $699.02 | $116.50 | $559.21 | $0.00 | $139.81 |
| Paint walls one coat less the walls being sealed/painted already | 260.53 SF | $210.14 | $35.04 | $168.12 | $0.00 | $42.02 |
| Paint the walls - one coat | 1,357.46 SF | $1,094.80 | $182.48 | $875.84 | $0.00 | $218.96 |
| Seal/prime then paint the surface area (2 coats) | 100.92 SF | $117.04 | $19.52 | $93.64 | $0.00 | $23.40 |
| **TOTAL PAINTING** | | **$2,396.98** | **$399.54** | **$1,917.60** | **$0.00** | **$479.38** |
| **WDT    WINDOW TREATMENT** | | | | | | |
| Detach & Reset Window blind - PVC - 2" - 7.1 to 14 SF | 3.00 EA | $119.55 | $19.92 | $119.55 | $0.00 | $0.00 |
| Detach & Reset Window blind - PVC - 2" - 14.1 to 20 SF | 5.00 EA | $199.25 | $33.20 | $199.25 | $0.00 | $0.00 |
| **TOTAL WINDOW TREATMENT** | | **$318.80** | **$53.12** | **$318.80** | **$0.00** | **$0.00** |
| **TOTALS** | | **$23,201.88** | **$1,139.24** | **$22,664.24** | **$0.00** | **$537.64** |

Note:  Slight variances may be found within report sections due to rounding

Case 5:26-cv-00752-R    Document 1-10    Filed 04/09/26    Page 93 of 152

Water leak behind wall location of the loss.

Office

Cabinet (B1)

Bathroom
Cabinet (B1)

Hall Closet

Living Room

Dining Room

FP (B1)

N
⇧

Main Level



# Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Fire and Casualty Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 36-BD-E747-9 including any endorsements, if applicable, for the policy term(s) 04/03/2022 to 04/03/2023 and insuring COX, BRADLEY MICHAEL & FARAH BROOKE based on available records.

The policy was in effect on the loss date of 01/17/2023.

*Richard Hsiung*

Richard Hsiung
Underwriting Team Manager

03/17/2026
Date (mm/dd/yyyy)

**EXHIBIT**

**5**

Page 1 of 1

1011493

2001 157822 03-06-2026



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars.   However, we want to point out that every policy contains limitations and exclusions.    Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

# State Farm®
# Homeowners Policy

**Oklahoma**
HW-2136

# HOMEOWNERS POLICY
# TABLE OF CONTENTS

AGREEMENT ................................................1

DEFINITIONS ...............................................1

DEDUCTIBLE.................................................5

SECTION I – PROPERTY COVERAGES ....................5

  COVERAGE A – DWELLING................................5

    Dwelling...............................................5

    Other Structures ..................................5

    Property Not Covered...........................5

  COVERAGE B – PERSONAL PROPERTY...............5

    Property Covered .................................5

    Special Limits of Liability ......................6

    Property Not Covered ...........................6

  COVERAGE C – LOSS OF USE.............................8

    Additional Living Expense ....................8

    Fair Rental Value.................................8

    Prohibited Use .....................................8

  SECTION I – ADDITIONAL COVERAGES...............8

    Debris Removal....................................8

    Temporary Repairs...............................9

    Trees, Shrubs, and Landscaping .........9

    Fire Department Service Charge.........9

    Property Removed ...............................9

    Credit Card, Bank Fund Transfer Card,
    Forgery, and Counterfeit Money..........9

    Power Interruption .............................10

    Refrigerated Products ........................10

    Arson Reward.....................................10

    Volcanic Action...................................10

    Collapse .............................................10

    Locks and Remote Devices...............11

    Fuel Oil Release..................................11

    Tear Out .............................................11

    Home Certification..............................11

INFLATION COVERAGE .......................................11

SECTION I – LOSSES INSURED ..............................12

  COVERAGE A – DWELLING................................12

  COVERAGE B – PERSONAL PROPERTY.............12

SECTION I – LOSSES NOT INSURED.......................14

SECTION I – LOSS SETTLEMENT ............................18

  COVERAGE A – DWELLING................................18

    A1 – Replacement Cost Loss Settlement –
    Similar Construction ........................18

    A2 – Replacement Cost Loss Settlement –
    Common Construction.....................18

  COVERAGE B – PERSONAL PROPERTY.............19

    B1 – Limited Replacement Cost Loss
    Settlement .......................................19

    B2 – Depreciated Loss Settlement...................19

SECTION I – CONDITIONS.........................................20

    Insurable Interest and Limit of Liability .............20

    Your Duties After Loss ......................................20

    Loss to a Pair or Set.........................................20

    Appraisal...........................................................21

    Other Insurance................................................22

    Suit Against Us .................................................22

    Our Option .........................................................22

    Loss Payment...................................................22

    Abandonment of Property.................................22

    Mortgagee Clause ...........................................22

    No Benefit to Bailee..........................................23

    Recovered Property..........................................23

    Assignment of Claim.........................................23

SECTION II – LIABILITY COVERAGES......................23

  COVERAGE L – PERSONAL LIABILITY...............23

  COVERAGE M – MEDICAL PAYMENTS TO
  OTHERS................................................................23

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

**SECTION II – ADDITIONAL COVERAGES**.............23
    Claim Expenses ................................................24
    First Aid Expenses ..........................................24
    Damage to Property of Others .........................24
**SECTION II – EXCLUSIONS**.........................................24
**SECTION II – CONDITIONS** .........................................28
    Limit of Liability................................................28
    Severability of Insurance .................................28
    Duties After Loss .............................................28
    Coverage M Requirements ..............................29
    Payment of Claim – Coverage M or Damage
    to Property of Others .......................................29
    Suit Against Us.................................................29
    Bankruptcy of an Insured .................................29
    Other Insurance – Coverage L .........................29
**SECTION I AND SECTION II – CONDITIONS**.............29
    Policy Period ....................................................29
    Concealment or Fraud......................................29
    Liberalization Clause ........................................29
    Waiver or Change of Policy Provisions ............29
    Cancellation.....................................................29
    Nonrenewal .....................................................30
    Assignment of Policy .......................................30

    Subrogation and Reimbursement.....................30
    Death ...............................................................31
    Conformity to State Law ...................................31
    Premium ...........................................................31
    Right to Inspect................................................32
    Joint and Individual Interests............................32
    Change of Policy Address ................................32
    Electronic Delivery...........................................32
    Our Rights Regarding Claim Information..........32
    Duties Regarding Claim Information.................33
**OPTIONAL POLICY PROVISIONS**.............................33
    Option AI – Additional Insured..........................33
    Option BP – Business Property ........................33
    Option BU – Business Pursuits ........................33
    Option FA – Firearms .......................................34
    Option ID – Increased Dwelling Limit ...............34
    Option IO – Incidental Business .......................34
    Option JF – Jewelry and Furs...........................35
    Option OL – Building Ordinance or Law...........36
    Option SG – Silverware and Goldware
    Theft ................................................................37

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

# HOMEOWNERS POLICY
## AGREEMENT

*We* agree to provide the insurance described in this policy:

1. based on *your* payment of premium, in a form acceptable to *us*, for the coverages *you* chose;

2. based on *your* compliance with all applicable provisions of this policy; and

3. based on the information *you* have given *us* and *your* statements in this agreement.

*You* agree, by acceptance of this policy, that:

1. *you* will pay premiums when due and comply with the provisions of this policy;

2. the statements in this agreement are *your* statements and are true;

3. *we* insure *you* on the basis *your* statements are true; and

4. this policy contains all of the agreements between *you* and *us* and any of *our* agents.

Unless otherwise indicated in the application, *you* state that during the five years preceding the time of *your* application for this insurance *you* have not had any losses, insured or not.

When *you* request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, *we* may adjust the premium in accordance with the change during the policy period and *you* must pay any additional premium due within the time *we* specify.

## DEFINITIONS

*We* define the following words and phrases for use throughout this policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in bold italics.

1. *"actual cash value"* means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

   a. materials, including any tax;

   b. labor, including any tax; and

   c. overhead and profit;

   are subject to depreciation.

   The depreciation deduction may include such considerations as:

   a. age;

   b. condition;

   c. reduction in useful life;

   d. obsolescence; and

   e. any pre-loss damage including wear, tear, or deterioration;

   of the damaged part of the property.

2. *"bodily injury"* means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death resulting therefrom.

   *Bodily injury* does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any *insured* to any other person;

   b. the actual or alleged exposure to any such disease, bacteria, parasite, virus, or other organism by any *insured* to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

3. *"building structure"* means a structure fully enclosed with permanent walls and a roof. A permanent wall or roof does not include any kind of temporary materials including but not limited to tarps, plastic sheeting, or other similar material. A structure that is otherwise fully enclosed with permanent walls and a roof, that is undergoing repairs due to a recent *loss insured*, using materials such as tarps, plastic sheeting, or other similar material, is still considered a *building structure*.

1

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

A *building structure* includes:

a. the foundation supporting the structure, including:

   (1) slabs;

   (2) basement walls;

   (3) crawl space walls;

   (4) footings; and

   (5) gravel, stone, or sand, used as fill material and located not more than 12 inches directly below a slab described in item a.(1), including water supply lines, domestic water pipes, and sewer pipes located within this fill material; and

b. wall-to-wall carpeting attached to the structure.

4. *"business"* means any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature. It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an *insured's* principal means of livelihood. Profit and profit motive are irrelevant.

*Business* does not include:

a. volunteer activities for a not-for-profit or non-profit organization or public agency for which no money is received other than payment of expenses;

b. incidental and infrequent personal economic activity such as a hobby, garage or yard sale, or traditional farm activities when the farm products are intended only for the personal use of the *insured*;

c. any occasional or part-time self-employed activity by a person under 19 years of age that involves no employees or subcontracted independent contractors and is a type of activity normally performed by persons under 19 years of age, including but not limited to, child care, lawn mowing, or paper delivery;

d. the ownership, maintenance, or use of systems and equipment used to generate electrical power up to but not exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss; or

e. ownership of the *residence premises* by the person or organization shown in the *Declarations* as Additional Insured.

5. *"Declarations"* means the policy *Declarations*, any amended *Declarations*, the most recent renewal *Declarations*, an Evidence of Insurance form, or any endorsement changing any of these.

6. *"diminution in value"* means any reduction in the value of any covered property prior to or following repair or replacement as compared to the value of that property immediately before the loss.

7. *"dwelling"* means the *building structure* on the *residence premises* used as the primary private residence and includes structures attached to the *dwelling*.

8. *"fungus"* means any type or form of *fungus*, including mold, mildew, mycotoxins, spores, scents, or byproducts produced or released by fungi.

9. *"insured"* means:

a. *you*;

b. *your relatives*; and

c. any other person under the age of 21 in the care of a person described above.

Under Section II, *insured* also means:

d. the person or organization legally responsible for animals or watercraft to which this policy applies. However, the animal or watercraft must be owned by *you* or a person included in 9.b. or 9.c. above. A person or organization using or having custody of these animals or watercraft in the course of a *business*, or without permission of the owner, is not an *insured*; and

e. with respect to any vehicle to which this policy applies, any person while engaged in *your* employment or the employment of a person included in 9.b. or 9.c. above.

10. *"insured location"* means:

a. the *residence premises*;

2

HW-2136

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

b.  the part of any other premises, other structures, and grounds used by *you* as a residence. This includes premises, structures, and grounds *you* acquire while this policy is in effect for *your* use as a residence;

c.  any premises used by *you* in connection with the premises included in 10.a. or 10.b. above;

d.  any part of a premises not owned by an *insured* but where an *insured* is temporarily residing;

e.  land owned by or rented to an *insured* on which a one or two family dwelling is being constructed as a residence for an *insured*;

f.  individual or family cemetery plots or burial vaults owned by an *insured*;

g.  any part of a premises occasionally rented to an *insured* for purposes other than *business*;

h.  vacant land owned by or rented to an *insured*. For the purposes of this definition, vacant land does not include:

    (1)  farm land;

    (2)  land containing a residence; or

    (3)  land containing fences, corrals, boat docks, tool sheds, barns, grain bins, and similar structures, unless they are used solely for the personal use of the *insured*; or

i.  farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

11.  *"loss insured"* means a loss as described under **SECTION I – LOSSES INSURED, COVERAGE A – DWELLING** and **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.**

12.  *"motor vehicle"*, when used in Section II of this policy, means:

a.  a land *motor vehicle* designed for travel on public roads or subject to motor vehicle registration;

b.  a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c.  a "recreational or utility vehicle" while off an *insured location*. "Recreational or utility vehicle" means a motorized vehicle designed for recreation or utility purposes, used principally off public roads, and that is owned or leased by an *insured*. This includes, but is not limited to, a motorized all-terrain vehicle, side-by-side vehicle, utility work vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike, and personal assistive mobility device. "Leased" does not include temporary rental;

d.  a "locomotive" while off an *insured location*. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an *insured*. "Leased" does not include temporary rental;

e.  a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, tele-handler, logging vehicle, mining vehicle, or road building vehicle that is owned or leased by an *insured* while off an *insured location*. "Leased" does not include temporary rental; and

f.  any vehicle while being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above.

The following are not *motor vehicles*:

a.  a boat, camper, home, or utility trailer not being towed or pushed by or carried on a vehicle included in 12.a. through 12.e. above;

b.  a motorized land vehicle in storage on an *insured location* not intended to be operated for an extended period of time and rendered inoperable by placing the vehicle on blocks or removing parts essential for its operation;

c.  a motorized golf cart while used for golfing purposes;

d.  a motorized vehicle or trailer designed to assist persons with disabilities that is not designed for travel on public roads or subject to motor vehicle registration; or

3

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

e.   a commercially manufactured two, three, or four wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

13.   *"occurrence"*, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a.   *bodily injury*; or

b.   *property damage*;

during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous and repeated exposure to the same general conditions is considered to be one *occurrence*.

14.   *"property damage"* means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any *insured* is not *property damage*.

15.   *"relative"* means any person related to *you* by:

a.   blood;

b.   adoption;

c.   marriage; or

d.   civil union, domestic partnership, or other substantially similar legal relationship that is recognized and valid in the state where, and at the time when, the legal relationship was established;

and who resides primarily with *you*.

16.   *"residence employee"* means an employee of an *insured*, or an employee leased to an *insured* by a labor leasing firm under an agreement between an *insured* and the labor leasing firm, who performs duties, including household or domestic services, in connection with the maintenance or use of the *residence premises*. This includes employees who perform similar duties elsewhere for *you*. This does not include employees while performing duties in connection with the *business* of an *insured*.

17.   *"residence premises"* means:

a.   the one, two, three, or four family dwelling, other structures and grounds; or

b.   that part of any other *building structure*;

where *you* reside and which is shown in the *Declarations*.

18.   *"State Farm Companies"* means one or more of the following:

a.   State Farm Mutual Automobile Insurance Company;

b.   State Farm Fire and Casualty Company; and

c.   subsidiaries or affiliates of either 18.a. or 18.b. above.

19.   *"vacant dwelling"* means:

a.   a dwelling:

(1)   that has not been occupied as a residence for more than 30 consecutive days immediately before the loss; and

(2)   where a predominant amount of personal property has been removed or is absent such that the dwelling is not functional as a habitual place of residence.

A dwelling will be considered occupied only if it is being used as a habitual place of residence with *your* knowledge and approval.

b.   A dwelling that is under active construction will not be considered a *vacant dwelling*. A dwelling is under active construction when it is:

(1)   being built as a new structure;

(2)   being repaired due to damage otherwise covered by this policy; or

(3)   undergoing substantial improvements, renovations, remodeling, or modifications;

and the construction results in substantial continuing activities by persons associated with the construction project at the premises during the relevant time periods.

20.   *"we"*, *"us"*, and *"our"* mean the Company shown in the *Declarations*.

21.   *"you"* and *"your"* mean the person or persons shown as "Named Insured" in the *Declarations*. If a "Named Insured" shown in the *Declarations* is a human being, then *you* and *your* include:

a.   a spouse of a "Named Insured";

4

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

b.  a party to a civil union with a "Named Insured";

c.  a domestic partner of a "Named Insured"; or

d.  a person in a substantially similar legal relationship with a "Named Insured";

if such relationship is recognized and valid in the state where, and at the time when, the legal relationship was established, so long as the person in the above relationship resides primarily with that "Named Insured".

## DEDUCTIBLE

In case of loss under this policy, *we* will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the *Declarations*. Deductibles will be applied per occurrence. Deductibles apply to specific losses as described in this policy.

## SECTION I – PROPERTY COVERAGES

### COVERAGE A – DWELLING

1.  **Dwelling.** *We* cover the *dwelling* and materials and supplies located on or adjacent to the *residence premises* for use in the construction, alteration, or repair of the *dwelling* or other structures on the *residence premises*.

2.  **Other Structures.** *We* cover other structures on the *residence premises*, separated from the *dwelling* by clear space. Structures connected to the *dwelling* by only a fence, utility line, or similar connection are considered to be other structures.

    *We* do not cover other structures:

    a.  not permanently attached to or otherwise forming a part of the realty;

    b.  used either completely or in part for *business* purposes unless such use consists solely of office space for paperwork, computer work, or use of a telephone, and consists solely of activities that are:

        (1)  duties of the *insured's* employment by another; and

        (2)  performed solely by the *insured*; or

    c.  rented or held for rental unless:

        (1)  rented to a person who is a tenant of the *dwelling;*

        (2)  rented for use solely as a private garage; or

        (3)  rented either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss.

3.  **Property Not Covered.** *We* do not cover:

    a.  land, including the land necessary to support any Coverage A property. *We* also do not cover:

        (1)  any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

        (2)  the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A;

    b.  trees, shrubs, live or artificial plants, lawns, or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**; or

    c.  systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

### COVERAGE B – PERSONAL PROPERTY

1.  **Property Covered.**

    a.  *We* cover personal property owned or used by an *insured* while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At *your* request, *we* will cover personal property:

        (1)  owned by others while the property is on the part of the *residence premises* occupied exclusively by an *insured*;

        (2)  owned by a guest or a *residence employee*, while the property is in any other residence occupied by an *insured*; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

(3) owned by roomers, boarders, tenants, and other residents, any of whom are related to *you*.

b. *We* cover personal property usually located at an *insured's* residence, other than the *residence premises*, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property:

(1) in a newly acquired principal residence for the first 30 days after *you* start moving the property there. If the *residence premises* is a newly acquired principal residence, personal property in *your* immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy; and

(2) of a student who is an *insured* while located at a residence away from the *residence premises*.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins, and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware, and platinum;

b. $1,500 on property used or intended for use in a *business*, including merchandise held as samples or for sale or for delivery after sale, while on the *residence premises*. This coverage is limited to $750 on such property away from the *residence premises*.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage, and is addressed in item c. below;

c. $10,000 on electronic data processing system equipment used or intended for use in a *business*, including but not limited to computers, tablets, mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound, and standard media or non-media equipment for use with the above devices;

d. $1,500 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, and tickets;

e. $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings, and equipment;

f. $1,500 on trailers not used with watercraft;

g. $2,500 on stamps, trading cards, and comic books, including any of these that are a part of a collection;

h. $2,500 for loss by theft of firearms;

i. $2,500 for loss by theft of silverware and goldware;

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging, or other similar article;

k. $1,000 on commercially manufactured two, three, or four wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include such conveyances that are:

(1) designed for assisting persons with disabilities;

(2) not designed for travel on public roads; and

(3) not subject to motor vehicle registration; and

l. $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones.

2. **Property Not Covered.** *We* do not cover:

a. articles separately described and specifically insured in this or any other insurance;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

b.    animals, birds, or fish;

c.    any engine-propelled or motor-propelled vehicle or machine, including parts, designed for movement on land, except as provided in **Special Limits of Liability**, item k. However, *we* do cover those vehicles or machines:

    (1)    that are:

        (a)    not designed for travel on public roads; and

        (b)    not subject to motor vehicle registration;

    (2)    and that are:

        (a)    used primarily to service the *insured location*; or

        (b)    designed for assisting persons with disabilities;

d.    any electronic equipment, devices, or accessories designed for the recording, reproduction, or storage of audio, video, photos, or other data that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or hard-wired directly to the vehicle's electrical system. *We* also do not cover removable products that may be used with the equipment or devices described above, including but not limited to tapes, discs, videos, or memory cards while in an engine-propelled or motor-propelled vehicle;

e.    aircraft and parts. This does not apply to unmanned aircraft systems used as model aircraft and operated solely for recreational or hobby purposes;

f.    property of roomers, boarders, tenants, and other residents not related to *you*;

g.    property regularly rented or held for rental to others by an *insured*. This does not apply to property of an *insured*:

    (1)    in a sleeping room when the *dwelling* is rented in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

    (2)    on the *residence premises* if it is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

h.    property rented or held for rental to others away from the *residence premises*;

i.    any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas, and all other similar equipment that is permanently installed in or permanently fastened to an engine-propelled or motor-propelled vehicle or that is hard-wired directly to the vehicle's electrical system;

j.    books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems, or other records. This does not apply to any recording or storage media for electronic data processing. *We* will cover the cost of blank books, cards, or other blank material plus the cost of labor *you* incur for transcribing or copying such records;

k.    recording or storage media for electronic data processing that cannot be replaced with property of like kind and quality on the current retail market;

l.    purchased or created audio, video, photos, or other data that cannot be replaced with like kind and quality on the current retail market and that is transferred or downloaded onto mobile communication equipment, global positioning systems, or electronic devices designed for the recording, reproduction, or storage of audio, video, photos, or other data;

m.    contraband, or any property used in the course of illegal consumption, possession, import, export, or trade;

n.    outdoor hardscape property used for aesthetic purposes except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**; or

o.    electronic currency, digital currency, virtual currency, crypto-currency, and other similar mediums of exchange.

7

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

## COVERAGE C – LOSS OF USE

The most *we* will pay for the sum of all losses combined under **Additional Living Expense, Fair Rental Value,** and **Prohibited Use** is the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**.

1. **Additional Living Expense.** When a *loss insured* causes the *residence premises* to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months. *Our* payment is limited to incurred costs for the shortest of:

   a. the time required to repair or replace the premises;

   b. the time required for *your* household to settle elsewhere; or

   c. 24 months.

   This period of time is not limited by the expiration of this policy.

   *We* will not pay more than the limit of liability shown in the *Declarations* for **Coverage C – Loss of Use**. Any normal expenses that are reduced or discontinued due to a *loss insured* will be subtracted from any amount owed.

2. **Fair Rental Value.** When a *loss insured* causes that part of the *residence premises* rented to others or held for rental by *you* to become uninhabitable, *we* will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by the expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the *residence premises* rented or held for rental is uninhabitable.

3. **Prohibited Use.** *We* will pay Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits *your* use of the *residence premises*, provided that:

   a. direct physical damage occurs to any property, other than covered property located on the *residence premises*, arising from a cause of loss that would be a *loss insured* under this policy

   if the damage had occurred to property on the *residence premises*;

   b. the *residence premises* is within one mile of property damaged by a cause of loss identified in 3.a. above; and

   c. the action of the civil authority is taken in response to:

      (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

      (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

      (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

   *We* will not pay for loss or expense due to cancellation of a lease or agreement.

## SECTION I – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** *We* will pay the reasonable expenses *you* incur in the removal of debris of covered property damaged by a *loss insured*. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

   a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping.**

   b. *We* will also pay up to $1,000 total for each loss to cover the reasonable expenses *you* incur in the removal of tree debris and stumps from the *residence premises*, unless otherwise excluded. This coverage applies when:

      (1) the tree has caused a *loss insured* to Coverage A property; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

   (a) the driveway, on the *residence premises*, and prevents land *motor vehicle* access to or from the *dwelling*; or

   (b) a ramp designed to assist persons with disabilities, on the *residence premises*, and prevents access to or from a *building structure*.

2. **Temporary Repairs.** If damage is caused by a *loss insured*, *we* will pay the reasonable and necessary cost *you* incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs, and Landscaping.** *We* will pay for accidental direct physical loss to outdoor:

   a. trees, shrubs, live or artificial plants, and lawns;

   b. artificial grass; and

   c. hardscape property used for aesthetic purposes not permanently affixed to realty;

   on the *residence premises*, caused by the following perils: **Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles** (not owned or operated by a resident of the *residence premises*), **Vandalism or malicious mischief, or Theft.**

   The limit for this coverage, including the removal of debris, will not exceed 5% of the amount shown in the *Declarations* for **COVERAGE A -- DWELLING.** *We* will not pay more than $750 for any one outdoor tree, shrub, plant, or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. *We* will not pay for any loss to property grown for *business* purposes.

4. **Fire Department Service Charge.** *We* will pay up to $500 per occurrence for fire department charges incurred when the fire department is called to save or protect Coverage A property from fire, lightning, or explosion. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** *We* will pay for any accidental direct physical loss to covered property while being removed from a premises endangered by a *loss insured*. This coverage also applies to the property

for up to 30 days while removed. *We* will also pay for reasonable expenses incurred by *you* for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money.**

   a. *We* will pay up to $1,000 for:

      (1) the legal obligation of an *insured* to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an *insured's* name. If an *insured* has not complied with all terms and conditions under which the cards are issued, *we* will not pay for use by an *insured* or anyone else;

      (2) loss to an *insured* caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

   No deductible applies to this coverage.

   *We* will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

   b. *We* will not pay for loss arising out of *business* pursuits or dishonesty of an *insured*.

   c. Defense:

      (1) *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend claims or suits ends when the amount *we* pay for the loss equals *our* limit of liability.

      (2) If claim is made or a suit is brought against an *insured* for liability under the Credit Card or Bank Fund Transfer Card coverage, *we* will provide a defense. This defense is at *our* expense by counsel of *our* choice.

      (3) *We* have the option to defend at *our* expense an *insured* or an *insured's* bank

9

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** *We* will pay for accidental direct physical loss caused directly or indirectly by a change of temperature that results from power interruption that takes place on the *residence premises*. The power interruption must be caused by a *loss insured* occurring on the *residence premises*. The power lines off the *residence premises* must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the *residence premises* for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to *you*, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure does not include:

   a.   removal of a plug from an electrical outlet; or

   b.   turning off an electrical switch unless caused by a *loss insured.*

   This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** *We* will pay $1,000 for information that leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit will not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** *We* will pay for accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure* resulting from the eruption of a volcano when the loss is directly and immediately caused by:

    a.   airborne volcanic shock waves;

    b.   ash, dust, or particulate matter; or

    c.   lava flow.

    *We* will also pay for the removal of that ash, dust, or particulate matter that has caused accidental direct physical loss to a covered *building structure* or covered property contained in a *building structure.*

All volcanic eruptions that occur within any 168-hour period will be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** *We* will pay for accidental direct physical loss to covered property involving the abrupt, entire collapse of a *building structure* or any part of a *building structure.*

    a.   Collapse means the abrupt and entire falling down, caving in, or falling into pieces of a *building structure* or any part of a *building structure.* Collapse does not include any of the following:

         (1)   settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending;

         (2)   substantial structural impairment;

         (3)   imminent or threatened collapse;

         (4)   a *building structure* or any part of a *building structure* that is in danger of falling down or caving in; or

         (5)   a part of a *building structure* that is standing even if:

               (a)   it has separated from another part of the *building structure*; or

               (b)   it shows evidence of settling, cracking, crumbling, deterioration, shrinking, bulging, expansion, sagging, bowing, leaning, or bending.

    b.   The collapse must be directly and immediately caused by one or more of the following:

         (1)   perils described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.** These perils apply to *building structures* covered under Coverage A or Coverage B for loss insured by this Additional Coverage;

         (2)   decay or deterioration of, or damage from animals, birds, or insects to:

               (a)   a connector; or

               (b)   a structural member of a *building structure*;

10

HW-2136

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

The decay, deterioration, or damage must be hidden from view and unknown to all *insureds* prior to the collapse;

(3) weight of contents, equipment, animals, or people;

(4) weight of ice, snow, sleet, or rain that collects on a roof, porch, or deck; or

(5) use of defective material or methods in the construction (includes remodeling or renovation) of the *building structure*, if the collapse occurs during the course of the construction of the *building structure*.

Loss to awnings, fences, patios, pavement, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations (including slabs, basement walls, and crawl space walls), retaining walls, bulkheads, piers, wharfs, docks, trellises, or antennas and their supporting structures is not included under items (2), (3), and (4) immediately above unless the loss is the direct and immediate result of the collapse of a *building structure* or any part of a *building structure*.

This coverage does not increase the limit applying to the damaged property.

12. **Locks and Remote Devices.** *We* will pay up to $1,000 for each loss for the reasonable expenses *you* incur to rekey, replace, recode, program, or reprogram locks on exterior doors to the *dwelling* or other structures located on the *residence premises* when the keys or remote devices used with those doors are part of a covered theft loss. This coverage includes remote devices designed solely for locking, unlocking, opening, or closing doors, including garage doors and gates.

No deductible applies to this coverage.

13. **Fuel Oil Release.** *We* will pay up to $10,000 for each loss for accidental direct physical loss to covered property caused by the abrupt and accidental escape of liquid fuel oil from a fixed household tank, apparatus, or pipes that are part of a heating unit for the *dwelling*. This includes damage to covered property resulting from an accidental spill or overflow of fuel oil in the course of filling a fixed household tank.

This coverage includes surface clean up only. *We* will not pay for:

a. the cost to repair or replace the fuel oil tank, apparatus, and pipes; or

b. the cost of testing, monitoring, removing, treating, or detoxifying of soil, air, or water.

This coverage does not increase the limit applying to the damaged property.

14. **Tear Out.** If a *loss insured* to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, *we* will also pay the reasonable cost *you* incur to tear out and replace only that particular part of the *building structure* necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped. *We* will not pay for the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

15. **Home Certification.** If damage to covered property is caused by a *loss insured*, *we* will pay the reasonable increase in cost to repair or replace only the damaged property to maintain the *dwelling's* FORTIFIED HOME or FORTIFIED FOR SAFER LIVING certification in place at the time of the loss. This coverage does not increase the limit applying to the damaged property.

*We* will not pay:

a. any increase in cost until the repair or replacement of the property is complete; or

b. for increased costs resulting from enforcement of any ordinance or law regulating the construction or repair of the *dwelling* except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.**

This coverage does not apply if Loss Settlement provision A2 – Replacement Cost Loss Settlement – Common Construction is shown in the *Declarations*.

**INFLATION COVERAGE**

The limits of liability shown in the *Declarations* for Coverage A, Coverage B, and when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the *Declarations*.

11

HW-2136

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B, and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the *Declarations*.

If during the term of this policy the Coverage A limit of liability is changed at *your* request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I – LOSSES INSURED

### COVERAGE A – DWELLING

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT IN-SURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

### COVERAGE B – PERSONAL PROPERTY

*We* will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust. This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a *building structure*.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles,** meaning accidental direct physical loss to covered property caused by the weight, force, power, or movement of a vehicle.

   a. This includes:

   (1) the impact of a vehicle;

   (2) an object propelled from the tire or body of a vehicle;

   (3) the upset or collision of a vehicle with a stationary object or other vehicle, including damage to personal property carried on the exterior of the vehicle; or

   (4) a vehicle door or trunk lid being closed on personal property.

   b. This peril does not include loss:

   (1) to personal property that falls off a vehicle and strikes the ground, any other surface, or any object;

   (2) caused by shifting of the load being carried in or on a vehicle; or

   (3) to the vehicle itself unless the vehicle is property covered under **COVERAGE B – PERSONAL PROPERTY** and the loss is caused by the weight, force, power, or movement of another vehicle.

7. **Smoke,** meaning abrupt and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

12

HW-2136

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(1) committed by an *insured* or by any other person regularly residing on the *insured location*. Property of a student who is an *insured* is covered while located at a residence away from the *residence premises*, if the theft is committed by a person who is not an *insured*;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3) from the part of a *residence premises* rented to others:

(a) caused by a tenant, members of the tenant's household, or the tenant's employees unless the *residence premises* is rented, either completely or in part, for exclusive use as a residence, for no more than 30 nights in the 12-month period prior to the date of the loss;

(b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins, and medals;

(c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards, and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, and stamps; or

(d) of jewelry, watches, fur garments and garments trimmed with fur, and precious and semi-precious stones; or

c. loss caused by theft that occurs away from the *residence premises* of:

(1) property while at any other residence owned, rented to, or occupied by an *insured*, except while an *insured* is temporarily residing there. Property of a student who is an *insured* is covered while at a residence away from the *residence premises*;

(2) watercraft of all types, including their furnishings, equipment, and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the *residence premises* is a newly acquired principal residence, property in the immediate past principal residence will not be considered property away from the *residence premises* for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow, or sleet** that causes damage to property contained in a structure.

12. **Abrupt and accidental discharge or overflow** of water, steam, or sewage from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water, steam, or sewage escaped;

b. caused by or resulting from:

(1) freezing;

(2) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area; or

(3) the pressure from or presence of tree, shrub, or plant roots; or

c. that occurs or develops over a period of time and is caused by or resulting from:

(1) condensation or the presence of humidity, moisture, or vapor; or

(2) seepage or leakage of water, steam, or sewage that is:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

13. **Abrupt and accidental tearing asunder, cracking, burning, or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. that occurs or develops over a period of time and is caused by or resulting from:

(1) condensation or the presence of humidity, moisture, or vapor; or

(2) seepage or leakage of water or steam that is:

(a) continuous;

(b) repeating;

(c) gradual;

(d) intermittent;

(e) slow; or

(f) trickling.

14. **Freezing** of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include:

a. loss to a portable hot tub or portable spa unless **you** have used reasonable care to prevent freezing; or

b. loss on the **residence premises** unless **you** have used reasonable care to:

(1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the **building structure** is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the **building structure** at 55 degrees Fahrenheit or higher for coverage to apply.

15. **Abrupt and accidental damage** to electrical appliances, devices, fixtures, and wiring from an increase or decrease of artificially generated electrical current. **We** will pay up to $3,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass that is a part of a structure on the **residence premises**. **We** will not pay for loss or damage to the glass.

17. **Wild bears or deer**, meaning damage caused by wild bears or deer to property located in a **building structure**.

## SECTION I – LOSSES NOT INSURED

1. **We** will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. collapse, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Collapse**;

b. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a household appliance; or discharge, leakage, or overflow from within the system or appliance caused by freezing. This does not apply if **you** have used reasonable care to:

(1) maintain heat in the **building structure** at 55 degrees Fahrenheit or higher; or

(2) shut off the water supply and drain the system and appliances of water.

However, if the **building structure** is protected by an automatic fire protective system, **you** must use reasonable care to continue the water supply and maintain heat in the

14

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

*building structure* at 55 degrees Fahrenheit or higher for coverage to apply;

c.  freezing, thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to:

    (1)  a swimming pool, hot tub, or spa, including their covers, filtration, and circulation systems; or

    (2)  an awning, fence, pavement, patio, foundation (including slabs, basement walls, crawl space walls, and footings), retaining wall, bulkhead, pier, wharf, or dock;

d.  theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

e.  theft, vandalism, malicious mischief, or breakage of glass and safety glazing materials if the dwelling is a *vacant dwelling*;

f.  seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

    (1)  and is:

        (a)  continuous;

        (b)  repeating;

        (c)  gradual;

        (d)  intermittent;

        (e)  slow; or

        (f)  trickling; and

    (2)  from a:

        (a)  heating, air conditioning, or automatic fire protective sprinkler system;

        (b)  household appliance; or

        (c)  plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

*We* also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time;

g.  wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

h.  corrosion, electrolysis, or rust;

i.  wet or dry rot;

j.  contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES IN-SURED, COVERAGE B – PERSONAL PROPERTY.**

    (1)  Contaminants and pollutants include but are not limited to any:

        (a)  solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, asbestos, or lead;

        (b)  contaminants or pollutants resulting from any natural resource extraction activities; or

        (c)  fuel oil except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Fuel Oil Release.**

    (2)  *We* also will not pay for:

        (a)  losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

        (b)  the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

        (c)  the cost of testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants;

15

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

k.  settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;

l.  all animals, birds, or insects.

   (1)  This includes:

      (a)  nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects;

      (b)  costs to remove animals, birds, or insects from the covered property; and

      (c)  costs to prevent the animals, birds, or insects from returning to the property;

   (2)  However, *we* will pay for:

      (a)  losses caused by wild bears or deer; and

      (b)  the breakage of glass or safety glazing material that is a part of a *building structure*, when caused by animals, birds, or insects; or

m.  pressure from or presence of tree, shrub, or plant roots.

However, *we* will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

2.  *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the *residence premises*, arises from any natural or external forces, or occurs as a result of any combination of these:

   a.  **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure.

   b.  **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all regardless of whether combined with water, sewage, or any material carried by, or otherwise moved by the earth. Earth movement includes but is not limited to:

      (1)  earthquake;

      (2)  landslide, mudslide, or mudflow;

      (3)  sinkhole or subsidence;

      (4)  movement resulting from:

         (a)  improper compaction;

         (b)  site selection;

         (c)  natural resource extraction activities; or

         (d)  excavation;

      (5)  erosion;

      (6)  pressure by surface or subsurface earth or fill; or

      (7)  any volcanic activity, except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Volcanic Action.**

      However, *we* will pay for any accidental direct physical loss by fire resulting from earth movement, provided the resulting fire loss is itself a *loss insured.*

   c.  **Water,** meaning:

      (1)  flood;

      (2)  surface water. This does not include water solely caused by the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant;

      (3)  waves (including tidal wave, tsunami, and seiche);

      (4)  tides or tidal water;

      (5)  overflow of any body of water (including any release, escape, or rising of any body of water, or any water held, contained, controlled, or diverted by a dam, levee, dike, or any type of water containment, diversion, or flood control device);

      (6)  spray or surge from any of the items c.(1) through c.(5) described above, all whether driven by wind or not;

16

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

(7) water or sewage from outside the *residence premises* plumbing system that enters through sewers or drains, or water or sewage that enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water that is drained from the foundation area;

(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a *building structure*, sidewalk, driveway, swimming pool, or other structure; or

(9) material carried or otherwise moved by any of the water or sewage, as described in items c.(1) through c.(8) above.

However, *we* will pay for any accidental direct physical loss by fire, explosion, or theft resulting from water, provided the resulting loss is itself a *loss insured*.

d. **Neglect**, meaning neglect of the *insured* to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke.

However, *we* will pay for any accidental direct physical loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a *loss insured*.

g. *Fungus*, including:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the *residence premises* or location of the rebuilding, repair, or replacement, by *fungus*;

(2) any remediation of *fungus*, including the cost to:

(a) remove the *fungus* from covered property or to repair, restore, or replace that property; or

(b) tear out and replace any part of the *building structure* or other property as needed to gain access to the *fungus*; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

h. **Intentional Losses.** If any *insured* intentionally causes or procures a loss to property covered under this policy, *we* will not pay any *insured* for this loss. This applies regardless of whether the *insured* is charged with or convicted of a crime.

This does not apply to an *insured* who did not participate in, cooperate in, or contribute to causing or procuring the loss.

3. *We* will not pay for, under any part of this policy, any loss consisting of one or more of the items below. Further, *we* will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

b. defect, weakness, inadequacy, fault, or unsoundness in:

    (1) planning, zoning, development, surveying, or siting;

    (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;

    (3) materials used in repair, construction, renovation, remodeling, grading, or compaction; or

    (4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the *residence premises*; or

c. weather conditions.

However, *we* will pay for any resulting loss from items 3.a., 3.b., and 3.c. unless the resulting loss is itself a Loss Not Insured as described in this Section.

## SECTION I – LOSS SETTLEMENT

Only the **Loss Settlement Provisions** shown in the *Declarations* apply. *We* will settle covered property losses according to the following. However, the valuation of any covered property losses does not include, and *we* will not pay, any amount for *diminution in value*.

### COVERAGE A – DWELLING

1. **A1 – Replacement Cost Loss Settlement – Similar Construction.**

    a. *We* will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

        (1) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property;

        (2) when the repair or replacement is actually completed, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

        (3) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

        (4) *we* will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.**

    b. Wood Fences: *We* will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for **COVERAGE A – Other Structures.**

2. **A2 – Replacement Cost Loss Settlement – Common Construction.**

    a. *We* will pay the cost to repair or replace with common construction and for the same use on the premises shown in the *Declarations*, the damaged part of the property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

        (1) *we* will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. *We* will not pay the cost to repair or replace obsolete, antique, or custom construction with like kind and quality;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

(2) until actual repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged part of the property, up to the applicable limit of liability shown in the *Declarations*, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, *we* will pay the covered additional amount *you* actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the *Declarations*, whichever is less;

(4) to receive any additional payments on a replacement cost basis, *you* must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify *us* within 30 days after the work has been completed; and

(5) *we* will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a *building structure* or other structure, except as provided under **OPTIONAL POLICY PROVISIONS, Option OL – Building Ordinance or Law.**

b. Wood Fences: *We* will pay the *actual cash value* for loss or damage to wood fences, not to exceed the limit of liability shown in the *Declarations* for **COVERAGE A – Other Structures.**

**COVERAGE B – PERSONAL PROPERTY**

1. **B1 – Limited Replacement Cost Loss Settlement.**

   a. *We* will pay the cost to repair or replace property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, *we* will pay only the *actual cash value* of the damaged property;

(2) after repair or replacement is completed, *we* will pay the difference between the *actual cash value* and the cost *you* have actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, *we* will pay only the *actual cash value.*

   b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

(3) property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) *our* cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in this policy; or

(4) any applicable Coverage B limit of liability.

2. **B2 – Depreciated Loss Settlement.**

   a. *We* will pay the *actual cash value* for property covered under **SECTION I – PROPERTY COVERAGES, COVERAGE B – PERSONAL PROPERTY**, except for property listed in item b. below.

   b. *We* will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary, and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs, and collectors items; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2136

(3)   property not useful for its intended purpose.

However, *we* will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1)   *our* cost to replace at the time of loss;

(2)   the full cost of repair;

(3)   any special limit of liability described in this policy; or

(4)   any applicable Coverage B limit of liability.

## SECTION I – CONDITIONS

1.   **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, *we* will not be liable:

a.   to the *insured* for an amount greater than the *insured's* interest; or

b.   for more than the applicable limit of liability.

2.   **Your Duties After Loss.** After a loss to which this insurance may apply, *you* must cooperate with *us* in the investigation of the claim and also see that the following duties are performed:

a.   give immediate notice to *us* or *our* agent and also notify:

(1)   the police if the loss is caused by theft, vandalism, or any other criminal act; and

(2)   the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b.   protect the property from further damage or loss and also:

(1)   make reasonable and necessary temporary repairs required to protect the property; and

(2)   keep an accurate record of repair expenses;

c.   prepare an inventory of damaged or stolen personal property:

(1)   showing in detail the quantity, description, age, replacement cost, and amount of loss; and

(2)   attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

d.   as often as *we* reasonably require:

(1)   exhibit the damaged property;

(2)   provide *us* with any requested records and documents and allow *us* to make copies;

(3)   while not in the presence of any other *insured*:

(a)   give statements; and

(b)   submit to examinations under oath; and

(4)   produce employees, members of the *insured's* household, or others for examination under oath to the extent it is within the *insured's* power to do so; and

e.   submit to *us*, within 60 days after the loss, *your* signed, sworn proof of loss that sets forth, to the best of *your* knowledge and belief:

(1)   the time and cause of loss;

(2)   interest of the *insured* and all others in the property involved and all encumbrances on the property;

(3)   other insurance that may cover the loss;

(4)   changes in title or occupancy of the property during the term of this policy;

(5)   specifications of any damaged structure and detailed estimates for repair of the damage;

(6)   an inventory of damaged or stolen personal property described in 2.c.;

(7)   receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8)   evidence or affidavit supporting a claim under **SECTION I – ADDITIONAL COVERAGES, Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss.

3.   **Loss to a Pair or Set.** In case of loss to a pair or set, *we* may choose to:

a.   repair or replace any part to restore the pair or set to its value before the loss; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

b. pay the difference between the depreciated value of the property before the loss and the depreciated value of the property after the loss.

4. **Appraisal.** If *you* and *we* fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only *you* or *we* may demand appraisal. A demand for appraisal must be in writing. *You* must comply with **SECTION I – CONDITIONS, Your Duties After Loss** before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

a. Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b. The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.

   The written report of agreement will set the amount of the loss of each item in dispute.

c. If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. If the appraisers are unable to agree upon an umpire within 15 days:

   (1) *you* or *we* may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the *residence premises* is located to select an umpire;

   (2) the party requesting the selection described in item c.(1) must provide the other party:

      (a) written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

      (b) a copy of the written application; and

   (3) a written report of agreement, as required in item b., signed by any two (appraisers or appraiser and umpire) will set the amount of the loss of each item in dispute. In all instances the written report of agreement will be itemized and state separately the *actual cash value*, replacement cost, and if applicable, the market value of each item in dispute.

d. To qualify as an appraiser or umpire for a loss to property described in **COVERAGE A – DWELLING**, a person must be one of the following and be licensed or certified as required by the applicable jurisdiction:

   (1) an engineer or architect with experience and training in building construction, repair, estimating, or investigation of the type of property damage in dispute;

   (2) an adjuster or public adjuster with experience and training in estimating the type of property damage in dispute; or

   (3) a contractor with experience and training in the construction, repair, and estimating of the type of property damage in dispute.

e. A person may not serve as an appraiser or umpire if that person, any employee of that person, that person's employer, or any employee of their employer:

   (1) has performed services for either party with respect to the claim at issue in the appraisal; or

   (2) has a financial interest in the outcome of the claim at issue in the appraisal.

f. Each party will be responsible for the compensation of their selected appraiser. Reasonable expenses of the appraisal and the reasonable

21                                                                      HW-2136
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

compensation of the umpire will be paid equally by *you* and *us*.

g. *You* and *we* do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.

h. Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

   (1) any other questions of fact;

   (2) questions of law;

   (3) questions of coverage;

   (4) other contractual issues; or

   (5) to conduct appraisal on a class-wide basis.

i. Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. The appraisal award may not be entered as a judgment in a court.

j. A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, *we* will pay only *our* share of the loss. *Our* share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action will be brought against *us* unless there has been full compliance with all of the policy provisions. Any action by any party must be started within one year after the date of loss or damage. However, if the cause of loss or damage is burglary, theft, larceny, robbery, forgery, fraud, vandalism, malicious mischief, confiscation, wrongful conversion, disposal or concealment, the action must be started within two years from the time the cause of action accrues.

7. **Our Option.** *We* may repair or replace any part of the property damaged or stolen with similar property. Any property *we* pay for or replace becomes *our* property.

8. **Loss Payment.** *We* will adjust all losses with *you*. *We* will pay *you* unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable:

   a. 60 days after *we* receive *your* proof of loss and:

      (1) reach agreement with *you*; or

      (2) there is a filing of an appraisal award with *us*; or

   b. 30 days after *we* receive *your* proof of loss and there is an entry of a final judgment.

9. **Abandonment of Property.** *We* need not accept any property abandoned by an *insured*.

10. **Mortgagee Clause.** The word "mortgagee" includes trustee.

    a. If a mortgagee is named in this policy, any loss payable under Coverage A will be paid to the mortgagee and *you*, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    b. If *we* deny *your* claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

       (1) notifies *us* of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware;

       (2) pays on demand any premium due under this policy, if *you* have not paid the premium; and

       (3) submits a signed, sworn statement of loss within 60 days after receiving notice from *us* of *your* failure to do so. Policy conditions relating to **Appraisal, Suit Against Us,** and **Loss Payment** apply to the mortgagee.

    c. If *we* cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect. Proof of mailing will be proof of notice.

    d. If *we* pay the mortgagee for any loss and deny payment to *you*:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(1) *we* are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2) at *our* option, *we* may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, *we* will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e. Subrogation does not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** *We* will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing, or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Recovered Property.** If either *you* or *we* recover any property after loss settlement, that party must give the other prompt notice. At *your* option, *you* may keep the property or *we* will return it to *you*. Otherwise, it will become *our* property. If *you* choose to keep the property, the loss payment will be adjusted based on the amount *you* received for the recovered property.

13. **Assignment of Claim.** Assignment to another party of any of *your* rights or duties under this policy regarding any claim, or any part of any claim, will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent. However, once *you* have complied with all policy provisions, *you* may assign to another party, in writing, payment of claim proceeds otherwise payable to *you*.

## SECTION II – LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, caused by an *occurrence*, *we* will:

1. pay up to *our* limit of liability for the damages for which the *insured* is legally liable. *We* will not pay for criminal restitution; and

2. provide a defense at *our* expense by counsel of *our* choice. *We* may make any investigation and settle any claim or suit that *we* decide is appropriate. *Our* obligation to defend any suit ends when the amount *we* pay for damages, to effect settlement or satisfy a judgment resulting from the *occurrence*, equals *our* limit of liability. *We* will not provide a defense to any *insured* for criminal prosecution or proceedings.

### COVERAGE M – MEDICAL PAYMENTS TO OTHERS

*We* will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, rehabilitation, pharmaceuticals, orthopedic devices, prosthetic devices, and funeral services. This coverage applies only:

1. to a person on the *insured location* with the permission of an *insured*;

2. to a person off the *insured location*, if the *bodily injury*:

   a. arises out of a condition on the *insured location* or the ways immediately adjoining;

   b. is caused by the activities of an *insured*;

   c. is caused by a *residence employee* in the course of the *residence employee's* employment by an *insured*; or

   d. is caused by an animal owned by or in the care of an *insured*; or

3. to a *residence employee* if the *occurrence* causing *bodily injury* occurs off the *insured location* and arises out of or in the course of the *residence employee's* employment by an *insured*.

### SECTION II – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

*We* will pay for the following in addition to the limits of liability:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

1. **Claim Expenses.** *We* will pay:

   a. expenses *we* incur and costs taxed against an *insured* in suits *we* defend. Taxed costs do not include attorney fees;

   b. premiums on bonds required in suits *we* defend, but not for bond amounts greater than the Coverage L limit. *We* are not obligated to apply for or furnish any bond;

   c. reasonable expenses an *insured* incurs at *our* request. This includes actual loss of earnings (but not loss of other income) up to $250 per day for aiding *us* in the investigation or defense of claims or suits;

   d. interest the *insured* is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) the Coverage L limit; and

   e. interest on the entire judgment that accrues after entry of the judgment and before *we* pay or tender, or deposit in court that part of the judgment that does not exceed the limit of liability that applies.

2. **First Aid Expenses.** *We* will pay expenses for first aid to others incurred by an *insured* for *bodily injury* covered under this policy. *We* will not pay for first aid to *you* or any other *insured*.

3. **Damage to Property of Others.**

   a. *We* will pay for *property damage* to property of others caused by the activities of an *insured*.

   b. *We* will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) the limit of liability shown in the *Declarations* for **Damage to Property of Others** for any one *occurrence*.

   c. *We* will not pay for *property damage*:

      (1) for a loss that is recoverable under Section I of this policy. *We* also will not pay for any applicable deductible regardless of whether the amount of the loss exceeds the deductible;

      (2) caused intentionally by an *insured* 13 years of age or older;

      (3) to property, other than a rented golf cart, owned by, or rented to an *insured*, a tenant of an *insured*, or a resident in *your* household;

      (4) arising out of:

         (a) *business* pursuits;

         (b) any act or omission in connection with a premises an *insured* owns, rents, or controls, other than the *insured location*;

         (c) a condition on the *insured location* or the ways immediately adjoining; or

         (d) the ownership, maintenance, or use of a *motor vehicle*, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board, or similar type watercraft; or

      (5) if a payment is made under **COVERAGE L – PERSONAL LIABILITY** for the same *property damage*.

## SECTION II – EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

   a. *bodily injury* or *property damage* that:

      (1) was a result of a:

         (a) willful and malicious; or

         (b) criminal;

         act or omission of the *insured*;

      (2) was intended by the *insured*; or

      (3) would have been expected by the *insured* based on a reasonable person standard.

      However, exclusions a.(2) and a.(3) above do not apply to *bodily injury* or *property damage* resulting from the use of reasonable force to protect persons or property.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

Exclusions a.(1), a.(2), and a.(3) above apply to all *bodily injury* or *property damage* even if the:

(1) *bodily injury* or *property damage* was sustained by a different person, entity, or property than was expected or intended;

(2) *bodily injury* or *property damage* was of a different kind, quality, or degree than was expected or intended;

(3) *insured* lacked the mental capacity to control his or her conduct;

(4) *insured* was not charged with or convicted of a criminal act or omission; or

(5) *insured* was impaired by drugs or alcohol;

b. *bodily injury* or *property damage* arising out of *business* pursuits of any *insured*, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits;

c. *bodily injury* or *property damage* arising out of the rental of any part of any premises by any *insured*. This exclusion does not apply:

(1) to the rental of the *residence premises*:

(a) either completely or in part, for exclusive use as a residence, for up to 30 nights in the 12-month period prior to the date of the loss;

(b) in part, for use as a permanent residence, by either one or two full-time roomers or boarders; or

(c) in part, as an office, school, studio, or private garage;

(2) when the *dwelling* on the *residence premises* is a two, three, or four family *dwelling* and *you* occupy one part and rent the other part to others;

(3) to farm land (without buildings), rented to others, but not to exceed a total of 500 acres, regardless of the number of locations; or

(4) to activities that are ordinarily incident to non-*business* pursuits;

d. *bodily injury* or *property damage* arising out of the rendering or failing to render professional services;

e. *bodily injury* or *property damage* arising out of any premises currently owned or rented to any *insured* which is not an *insured location*. This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*;

f. *bodily injury* or *property damage* arising out of the ownership, maintenance, use, loading, or unloading of:

(1) an aircraft. This exclusion does not apply to the ownership, maintenance, use, loading, or unloading of unmanned aircraft systems used as model aircraft:

(a) solely for recreational or hobby purposes;

(b) designed to be operated within the visual line of sight of the operator and operated within the visual line of sight of the operator; and

(c) weighing not more than 55 pounds at the time of operation;

unless the ownership, maintenance, use, loading, or unloading of such aircraft results in:

(a) *property damage* to any aircraft; or

(b) *bodily injury* or *property damage* resulting from interference with an aircraft carrying people regardless of whether the *bodily injury* or *property damage* is sustained by people or property on the aircraft or not;

(2) a *motor vehicle* owned or operated by or rented or loaned to any *insured*; or

(3) a watercraft:

(a) owned by or rented to any *insured* if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any *insured* if it is a sailing vessel, with or without

25

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any *insured*;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any *insured* if it is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by an *insured*. Exclusion f.(3) does not apply while the watercraft is on the *residence premises*;

g. *bodily injury* or *property damage* arising out of:

(1) the entrustment by any *insured* to any person;

(2) the supervision by any *insured* of any person;

(3) any liability statutorily imposed on any *insured*; or

(4) any liability assumed through an unwritten or written agreement by any *insured*;

with regard to the ownership, maintenance, or use of any aircraft, watercraft, or *motor vehicle* not covered under Section II of this policy;

h. *bodily injury* or *property damage* caused directly or indirectly by war, including undeclared war, or any warlike act including destruction, seizure, or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon will be considered a warlike act even if accidental;

i. *bodily injury* to any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*.

This exclusion also applies to any claim made or suit brought against any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured* to share damages with or repay someone else who may be obligated to pay damages because of the *bodily injury* sustained by any *insured* within the meaning of part 9.a., 9.b., or 9.c. of the definition of *insured*;

j. any claim made or suit brought against any *insured* by:

(1) any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

(b) any employee of any *insured*; or

(c) any other person actually or apparently acting on behalf of any *insured*; or

(2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

(a) any *insured*;

(b) any employee of any *insured*; or

(c) any other person actually or apparently acting on behalf of any *insured*.

This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age;

k. *bodily injury* or *property damage* arising out of an *insured's* participation in, or preparation or practice for, any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power;

l. *bodily injury* or *property damage* arising out of the use, sale, manufacture, distribution, delivery, transfer, or possession, by any *insured*, of any substance that is illegal or is a controlled substance under either federal or state law.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

This exclusion does not apply to the legitimate use of legally prescribed drugs, under either federal or state law, by a person following orders of a licensed health care professional;

m. *bodily injury* or *property damage* arising out of the actual, alleged, or threatened presence, discharge, dispersal, seepage, migration, release, escape of, or exposure to contaminants or pollutants at or from any source or location.

Contaminants and pollutants include but are not limited to any solid, liquid, gaseous, or thermal irritant, including smoke from agricultural smudging or industrial operations, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, noxious substances, fuel oil, asbestos, or lead.

This exclusion does not apply to *bodily injury* or *property damage* arising out of smoke or fumes caused by fire or explosion.

*We* also do not cover:

(1) any loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of contaminants or pollutants;

(2) any loss, cost, or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of contaminants or pollutants; or

(3) contamination or pollution arising out of actually or allegedly defective building materials, nuclear substances, or waste. Waste includes materials to be recycled, reconditioned, or reclaimed;

n. *bodily injury* or *property damage* arising out of any actual, alleged, or threatened:

(1) sexual harassment, sexual molestation, or sexual misconduct;

(2) physical or mental abuse; or

(3) corporal punishment;

by the *insured*;

o. *bodily injury* or *property damage* arising out of the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungus* at or from any source or location.

*We* also do not cover any loss, cost, or expense arising out of any:

(1) request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of, or in any way respond to or assess the effects of *fungus*; or

(2) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to or assessing the effects of *fungus*; or

p. *bodily injury* or *property damage* arising out of the ownership, maintenance, or use of systems and equipment used to generate electrical power exceeding 125 percent of the actual electrical power usage by the *residence premises* in the 12-month period prior to the date of the loss.

2. Coverage L does not apply to:

a. liability:

(1) for *your* share of any loss assessment charged against all members of any type of association of property owners; or

(2) imposed on or assumed by any *insured* through any unwritten or written contract or agreement. This exclusion does not apply to liability for damages that the *insured* would have in absence of the contract or agreement;

b. *property damage* to property owned by any *insured* at the time of the *occurrence*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

c.  **property damage** to property rented to, used or occupied by, or in the care, custody, or control of any **insured** at the time of the **occurrence**. This exclusion does not apply to **property damage** caused by fire, smoke, explosion, or abrupt and accidental damage from water;

d.  **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e.  **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f.  **bodily injury** or **property damage** arising out of any real property any **insured** has sold or transferred. This includes but is not limited to **bodily injury** or **property damage** arising out of known, unknown, hidden, or alleged property conditions, problems, or defects.

This exclusion also applies to any **property damage** to the sold or transferred real property itself.

However, this exclusion does not apply to:

(1)  **bodily injury** arising out of fire, smoke, explosion, electrocution, or carbon monoxide poisoning; or

(2)  **property damage** arising out of fire, smoke, or explosion.

3.  Coverage M does not apply to **bodily injury**:

a.  to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b.  to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability, or occupational disease law;

c.  to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**; or

d.  from nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

## SECTION II – CONDITIONS

1.  **Limit of Liability.** The Coverage L limit is shown in the **Declarations**. This is the limit for all damages from each **occurrence** for the policy period in which the **bodily injury** or **property damage** first occurs, regardless of the number of **insureds**, claims made, or persons injured. No additional limits or coverage will be available for the **occurrence** under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the **Declarations**. This is **our** limit for all medical expenses for **bodily injury** to one person as the result of one accident.

2.  **Severability of Insurance.** This insurance applies separately to each **insured**. This condition does not

increase **our** limit of liability for any one **occurrence**.

3.  **Duties After Loss.** In case of an accident or **occurrence**, the **insured** must cooperate with **us** in the investigation, settlement, or defense of any claim or suit and also perform the following duties that apply. **You** must cooperate with **us** in seeing that these duties are performed:

a.  give written notice to **us** or **our** agent as soon as possible, which sets forth:

(1)  the identity of this policy and the **insured**;

(2)  reasonably available information on the time, place, and circumstances of the accident or **occurrence**; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

(3) names and addresses of any claimants and available witnesses;

b. immediately forward to *us* every notice, demand, summons, or other process relating to the accident or *occurrence*;

c. at *our* request, assist in:

(1) making settlement;

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an *insured*;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under **SECTION II – ADDITIONAL COVERAGES, Damage to Property of Others**, exhibit the damaged property if within the *insured's* control; and

e. the *insured* must not, except at the *insured's* own cost, voluntarily make payments, assume obligations, or incur expenses. This does not apply to expense for first aid to others at the time of the *bodily injury*.

4. **Coverage M Requirements.** *We* may require the following in regard to any Coverage M claim:

a. written proof of claim, under oath if required, as soon as possible from the injured person, or when appropriate, someone acting on behalf of that person;

b. the injured person's submission to physical examinations by a physician selected by *us* when and as often as *we* reasonably require; and

c. any authorizations from the injured person as *we* may require.

5. **Payment of Claim – Coverage M or Damage to Property of Others.** Payment under either of these is not an admission of liability by an *insured* or *us*.

6. **Suit Against Us.** No action will be brought against *us* unless there has been compliance with the policy provisions.

No one will have the right to join *us* as a party to an action against an *insured*. Further, no action with respect to Coverage L will be brought against *us* until the obligation of the *insured* has been determined by final judgment on the merits, after an actual trial or by an agreement signed by *us*; but *we* will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Liability.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an *insured* will not relieve *us* of *our* obligation under this policy.

8. **Other Insurance – Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II – CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or *bodily injury* or *property damage* under Section II that occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to *you* and any other *insured* if *you* or any other *insured* under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If *we* adopt any revision that would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by *us* to be valid. *Our* request for an appraisal or examination does not waive any of *our* rights.

5. **Cancellation.**

a. *You* may cancel this policy at any time by giving *us* advance written notice of the date cancellation is to take effect. *We* may waive the requirement

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

that the notice be in writing by confirming the date and time of cancellation to *you* in writing.

b.   *We* may cancel this policy only for the reasons stated in this condition. *We* will notify *you* in writing of the date cancellation takes effect. This cancellation notice may be delivered to *you*, or mailed to *you* at *your* mailing address shown in the *Declarations*. Proof of mailing will be sufficient proof of notice:

   (1) When *you* have not paid the premium, *we* may cancel at any time by notifying *you* at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to *us* or *our* agent or under any finance or credit plan.

   (2) When this policy has been in effect for less than 45 business days and is not a renewal with *us*, *we* may cancel for any reason. *We* may cancel by notifying *you* at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 45 business days or more, or at any time if it is a renewal with *us*, *we* may cancel for the following reasons:

      (a) discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

      (b) discovery of willful or reckless acts or omissions on the part of the named insured which increase any hazard insured against;

      (c) a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

      (d) violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

      (e) a determination by the Insurance Commissioner that the continuation

of the policy would place the insurer in violation of the insurance laws of this state; or

      (f) conviction of the named insured of a crime having as one of its necessary elements an act increasing any hazard insured against.

   *We* may cancel this policy by notifying *you* at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period longer than one year, *we* may cancel for any reason at anniversary. *We* may cancel by notifying *you* at least 30 days before the date cancellation takes effect.

c.   When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. The return premium will be pro rata.

d.   The return premium may not be refunded with the notice of cancellation or when this policy is returned to *us*. In such cases, *we* will refund it within a reasonable time after the date cancellation takes effect.

6.   **Nonrenewal.** *We* may elect not to renew this policy. If *we* elect not to renew, a written notice will be delivered to *you*, or mailed to *you* at *your* mailing address shown in the *Declarations*. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7.   **Assignment of Policy.** Assignment of this policy will be void and *we* will not recognize any such assignment, unless *we* give *our* written consent.

8.   **Subrogation and Reimbursement.**

   a.   **Subrogation.**

      (1) Applicable to SECTION I:

         If any *insured* to or for whom *we* make payment under this policy has rights to recover damages from another, those rights are transferred to *us* to the extent of *our* payment. That *insured* must do everything necessary to secure *our* rights and must do nothing after loss to impair them.

30

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

However before a loss, an *insured* may waive in writing all rights of recovery against any person.

(2) Applicable to SECTION II:

If any *insured* has rights to recover all or part of any payment *we* have made under this policy, those rights are transferred to *us*. An *insured* must do nothing after loss to impair them. At *our* request, an *insured* will bring suit or transfer those rights to *us* and help *us* enforce them.

Subrogation does not apply under Section II to **Medical Payments to Others** or **Damage to Property of Others**.

b. **Reimbursement.**

If *we* make payment under this policy and any *insured* to or for whom *we* make payment recovers or has recovered from another person or organization, then the *insured* to or for whom *we* make payment must:

(1) hold in trust for *us* the proceeds of any recovery; and

(2) reimburse *us* to the extent of *our* payment.

9. **Death.** If *you* die:

a. *we* insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. *insured* includes:

(1) any member of *your* household who is an *insured* at the time of *your* death, but only while a resident of the *residence premises*; and

(2) with respect to *your* property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the state in which this policy is issued, the law of the state will apply.

11. **Premium.**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued *Declarations*.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium applicable at the time of renewal.

c. The premium for this policy may vary based upon:

(1) the purchase of other products or services from the *State Farm Companies*;

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

d. *Your* purchase of this policy may allow:

(1) *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or

(2) the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State*

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2136

*Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

12. **Right to Inspect.**

a. *We* have the right but are not obligated to perform the following:

(1) make inspections and surveys of the *insured location* at any time;

(2) provide *you* with reports on conditions *we* find; or

(3) recommend changes.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

b. *We* do not:

(1) make safety inspections;

(2) undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

(3) warrant that conditions are safe or healthful; or

(4) warrant that conditions comply with laws, regulations, codes, or standards.

This condition applies to *us* and to any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on *our* behalf.

13. **Joint and Individual Interests.** When there are two or more Named Insureds, each acts for all to cancel or change this policy.

14. **Change of Policy Address.** *We* may change the Named Insured's policy address as shown in the *Declarations* and in *our* records to the most recent address provided to *us* by:

a. *you*; or

b. the United States Postal Service.

15. **Electronic Delivery.** With *your* consent, *we* may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

16. **Our Rights Regarding Claim Information.**

a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

b. Subject to 16.a. above, *we* will not be restricted in or prohibited from:

(1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

(2) using any of the items described in item b.(1) above; or

(3) retaining:

(a) any of the items in item b.(1) above; or

(b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

c. *We* may disclose any of the items in b.(1) above and any of the information described in item b.(3)(b) above:

(1) to enable performance of *our* business functions;

(2) to meet *our* reporting obligations to insurance regulators;

(3) to meet *our* reporting obligations to insurance data consolidators;

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. *Our* rights under 16.a., 16.b., and 16.c. above will not be impaired by any:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
HW-2136

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

17. **Duties Regarding Claim Information.** An *insured* or a legal representative acting on an *insured's* behalf must provide *us* with any requested authorizations related to the claim. *Our* rights as set forth under **Our Rights Regarding Claim Information** of this policy will not be impaired by any:

a. authorization related to the claim; or

b. act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the *Declarations* and is subject to all the terms, provisions, exclusions, and conditions of this policy.

**Option AI – Additional Insured.** The definition of *insured* is extended to include the person or organization shown in the *Declarations* as an Additional Insured or whose name is on file with *us*. Coverage is with respect to:

1. **SECTION I – Coverage A, Coverage B, or Coverage C;** or

2. **SECTION II – Coverage L** and **Coverage M** but only with respect to the *residence premises*. This coverage does not apply to *bodily injury* to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the *Declarations*.

**Option BP – Business Property.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability,** item b., for property used or intended for use in a *business*, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the *Declarations* for this option.

**Option BU – Business Pursuits. SECTION II – EXCLUSIONS,** item 1.b. is modified as follows:

1. Section II coverage applies to the *business* pursuits of an *insured* who is a:

a. clerical office employee, salesperson, collector, messenger; or

b. teacher (except college, university, and professional athletic coaches), school principal, or school administrator;

while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

a. for *bodily injury* or *property damage* arising out of a *business* owned or financially controlled by the *insured* or by a partnership of which the *insured* is a partner or member;

b. for *bodily injury* or *property damage* arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

(1) computer programming, architectural, engineering, or industrial design services;

(2) medical, surgical, dental, or other services or treatment conducive to the health of persons or animals; and

(3) beauty or barber services or treatment;

c. for *bodily injury* to a fellow employee of the *insured* injured in the course of employment; or

d. when the *insured* is a member of the faculty or teaching staff of a school or college:

(1) for *bodily injury* or *property damage* arising out of the maintenance, use, loading, or unloading of:

(a) draft or saddle animals, including vehicles for use with them; or

(b) aircraft, *motor vehicles*, recreational *motor vehicles* or watercraft, airboats, air cushions, or personal watercraft which use a water jet pump powered by an internal combustion

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

engine as the primary source of propulsion;

owned, operated, or hired by or for the *insured* or employer of the *insured* or used by the *insured* for the purpose of instruction in the use thereof; or

(2) under **Coverage M** for *bodily injury* to a student arising out of corporal punishment administered by or at the direction of the *insured*.

**Option FA – Firearms.** Firearms are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. *We* will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds, or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, *we* will pay for losses caused by wild bears or deer;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling, or explosion of firearms;

   g. breakage, marring, scratching, tearing, or denting unless caused by fire, thieves, or accidents to conveyances; or

   h. infidelity of an *insured's* employees or persons to whom the insured property may be entrusted or rented;

2. *Our* limit for loss by any Coverage B peril except theft is the limit shown in the *Declarations* for Coverage B, plus the aggregate limit;

3. *Our* limits for loss by theft are those shown in the *Declarations* for this option. These limits apply in lieu of the Coverage B theft limit; and

4. *Our* limits for loss by any covered peril except those in items 2. and 3. above are those shown in the *Declarations* for this option.

**Option ID – Increased Dwelling Limit.** *We* will settle losses to damaged *building structures* covered under **COVERAGE A – DWELLING** according to the **Loss Settlement Provision** shown in the *Declarations*.

If the amount *you* actually and necessarily spend to repair or replace damaged *building structures* exceeds the applicable limit of liability shown in the *Declarations*, *we* will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the *Declarations* to repair or replace the *dwelling*; or

2. 10% of the Option ID limit of liability to repair or replace *building structures* covered under **COVERAGE A – DWELLING, Other Structures**.

**Report Increased Values.** *You* must notify *us* within 90 days of the start of construction on any new *building structure* costing $5,000 or more; or any additions to or remodeling of *building structures* that increase their values by $5,000 or more. *You* must pay any additional premium due for the increased value. *We* will not pay more than the applicable limit of liability shown in the *Declarations* if *you* fail to notify *us* of the increased value within 90 days.

**Option IO – Incidental Business.** The coverage provided by this option applies only to that incidental *business* occupancy on file with *us*.

1. **COVERAGE A – DWELLING, Other Structures,** item 2.b. is deleted.

2. **COVERAGE B – PERSONAL PROPERTY** is extended to include equipment, supplies, and furnishings usual and incidental to this *business* occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the *Declarations*. The first limit applies to property on the *residence premises*. The second limit applies to property

34

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

while off the *residence premises*. These limits are in addition to the **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a *business*.

3. Under Section II, the *residence premises* is not considered *business* property because an *insured* occupies a part of it as an incidental *business*.

4. **SECTION II – EXCLUSIONS**, item 1.b. is replaced with the following:

   b. *bodily injury* or *property damage* arising out of *business* pursuits of any *insured*, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-*business* pursuits or to *business* pursuits of an *insured* that are necessary or incidental to the use of the *residence premises* as an incidental *business*;

5. This insurance does not apply to:

   a. *bodily injury* to an employee of an *insured* arising out of the *residence premises* as an incidental *business* other than to a *residence employee* while engaged in the employee's employment by an *insured*;

   b. *bodily injury* to a student arising out of corporal punishment administered by or at the direction of the *insured*;

   c. liability arising out of any acts, errors, or omissions of an *insured*, or any other person for whose acts an *insured* is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections, or engineering services in the conduct of an *insured's* incidental *business* involving data processing, computer consulting, or computer programming; or

   d. any claim made or suit brought against any *insured* by:

      (1) any person in the care of any *insured* because of child care services provided by or at the direction of:

         (a) any *insured*;

         (b) any employee of any *insured*; or

         (c) any other person actually or apparently acting on behalf of any *insured*; or

      (2) any person who makes a claim because of *bodily injury* to any person in the care of any *insured* because of child care services provided by or at the direction of:

         (a) any *insured*;

         (b) any employee of any *insured*; or

         (c) any other person actually or apparently acting on behalf of any *insured*.

   Coverage M does not apply to any person indicated in d.(1) and d.(2) above.

   This exclusion does not apply to the occasional child care services provided by any *insured*, or to the part-time child care services provided by any *insured* under 19 years of age.

**Option JF – Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are covered for accidental direct physical loss or damage.

The limits for this option are shown in the *Declarations*. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss. All provisions and exclusions of **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY, Theft** apply to Option JF.

The following additional provisions apply:

1. *We* will not pay for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, or gradual deterioration;

   b. all animals, birds or insects, including nesting, infestation, gnawing, feeding, breeding, or discharge or release of waste products or secretions by animals, birds, or insects. However, *we* will pay for losses caused by wild bears or deer;

   c. inherent vice; or

   d. seizure or destruction under quarantine or customs regulations;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

2. *Our* limit for loss by any Coverage B peril except theft is the limit shown in the *Declarations* for Coverage B, plus the aggregate limit;

3. *Our* limits for loss by theft are those shown in the *Declarations* for this option. These limits apply in lieu of the Coverage B theft limit; and

4. *Our* limits for loss by any covered peril except those in items 2. and 3. above are those shown in the *Declarations* for this option.

**Option OL – Building Ordinance or Law.**

1. **Coverage Provided.** The total limit of insurance provided by this option will not exceed an amount equal to the Option OL percentage shown in the *Declarations* of the Coverage A limit shown in the *Declarations* at the time of the loss, as adjusted by the Inflation Coverage provisions of this policy. This is an additional amount of insurance and applies to *building structures* on the *residence premises*.

2. **Damaged Portions of *Building Structure*.** When a *building structure* covered under **COVERAGE A – DWELLING** is damaged by a *loss insured*, *we* will pay for the increased cost to repair or rebuild the physically damaged portion of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same *loss insured* and the requirement is in effect at the time the *loss insured* occurs.

3. **Undamaged Portions of Damaged *Building Structure*.** When a *building structure* covered under **COVERAGE A – DWELLING** is damaged by a *loss insured*, *we* will also pay for:

   a. the cost to demolish and clear the site of the undamaged portions of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same *loss insured* and the requirement is in effect at the time the *loss insured* occurs; and

   b. loss to the undamaged portion of the *building structure* caused by enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same *loss insured*;

      (2) the enforcement requires the demolition of portions of the same *building structure* not damaged by the same *loss insured*;

      (3) the ordinance or law regulates the construction or repair of the *building structure*, or establishes zoning or land use requirements at the described premises; and

      (4) the ordinance or law is in force at the time of the occurrence of the same *loss insured*; or

   c. legally required changes to the undamaged portion of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law, if:

      (1) the enforcement is directly caused by the same *loss insured*;

      (2) the requirement is in effect at the time the *loss insured* occurs; and

      (3) the legally required changes are made to the undamaged portions of specific *building structure* features, systems, or components that have been physically damaged by the *loss insured*.

   *We* will not pay for legally required changes to specific *building structure* features, systems, or components that have not been physically damaged by the *loss insured*.

4. **Building Ordinance or Law Coverage Limitations.**

   a. *We* will not pay for any increased cost of construction:

      (1) until the *building structure* is actually repaired or replaced at the same or another premises in the same general vicinity;

      (2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years; and

      (3) due to any original or subsequent construction, addition, modification, renovation, remodel, or repair to a *building structure* that did not comply with a building, zoning, or land use ordinance or law in effect when the construction, addition, modification, renovation, remodel, or repair was performed.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

b.  *We* will not pay more under this coverage than the amount *you* actually spend:

(1) for the increased cost to repair or rebuild the *building structure* at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

(2) to demolish and clear the site of the undamaged portions of the *building structure* caused by enforcement of building, zoning, or land use ordinance or law.

*We* will not pay for more than a *building structure* of the same height, floor area, and style on the same or similar premises as the *building structure*, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG – Silverware and Goldware Theft.** The **COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability**, item i., for theft of silverware and goldware is increased to be the amount shown in the *Declarations* for this option.

37

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

HW-2136

## HOMEOWNERS AMENDATORY ENDORSEMENT (Oklahoma)

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY

### DEFINITIONS

The definition of *"occurrence"* is replaced by the following:

*"occurrence"*, when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

a.  *bodily injury*; or

b.  *property damage*;

during the policy period. All *bodily injury* and *property damage* resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one *occurrence*.

### SECTION I – CONDITIONS

Under **Mortgagee Clause**, paragraph 10.c. is replaced by the following:

c.  If *we* cancel this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect.

### SECTION I AND SECTION II – CONDITIONS

Under **Cancellation**, 5.b. is replaced by the following:

b.  *We* may cancel this policy by providing notice to a named insured shown on the *Declarations*. The notice will provide the date cancellation is effective.

(1)  When *you* have not paid the premium, *we* may cancel at any time by providing notice at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to *us* or *our* agent or under any finance or credit plan.

(2)  When this policy has been in effect for less than 45 business days and is not a renewal with *us*, *we* may cancel for any reason. *We* may cancel by providing notice at least 10 days before the date cancellation takes effect.

(3)  When this policy has been in effect for 45 business days or more, or at any time if it is a renewal with *us*, *we* may cancel for the following reasons:

(a)  discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

(b)  discovery of willful or reckless acts or omissions on the part of the named insured which increase any hazard insured against;

(c)  a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

(d)  violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

(e)  a determination by the Insurance Commissioner that the continuation of the policy would place the insurer in violation of the insurance laws of this state; or

(f)  conviction of the named insured of a crime having as one of its necessary elements an act increasing any hazard insured against.

*We* may cancel this policy by providing notice at least 30 days before the date cancellation takes effect.

(4)  When this policy is written for a period longer than one year, *we* may cancel for any reason at anniversary. *We* may cancel by providing notice at least 30 days before the date cancellation takes effect.

**Nonrenewal** is replaced by the following:

**Nonrenewal.** If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will provide a nonrenewal notice to a named insured shown on the *Declarations*.

**Electronic Delivery** is deleted.

### OPTIONAL POLICY PROVISIONS

**Option ID** is replaced by the following:

**Option ID – Increased Dwelling Limit.** *We* will settle losses to damaged *building structures* covered under **COVERAGE A – DWELLING** according to the **Loss Settlement Provision** shown in the *Declarations*.

1.  If the amount *you* actually and necessarily spend to repair or replace the damaged *dwelling* exceeds the limit of liability shown in the *Declarations* for Coverage A – Dwelling, *we* will pay the additional amounts not to exceed the Option ID limit shown in the *Declarations*.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

2. If the amount *you* actually and necessarily spend to repair or replace damaged *building structures* covered under **COVERAGE A – DWELLING, Other Structures** exceeds the limit of liability shown in the *Declarations* for Other Structures, *we* will pay the additional amounts not to exceed 10% of the Option ID limit shown in the *Declarations.*

**Report Increased Values.** *You* must notify *us* within 90 days of the start of construction on any new *building structure* costing $5,000 or more; or any additions to or remodeling of *building structures* that increase their values by $5,000 or more. *You* must pay any additional premium due for the increased value. *We* will not pay more than the applicable limit of liability shown in the *Declarations* if *you* fail to notify *us* of the increased value within 90 days.

All other policy provisions apply.

HO-2310

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

HO-2356
Page 1 of 1

## AMENDATORY ENDORSEMENT – SECTION II – LIABILITY COVERAGES

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY

### SECTION II – EXCLUSIONS

Under **SECTION II – EXCLUSIONS**, 2.a. and 2.c. are replaced by the following:

2. Coverage L does not apply to:

   a. liability:

      (1) for *your* share of any loss assessment charged against all members of any type of association of property owners; or

      (2) imposed on or assumed by any *insured* through any unwritten or written contract or agreement. This exclusion does not apply to:

         (a) liability for damages that the *insured* would have in absence of the contract or agreement; or

         (b) written contracts:

            (i) that directly relate to the ownership, maintenance, or use of any *insured location*; or

            (ii) when the liability of others is assumed by *you* prior to the *occurrence*;

         unless excluded elsewhere in the policy;

   c. *property damage* to property rented to, used or occupied by, or in the care, custody, or control of any *insured* at the time of the *occurrence*. This exclusion does not apply to *property damage* caused by:

      (1) fire;

      (2) smoke;

      (3) explosion;

      (4) abrupt and accidental damage from water; or

      (5) household pets, up to $500 in excess of *your* security deposit;

All other policy provisions apply.

HO-2356

©, Copyright, State Farm Mutual Automobile Insurance Company, 2019

## HO-2609 CYBER EVENT, IDENTITY RESTORATION, AND FRAUD LOSS COVERAGE

This endorsement modifies insurance provided under the following: HOMEOWNERS POLICY, CONDOMINIUM UNITOWNERS POLICY, and RENTERS POLICY.

### DEFINITIONS

The following definitions apply only to this endorsement.

1.  **bank card** means a card, a card number, or an account number associated with:

    a.  an automated teller card;

    b.  a credit card; or

    c.  a debit card.

2.  **computing device** means a desktop, laptop, tablet computer, Wi-Fi router, modem, cellular phone, or smart phone. Such device must be owned or leased by an **insured** as well as operated under an **insured's** control.

3.  **credit monitoring service** means a service monitoring transactions affecting an individual's credit records.

4.  **cyber attack** means one of the following involving a **computing device**:

    a.  unauthorized access or use, meaning the gaining of access to an **insured's** device or system by an unauthorized person or persons or by an authorized person or persons for unauthorized purposes; or

    b.  malware attack, meaning damage to an **insured's** device, system, or data arising from malicious code, including viruses, worms, Trojans, spyware, and key loggers. This does not mean damage from shortcomings or mistakes in legitimate electronic code or damage from code installed on an **insured's** computer system during the manufacturing process or through a software update provided by the manufacturer.

5.  **cyber extortion event** means one of the following involving a **computing device**:

    a.  a demand for money or other consideration based on a credible threat to damage, disable, deny access to, or disseminate content from an **insured's** device, system, or data; or

    b.  a demand for money or other consideration based on an offer to restore access or functionality in connection with an attack on an **insured's** device, system, or data.

6.  **cyber extortion response costs** means any payment as directed by the extortion threat, but only when that payment is:

    a.  incurred as a direct result of a **cyber extortion event** directed against an **insured**; and

    b.  approved in advance by us. However, we may pay for **cyber extortion response costs** that were not approved in advance by us if we determine the following:

        (1) it was not practical for an **insured** to obtain our prior approval; and

        (2) if consulted at the time, we would have approved the payment.

7.  **data recovery costs**

    a.  **data recovery costs** means the costs of a professional firm hired by an **insured** to replace electronic data that has been lost or corrupted.

    b.  **data recovery costs** does not mean costs to research, re-create, or replace any of the following:

        (1) software programs or operating systems that are not commercially available;

        (2) data that cannot reasonably be replaced without extraordinary expense. This includes, but is not limited to, personal photos, movies, or recordings for which no electronic back-up is available; or

        (3) data that is obsolete, unnecessary, or no longer of use.

8.  **fraud event**

    a.  **fraud event** means any of the following, when such event results in direct financial loss to an **insured**:

        (1) **identity fraud**;

        (2) the unauthorized use of a **bank card** issued to or registered in an **insured's** name, when the **insured** is legally liable for such use;

        (3) the forgery or alteration of any check or negotiable instrument;

        (4) acceptance in good faith of counterfeit currency; or

        (5) an intentional and criminal deception of an **insured** to induce the **insured** to part voluntarily with something of value;

    b.  **fraud event** does not mean or include any occurrence:

        (1) in which the **insured** is threatened or coerced to part with something of value;

        (2) between an **insured** and any of the following:

            (a) the **insured's** current or former spouse, common law spouse, or domestic partner;

© 2017 The Hartford Steam Boiler Inspection and Insurance Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

CONTINUED

(b) the **insured's** grandparent, parent, sibling, child, or grandchild; or

(c) any resident of the **insured's** household;

(3) involving use of a **bank card**:

(a) by a person who has been authorized by an **insured** to use such **bank card**, unless such authorization was obtained through an intentional and criminal deception of the **insured**; or

(b) if an **insured** has not complied with all terms and conditions under which the **bank card** was issued; or

(4) arising from any of the following:

(a) the business or professional service of an **insured**;

(b) a dispute or a disagreement over the completeness, authenticity, or value of a product, a service, or a financial instrument;

(c) a charitable contribution, a donation, or a gift by an **insured**;

(d) an online auction or the use of an online auction site;

(e) a lottery, gambling, or a game of chance; or

(f) an advance fee fraud or other fraud in which an **insured** provides money based on an expectation of receiving at some future time a larger amount of money or something with a greater value than the money provided.

9. **identity fraud** means the fraudulent use of an **insured's** identifying information to:

a. commit crimes;

b. unlawfully establish credit accounts;

c. secure loans; or

d. enter into contracts.

**Identity fraud** does not include the fraudulent use of a business name or any other method of identifying a business activity.

10. **identity fraud expenses** means the following reasonable and necessary expenses incurred as a direct result of an **identity fraud**:

a. costs for re-filing applications for loans, grants, or other credit instruments;

b. costs for notarizing affidavits or other similar documents, long distance telephone calls, and postage;

c. costs for credit reports from established credit bureaus;

d. fees and expenses for an attorney approved by us for the following:

(1) the defense of any civil suit brought against an **insured**;

(2) the removal of any civil judgment wrongfully entered against an **insured**;

(3) legal assistance for an **insured** at an audit or hearing by a governmental agency;

(4) legal assistance in challenging the accuracy of the consumer credit report of the **insured**;

(5) legal assistance in challenging any charge or transaction wrongfully entered by a financial institution against an **insured**; or

(6) the defense of any criminal charges brought against an **insured** arising from the actions of a third party using the personal identity of the **insured**;

e. actual lost wages of the **insured** for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays, and paid personal days. Actual lost wages do not include time lost for illness. Necessary time off does not include time off to do tasks that could reasonably have been done during non-work hours;

f. actual costs for supervision of children or elderly or infirm relatives of the **insured** during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the **insured**; or

g. any other reasonable costs necessarily incurred by an **insured** as a direct result of the **identity fraud**. Such costs include:

(1) costs by the **insured** to recover control over his or her personal identity or the personal identity of a **person for whom the insured is responsible**; and

(2) deductibles or service fees from financial institutions.

Such costs do not include:

(1) costs to avoid, prevent, or detect **identity fraud** or other loss;

(2) monies lost or stolen;

(3) costs that are restricted or excluded elsewhere in this endorsement or policy; or

(4) balances resulting from the unauthorized use of valid credit card, credit account, or bank account.

11. **identity restoration case manager** means a person assigned by us to help an **insured** to counteract the effects

© 2017 The Hartford Steam Boiler Inspection and Insurance Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
CONTINUED

of **identity fraud**. This help may include, with the permission and cooperation of the **insured**, contacting authorities, credit bureaus, creditors, and businesses.

12. **increased risk event** means loss or theft of any of the following from an **insured**, if they contain the personally identifying information of the **insured**:

   a. a purse, billfold, or wallet;

   b. a personal computer, telephone, or data storage device; or

   c. paper records.

   As used in this definition, personally identifying information means information that could be used to commit fraud or other illegal activity involving the credit or identity of an **insured**. This includes, but is not limited to, a Social Security or financial account number. Personally identifying information does not mean information that is otherwise available to the public, such as name, address, and telephone number.

   **Increased risk event** does not include actual or apparent cases of **identity fraud**.

13. **insured**

   a. **insured**, when used in this endorsement with respect to Identity Restoration Coverage, Contingent Credit Monitoring, and Fraud Loss Coverage, means the person or persons shown as "Named Insured" in the Declarations and:

      (1) if residents of the Named Insured's household, that person's relatives;

      (2) if residents of the Named Insured's household, any other person under the age of 21 who is in the care of a person described above; and

      (3) any **person for whom the insured is responsible**.

   b. **insured**, when used in this endorsement with respect to Cyber Attack Coverage and Cyber Extortion Coverage, means the person or persons shown as "Named Insured" in the Declarations and if residents of the Named Insured's household:

      (1) that person's relatives; and

      (2) any other person under the age of 21 who is in the care of a person described above.

14. **one cyber occurrence** means all **cyber attacks** or **cyber extortion events** that:

   a. take place at the same time; or

   b. arise during the same policy period from the same source, cause, or vulnerability.

15. **person for whom the insured is responsible** means a living person or the estate of a deceased person for

whom the **insured** is legally empowered to act as a guardian, executor, or trustee.

However, with respect to any **insured** who in the ordinary course of his or her business or employment is called upon to serve as a guardian, executor, or trustee, the **person for whom the insured is responsible** must be a family member of the **insured**.

16. **system restoration costs**

   a. **system restoration costs** means the costs of a professional firm hired by an **insured** to do the following in order to restore an **insured's computing device** to the level of functionality it had before the **cyber attack**:

      (1) replace or reinstall computer software programs;

      (2) remove any malicious code; and

      (3) configure or correct the configuration of an **insured's** device or system.

   b. **system restoration costs** does not mean any of the following:

      (1) costs to repair or replace hardware. However, we will pay to repair or replace hardware if doing so reduces the amount of loss payable under this endorsement;

      (2) costs to increase the speed, capacity, or utility of an **insured's** device or system;

      (3) an **insured's** time or labor; or

      (4) any costs in excess of the replacement value of an **insured's** system, including applicable hardware and software.

## CYBER ATTACK COVERAGE

If any **insured** has experienced a **cyber attack** covered by this endorsement, the following coverages are provided:

### Data Recovery Costs

Reimbursement of necessary and reasonable **data recovery costs** incurred as a direct result of the **cyber attack**.

### System Restoration Costs

Reimbursement of necessary and reasonable **system restoration costs** incurred as a direct result of the **cyber attack**.

This coverage only applies if:

1. there has been a **cyber attack**;

2. such **cyber attack** is first discovered by any **insured** while this endorsement is in force; and

3. reported to us within 60 days after it is first discovered by any **insured**.

© 2017 The Hartford Steam Boiler Inspection and Insurance Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
CONTINUED

## CYBER EXTORTION COVERAGE

If any **insured** has experienced a **cyber extortion event** covered by this endorsement, the following coverages are provided:

### Professional Assistance

Professional assistance from a subject matter expert provided by us for advice and consultation regarding how best to respond to the threat.

### Cyber Extortion Response Costs

Reimbursement of necessary and reasonable **cyber extortion response costs** incurred as a direct result of the **cyber extortion event**.

This coverage only applies if:

1. there has been a **cyber extortion event**; and

2. such **cyber extortion event** is first discovered by any **insured** while this endorsement is in force; and

3. reported to us within 60 days after it is first discovered by any **insured**.

## IDENTITY RESTORATION COVERAGE

If the **insured** has been a victim of **identity fraud** covered by this endorsement, the following coverages are provided:

### Case Management Service

Services of an **identity restoration case manager** as needed to respond to the **identity fraud**.

### Expense Reimbursement

Reimbursement of necessary and reasonable **identity fraud expenses** incurred as a direct result of the **identity fraud**.

These coverages only apply if the **identity fraud** is:

1. first discovered by any **insured** while this endorsement is in force; and

2. reported to us within 60 days after it is first discovered by any **insured**.

## CONTINGENT CREDIT MONITORING

If the **insured** has experienced an **increased risk event** covered by this endorsement, 12 months of **credit monitoring service** is provided.

This coverage only applies if the **increased risk event** is:

1. first discovered by any **insured** while this endorsement is in force; and

2. reported to us within 60 days after it is first discovered by any **insured**.

## FRAUD LOSS COVERAGE

If the **insured** has been a victim of a **fraud event** covered by this endorsement, the following coverage is provided:

### Fraud Loss

Payment of the amount fraudulently taken from the **insured**. This is the direct financial loss only.

Fraud Loss does not include any of the following:

1. other expenses that arise from the **fraud event**, including, but not limited to, **identity fraud expenses**;

2. indirect loss, such as bodily injury, lost time, or damaged reputation;

3. any interest, time value, or potential investment gain on the amount of financial loss; or

4. any portion of such amount that has been or can reasonably be expected to be reimbursed by a third party, such as a financial institution.

This coverage only applies if the **fraud event** is:

1. first discovered by any **insured** while this endorsement is in force; and

2. reported to us within 60 days after it is first discovered by any **insured**.

## LIMITS

The coverage provided by this endorsement is in addition to any other coverage which applies in this policy.

### Cyber Attack and Cyber Extortion Coverages:

1. Cyber Attack coverage and Cyber Extortion coverage are jointly subject to a Cyber Attack and Cyber Extortion limit of $15,000 annual aggregate limit. This limit is the most we will pay for all loss, damage, or expenses arising out of all **cyber attacks** or **cyber extortion events** during any one policy period.

2. Our costs to provide you with professional assistance from a subject matter expert in response to a **cyber extortion event** shall not count towards the loss, damage, or expense included within your coverage limit.

3. If **one cyber occurrence** causes loss, damage, or expense in more than one policy period, all such loss, damage, and expense will be subject to the Cyber Attack and Cyber Extortion limit of the first such policy period.

### Identity Restoration and Fraud Loss Coverages:

1. Case Management Service is available as needed for any one **identity fraud** for up to 12 months from the initial assignment of an **identity restoration case manager**. Expenses we incur to provide Case Management Service do not reduce the limit available for Expense Reimbursement coverage and Fraud Loss coverage.

2. Expense Reimbursement coverage and Fraud Loss coverage are jointly subject to an Expense Reimbursement and Fraud Loss limit of $50,000 annual aggregate per **insured**. This limit is the most we will pay for the total of all loss or expense arising out of all **identity frauds** and

© 2017 The Hartford Steam Boiler Inspection and Insurance Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
CONTINUED

**fraud events** to any one **insured** which are first discovered by any **insured** during the current policy period. This limit applies regardless of the number of claims during that period.

3. An **identity fraud** or **fraud event** may be first discovered by any **insured** in one policy period and continue into other policy periods. If so, all loss and expense arising from the **identity fraud** or **fraud event** will be subject to the annual aggregate limit which applies to the policy period when the **identity fraud** or **fraud event** was first discovered by any **insured**.

4. **Identity fraud expenses** are part of, and not in addition to, payment under the Expense Reimbursement and Fraud Loss limit.

5. **Identity fraud expenses** are limited to costs incurred within 12 months of the first discovery of the **identity fraud** by any **insured**.

6. Items 10.e. and 10.f. of the definition of **identity fraud expenses** are jointly subject to a limit of $5,000. This limit is part of, and not in addition to, payment under the Expense Reimbursement and Fraud Loss limit.

7. Item 10.g. of the definition of **identity fraud expenses** is subject to a limit of $1,000. This limit is part of, and not in addition to, payment under the Expense Reimbursement and Fraud Loss limit.

**Contingent Credit Monitoring:**

**Credit monitoring service** is available for any one **increased risk event** for 12 months from the date of initial enrollment in the service. Expenses we incur to provide **credit monitoring service** do not reduce the Expense Reimbursement and Fraud Loss limit.

### DEDUCTIBLE

The Cyber Attack and Cyber Extortion coverage is subject to a per occurrence deductible of $500. We will not pay for loss, damage, or expense arising from any **one cyber occurrence** until the amount of the covered loss, damage, or expense exceeds the deductible. We will then pay the amount of loss, damage, or expense in excess of the deductible amount, subject to the Cyber Attack and Cyber Extortion limit.

Identity Restoration Coverage, Contingent Credit Monitoring Coverage, and Fraud Loss Coverage under this endorsement are not subject to a deductible.

### EXCLUSIONS

We do not cover loss or expense arising from any of the following:

1. **identity fraud, cyber attack**, or **cyber extortion event** against or incurred by a professional or business entity, including but not limited to any business owned or operated by any **insured** or any business employing any **insured**;

2. any fraudulent, dishonest, or criminal act by the **insured**. This includes:

   a. any act by a person aiding or abetting the **insured**; or

   b. any act by an authorized representative of the **insured**;

   whether or not the person is acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an **insured** who has no knowledge of or involvement in such fraud, dishonesty, or criminal act;

3. an **identity fraud** or **fraud event** that is not reported in writing to the police. You may make a claim for an **identity fraud** under this coverage prior to making such a report and we may refer the **insured** to **case management service** if all other coverage requirements are met. However, we will not pay any **identity fraud expenses** until the **identity fraud** has been reported in writing to the police and we reserve our right to terminate the services of the **identity restoration case manager** if the **insured** does not make such a written report to the police within a reasonable period of time;

4. war, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

5. nuclear hazard, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of these. Loss caused by nuclear hazard shall not be considered loss caused by fire, explosion, or smoke;

6. any criminal investigations or proceedings, except as explicitly covered under the Identity Restoration coverage;

7. any physical damage;

8. any damage to a motor vehicle, watercraft, aircraft, or other vehicle;

9. any third party liability or legal defense costs;

10. any fines or penalties;

11. loss to the internet, an internet service provider, or any device or system that is not owned or leased by an **insured** as well as operated under an **insured's** control;

12. costs to research or correct any deficiency, except as specifically provided under the system restoration portion of Cyber Attack coverage;

13. any **cyber attack, cyber extortion event, identity fraud, increased risk event**, or **fraud event** first discovered by any **insured** prior to the inception of an **insured's** coverage under this endorsement; or

© 2017 The Hartford Steam Boiler Inspection and Insurance Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017
CONTINUED

14. any **cyber attack, cyber extortion event**, or **fraud event** first occurring more than 60 days prior to the inception of an **insured's** coverage under this endorsement.

### CONDITIONS

The following **Conditions** apply to this coverage.

1. **Advice**

   We are not your advisor. Our determination of what is or is not insured under this endorsement does not represent advice or counsel from us.

2. **Assistance and Claims**

   In some cases, we may provide the services of an **identity restoration case manager** at our expense to an **insured** prior to a determination that a covered **identity fraud** has occurred. Our provision of services is not an admission of liability under this endorsement. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered **identity fraud** has not occurred.

   For Expense Reimbursement coverage and Fraud Loss coverage, an **insured** must send to us receipts, bills, or other records that support the claim. These must be sent to us within 60 days after our request.

   There is a two-step process to receive **credit monitoring service**. We must first enroll the **insured** for the service. Secondly, the **insured** must provide authorization for the service to begin.

   The service is available for 12 months from the date we enroll the individual, but that individual will not receive the service until he or she completes the authorization.

3. **Confidentiality**

   As respects Cyber Extortion, **insureds** must make every reasonable effort not to divulge the existence of this coverage.

4. **Cooperation and Permission**

   As respects to any coverage provided by us or any services provided by service providers referred by us to any **insured** under this endorsement, that **insured** must provide cooperation, permission, and assistance.

5. **Due Diligence**

   The **insured** agrees to use due diligence to prevent and mitigate costs covered under this endorsement. This includes, but is not limited to, complying with reasonable and widely-practiced steps for:

   a. providing and maintaining appropriate system and data security; and

   b. maintaining and updating at appropriate intervals backups of electronic data.

6. **Help Line**

   For **identity fraud** assistance, the **insured** should call the **Identity Recovery Help Line** at **1-800-796-6290**.

The **Identity Recovery Help Line** can provide the **insured** with:

a. information and advice for how to respond to a possible **identity fraud**; and

b. instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

7. **No Warranty**

   We do not warrant that our services will:

a. end or solve all problems associated with an **identity fraud, increased risk event, fraud event, cyber extortion event**, or **cyber attack**; or

b. prevent future **identity frauds, increased risk events, fraud events, cyber extortion events**, or **cyber attacks**.

All services may not be applicable or available for us or our designees to provide.

8. **Other Insurance or Benefits**

   The insurance provided by this endorsement is excess over any other valid and collectible insurance or non-insurance benefit available to the **insured** from any source for the same **identity fraud, increased risk event, fraud event, cyber extortion event**, or **cyber attack** covered by this endorsement.

9. **Service Providers**

a. We will only pay under this endorsement for services that are provided by service providers approved by us. The **insured** must obtain our prior approval for any service provider whose expenses the **insured** wants covered under this endorsement. We will not unreasonably withhold such approval.

b. The **insured** will have a direct relationship with the service providers paid for in whole or in part under this endorsement. Those firms work for the **insured**.

c. As respects any services provided by any service providers paid for in whole or in part under this endorsement:

   (1) The effectiveness of such services depends on the **insured's** cooperation and assistance; and

   (2) We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

### APPLICABLE POLICY PROVISIONS

The following policy provisions apply to this coverage except as modified by endorsement:

**DECLARATIONS**

**SECTION I – CONDITIONS**

**SECTION I AND SECTION II – CONDITIONS**

HO-2609

© 2017 The Hartford Steam Boiler Inspection and Insurance Company
©, Copyright, State Farm Mutual Automobile Insurance Company, 2017



08/02/2023

Claims Department
9450 SW Gemini Dr. #39525
Beaverton, OR 97008-7105

**Ian's Enterprise**

Headquarters in Midwest City, Oklahoma

Tuesday, March 7, 2023

State Farm Fire and Casualty Company
PO Box 106169
Atlanta, GA 30348-6169

**EXHIBIT**

**6**

tabbies

Subject:     Proof of Loss
Claim# 3644N959X, Policy# 36-BD-E747-9
Loss Location: 4636 NW 160th Ter, Edmond, OK 73013 ("Premises")
Date of Loss: 01/17/2023

Dear Cameron Vanek and State Farm Fire and Casualty Company ("State Farm") and To Whom It May Concern:

We are writing to establish the scope of damage with State Farm for the above-referenced loss.

Upon careful inspection, it has been determined the Premises sustained significant interior damage, caused by a sudden and accidental release of water from within a hot-side, busted PEX pipe located within the Office East Wall, to solid wood flooring, subfloor, trim and or other finishes in the office, entry, living room and bathroom of the lower level. Our home has been rendered unlivable due to the water being shut off and our water cannot be restored until our plumbing is replaced. Hi-Tech inspected a deemed our plumbing unsuitable to due liability and must be abandoned and the home re-plumbed.

Our authorization of immediate mitigation efforts greatly minimized exposure to State Farm. Also, our research indicates State Farm can subrogate amounts paid under our claim (for damages and re-plumbing) pursuant to: Kimberly Cole et al vs NIBCO, Inc. at https://pexsystemsettlement.com/, a PEX System Settlement. As such, we urge State Farm immediately dispatch a plumber to retrieve the damaged part as evidence for subrogation.

Our total replacement cost damages are preliminarily* estimated at $72,576.50 for the dwelling, $5,678.14 for contents and $24,891.12 for loss of use; all as per the public adjuster's 124-page Xactimate estimate and photos package attached hereto. An amount for General Contractor's Overhead and Profit ("GCO&P") is included, GCO&P is warranted based on the repair complexity, number of trades and coordination required.

The public adjuster advises, and as you know, Xactimate pricing is industry standard and based on the average retail contractor price for each repair; to the extent an estimator scopes the loss accurately, one can use Xactimate pricing to ascertain the appropriate expense range of a proposed repair. *Refer to the Xactimate estimate for detailed explanations and disclaimers regarding various aspects of this claim. All rights are hereby reserved. No hidden or unknown damages or issues are included or addressed herein and may be supplemented.

Attached, you will find a Notice of Loss, Notice of Representation, and Loss Drafts Addendum. Pursuant thereto, please immediately: 1) cease direct contact, 2) simultaneously copy the public adjuster on all correspondence, 3) include the public adjuster on all loss drafts as co-payee; and 4) provide the public adjuster with a certified policy copy. Let this also serve as formal notice that all prior authorizations are hereby revoked, whether related to premises repairs, vendor programs, direct payment or an assignment of claims proceeds.

We are not aware of any 1) pertinent time or cause of loss other than as mentioned herein, 2) third-party interests in the property involved other than any mortgagee of record and any interest as named insured, 3) pending legal claims against the property involved in this loss, 4) other insurance which may cover this loss, or 5) changes in title or occupancy of the property other than those that may have been reported to the agent. The attached CoreLogic Property Detail Report has structure specifications for the Premises.

---

Nothing in this letter is intended to be, nor should be construed by you, an estoppel or waiver of any rights, terms, conditions, or defenses to any contract.

***** CONFIDENTIAL: You are hereby notified that any use, disclosure, copying, or distribution of the contents of this information is strictly prohibited and may result in legal action against you. This correspondence and any documents accompanying this transmission may contain privileged and/or confidential information and is intended solely for the addressee(s) named above. If you are not the intended recipient/addressee, please reply to the sender advising of the error in transmission and immediately delete/destroy the message and any accompanying documents. *****

POL PKG Page 1 of 164     **EXHIBIT "I"**
OKDOI PKG Page 133 of 296

Claims Department
9450 SW Gemini Dr. #39525
Beaverton, OR 97008-7105


**Ian's Enterprise**

Headquarters in Midwest City, Oklahoma

You are hereby instructed to direct all further correspondence and funds thru the public adjuster by mail:

Claims Department                          Claims Department
9450 SW Gemini Dr. #39525      or      c/o Ian's Enterprise, LLC
Beaverton, OR 97008                       9450 SW Gemini Dr. #39525
                                                        Beaverton, OR 97008

We respectfully submit the attached estimate, photos and support documents as our proof of loss and formally demand $72,576.50 for the dwelling, $5,678.14 for contents and $24,891.12 for loss of use, less the appropriate depreciation, $6,366 deductible and prior payment(s), all as mentioned herein and for which the undisputed amounts shall be paid without delay. We intend to repair or replace the covered damage and recover depreciation.

This loss did not originate by any act or plan of your insured. Nothing has been done by or with the knowledge or consent of your insured that would violate the conditions of this policy or render it void. We have carefully read all the statements included herein and within any attachments and do hereby warrant the same to be complete and true, to the best of our knowledge.

State Farm shall promptly accept or reject this Proof of Loss, but if it be deemed technically deficient, each deficiency must be explicitly alleged in writing, otherwise, all deficiencies are waived. Failure to agree on coverage or the amount of loss are not technical deficiencies or grounds for rejection.

Sincerely,



Bradley Cox and Farah Cox

State of Texas

County of Denton

Subscribed and sworn to (or affirmed) before me on this __8__ day of March, 2023 by Bradley Cox and Farah Cox, known or proven to me to be the person(s) who executed the foregoing instrument.


Notary Public

| Tiana L. Tranowicz |
| ID NUMBER |
| 13367542-3 |
| COMMISSION EXPIRES |
| April 25, 2026 |

Notarized online using audio-video communication

OKLAHOMA FRAUD WARNING. Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

The American Policyholder Association is FREE to join for policyholders. All insureds are encouraged to sign-up as an APA member at: https://apassociation.org/associate-member-application/

**AMERICAN POLICYHOLDER ASSOCIATION**

The American Policyholder Association is a nonprofit 501c4 watchdog organization that promotes integrity, honesty and best practices in the property loss adjustment sector of the insurance industry. The APA is comprised of property owner policyholders, nonprofit organizations, and advocates who's mission it is to provide aid to property owners seeking benefits at the time of loss.

Nothing in this letter is intended to be, nor should be construed by you, an estoppel or waiver of any rights, terms, conditions, or defenses to any contract.

***** CONFIDENTIAL: You are hereby notified that any use, disclosure, copying, or distribution of the contents of this information is strictly prohibited and may result in legal action against you. This correspondence and any documents accompanying this transmission may contain privileged and/or confidential information and is intended solely for the addressee(s) named above. If you are not the intended recipient/addressee, please reply to the sender advising of the error in transmission and immediately delete/destroy the message and any accompanying documents. *****

08/02/2023

# JURAT

State/Commonwealth of _____**TEXAS**_____ )
                                              )
☐City ☑County of _____**Harris**_____ )

On ____**03/08/2023**____, before me, ____**Sheirita Ann Patterson**____,
        *Date*                                             *Notary Name*

the foregoing instrument was subscribed and sworn (or affirmed) before me by:

_____**Farah Cox**_____
*Name of Affiant(s)*

☐ Personally known to me -- **OR** --

☐ Proved to me on the basis of the oath of _____ -- **OR** --
                                       *Name of Credible Witness*

☑ Proved to me on the basis of satisfactory evidence: ____**driver_license**____
                                                      *Type of ID Presented*

WITNESS my hand and official seal.

Notary Public Signature: _____ Notary Public/State of Texas

Notary Name: ____**Sheirita Ann Patterson**____

Notary Commission Number: ____**131644443**____

Notary Commission Expires: ____**07/16/2026**____

*Notarized online using audio-video communication*

[Notary Seal: Sheirita Ann Patterson, ID NUMBER 131644443, COMMISSION EXPIRES July 16, 2026, NOTARY PUBLIC STATE OF TEXAS]

## DESCRIPTION OF ATTACHED DOCUMENT

Title or Type of Document: ____**Proof of Loss**____

Document Date: ____**03/08/2023**____

Number of Pages (including notarial certificate): ____**3**____



Claims Department
9450 SW Gemini Dr. #39525
Beaverton, OR 97008-7105

Headquarters in Midwest City, Oklahoma

Monday, February 05, 2024

State Farm Fire and Casualty Company
PO Box 106169
Atlanta, GA 30348-6169

**EXHIBIT**

**7**

Subject:  Executive Complaint
Claim# 3644N959X, Policy# 36-BD-E747-9
Loss Location: 4636 NW 160th Ter, Edmond, OK 73013 ("Premises")
Date of Loss: 01/17/2023
OKDOI Complaint PKG https://bit.ly/BC4636Complaint

Dear Michael Tipsord and the executive team at State Farm Fire and Casualty Company ("State Farm"):

We are writing to submit our Executive Complaint to State Farm for the above-referenced claim. A comprehensive complaint package is referenced above, and it has been forwarded to our local media. We summarize major failures in your operations herein.

Upon careful inspection, it has been determined the Premises sustained significant interior damage, caused by a sudden and accidental release of water from within a hot-side, busted PEX pipe located within the Office East Wall, to solid wood flooring, subfloor, trim and or other finishes in the office, entry, living room and bathroom of the lower level.

On 01/19/2023, we submitted our Contact package ("NOL") with a Notice of Loss, Notice of Representation and among other things, we requested a certified policy copy and advised State Farm of the potential for subrogation. Now 382 days later, no certified policy copy has been provided despite repeated requests, and we have reason to believe State Farm internal procedures prohibit adjusters from ordering copies when requested.

We also submitted the 03/07/2023 Proof of Loss ("POL") to State Farm by email on 03/08/2023. The USPS tracking system indicates receipt of the POL on 03/14/2023 by State Farm. Until 105 days later, on 06/27/2023, State Farm failed to issue any payment, which was woefully inadequate too. Our 164-page POL contains 86 detailed line items of loss totaling $103,145 and is supported by numerous photos, measurements and documents. State Farm failed to provide an adequate response to any of the detailed line items of loss within 30 days as prompted by our POL. State Farm failed to provide a written acceptance or denial to any of the detailed line items of loss within 60 days as prompted by our POL. State Farm failed to complete an investigation of our loss within 60 days as prompted by our POL. Now 328 days later, State Farm has failed or is refusing to either adequately pay or properly deny many POL line items (line 28, excepted).

On or about 05/02/2023, we submitted the Claim Settlement Duties package ("CSD"), which demanded State Farm cease and desist from unlawful and/or unfair claims settlement practices and strictly adhere to all the Duties imposed upon State Farm by law. To assist State Farm with compliance, the CSD spelled out various duties in detail and with statutory references.

On or about 06/03/2023, we submitted a Final Warning advising no certified policy copies have been provided despite repeated requests and detailing deadline violations.

Despite admitting to poor claims handling, State Farm added insult to injury by wrongfully non-renewing the homeowner policy during the pendency of the claim, apparently in retaliation for hiring a public adjuster and to compel the insured to accept less than the amount owed.

Nothing in this letter is intended to be, nor should be construed by you, an estoppel or waiver of any rights, terms, conditions, or defenses to any contract.

***** CONFIDENTIAL: You are hereby notified that any use, disclosure, copying, or distribution of the contents of this information is strictly prohibited and may result in legal action against you. This correspondence and any documents accompanying this transmission may contain privileged and/or confidential information and is intended solely for the addressee(s) named above. If you are not the intended recipient/addressee, please reply to the sender advising of the error in transmission and immediately delete/destroy the message and any accompanying documents. *****

Claims Department
9450 SW Gemini Dr. #39525
Beaverton, OR 97008-7105



Headquarters in Midwest City, Oklahoma

Refusing to consider relevant tech reports, refusing to dispatch your own plumber, refusing to call technicians for advice, requiring duplicative reports or irrelevant information, and failing or refusing to promptly pay the undisputed amounts are examples of conduct that is unreasonable and may constitute unfair claim settlement practices.

You need not take our word for it, rather rely on State Farm's Jerome Abbage, who put it very simply during a call on 06/14/2023 at 5:27PM, "… everything will get to moving now, I don't understand why there's not been anything paid out on the claim."

Despite all this, we offered State Farm another opportunity to resolve our differences and on 08/30/2023, issued an Appraisal Demand. However, State Farm apparently has a nationwide policy of denying appraisal.

State Farm attempts to patch repair our solid wood flooring system, which has at least four (4) distinct layers, solid wood floor over vapor barrier, underlayment and another vapor barrier, nailed thru to the concrete which now has divots from removal of the damaged materials requiring leveler. State Farm fails to appreciate that spliced materials, especially vapor barrier, will allow moisture to penetrate which is not our pre-loss condition. Even if splicing was proper here, new materials are unlikely to line-up to existing materials due to thickness variances. You can confirm this by reviewing the attached POL pictures 102, 105, 106, 118, 139 and 140.

State Farm has also failed to authorize or pay Loss of Use for the period of repairs. State Farm also forced their insured to move out of the RV and live with dangerous and damaged wood flooring.

We submitted an estimate, photos and support documents as our proof of loss and formally demanded $72,576.50 for the dwelling, $5,678.14 for contents and $24,891.12 for loss of use, less the appropriate depreciation, $6,366 deductible and prior payment(s), all as mentioned therein. Incurred invoices total $32,183.55 for 01/19 thru 05/31/2023 and we expect $6,222 more for an RV during repairs for Loss of Use.

Our primary objective is to ask State Farm executives to address these systemic and horrific claims handling practices so other insureds need not be subjected to what has been witnessed here. There is no excuse for how your insured has been treated on this claim.

Nonetheless, we believe it may be possible to resolve this claim amicably. **Let's compromise** on this one so we can both close our files with no further supplements or depreciation to release.

Your insured approves settlement of this claim for $30,000 in new money, but only if payment made payable to "Bradley Cox and Farah Cox and Ian's Enterprise LLC" is tendered by State Farm and shipped to "Claims Department, 9450 SW Gemini Dr. #39525, Beaverton, OR 97008" via FedEx or UPS overnight delivery on or before Friday, February 9, 2024. If agreed, State Farm will be forgiven, and your insured will execute a release.

Please write with your prompt response and questions or for assistance.

Sincerely,

Ian Rupert
Ian's Enterprise, LLC
(405) 622-8721
Ian@IansEnterprise.com

AMERICAN POLICYHOLDER
—— ASSOCIATION ——
PROFESSIONAL MEMBER

The American Policyholder Association is a nonprofit 501c4 watchdog organization that promotes integrity, honesty and best practices in the property loss adjustment sector of the insurance industry. The APA is comprised of property owner policyholders, nonprofit organizations, and advocates who's mission it is to provide aid to property owners seeking benefits at the time of loss.

For Insured Bradley Cox and Farah Cox

Nothing in this letter is intended to be, nor should be construed by you, an estoppel or waiver of any rights, terms, conditions, or defenses to any contract.

***** CONFIDENTIAL: You are hereby notified that any use, disclosure, copying, or distribution of the contents of this information is strictly prohibited and may result in legal action against you. This correspondence and any documents accompanying this transmission may contain privileged and/or confidential information and is intended solely for the addressee(s) named above. If you are not the intended recipient/addressee, please reply to the sender advising of the error in transmission and immediately delete/destroy the message and any accompanying documents. *****



**Ian's Enterprise, LLC**

Claims Department
9450 SW Gemini Dr. #39525
Beaverton, OR 97008-7105

101  113-CU, Measurements
   Date Taken: 1/21/2023



102  114-OV, Office
   Date Taken: 1/21/2023



CA00634217-CF2767859                                                 3/7/2023       Page: 71



**Ian's Enterprise, LLC**

Claims Department
9450 SW Gemini Dr. #39525
Beaverton, OR 97008-7105

105  117-OV, Floor
     Date Taken: 1/21/2023



106  118-CU, Concrete Divots from
     Subfloor Removal
     Date Taken: 1/21/2023



CA00634217-CF2767859                                      3/7/2023          Page: 73



**Ian's Enterprise, LLC**

Claims Department
9450 SW Gemini Dr. #39525
Beaverton, OR 97008-7105

117  129-OV, LvRm
     Date Taken: 1/21/2023



118  130-OV, Floor
     Date Taken: 1/21/2023





**Ian's Enterprise, LLC**

Claims Department
9450 SW Gemini Dr. #39525
Beaverton, OR 97008-7105

139  151-CU, Measurements
     Date Taken: 1/21/2023



140  152-OV, Floor System Layers
     Date Taken: 1/21/2023



CA00634217-CF2767859                                    3/7/2023        Page: 90