# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

BRADLEY COX,

    Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY and JEREL WRIGHT,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)

Case No. CIV-26-00752-R

---

## DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

---

TIMILA S. ROTHER, OBA #14310
PAIGE A. MASTERS, OBA #31142
AMANDA M. FINCH, OBA #34650
**CROWE DUNLEVY**
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
timila.rother@crowedunlevy.com
paige.masters@crowedunlevy.com
amanda.finch@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY**

June 1, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................iii

INTRODUCTION ............................................................................................. 1

BACKGROUND .............................................................................................. 2

I.    PLAINTIFF HAS NO POSSIBLE CLAIM AGAINST THE AGENT ............. 3

    A.    Plaintiff has no possible claim for negligent procurement ...................... 3

        1.    Plaintiff indisputably received the coverage requested ............... 4

        2.    Mr. Wright's alleged conduct did not injure Plaintiff.................. 5

        3.    Plaintiff was responsible for choosing coverage limits ................. 7

        4.    Mr. Wright owed no duty to inspect or underwriting duty to Plaintiff................................................................................ 9

        5.    The claim is time-barred ............................................... 11

    B.    Plaintiff has no possible claim for constructive fraud or concealment..................................................................... 12

        1.    Plaintiff does not allege facts to establish a duty to disclosure..................................................................... 13

        2.    Plaintiff does not allege facts to show the alleged omission was material or he suffered damages as a result......................... 15

        3.    The alleged misrepresentations were indisputably true............. 16

        4.    Alleged misrepresentations regarding claim handling and application of the policy were promises of future performance and not fraud ......................................... 17

        5.    Plaintiff does not plead facts to establish Mr. Wright intended Plaintiff to act upon a false impression ...................... 17

        6.    The claims are time-barred .......................................... 18

        7.    Plaintiff has not pled fraud with particularity ........................... 18

    C.    *Hain Celestial* is not applicable ................................................... 19

**II.    PLAINTIFF CANNOT AVOID FEDERAL JURISDICTION BY ALLEGING FALSE FACTS** ............................................................................................ 22

**CONCLUSION** ............................................................................................................... 24

## TABLE OF AUTHORITIES

### CASES

*Barlow v. State Farm*,
CIV-25-44-R (W.D. Okla. Apr. 21, 2026), Dkt. 94 ............................................... 19

*Brazell v. Waite*,
525 F. App'x 878 (10th Cir. 2013) ........................................................................ 11

*Briggs v. State Farm*,
3:14CV16-DPJ-FKB, 2014 WL 1355627 (S.D. Miss. Apr. 7, 2014) .................... 17

*CashCall, Inc. v. BancFirst*,
CIV-16-927-W, 2016 WL 9559037 (W.D. Okla. Dec. 15, 2016) ......................... 12

*Castens v. Conseco Life Ins. Co.*,
11-CV-628-TCK-FHM, 2012 WL 610001 (N.D. Okla. Feb. 24, 2012)...............5-6

*Cisneros v. State Farm*,
CIV-25-42-R (W.D. Okla. Apr. 21, 2026), Dkt. 75 ............................................... 19

*Citation Co. Realtors v. Lyon*,
610 P.2d 788 (Okla. 1980) ..................................................................................... 17

*Consol. Grain & Barge Co. v. Structural Sys., Inc.*,
2009 OK 14, 212 P.3d 1168 ...............................................................................11-12

*Cosper v. Farmers Ins. Co.*,
309 P.3d 147 (Okla. Civ. App. 2013)....................................................................... 7

*Cupit v. Dancu Chemical Co.*,
316 P.2d 593 (Okla. 1957) ..................................................................................... 17

*Dutcher v. Matheson*,
733 F.3d 980 (10th Cir. 2013)................................................................................ 22

*Eckert v. Flair Agency*,
909 P.2d 1201 (Okla. Civ. App. 1995)................................................................... 17

*Ervin v. State Farm*,
CIV-22-935-SLP, 2022 WL 22839581 (W.D. Okla. Dec. 28, 2022) .................... 15

*Ferrell v. BGF Glob., LLC*,
CIV-15-404-D, 2015 WL 6438988 (W.D. Okla. Oct. 21, 2015) ........................... 24

*Goebel v. State Farm*,
    CIV-22-882-HE, 2023 WL 11883977 (W.D. Okla. Aug. 7, 2023) ............. 8, 10, 17

*Graves v. Am. Fam. Mut. Ins. Co.*,
    686 F. App'x 536 (10th Cir. 2017) ........................................................................ 4

*Gray v. Derderian*,
    464 F. Supp. 2d 105 (D. R.I. 2006) ...................................................................... 11

*Hain Celestial Grp., Inc. v. Palmquist*,
    607 U.S. --, 146 S.Ct. 724 (2026) ............................................................. 19, 20, 21

*Hall v. State Farm*,
    CIV-25-12-JD, 2025 WL 2905205 (W.D. Okla. Oct. 13, 2025) .................... 10, 14

*Hubbard v. Bryson*,
    474 P.2d 407 (Okla. 1970) ............................................................................ 13, 18

*Johnson v. State Farm*,
    CIV-25-1000-HE (W.D. Okla. May 11, 2026), ECF No. 34 ..................... 20, 21, 22

*Kyger v. State Farm*,
    649 F. Supp. 3d 1200 (W.D. Okla. 2022) ............................................................ 15

*Lillard v. Stockton*,
    267 F. Supp. 2d 1081 (N.D. Okla. 2003) ............................................................ 13

*Liverpool & L. & G. Ins. Co. v. T.M. Richardson Lumber Co.*,
    69 P. 936, 937 Okla. 1902 ................................................................................... 12

*Newell v. State Farm*,
    CIV-25-562-R, 2025 WL 2649661 (W.D. Okla. Sept. 15, 2025) ..................*passim*

*Northcutt v. Fulton*,
    CIV-20-885-R, 2020 WL 7380967 (W.D. Okla. Dec. 15, 2020) .................... 16, 22

*Porter v. State Farm*,
    CIV-25-187-R, 2025 WL 1151682 (W.D. Okla. Apr. 18, 2025) ...................*passim*

*Pratt v. Safeco Ins. Co. of Am.*,
    CIV-20-93-D, 2020 WL 4735350 (W.D. Okla. Aug. 14, 2020) ..................... 13, 14

*Rain Drop Found., Inc. v. State Farm*,
    CIV-24-1101-D, 2025 WL 582562 (W.D. Okla. Feb. 21, 2025) ................. 6, 15, 16

*Richardson v. Allstate Veh. & Prop. Ins. Co.*,
 CIV-25-734-PRW, 2026 WL 526387 (W.D. Okla. Feb. 25, 2026) ...................... 20

*Robbins v. State Farm*,
 CIV-25-324-G, 2026 WL 878449 (W.D. Okla. Mar. 30, 2026) ........................... 21

*Rotan v. Farmers Ins. Grp. of Cos.*,
 83 P.3d 894 (Okla. Civ. App. 2004) ....................................................... 4, 8

*Schettler v. State Farm*,
 CIV-25-845-JD (W.D. Okla. Apr. 6, 2026), ECF No. 17 ..................................... 21

*Slover v. Equitable Variable Life Ins. Co.*,
 443 F. Supp. 2d 1272 (N.D. Okla. 2006) ........................................... 12, 13

*Smoot v. Chicago, R.I. & P. R. Co.*,
 378 F.2d 879 (10th Cir. 1967) ............................................................ 23

*Stafford v. State Farm*,
 CIV-25-08-HE (W.D. Okla. May 27, 2025), ECF No. 25 .............................. 14, 16

*Steed v. Bain-Holloway*,
 356 P.3d 62 (Okla. Civ. App. 2015) ......................................................... 6

*Steinkamp v. State Farm*,
 CIV-22-47-PRW, 2023 WL 11920886 (W.D. Okla. Sept. 29, 2023) ............... 7, 16

*Stone v. State Farm*,
 CIV-25-07-D, 2025 WL 3090772 (W.D. Okla. Aug. 20, 2025) ........................... 16

*Swickey v. Silvey Cos.*,
 979 P.2d 266 (Okla. Civ. App. 1999) ................................................... 3, 4

*Tresco, Inc. v. Cont'l Cas. Co.*,
 727 F. Supp. 2d 1243 (D.N.M. 2010) ................................................. 20, 21

*Wagoner v. Hussey Seating Co.*,
 13-CV-352-TCK-PJC, 2013 WL 6048853 (N.D. Okla. Nov. 14, 2013) .............. 11

*Waller v. State Farm*,
 CIV-25-448-SH, 2026 WL 880234 (N.D. Okla. Mar. 30, 2026) ........................ 21

*Weichbrodt v. State Farm*,
 CIV-25-360-R, 2025 WL 1848819 (W.D. Okla. July 2, 2025) .............................. 6

*West v. Chaparral Energy, LLC,*
    CIV-16-264-F, 2018 WL 8264627 (W.D. Okla. Aug. 13, 2018)............................ 6

*Wiesman v. State Farm,*
    CIV-25-50-JD, 2025 WL 2918043 (W.D. Okla. Oct. 14, 2025) ....................... 7, 15

**STATUTES**

12 O.S. § 95(A)(3)................................................................................................... 11, 18

**OTHER AUTHORITIES**

Okla. Unif. Jury Instr. No. 18.2 ..................................................................................... 13

**INTRODUCTION**

If the Court needed any new evidence of the fraudulent joinder of agents across these many cases brought by the same law firm against State Farm and its agents, this case is it. This is a case about a burst water pipe—behind walls and so not visible. ***And the house was brand new when the policy issued.*** And yet, Plaintiff's counsel indiscriminately sues the agent alleging that a failed obligation by the agent to inspect the (brand new) house at policy issuance and thereafter, identify a faulty pipe behind the wall, and tell State Farm not to issue or renew the Policy is what caused him injury. Counsel's naming of the agent in this lawsuit is indefensible and, indeed, Plaintiff's Motion barely tries to defend it. Instead, counsel urge remand based only on generic arguments about the high standard for fraudulent joinder and admonitions about pre-judging the facts. They do not bring any plausibility to these impossible claims.

There is no way an inspection at policy issuance in 2009 (or even the equally absurd requirement of an annual inspection) would have revealed issues with the pipe unless the agent knocked out the wall, and no way the failure to know about it impacted State Farm's issuance or renewal of the Policy. Nor can Plaintiff obscure the fact that their usual failure to inspect argument is even more incongruous here by arguing that the failure to inspect the interior resulted in insufficient coverage; his house was insured for almost $600,000 more than his claimed loss. The alleged failure to inspect also cannot have anything to do with the subsequent claim decision which was not based on the condition of the pipe but instead simply disagreement about the scope of the resulting damage. In short, this Motion

1

to Remand fails for all of the many reasons this Court has denied remand in the many cases before this one, and because this one plainly crosses the line into actual fraud in the pleadings. Remand should be denied.

## BACKGROUND

In March 2009, Plaintiff applied for a policy to insure his ***brand new*** house (which thus certainly also had brand new plumbing). After State Farm's Underwriting Department reviewed his application and determined to insure the risk, a policy issued, No. 36-BD-E747-9 ("Policy"), effective April 3. Pet., ¶ 1, Dkt. 1-2. Each year thereafter, at least 30 days before it renewed for a 12-month period, State Farm (not the agent) sent Plaintiff a renewal notice, notifying him his Policy automatically renewed, effective April 3. Coverage Notice, Dkt. 1-12. The Notice negates Plaintiff's theories as to agent underwriting obligations. The Notice advised Plaintiff that ***if he*** needed to change coverage or increase his limits, ***he should contact*** his agent. *Id.* at 2. The Declarations also asked Plaintiff to help State Farm "update the data used to determine [his] premium," including by "[c]ontact[ing] [his] agent with the year each of [his] home's utilities ... and roof were last updated." *Id.* at 1.

In the years that followed, Plaintiff submitted at least five claims under his Policy, including three wind/hail claims (one in 2009, 2010, and 2013) for which State Farm made significant claim payments, including total roof replacement, and two claims for water and freeze damage (2020 and 2023), on which State Farm also made claim payments. In 2015, ***State Farm's Underwriting Department*** (not the agent) ordered an exterior survey of

Plaintiff's house by third-party Myriad Risk Manager, which identified no issues. Myriad Rep., Dkt. 1-17. The inspection report expressly stated that it was conducted "for the limited purpose of underwriting the risk and determining eligibility for insurance" and was "not intended as a health or safety inspection or to ensure compliance with laws that may apply to [Plaintiff's] premises." *Id.*

According to the Petition, "[o]n or about January 17, 2023, Plaintiff's home sustained ... damage ... due to a pipe burst, including ... the floor buckling and damage to the walls and/or sheetrock." Pet., ¶ 8. He submitted a claim to State Farm, which investigated the loss and estimated $19,952.85 replacement cost value ("RCV") to repair the damage, including replacement of wood flooring, paneling, and dry wall. *Id.* at ¶ 14; State Farm Est., Dkt. 1-14. After application of Plaintiff's $6,366 deductible and recoverable depreciation, $13,049.21 was paid to Plaintiff for damage to the dwelling.[1] State Farm Est., Dkt. 1-14. Plaintiff claims there was more damage from the burst pipe than was estimated and paid by State Farm. Pet. ¶ 14.

## I.    PLAINTIFF HAS NO POSSIBLE CLAIM AGAINST THE AGENT.

### A.  Plaintiff has no possible claim for negligent procurement.

As this Court has recognized, to establish a possible tort claim for negligent procurement of insurance in Oklahoma, a plaintiff must demonstrate "'by the agent's fault, insurance [wa]s not procured as promised and the insured suffer[ed] a loss'" as a result.

---

[1] State Farm also paid to replace personal property and to cover additional living expenses while repairs were made, which does not appear to be at issue in this lawsuit, as Plaintiff does not make any allegations related to this coverage.

*Newell v. State Farm*, CIV-25-562-R, 2025 WL 2649661, at \*2 (W.D. Okla. Sept. 15, 2025) (quoting *Swickey v. Silvey Cos.*, 979 P.2d 266, 268 (Okla. Civ. App. 1999)). "'[T]he scope of the agent's duty to use reasonable care, skill, or diligence in the procurement of insurance' is limited to needs disclosed by the insured." *Id.* (quoting *Rotan v. Farmers Ins. Grp. of Cos.*, 83 P.3d 894, 895 (Okla. Civ. App. 2004)). "Agents 'do not have a duty to advise an insured with respect to his insurance needs.'" *Id.* (quoting *Swickey*, 979 P.2d at 269). Nor is an agent's duty "'expanded by general requests for "full coverage" or "adequate protection."'" *Id.*

1.     **Plaintiff indisputably received the coverage requested.** He alleges when seeking insurance for his house in 2009, he requested Mr. Wright procure "replacement cost coverage" that was "full and complete coverage for the Home." Mot. at 1-2. The law does not impose upon an agent the duty to comply with such vague requests as "full and complete coverage." *Newell*, 2025 WL 2649661 at \*2. And State Farm proved in its Notice of Removal that Plaintiff indeed received a replacement cost policy that covers water damage. Notice of Removal, ¶¶ 11-13, Dkt. 1.[2] Plaintiff does not dispute that in his Motion.

---

[2] "Replacement cost insurance provides greater coverage than an actual cash value policy and 'is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property.'" *Graves v. Am. Fam. Mut. Ins. Co.*, 686 F. App'x 536, 538 (10th Cir. 2017) (citation omitted). "Under a replacement cost policy, the insured must actually repair or replace the damaged property in order to recover the full replacement cost; otherwise, the insured may recover only the actual cash value…. The reason for this requirement 'is to prevent an insured from directly profiting through the receipt of cash funds beyond the actual cash value of the loss.'" *Id.* (citation and internal quotations omitted). The Declarations to Plaintiff's Policy show that his dwelling coverage was "A1 Replacement Cost – Similar Construction." Declarations at 2, Dkt. 1-12. This section of the Policy provides that "until actual repair or replacement is completed, [State

4

Nor does he identify any terms that he requested that were missing from his Policy or different than requested. Indeed, because Plaintiff's counsel has tried to fit this water loss claim into their roof claim form Petitions, the allegations are a disconnect in even bigger ways than usual. It cannot be said that "insurance was not procured as promised" ***because it was***. *See Newell*, 2025 WL 2649661 at *2 (denying remand where, like here, "it [wa]s clear from Plaintiff's allegations and the record that Plaintiff received the policy she requested and had sufficient coverage to replace her roof. The policy is an all-risk replacement cost policy that provides coverage for any accidental direct physical loss, including wind and hail damage.").

      **2.**    **Mr. Wright's alleged conduct did not injure Plaintiff.** To come up with some basis for a negligent procurement claim, Plaintiff contends Mr. Wright "procur[ed] illegitimate full replacement cost coverage" without any explanation of how any conduct by Mr. Wright made it so. Mot. at 10. It seems plain that "illegitimate" is another way of saying State Farm did not pay as much as Plaintiff's public adjuster demanded. That had nothing to do with the Agent or the Policy, nor does Plaintiff demonstrate otherwise. The decision was made by State Farm in the handling of Plaintiff's claim. Put simply, ***if*** there was any injury, it was caused by State Farm, not Mr. Wright.

---

Farm] will pay only the actual cash value of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property." Policy, § 1.a.(1), p. 18, Dkt. 1-13. "[W]hen the repair or replacement is actually completed, [State Farm] will pay the covered additional amount [Plaintiff] actually and necessarily spend[s] to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less." Policy, § 1.a.(2), p. 18, Dkt. 1-13.

As with all negligence claims, a required element of negligent procurement is *causation*. Plaintiff must show he "suffered damages flowing from the breach of the agent's duty of care." *Castens v. Conseco Life Ins. Co.*, 11-CV-628-TCK-FHM, 2012 WL 610001, at *2 (N.D. Okla. Feb. 24, 2012). That is, "there must be 'some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.'" *West v. Chaparral Energy, LLC*, CIV-16-264-F, 2018 WL 8264627, at *4 (W.D. Okla. Aug. 13, 2018) (quoting *Steed v. Bain-Holloway*, 356 P.3d 62, 68 (Okla. Civ. App. 2015)). It is entirely absent here.

The injury alleged by Plaintiff from the conduct of the agent and State Farm is the same—the failure to pay to replace all damage urged by Plaintiff. The cause of that alleged injury is State Farm's finding as to the scope of the loss. Pet., ¶ 14; State Farm Est., Dkt. 1-14. That is, "Plaintiff's damages flow from State Farm's allegedly improper interpretation of his policy and adjustment of his claim, not the agent's failure to procure the correct type of policy, type of coverage, or coverage limit." *Weichbrodt v. State Farm*, CIV-25-360-R, 2025 WL 1848819, at *2 (W.D. Okla. July 2, 2025). As Judge DeGiusti observed when denying a motion to remand finding that the defendant agent was fraudulently joined: "[P]urchasing a replacement cost policy 'does not mean that an insured is guaranteed that its claims will always be paid in full.' Similarly, a replacement cost policy does not guarantee that a plaintiff's claims will be paid in the exact manner that the plaintiff desires. Representing that 'comprehensive replacement cost coverage [] would protect the property (including the roof) without exclusion, limitation or conditions' does

6

not affect this principal. To argue otherwise is to suggest that having a replacement cost policy entitles Plaintiff to a full replacement of the roof upon submission of virtually any claim." *Rain Drop Found., Inc. v. State Farm*, CIV-24-1101-D, 2025 WL 582562, at *5 (W.D. Okla. Feb. 21, 2025) (citations omitted). For this reason, too, Plaintiff has no possible negligent procurement claim against Mr. Wright. *See Steinkamp v. State Farm*, CIV-22-47-PRW, 2023 WL 11920886, at *2 (W.D. Okla. Sept. 29, 2023) ("State Farm denied the claim [for a total roof replacement] not because of the type of policy [] procured, but because it determined that [Plaintiffs'] roof did not sustain a covered loss…. In short, Plaintiff[s'] claim against State Farm depends upon what damage [their] roof sustained, not the terms of [their] policy."); *Wiesman v. State Farm*, CIV-25-50-JD, 2025 WL 2918043, at *4 (W.D. Okla. Oct. 14, 2025) ("Plaintiff's damages flow from the adjuster's assessment of his property damage and State Farm's related denials, not from the type of coverage provided by the Policy.").

3.      **Plaintiff was responsible for choosing coverage limits.** Again reflecting an effort to push this claim into the roof claim form Petition, Plaintiff's Petition contains confusing and irrelevant allegations regarding calculation of RCV. He alleges he "asked [] Wright for 100% replacement cost coverage" (Pet., ¶ 6) and contends the "Policy ... did not accurately reflect the replacement cost of the Insured Property" (*id.* at ¶ 38(a)(iii)). He suggests he is underinsured because the Policy "did not provide full replacement cost coverage to fully restore the Insured Property back to its pre-loss condition." *Id.* at

7

¶ 38(a)(iv). Plaintiff did not address this argument in his Motion, indicating he is abandoning it.

For good reason—Oklahoma law is clear: an agent cannot be liable for negligence for failing to procure a specific limit of coverage *if no such limit was requested*. *Cosper v. Farmers Ins. Co.*, 309 P.3d 147, 149 (Okla. Civ. App. 2013) ("[W]e decline to extend *Swickey* and impose a duty ... to provide an 'adequate amount' of coverage. Plaintiffs did not allege that they requested a specific coverage limit and Defendants disregarded the request and issued a policy in some other amount."). An agent is only obligated to procure coverage for "'needs disclosed by the insured.'" *Newell*, 2025 WL 2649661 at *2 (quoting *Rotan*, 83 P.3d at 895). Plaintiff does not allege he told Mr. Wright to procure a specific amount of insurance. Moreover, the Policy makes plain it *was up to Plaintiff* to choose his coverages and limits. Policy at 1, Dkt. 1-13 ("[State Farm] agree[s] to provide the insurance described in this policy … for the coverages *you* chose."); Declarations at 4, Dkt. 1-12 ("It is up to you to choose the coverages and limits that meet your needs."). Further, the coverage provided is "based on the information [Plaintiff gave it]." Policy at 1, Dkt. 1-13. At least 30 days before his Policy renewed each year, State Farm reminded Plaintiff to review his coverages and limits and advise of changes needed and encouraged him to contact State Farm with updates to his house for use in premium determination (also negating any notion that this was the job of the agent). Coverage Notice and Declarations at 1-3, Dkt. 1-12.

8

Regardless of who selected the amount of insurance, there can be no dispute Plaintiff had sufficient coverage to repair the damage identified by his public adjuster. The Declarations show he had $636,600 RCV in coverage at the time of loss. *Id.* at 2. His public adjuster provided an estimate in the amount of $72,576.50 for damage to the dwelling. Ian's Enterprises Ltr., March 7, 2023, Dkt. 1-18. "So, any issue as to coverage amounts did not lead to any of the damages that Plaintiff asserts via his claim for damage." *Goebel v. State Farm*, CIV-22-8820HE, 2023 WL 11883977, at *4 (W.D. Okla. Aug. 7, 2023). *See also Newell*, 2025 WL 2649661 at *2.

**4. Mr. Wright owed no duty to inspect or underwriting duty to Plaintiff.** Even more indefensibly, Plaintiff's water loss initiative Petition tries to maintain the previously rejected argument that an agent has a duty to inspect the premises before State Farm issues a policy. While this Court and many others have held that is fundamentally wrong, the preposterousness of the claim is on even greater display here. This house was brand new, even if an agent inspected the house at policy inception or renewal the agent would not be able to see the plumbing within the walls and there was more than enough coverage for the damage claimed. Nonetheless, like they do in their roof cases, Plaintiff alleges State Farm agents should "perform a reasonable inspection of the Insured Property prior to procuring the full replacement cost coverage and thereafter upon renewal to ensure no changes to the Policy were necessary or required" (Pet. at ¶ 37(b)), but "Agent Wright never inspected Plaintiff's Home to determine if it met State Farm's underwriting guidelines" (*id.* at¶ 7). He tries to tie this duty to inspect to his negligent procurement claim by alleging that

because Mr. Wright did not inspect the property, he could not "confirm the accuracy of the pre-filled information provided by State Farm's replacement cost estimating tool," "disclose pre-existing damage to the Insured Property," or "verify whether [his] inherent representation to State Farm and Plaintiff that the Insured Property was in good condition was accurate." *Id.* at ¶ 37(b). Besides being a complete disconnect to facts of this claim, his argument is impossible because an insurance policy issued and renewed, under which State Farm estimated to replace damaged property, and under which Plaintiff sues State Farm for benefits. Therefore, the house ***did*** satisfy State Farm's underwriting requirements.

Regardless, as State Farm proved in its Notice of Removal, and Plaintiff provides no authority to refute, this theory presupposes a duty to the insured with regard to underwriting which does not exist. The Policy states that State Farm has no obligation to "make inspections and surveys of the insured location at any time," provide insureds with "reports on conditions," or "recommend changes." Policy at 32, Dkt. 1-13. ***If*** State Farm decides to have an inspection, it is performed by a third-party inspector, not the agent, for its own use in determining whether to insure or continue to insure the risk, ***which is what occurred here***. Berthelot Decl., ¶¶ 4-9, Dkt. 1-15: Myriad Rep., Dkt. 1-17. In 2015, State Farm's Underwriting Department (not Mr. Wright) ordered an exterior survey of Plaintiff's house by third-party Myriad Risk Manager, which identified no issues. Myriad Rep., Dkt. 1-17. The inspection report expressly stated that it was conducted "for the limited purpose of underwriting the risk and determining eligibility for insurance" and was "not intended

10

as a health or safety inspection or to ensure compliance with laws that may apply to [Plaintiff's] premises." *Id.*

Courts to address the issue are in agreement that an agent owes no underwriting duty to the insured. *Hall v. State Farm*, CIV-25-12-JD, 2025 WL 2905205, at *5 (W.D. Okla. Oct. 13, 2025) ("Plaintiff [did] not provide a legal basis that [the agent] ... had a duty to Plaintiff to" "follow and abide by State Farm's underwriting policies/guidelines; perform all necessary inspections of the Insured Property; ... disclose pre-existing damage to the Insured Property; [and] verify whether ... the Insured Property (including the roof) was in good condition" among other alleged duties); *Goebel*, 2023 WL 11883977 at *4; *Newell*, 2025 WL 2649661 at *3. This makes sense, for as the Policy reflects, insurance companies conduct underwriting for their own benefit—to recognize and reduce risk—and not as a service to inform insureds of the condition of their house. *Gray v. Derderian*, 464 F. Supp. 2d 105, 109 (D. R.I. 2006). And, as explained above, at least 30 days before Plaintiff's Policy renewed every year, State Farm encouraged Plaintiff to contact State Farm with information as to house updates for use in premium determination, including whether his roof or utilities had been updated—making clear it was not the agent's job to inspect each year to assess the property and advise of conditions that may change the premium or coverage. Declarations at 1, Dkt. 1-12.

Moreover, Plaintiff has not set forth facts to suggest any failure to inspect his house caused him any damages. He complains a busted pipe was the source of the water damage but does not confront how Mr. Wright was supposed to detect a faulty pipe during any

11

inspection. Pet., ¶ 8. It would have been impossible without destroying the walls of Plaintiff's house, and as pled, Plaintiff suggests it was an emergent issue that could not have been detected during any inspection. *See id.* Clearly, this theory against Mr. Wright is a complete fabrication. The Court is not "compelled to believe whatever the plaintiff says in his complaint" in the face of contrary evidence. *Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013); *Wagoner v. Hussey Seating Co.*, 13-CV-352-TCK-PJC, 2013 WL 6048853, at *4 (N.D. Okla. Nov. 14, 2013) (denying remand for failure to dispute defendant's evidence).

**5.     The claim is time-barred.** The statute of limitations for negligent procurement is two years. 12 O.S. § 95(A)(3). A negligence claim accrues when the alleged injury to the plaintiff becomes certain, *Consol. Grain & Barge Co. v. Structural Sys., Inc.*, 2009 OK 14, ¶ 9 n.8, 212 P.3d 1168, 1171 n.8—here, when the Policy issued in 2009. "It is well established under Oklahoma law that insureds have a duty 'to examine, read, and know the contents of the policy before accepting and paying the premium therefor, and, having failed or neglected to do so[, he is] estopped from denying knowledge of its terms or conditions.'" *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1283 (N.D. Okla. 2006) (quoting *Liverpool & L. & G. Ins. Co. v. T.M. Richardson Lumber Co.*, 69 P. 936, 937 Okla. 1902)). Plaintiff does not dispute that he received the Policy in 2009— 17 years before he filed suit. Instead, he urges that he had no duty to read the Policy and identify discrepancies between it and Mr. Wright's alleged representations. Mot. at 12.

12

Once again, though, he does not identify any "discrepancies." His claim, therefore, is indisputably time-barred.

### B. Plaintiff has no possible claim for constructive fraud or concealment.

Plaintiff's claims for "constructive fraud and negligent misrepresentation"[3] and fraudulent concealment are simply efforts to establish a different legal theory on the same erroneous facts, and they fail for the same reasons and more. To establish a claim of fraudulent concealment, Plaintiff must plead and prove by clear and convincing evidence that Wright (1) concealed or failed to disclose a past or present fact that he had a duty to disclose; (2) that the fact was material; (3) that Wright concealed or failed to disclose it with the intent of creating a false impression of the actual facts in the mind of Plaintiff; (4) that Wright concealed or failed to disclose it with the intention that it should be acted upon by Plaintiff; (5) that Plaintiff acted in reliance upon it; and (6) that Plaintiff thereby suffered injury. Okla. Unif. Jury Instr. No. 18.2; *Hubbard v. Bryson*, 474 P.2d 407, 410 (Okla. 1970). To state a claim for constructive fraud, Plaintiff must allege facts to show (1) Wright owed plaintiff a duty of full disclosure; (2) he misstated a fact or failed to disclose a fact to plaintiff; (3) the misstatement or omission was material; (4) plaintiff relied on it; and (5) suffered damages as a result. *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1113 (N.D. Okla. 2003). Plaintiff "must make at least minimal factual allegations … as to every material

---

[3] Negligent misrepresentation is one type of constructive fraud and requires the same elements to be met. *See, e.g., CashCall, Inc. v. BancFirst*, No. CIV-16-927-W, 2016 WL 9559037, at *5 n.10 (W.D. Okla. Dec. 15, 2016).

element of the claim" to prevail on his Motion to Remand. *Slover v. Equitable Variable Life Ins.*, 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006). He has not and cannot do so.

**1. Plaintiff does not allege facts to establish a duty of disclosure.** Plaintiff acknowledges that a duty of disclosure is an element of constructive fraud and concealment and that a duty may not arise by silence alone. Mot. at 9. *See also Pratt v. Safeco Ins. Co. of Am.*, CIV-20-93-D, 2020 WL 4735350, at *2 (W.D. Okla. Aug. 14, 2020). Indeed, as Plaintiff urges, a duty may arise "if a party selectively discloses facts that create a false impression" and "conceal[s] others. *Pratt*, 2020 WL 4735350 at *2 (citations omitted). But Plaintiff points to no allegations in his Petition or otherwise demonstrating that Mr. Wright selectively disclosed facts or made any statements at all, other than allegations Mr. Wright promised he procured an RCV policy and "that all Plaintiff needed to do was file a claim to be taken care of," which are true. Mot. at 1-2. Plaintiff does not challenge State Farm's handling of five prior claims under his Policy in 2009, 2010, 2013, 2020, and 2023, pursuant to which State Farm also made payments for benefits.

Instead of alleging Mr. Wright made ***affirmative representations*** about inspections, house condition, or RCV calculations, Plaintiff alleges these representations were "inherent" to Wright's procurement of the Policy. *See* Pet., ¶ 38(b)(v). Nor is there an allegation Mr. Wright made affirmative representations about State Farm's claim handling practices. To the contrary, Plaintiff alleges he did not "disclose ... State Farm's bad faith claims handling tactics arising from the Water Loss Initiative [and] its reliance on undisclosed definitions and standards outside of the Policy." *Id.* at ¶ 48(g). "[S]ilence

14

conveyed no false impression to Plaintiff[]." *Pratt*, 2020 WL 4735350 at \*2. Mr. Wright was "under no duty to speak," and Plaintiff has no possible claim against him for constructive fraud or concealment. *See Hall*, 2025 WL 2905205 at \*6 ("The Court declines to conclude that a reasonable basis for a constructive fraud/negligent misrepresentation claim is an inherent or implied representation attendant to the issuance of an insurance policy. If that were the case, almost no circumstances would exist in which an agent could not be joined as a party to a lawsuit relating to coverage. Accordingly, the Court concludes Plaintiff has not pled facts demonstrating [the agent] made a partial disclosure that gave rise to a duty of full disclosure to Plaintiff."); *Porter v. State Farm*, CIV-25-187-R, 2025 WL 1151682, at \*4 (W.D. Okla. Apr. 18, 2025) ("Plaintiffs [did] not identify any affirmative statements by [agent] concerning State Farm's claim handling or policy interpretation"); Order at 6, *Stafford v. State Farm*, CIV-25-08-HE (W.D. Okla. May 27, 2025), ECF No. 25 ("*Stafford* Order") ("[Plaintiff] has not alleged ... any factual allegations of a partial disclosure by [agent] .... [Plaintiff] cannot show any duty to speak.").[4]

**2. Plaintiff does not allege facts to show the alleged omission was material or he suffered damages as a result.** Further fatal to the claim is that any alleged misrepresentations about condition of the house, satisfaction of underwriting duties,

---

[4] The cases cited by Plaintiff in support of his constructive fraud/concealment claims are inapposite. In those cases, it was alleged the agent made affirmative representations about the condition of plaintiffs' houses followed by an alleged denial due to preexisting issues that were relied upon in ordering remand. *See, e.g., Ervin v. State Farm*, CIV-22-935-SLP, 2022 WL 22839581, at \*2-3 (W.D. Okla. Dec. 28, 2022); *Kyger v. State Farm*, 649 F. Supp. 3d 1200, 1204-05(W.D. Okla. 2022).

eligibility for coverage, or RCV did not cause the damages of which Plaintiff complains. The only harm alleged was State Farm's failure to pay for all damage identified by Plaintiff's public adjuster. That decision had nothing to do with inspections being completed, whether the house met all "underwriting guidelines," or whether Plaintiff had sufficient coverage to repair the damage. State Farm simply found less damage than Plaintiff's contractor. This has nothing to do with the agent, who has no authority to adjust or pay claims. Mr. Wright caused no injury to Plaintiff. *See Rain Drop*, 2025 WL 582562 at *5 (finding plaintiff, who sued State Farm for not replacing its roof, was "unable to make out a causal nexus between [the agent's] actions at the procurement stage and Plaintiff's alleged prejudice at the coverage determination stage," reasoning "[a]ny disagreement about the extent of the hail damage suffered, the decision to repair rather than replace the roof, or the adequacy of the replacement shingles, [wa]s with State Farm alone"); *Wiesman*, 2025 WL 2918043 at *5 ("Plaintiff's damages stem from State Farm's calculation of the repairs to his property, not from Plaintiff's lack of coverage related to the [] alleged misrepresentations."); *Steinkamp*, 2023 WL 11920886 at *3; *Porter*, 2025 WL 1151682 at *4; *Stone v. State Farm*, CIV-25-7-D, 2025 WL 3090772, at *4 (W.D. Okla. Aug. 20, 2025) (insured could not possibly state a claim because alleged loss was not caused by agent); *Stafford* Order at 7.

**3. The alleged misrepresentations were indisputably true.** While not a representation of the agent under any circumstances, any implied representations the house satisfied all underwriting guidelines and was eligible for replacement coverage are not

actionable because, as Judge Heaton recently found, they are true. *Stafford* Order at 6. As shown in the Notice of Removal (Dkt. 1 at ¶¶ 11-13, 32):

- Plaintiff's house **did** satisfy underwriting and qualified for replacement cost coverage as evidenced by State Farm's issuance of the Policy.
- The Policy under which State Farm estimated to pay Plaintiff to repair water-damaged property and on which Plaintiff sues **is** an RCV policy.
- Plaintiff's Policy covers water damage. Pet., ¶ 14; State Farm Estimate, Dkt. 1-14; *Rain Drop*, 2025 WL 582562 at *5 (no possible claim against agent based on alleged misrepresentations Policy "provided 'comprehensive replacement cost coverage that would protect the property (including the roof) … and that all weather-related damage .... was covered'" because the representations were true).
- Plaintiff admits State Farm estimated to repair parts of his house damaged by the busted pipe; he just alleges State Farm should have paid to replace more of it. Pet., ¶ 14.
- Claims submitted by Plaintiff were "taken care of"; he submitted five claims during the life of the Policy but only sued on one.
- As established above, Plaintiff had more than sufficient coverage to replace the damage alleged.

Plaintiff did not respond to State Farm's proof on this point in his Motion, conceding its correctness. *Northcutt v. Fulton*, CIV-20-8850R, 2020 WL 7380967, at *2 (W.D. Okla. Dec. 15, 2020).

**4. Alleged misrepresentations regarding claim handling and application of the policy were promises of future performance and not fraud.** As to allegations Mr. Wright told Plaintiff all "he needed to do was file a claim to be taken care of" and did not disclose State Farm's scheme to underpay claims, Mr. Wright is not a claims adjuster and has no obligation to guess at future claims by Plaintiff and inform him of what **State Farm might** do with that future claim. *Goebel*, 2023 WL 11883977 at *4. He cannot be liable for not having spoken about a claim that had not occurred, might never occur and might be decided in Plaintiff's favor if it did. Plaintiff's theory is negated by the law that "for a false

17

representation to be the basis of fraud, such representation must be relative to existing facts or those which previously existed, and not as to promises as to future acts." *Citation Co. Realtors v. Lyon*, 610 P.2d 788, 790 (Okla. 1980); *Briggs v. State Farm*, 3:14CV16-DPJ-FKB, 2014 WL 1355627, at *3-4 (S.D. Miss. Apr. 7, 2014) (denying remand in case asserting similar allegations against agent). Additionally, any representations by the Agent about State Farm's past claim handling decisions would be conveying an adjuster's *opinion*. *Cupit v. Dancu Chemical Co.*, 316 P.2d 593, 596 (Okla. 1957). "Fraud may not be predicated on a mere expression of opinion." *Eckert v. Flair Agency*, 909 P.2d 1201, 1204 (Okla. Civ. App. 1995). State Farm identified these flaws in Plaintiff's claim in its Notice of Removal (¶ 33), and Plaintiff failed to address it in his Motion—once again conceding the point.

**5. Plaintiff does not plead facts to establish Mr. Wright intended Plaintiff to act upon a false impression.** To establish a claim for fraudulent concealment, Plaintiff must also set forth facts to show Wright concealed or failed to disclose a past or present fact ***with the intent of creating a false impression*** of the actual facts in the mind of Plaintiff and that Wright concealed or failed to disclose a past or present fact ***with the intention that it should be acted upon*** by Plaintiff. *Hubbard*, 474 P.2d at 410. Neither the Petition nor Motion plead anything of the sort. This, too, is fatal to the fraudulent concealment claim.

**6.**     **The claims are time-barred.** In its Notice of Removal, State Farm showed that Plaintiff's fraud-based claims are barred by the two-year statute of limitations under

18

12 O.S. § 95(A)(3). Notice of Removal, ¶ 35. Plaintiff does not dispute this either in his Motion to Remand, conceding it.

7.    **Plaintiff has not pled fraud with particularity.** His Motion points to general representations his counsel claim every State Farm agent makes through the act of selling a policy (which has been separately shown to be untrue), urges, with no supporting facts, that his claim was underpaid due to State Farm's so-called "Water Initiative" Mr. Wright failed to tell him about, and then insists that this Court must take his word for bald allegations at this stage. Not so. If that were the law, every plaintiff could avoid federal court by alleging a scheme between a non-diverse defendant and forum defendant and thus render the doctrine of fraudulent joinder meaningless. And, even assuming specificity as to agent "scheming" was pled (and it is not), each element of the scheme presumes an obligation by the agent that does not exist and is based on failures to speak or implied representations that are not actionable. Plaintiff has not and cannot show Mr. Wright knew about Plaintiff's counsel's newly fabricated scheme or was complicit in it. The presence or absence of a scheme by State Farm as to claim handling matters to the claims against Mr. Wright only if he had a duty to advise Plaintiff about claim handling, a claim handling scheme existed, Mr. Wright knew about it and believed it material to this Plaintiff, failed to disclose it, and Plaintiff's claim was thereby denied because of the scheme, which State Farm has shown above is wrong on all fronts.

C. *Hain Celestial* **is not applicable.**

19

To urge remand, Plaintiff puts great stock in *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. --, 146 S.Ct. 724 (2026)—and more specifically, comments by Justice Thomas in his concurring opinion that more broadly called into question the fraudulent joinder doctrine. As Your Honor found in denying a renewed motion to remand filed by Plaintiff's counsel in *Porter v. State Farm*, "*Hain Celestial* did not address the fraudulent joinder standard and does not provide a basis for" remand here. CIV-25-187-R, 2026 WL 1078498, at *1 (W.D. Okla. Apr. 21, 2026). *See also*, *Barlow v. State Farm*, CIV-25-44-R (W.D. Okla. Apr. 21, 2026), Dkt. 94 and *Cisneros v. State Farm*, CIV-25-42-R (W.D. Okla. Apr. 21, 2026), Dkt. 75. Nothing in the unanimous *Hain Celestial* opinion even suggested that the well-established doctrine of fraudulent joinder is no longer good law or binding precedent. To the contrary: the Court in *Hain Celestial* indicated that, if the trial court had *correctly* dismissed the non-diverse party under the fraudulent joinder doctrine, the case would have "left behind a completely diverse set of parties" for whom judgment could have appropriately been entered without issue. *Hain Celestial*, 146 S. Ct. at 732. In *Hain Celestial*, however, the parties ultimately agreed that the fraudulent joinder doctrine had been *erroneously applied* by the district court and the forum defendant had thus been erroneously dismissed. *Id*. at 730. The only question before the Court, then, was whether this undisputed error required vacatur of a subsequently entered judgment, or whether the jurisdictional defect could somehow be considered "cured" to avoid a waste of judicial resources. *Id*. (holding, rather unsurprisingly, that it could not, and a judgment entered without jurisdiction must be vacated). The *Hain Celestial* majority opinion in no way cast

20

doubt upon the continued operation of the fraudulent joinder doctrine. Indeed, Justice Thomas' concurring opinion, which expressed skepticism about the doctrine and called for the Court to "consider the propriety of the improper-joinder doctrine" in "a *future* case," *id*. at 736 (emphasis added) (Thomas, J. concurring), demonstrates that even he did not believe *Hain* changed the established law with respect to fraudulent joinder.[5]

It is certainly true that, as this Court recognized in *Porter*, if this Court denies remand and the ruling is ultimately determined to have been erroneous, certain proceedings will have to be redone in state court. But the threat to judicial economy created by potential errors in federal courts' jurisdictional rulings is not new, and it is not unique. "[T]hat 'possible problem would appear to exist in every federal case, particularly where jurisdiction is questioned.'" *Porter*, 2026 WL 1078498 at *1 (quoting *Tresco, Inc. v. Cont'l Cas. Co.*, 727 F. Supp. 2d 1243, 1253 n.5 (D.N.M. 2010)); *see also* Order at 2, *Johnson v. State Farm*, No. CIV-25-1000-HE (W.D. Okla. May 11, 2026), ECF No. 34 ("*Johnson* Order") ("that risk exists in any case where subject matter jurisdiction is disputed" and "is not a basis for ignoring a substantive rule that otherwise applies"). Nevertheless, "district courts often have to make difficult decisions," and "courts are not free to limit federal

---

[5] Plaintiff notes (Mot. at 5) that Judge Wyrick's decision in *Richardson v. Allstate Veh. & Prop. Ins. Co*., CIV-25-734-PRW, 2026 WL 526387 (W.D. Okla. Feb. 25, 2026), a case where Plaintiff's counsel made almost identical "scheme" allegations against a *different* insurance company, was issued the day after the Supreme Court's opinion in *Hain Celestial*. He surely does not intend to imply that Judge Wyrick believed *Hain Celestial* compelled his ruling in that case, or otherwise changed the landscape of fraudulent joinder law. If he did, he presumably would have *cited* the *Hain Celestial* case in his opinion (decided just the day before)—but he quite notably did not.

jurisdiction to avoid error." *Porter*, 2026 WL 1078498 at \*1; *see also Tresco*, 727 F. Supp. 2d at 1252 n.6 ("Reducing uncertainty is not a sound reason to restrict Congressionally given jurisdiction. Courts cannot shirk … 'the virtually unflagging obligation … to exercise the jurisdiction given them,' … by the simple expedient of judicially restricting Congress' grants of jurisdiction. The federal courts should remain fully open to the litigants that the Constitution and Congress have allowed to litigate there.").

There is a theoretical risk to judicial economy every time a case is removed and a federal court denies a motion to remand. Yet, Congress has created a right of removal in certain cases for a reason. A hypothetical risk to judicial economy is not a reason to ignore established precedent and deny a Defendant its right to proceed in federal court where, as here, diversity between the parties exists, and any non-diverse defendants have been fraudulently joined solely in an effort to defeat diversity jurisdiction. Indeed, *Hain Celestial* has been urged as grounds to remand in other, and judges in this and other Districts have *(rightly) rejected that effort. See., e.g., Johnson* Order; Order, *Schettler v. State Farm*, CIV-25-845-JD (W.D. Okla. Apr. 6, 2026), ECF No. 17; *Waller v. State Farm*, CIV-25-448-SH, 2026 WL 880234, at \*1 (N.D. Okla. Mar. 30, 2026); *Robbins v. State Farm*, CIV-25-324-G, 2026 WL 878449, at \*6 (W.D. Okla. Mar. 30, 2026) (all acknowledging *Hain Celestial*, but nevertheless denying motions to remand or renewed motions to remand on fraudulent joinder grounds).

22

It is—and always has been—easier for a district court to simply grant a motion to remand and avoid the possibility of appeal and vacatur. But just because a decision carries less hypothetical risk doesn't make it right.[6]

## II.   PLAINTIFF CANNOT AVOID FEDERAL JURISDICTION BY ALLEGING FALSE FACTS.

State Farm urged in its Motion for Removal that **both** grounds for fraudulent joinder articulated in *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) were established here. Notice of Removal, ¶¶ 8, 36-39. Aside from Plaintiff's failure to show he has a reasonable basis to succeed on a claim against Mr. Wright as demonstrated in § I, *supra*, State Farm also showed in its Notice that Plaintiff had engaged in the fraudulent pleading of jurisdictional facts. Plaintiff's Motion only addressed whether he stated a possible claim against Mr. Wright; it did not address or contest the merits of State Farm's proof of fraudulent pleading, waiving any defense. *Northcutt*, 2020 WL 7380967 at *2.

The reality is, Plaintiff's theory as to Mr. Wright's liability is implausible on its face, and Plaintiff has no explanation for it, instead deflecting by citing Shakespeare. Mot.

---

[6] Plaintiff makes much of the fact that state court judges have denied agents' motions to dismiss following remand from federal court. As Judge Heaton recently observed in denying a motion to remand filed by Plaintiff's counsel in *Johnson v. State Farm*, it is hardly surprising that busy state court judges have denied motions to dismiss filed in cases where a federal judge had just remanded the case based upon a finding of a **possibility** of a claim against the agent. *See Johnson* Order at 2 (noting that "[i]t strikes the court as unremarkable that, after receiving a case remanded from federal court on the basis of the existence of a possible state law claim, the state judge would decline to belabor the same question"). Indeed, the federal judge's prior ruling on the motion to remand is the first and primary focus of Plaintiff's counsel's response to the motion to dismiss in state court. *See, e.g.*, Pl's Resp. to Mot. to Dismiss at 2-6, *Pruitt v. State Farm*, CJ-2024-7828 (Okla. Cnty. May 15, 2025) (highlighting the federal court's determination in the introduction and later quoting it at length).

at 1 n.1. This is a case about a burst water pipe—behind walls and so not visible. And yet, Plaintiff's counsel again sue the agent and allege he is liable because he did not inspect the house before the Policy was issued, discover whatever was wrong with the pipe, and tell State Farm not to issue the Policy. The bad faith in this allegation is palpable. There is no way an inspection at policy issuance in 2009 (or even the equally absurd requirement of an annual inspection) would have revealed issues with the pipe unless the agent knocked out the wall, and no way the failure to know about it impacted State Farm's issuance or renewal of the Policy. Nor did the alleged failure to inspect have anything to do with the subsequent claim decision which was not based on the condition of the pipe but instead simply disagreement about the scope of the resulting damage. At some point, Plaintiff's counsel need to be held accountable to these agents who have nothing to do with any of what is alleged.

The fraudulent nature of the Petition is further demonstrated from the limited record which disproves: (1) Plaintiff's allegation that "no inspection occurred" (State Farm's Underwriting Department ordered an inspection in 2015, which was performed by a professional house inspector, not Mr. Wright) and (2) Plaintiff's allegation Mr. Wright failed to procure an RCV policy that covered water damage (the Policy itself proves otherwise and State Farm paid to repair water damage to the house).

Remand cannot be based on a sham. *Smoot v. Chicago, R.I. & P. R. Co.*, 378 F.2d 879, 883 (10th Cir. 1967). "The heavy burden placed upon Defendants to prove fraudulent joinder does not mean this Court must 'blindly accept' whatever Plaintiff asserts, 'no

24

matter how incredible or how contrary to the [] weight of the evidence.'" *Ferrell v. BGF Glob., LLC*, No. CIV-15-404-D, 2015 WL 6438988, at *3 (W.D. Okla. Oct. 21, 2015).

## CONCLUSION

Based on the foregoing, State Farm respectfully requests that Plaintiff's Motion to Remand be denied.

Respectfully submitted,

/s/ *Timila S. Rother*

Timila S. Rother, OBA #14310
Paige A. Masters, OBA #31142
Amanda M. Finch, OBA #34650
**CROWE DUNLEVY**
A Professional Corporation
Braniff Building
324 N. Robinson Avenue, Ste. 100
Oklahoma City, OK 73102-8273
(405) 235-7757
(405) 272-5226 (Facsimile)
timila.rother@crowedunlevy.com
paige.masters@crowedunlevy.com
amanda.finch@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT
STATE FARM FIRE AND CASUALTY
COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2026, I electronically transmitted the foregoing document to the Court Clerk using the ECF system of filing, which will transmit a Notice of Electronic Filing to the following ECF registrants:

**Reggie N. Whitten**      rwhitten@whittenburragelaw.com

**Michael Burrage**      mburrage@whittenburragelaw.com

**Blake Sonne**      bsonne@whittenburragelaw.com

25

26

**Hannah Whitten**                    hwhitten@whittenburragelaw.com

**John S. Sanders**                   jsanders@whittenburragelaw.com

**Jake Denne**                        jdenne@whittenburragelaw.com

/s/ *Timila S. Rother*
      Timila S. Rother

6269043