**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **(1) BRADLEY COX,**<br><br>*Plaintiff,*<br><br>v.<br><br>**(1) STATE FARM FIRE AND CASUALTY COMPANY,**<br><br>*Defendant.* | **Case No. CIV-26-752-R** |

**JOINT STATUS REPORT AND DISCOVERY PLAN**

**Date of Conference:** October 1, 2026

**Appearing for Plaintiff(s):** Reggie N. Whitten, Michael Burrage, Blake Sonne, Hannah Whitten, John Sanders, Jake Denne, James E. Warner III

**Appearing for Defendant(s):** Timila Rother, Paige Masters, Amanda Finch

**Jury Trial Demanded X - Non-Jury Trial □**

1. **BRIEF PRELIMINARY STATEMENT**. State briefly and in ordinary language the facts and positions of the parties to inform the judge of the general nature of the case.

**A. Plaintiff:**

Plaintiff alleges a Scheme—"the Water Initiative"—whereby State Farm wrongfully denies its insureds' (including Plaintiff's here) claims for water damage to their covered property. Although the type of damage at issue here (water) slightly differs from others involving wind/hail claims, the overall Scheme, including the impact on Plaintiff and other insureds, is substantively the same. The misconduct and harm committed by State Farm and its agent, Jerel Wright, in this case left Plaintiff and his wife in an extremely vulnerable and horrific situation wherein State Farm low-balled the claim contrary to

Wright's representations and as a result, the Insured Property was left in an unlivable condition while Plaintiff's wife was dying of terminal kidney cancer.

At the forefront of the Water Initiative and the failures/misrepresentations alleged by Plaintiff is Wright. Wright induced Plaintiff to repeatedly purchase the Policy through his representations/assurances about the purported full replacement cost coverage provided, and Plaintiff detrimentally relied on these representations which turned out to be false prior to the subject date of loss. For example, Wright assured Plaintiff that "he was procuring replacement cost coverage, the coverage was full and complete coverage for the Home, and that all Plaintiff needed to do was file a claim to be taken care of." These assurances were false, and Wright concealed his knowledge of the Water Initiative at all relevant times, including up to and beyond the renewal of the Policy applicable to the date of loss. Wright failed to procure the full replacement cost coverage as he promised and as Plaintiff expected and continued to sell it to Plaintiff without disclosing such material coverage deviation.

Plaintiff's insured property suffered a pipe burst on or about January 17, 2023 that caused widespread damage to the home, including but not limited to widespread floor buckling and exposure, damage to the walls and/or sheetrock, and a prolonged absence of running water that could not be restored until full replacement of the plumbing system. This left the home in a devastated condition that compounded what was already an incredibly painful situation for Plaintiff. Due to the unlivable condition, Plaintiff and his wife were forced to relocate to a rented RV for many months while disputing State Farm's Claim decision.

Following the loss, Plaintiff retained a public adjuster who submitted the Claim to State Farm on Plaintiff's behalf alongside several documents demonstrating the damage. On or about February 2, 2023, State Farm deployed a third-party inspector to investigate the Claim on its behalf. The third-part inspector failed to scope the loss appropriately, and the Claim was reassigned to another third-party claims resource without resolution. At this time, Plaintiff provided State Farm with a Proof of Loss package detailing more than one hundred thousand dollars in outstanding damages consisting of replacement costs for the damage to Plaintiff's home and other costs for which coverage was due and owed to Plaintiff. The Claim was once again to another third-party claims resource without resolution on March 17, 2023. On April 20, 2023, this third-party claims resource advised Plaintiff and his public adjuster that the Claim could not be assessed without documentation from Plaintiff's plumber, yet—as Plaintiff pointed out to State Farm—all such documents had been sent to State Farm months ago. This dispute continued back-and-forth over the next several months until State Farm finally assigned a Claim Specialist to adjust the Claim.

However, State Farm dramatically misadjusted the Claim, manipulating its reported damage findings such that it wrote off the vast majority of damage—despite having been provided evidence of the extent of damage and costs therefor for many months. The end result: a series of payments (including improper post-litigation supplemental payment) amounting to a fraction of the total costs presented to and owed by State Farm. State Farm did so without explanation for the discrepancy in its damage report. State Farm then cancelled Plaintiff's coverage.

As a result of State Farm's bad faith conduct, Plaintiff was unreasonably deprived of tens of thousands of dollars due and owed under the Policy, all of which was documented and provided to State Farm throughout the life of the Claim.

Plaintiff filed suit for breach of contract, bad faith, constructive fraud, and negligent misrepresentation against Defendant State Farm. Plaintiff's original lawsuit, CJ-24-324 (Oklahoma County), was filed by Plaintiff's previous counsel on January 17, 2024; this original lawsuit was dismissed without prejudice prior to any adjudication of the merits January 29, 2025, and the present lawsuit was subsequently filed as CJ-26-790 (Oklahoma County) on January 29, 2026 in accordance with 12 O.S. § 100. Plaintiff seeks actual, compensatory, and punitive damages.

**B. Defendant:**

This is a claim arising out of a burst pipe in the wall of Plaintiff's house. It is not a claim for wind or hail damage to Plaintiff's roof. Nonetheless counsel for Plaintiff alleges it is another iteration of the fictional scheme by State Farm and its agents which counsel attempt to plead in scores of cases in the courts of this state. The fact that counsel tries to fit this entirely dissimilar claim into that same theory is telling. It is apparently impossible to believe that there is simply a good faith disagreement over the scope of damage to property arising from either a burst pipe or a storm damage claim. But, that is all this is.

The claim was reported on behalf of the insureds on January 19, 2023, by a public adjuster, who reported water damage from a burst pipe. State Farm inspected the premises and traced the source of the loss to a hot water pex line. The claim was delayed for a short period while State Farm attempted to speak with the plumbing and leak detection company about the cause of the leak. After further investigation as to the reason for the leak/busted pipe and the scope of the damage, State Farm prepared an estimate for identified damage to the office, living room, bathroom and hall closet in the RCV amount of $14,742.82. After reduction of $1,505.98 in depreciation, $301.18 related to GCO&P depreciation, and the $6,366.00 deductible, State Farm paid the Insured $6,569.66. State Farm also paid the invoice of the restoration company that cleaned and mitigated the water damage. In contrast, the public adjuster submitted a total estimate of $72,576.50 for the dwelling.

Thereafter there was much back and forth with the public adjuster on behalf of Plaintiff about the amount of alternative living expense incurred and damage to personal property. State Farm continued to extend payment for the alternative living expense incurred by the insureds while the covered damage was being repaired. However, the insured determined to re-plumb the entire house due to potential manufacturing defects in the pipes used to plumb the house originally, which was not a covered loss, and so there was some dispute about whether the additional living expense was to be paid while non-covered work on the house was occurring. The ability to repair the floor was also contested by the public adjuster and so State Farm conducted an additional inspection of the property relating to the flooring with Sooner Flooring present. Despite aggressive claims that the wood floor was not repairable and corresponding aggressive speech and behavior by the public adjuster, the representative of Sooner Flooring advised that this was a common type of wood floor which was available and could be readily repaired. State Farm asked the flooring contractor for an estimate and advised that it would adjust its estimate based specifically on the flooring contractor's estimate. That resulted in an additional payment of $6,479.55 to the insureds, when reconciled against what State Farm had already paid. There was no other substantive claim activity before the lawsuit was filed.

At issue is simply a dispute over the scope of repairs with State Farm having estimated $19,952.85 and paid accordingly after the depreciation and deductible, and the public adjuster taking the position that the entire floor needed to be replaced and that other amounts were owed. This is not a bad faith claim and there are no schemes relating to water damage claims or any other claims. Further, all of Plaintiff's claims are barred by the limitations period in the Policy as well as the limitation periods applicable to bad faith and fraud claims.

2. **JURISDICTION**. State the basis on which the jurisdiction of the Court is invoked and any presently known objections.

**A.** **Plaintiff:** Although jurisdiction is currently exercised under 28 U.S.C. § 1332, Plaintiff asserts this matter was rightfully brought in state court as valid claims were asserted against the non-diverse agent. Plaintiff objects to subject matter jurisdiction and reserves the right to seek reconsideration of or appeal the Court's exercise of subject matter jurisdiction.

**B.** **Defendant:** As this Court has already determined in denying Plaintiff's Motion to Remand, the Court has diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3. **STIPULATED FACTS**. List stipulations as to all facts that are not disputed, including jurisdictional facts.

A. During the time relevant to Plaintiff's claim, Plaintiff was a resident of Oklahoma County, Oklahoma.

B. During the time relevant to Plaintiff's claim, Plaintiff owned the Insured Property in Oklahoma County, Oklahoma.

C. State Farm is a foreign insurer licensed to do business in the State of Oklahoma.

D. On the January 17, 2023 alleged date of loss, Plaintiff's house was insured by State Farm Policy No. 36-BD-E747-9.

E. Plaintiff, through his public adjuster, submitted a claim to State Farm on January 19, 2023, which was assigned Claim No. 36-44N9-59X.

4. **CONTENTIONS AND CLAIMS FOR DAMAGES OR OTHER RELIEF SOUGHT**.

**A. Plaintiff:**

i. State Farm breached the express and implied terms of Plaintiff's homeowners insurance policy, including but not limited to: failing to pay the full replacement cost of the damages to Plaintiff's home.

ii. Plaintiff has not been compensated for benefits owed under the Policy.

iii. State Farm violated Oklahoma's duty of good faith and fair dealing with Plaintiff in numerous respects, as outlined in the Complaint.

iv. State Farm's actions were in bad faith and in violation of Oklahoma law.

v. Plaintiff has been injured as a result of State Farm's bad faith conduct.

vi. State Farm breached its contract with Plaintiff, which caused damages to Plaintiff, as outlined in the Complaint.

vii. State Farm engaged in constructive fraud and negligent misrepresentation in its dealings with Plaintiff, which caused damages to Plaintiff as outlined in the Complaint.

viii. As a direct and proximate result of State Farm's actions, Plaintiff suffered damages including financial losses, contract damages, emotional distress and mental anguish, loss of enjoyment of life, and other compensatory damages.

ix. Plaintiff is entitled to recover pre and post judgment interest, costs, and attorney fees.

x. Plaintiff is entitled to punitive damages for the reckless and/or intentional conduct of State Farm.

xi. Plaintiff's claims are not time-barred as they were raised within one year of the date of loss on January 17, 2024.

**B. Defendant:**

i. State Farm denies all claims of Plaintiff and asserts that Plaintiff should take nothing from this case.

ii. At issue is simply a dispute over the scope of repairs with State Farm having estimated $19,952.85 and paid accordingly after the depreciation and deductible, and the public adjuster taking the position that the entire floor needed to be replaced and that other amounts were owed.

iii. This is not a bad faith claim and there are no schemes relating to water damage claims or any other claims.

iv. All of Plaintiff's claims are barred by the limitations period in the Policy as well as the limitation periods applicable to bad faith and fraud claims.

v. Plaintiff has failed to state a claim upon which relief may be granted. Plaintiff's counsel's use of repeat allegations against State Farm and Mr. Wright that do not match the facts of the case alone demonstrates the failure to state a claim.

vi. Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, laches, and/or estoppel.

vii. Plaintiff has made allegations and asserted theories which are within the primary jurisdiction of the Oklahoma Department of Insurance.

viii. State Farm has not breached any contract with Plaintiff but has fully complied with the terms of the insurance agreement between the parties. Plaintiff has been paid all amounts owed under the Policy.

ix. State Farm has acted reasonably and in good faith in its handling, investigation, and decision on Plaintiff's claim. At a minimum, a legitimate dispute exists as to coverage and/or the amount owed for any damage covered by the Policy.

x. Plaintiff has breached his contractual obligations to State Farm.

xi. Plaintiff has not suffered damages as a result of any conduct by State Farm.

xii. Any damages suffered by Plaintiff were not proximately caused by any act or omission of State Farm or breach of any legal duty by State Farm.

xiii. Plaintiff has failed to plead fraud with particularity.

xiv. Plaintiff received a copy of the Policy and was on notice of the terms and conditions contained therein, and thus he has waived and/or is estopped from asserting any claim based on alleged misstatement of the Policy.

xv. Given his receipt of the Policy, Plaintiff cannot have reasonably relied upon any alleged misrepresentations as to the Policy terms. Any prior representations were merged into the Policy.

xvi. State Farm owed no duty or other obligation to Plaintiff upon which Plaintiff can assert a claim for constructive fraud/negligent misrepresentation.

xvii. Plaintiff has failed to mitigate his damages.

xviii. Plaintiff is not entitled to prejudgment interest.

xix. Plaintiff is not entitled to attorneys' fees and/or costs.

xx. State Farm did not engage in any activity that would entitle Plaintiff to punitive damages. An award of punitive damages under the facts and circumstances alleged would deny State Farm its rights and violate the Constitutions of the State of Oklahoma and the United States of America, and such an award would be a penalty in violation of the laws of the State of Oklahoma and the United States of America. Further, to the extent Plaintiff attempts to recover punitive damages under 23 O.S. § 9.1, such statute is unconstitutional under the Due Process Clause of the United States Constitution and the decisions of the United States Supreme Court.

5. **APPLICABILITY OF FED. R. CIV. P. 5.1 AND COMPLIANCE**.

Do any of the claims or defenses draw into question the constitutionality of a federal or state statute where notice is required under 28 U.S.C. § 2403 or Fed. R. Civ. P. 5.1?

**X Yes** □ No

State Farm challenges the constitutionality of 23 O.S. § 9.1 under which Plaintiff seeks punitive damages on the grounds it violates the constitutional prohibition against punishing a defendant based upon injury to third parties as set forth in *Philip Morris USA v. Williams*, 549 U.S. 346 (2007).

6. **MOTIONS PENDING AND/OR ANTICIPATED** (include date of filing, relief requested, and date responsive brief to be filed).

**A. Plaintiff:** Plaintiff anticipates filing a motion to compel discovery following discovery efforts. Plaintiff also anticipates filing a motion for summary judgment at the appropriate time.

**B. Defendant:** State Farm anticipates filing a Motion for Judgment on the pleadings and/or a Motion for Summary Judgment.

7. **COMPLIANCE WITH RULE 26(a)(1)**. Have the initial disclosures required by Fed. R. Civ. P. 26(a)(1) been made? □ Yes **X No**

If "no," by what date will they be made? **The parties have agreed to exchange initial disclosures by October 14, 2026.**

8. **PLAN FOR DISCOVERY**.

A. The discovery planning conference (Fed. R. Civ. P. 26(f)) was held on **September 22, 2026**.

B. The parties anticipate that discovery should be completed within **nine (9) months**.

C. In the event ADR is ordered or agreed to, what is the minimum amount of time necessary to complete necessary discovery prior to the ADR session? **Six (6) months**.

D. Have the parties discussed issues relating to disclosure or discovery of electronically stored information, including the form or forms in which it should be produced, pursuant to Fed. R. Civ. P. 26(f)(3)(C)?

**X Yes** □ No

E. Have the parties discussed issues relating to claims of privilege or of protection as trial-preparation material pursuant to Fed. R. Civ. P. 26(f)(3)(D)?

**X Yes** □ No

To the extent the parties have made any agreements pursuant to Fed. R. Civ. P. 26(f)(3)(D) and Fed. R. Civ. P. 502(e) regarding a procedure to assert claims of privilege/protection after production and are requesting that the court include such agreement in an order, please set forth the agreement in detail below and submit a proposed order adopting the same.

**None at this time.**

F. Identify any other discovery issues which should be addressed at the scheduling conference, including any subjects of discovery, limitations on discovery, protective orders needed, or other elements (Fed. R. Civ. P. 26(f)) which should be included in a particularized discovery plan.

**None at this time.**

9. **ESTIMATED TRIAL TIME**: **5 days.**

10. **BIFURCATION REQUESTED**: □ Yes **X No**

11. **POSSIBILITY OF SETTLEMENT**: □ Good **X Fair** □ Poor

12. **SETTLEMENT AND ADR PROCEDURES**:

A. Compliance with LCvR 16.1(a)(1) - ADR discussion: **X Yes** □ No

B. The parties request that this case be referred to the following ADR process:

□ Court-Ordered Mediation subject to LCvR 16.3
□ Judicial Settlement Conference
**X Other: Private mediation**
□ None - the parties do not request ADR at this time.

13. Parties consent to trial by Magistrate Judge? □ Yes **X No**

14. Type of Scheduling Order Requested. **X Standard** - □ Specialized (If a specialized scheduling order is requested, counsel should include a statement of reasons and proposal.)

Submitted on September 23, 2026.

Respectfully submitted,

*/s/ Jake Denne*

Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
Blake Sonne, OBA No. 20341
Hannah Whitten, OBA No. 35261
John S. Sanders, OBA No. 34990
Jake Denne, OBA No. 35097
**WHITTEN BURRAGE**
512 N. Broadway Ave., Suite 300
Oklahoma City, OK 73102
Office: 405.516.7800
Facsimile: 405.516.7859
*rwhitten@whittenburragelaw.com*
*mburrage@whittenburragelaw.com*
*bsonne@whittenburragelaw.com*
*hwhitten@whittenburragelaw.com*
*jsanders@whittenburragelaw.com*
*jdenne@whittenburragelaw.com*

***Attorneys for Plaintiff***

/s/ *Timila S. Rother (with permission)*

Timila S. Rother, OBA No. 14310
Paige A. Masters, OBA No. 31142
Amanda M. Finch, OBA No. 34650
**CROWE & DUNLEVY, PC**
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102

*timila.rother@crowedunlevy.com*
*paige.masters@crowedunlevy.com*
*amanda.finch@crowedunlevy.com*

***Attorneys for Defendant***